UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL,<br><br>                      Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>                      Defendant. | Case No.: 3:16-cv-00492-L-WVG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [Doc. 8]** |

Pending before the Court is Defendant Bank of America, N.A.'s ("Bank") Motion to Dismiss Plaintiff Joanne Farrell's ("Plaintiff") Complaint [Doc. 1]. The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court **DENIES** the Bank's Motion to Dismiss.

//
//
//
//
//
//
//
//

## I. BACKGROUND

This case is a putative class action focused on the Bank's practice of levying $35 fees ("Extended Charges") against deposit account holders for failing to rectify an overdrawn deposit account within five days.  Under the terms of the Deposit Agreement [Doc. 8-3] the Bank charges a $35 fee (the "Initial Charge") anytime a deposit account holder writes a check against insufficient funds.  The Bank has discretion as to whether to honor an overdrawn check by advancing funds to the payee sufficient to cover the note, however the Bank levies the Initial Charge whether it advances the fees or not.  In the event the Bank does advance the funds, the deposit account holder is obligated under the Deposit Agreement to pay back the Bank's advance and any fees incurred.  Failure to do so within five days triggers an Extended Charge.

Plaintiff wrote some checks against insufficient funds.  The Bank honored the checks but charged her $35 Initial Charges for not having sufficient funds.  When Plaintiff failed to remedy her negative account balance within five days, the Bank levied an Extended Charge.  Because the Extended Charges, as a percentage of her negative account balance, exceeded the interest rate permitted by the National Banking Act, Plaintiff filed this putative class action against the Bank, alleging violation of 12 U.S.C. §§ 85, 86.  (See Compl.)  The Bank now moves to dismiss.  (See MTD.)  Plaintiff opposes.  (See Opp'n [Doc. 16].)

## II. LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983).  All material allegations in the complaint, "even if doubtful in fact," are assumed to be true.  *Id*.  The court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]."  *Gompper v. VISX,*

*Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.2d 1575, 1580 (9th Cir. 1996).

As the Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations and quotation marks omitted). Instead, the allegation in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

## III. DISCUSSION

Plaintiff's sole cause of action alleges violation of the National Banking Act ("NBA"), 12 U.S.C. §§ 85, 86. The NBA makes it unlawful for a national bank to charge usurious interest rates. Plaintiff argues that the EOB charges constitute usurious interest rates under the NBA. Defendant argues that EOB charges are not interest but 12 C.F.R. § 7.4002 authorized deposit account service charges. There is no dispute that the EOB charges trigger 12 U.S.C. § 85 if they amount to interest. Rather, the dispute focuses squarely on the legal question of whether EOB charges constitute "interest" under § 85.[1]

The Supreme Court has held that the word "interest," as used in §85, is ambiguous. *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 739 (1996). Because of this ambiguity, it is proper to give deference to any reasonable guidance of the implementing agency, the Office of the Comptroller of the Currency ("OCC"), regarding the word's

---

[1] Given the Court's conclusion that the EOB charges constitute interest, it follows that the EOB charges are not 12 C.F.R. § 7.4002 deposit account service charges. See 12 C.F.R. § 7.4002(c).

1  meaning. *Id.* (*Citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–85 (1984)).  The OCC defines "interest" as used in § 85 as "any payment compensating a creditor or prospective creditor for an extension of credit, making available a line of credit, or any default or breach by a borrower of a condition upon which credit was extended…" ("the General Clause").  12 C.F.R. §7.4001(a).  § 85 also includes a non-exhaustive list of fees that qualify.  Of some relevance to the present motion, it includes "creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payments on a debt with a check drawn on insufficient funds."  ("the NSF Clause")  Id.

Commentary published in connection with the amendment that added the NSF Clause establishes that the OCC's interpretation of the word "NSF Fees", as used in §7.4001(a) does not include "[f]ees that a bank charges for its deposit account services– including overdraft and returned check charges…" 66 F.R. 34784-01, 34786-87.  More specifically, the OCC states that "NSF Fees" can refer to (1) "fees imposed by a creditor bank when a borrower attempts to pay an obligation to that bank with a check drawn on insufficient funds" or (2) "fees imposed by a bank on its checking account customers whenever a customer writes a check against insufficient funds, regardless of whether the check was intended to pay an obligation due to the bank."  66 F.R. 34784-01, 34786-87.  As amended, however, § 7.4001(a) expressly contemplates the former and not the latter.  The commentary makes clear that the omission of the latter category of NSF fees was intentional, in part because most comments on the proposed amendment clarifying "NSF Fees" cautioned against including overdraft fees under the heading of "interest."  Id.  Applying the principals of *Chevron* deference, the Court finds this commentary persuasively suggests that Initial Charge does not constitute interest.

Further supporting this conclusion is the fact that a fee is not interest unless it involves an extension of credit.  12 C.F.R. § 7.4001 [General Clause].  The Initial Charge is one that the Bank can charge regardless of whether or not it honors an overdraft check. (See Deposit Agreement [Doc. 8-3].)  In other words, even if the bank does not advance

money to cover an overdraft check, the bank assesses an overdraft fee. Because extension of credit is thus not necessary to trigger the Initial Charge, the Initial Charge seems to be more of a "fee that a bank charges for its deposit account services" than it is a fee in consideration for the extension of credit.

The parties disagree over whether the Extended Charge should be treated any different than the Initial Charge. There is no binding authority touching on this issue. However, at least three district court cases have considered it. All three concluded Extended Charges do not constitute interest under § 85. *Mcgee v. Bank of America, N.A.*, 2015 WL 4594582 (S.D. Fla 2015); *Shaw v. BOKF, Nat. Ass'n*, 2015 WL 6142903 (N.D. Okla. 2015); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593 (D.S.C. 2015). These cases, and Defendants' moving papers, essentially present four arguments as to why Extended Fees are not interest.

The first argument is that there is no substantive difference between the Initial Charge and the Extended Charge. Thus, because the OCC appears to have expressly excluded Initial Charges from the definition of interest, so too should the Extended Fees be excluded. The main problem with this argument is that the Bank can levy the Initial Fee even if it exercises its discretion to refuse to cover an overdraft and thus advances no funds to its customer. Further, the Initial Fee is the same regardless of whether the bank does or does not cover the overdraft. The fact that the advancement of funds does not trigger any additional charge suggests that the Initial Fee is not intended to "compensate a creditor . . . for an extension of credit…" 12 C.F.R. § 7.4001(a). By contrast, the Bank levies the Extended Fee only if it did in fact advance funds to cover an overdraft. This suggests that the Extended Fee, unlike the Initial Fee, is more of a charge in consideration for the time value of money.

The second argument is that the Extended Charges are not interest because they are flat fees. *See Video Trax,* 33 F. Supp. 2d at 1050 (stating interest is usually a percentage fee); *McGee*, 2015 WL 4594582 at *3 (noting the flat fee nature of the Extended Charges in concluding they are not interest); *Shaw*, 2015 WL 6142903 at *4 (same); *In re TD*

*Bank, N.A.*, 150 F. Supp. 3d at 641–42 (same).  However, not one of these non-binding decisions emphasizing the flat nature of the fee cite to any authority suggesting that flat fees cannot constitute interest.  Further, the Supreme Court has explicitly rejected this exact argument.  *Smiley*, 517 U.S. at 745–46.

The third argument focuses on the contingent nature of the Extended Charge.  Defendant cites *Video Trax*, 33 F. Supp. 2d at 1054–55 for the proposition that "fees imposed as a result of a contingency are not interest." *Id.* at 1054.  More specifically, the Bank is arguing that Plaintiff had complete control over whether to pay the overdrawn balance before triggering the Extended Charge.  (See MTD 6:25–7:12.)  The Bank further argues that, if Plaintiff of her own volition has the ability to trigger a usurious fee from the Bank, then

> banks could not possibly know whether the ultimate rate on any given account would exceed the interest ceiling provided by law.  The depositor could, therefore, render his account usurious, and hence unlawful, by simply maintaining insufficient funds in the account, thereby incurring an amount of fees equal to a usurious rate.

*Video Trax*, 33 F. Supp. 2d at 1055.

The Court does not find this argument persuasive.  The only authority the *Video Trax* Court cites in support of it is more than a century old and predates the enactment of the National Banking Act.  Further, in *Smiley*, 517 U.S. at 737–38, 747 a decision that postdates the National Bank Act's enactment, the Supreme Court held that a $15 fee levied for failure to timely pay a credit card bill constituted interest under 12 U.S.C. § 85. *Id*.  This Court sees no reason to distinguish between the contingent nature of the fee at issue in *Smiley* and the Extended Charge at issue here.

The final argument is that any fee that arises from a deposit agreement rather than a more classical credit arrangement is per se not interest.  Thus, because the extended fees arise from a deposit agreement, they are not interest.  This argument receives a fair amount of support from non-binding authority.  *See Video Trax, Inc. v. NationsBank, N.A.*, 33 F. Supp. 2d 1041, 1050 (S.D. Fla. 1998) *aff'd*, 205 F.3d 1358 (2000); .  The

basic premises of this argument are (1) only fees for "credit transactions" qualify as interest under 12 C.F.R. § 7001(a) and (2) any transaction governed by a deposit agreement is not a "credit transaction."

The second premise is problematic. It seems grounded in the idea that, in the context of a deposit account holder / bank relationship, the deposit account holder ("depositor") is necessarily the creditor and the bank the debtor. *Video Trax*, 33 F. Supp. 2d at 1053. This is not true. When the depositor's account stands at a positive value, the depositor has loaned funds to the bank. In consideration for the time value of the deposited funds, the bank (as debtor) pays an interest rate to depositor (as creditor). However, these roles necessarily reverse when the depositor's account stands at a negative value as a result of overdraft coverage. Indeed, the account is negative because the Bank has advanced funds to the depositor to cover a check in excess of the deposited funds. Thus, to call the Bank the debtor when the Bank is the one who has advanced the funds simply misstates the true nature of the relationship between the bank and the overdrawn "depositor."

A similar argument is that, even though the bank is postured as creditor, it charges the Extended Fees for its deposit account services, to wit, sustained coverage of an overdraft transaction. The OCC has stated "[f]ees that a bank charges for its deposit account services–including overdraft and returned check charges–are not covered by the term "NSF fees" as that term is used in § 7.4001(a)." 66 F.R. 34784-01, 34786. Thus, the Extended Fees are not interest. The main problem with this argument is that, to qualify as interest, it is not necessary that the Extended Fees meet the definition of NSF Fees.[2] It is sufficient that the Extended Fees are "payment compensating a creditor. . . for an extension of credit." 12 C.F.R. § 7.4001(a) (General Clause).

---

[2] Indeed, the Extended Charges are not NSF Fees. NSF Fees are fees for writing a check against an account with inadequate funds to satisfy it. See 66 FR 34784-01, 34786. An example is the Initial Charge. By contrast, Extended Charges do not directly result from an overdraft. They result from

The parties dispute whether the Extended Fees are connected to an extension of credit. Defendant argues that, in advancing funds to an over-drafted depositor, the Bank does not extend credit to the over drafted depositor. However, neither binding authority nor plain language support this argument. Where the plain meaning of the language of a law is unambiguous, the plain meaning controls. *See Kingdomware Technologies, Inc. v. U.S.*, 136 S. Ct. 1969, 1976 (2016). As a matter of plain language, "the provision of money, goods, or services with the expectation of future payment" amounts to an extension of credit. See Merriam-Webster Dictionary, accessible at https://www.merriam-webster.com/dictionary/credit. Here, the Bank provided money to cover Plaintiff's bad check and did so with the expectation that he pay them back. It follows that this provision of money amounted to an "extension of credit."

This plain meaning interpretation finds support in an abundance of authority cited by Plaintiff. (See Opp'n 9:14– 15:12.) Noteworthy amongst this authority is Regulation O. Regulation O was issued by the Federal Reserve for the purpose of regulating extensions of credit by banks to their insiders. 12 C.F.R. § 215.1(b). In relevant part, it provides that "an advance by means of an overdraft…" is an extension of credit. 12 C.F.R. 215.3(a)(2). Defendant cites to *Shaw*, 2015 WL 6142903 at *3 and *In re TD Bank, N.A.*, 150 F. Supp. at 643 for the proposition that Regulation O does not govern the relationship between a Bank and a deposit account holder. This much is true. However, the Court sees no reason why the term "extension of credit" should receive a different interpretation when applied to the relationship between bank and insider than it receives when applied to the relationship between bank and deposit account holder.

Accordingly, this Court follows the Federal Reserve and the plain meaning of the language and holds that covering an overdraft check is an "extension of credit." See also Joint Guidance on Overdraft Protection Programs, 70 Fed. Reg. 9127, 9129 (Feb. 24,

---

failing to repay, within a certain period, the obligation incurred as a result of writing the original bad check.

2005) (OCC stating "[w]hen overdrafts are paid, credit is extended"). Plaintiff's complaint alleges that the purpose of the Extended Charges is to compensate the bank for this extension of credit. (Compl. ¶ 28.) Construing this allegation as true, the Court finds Plaintiff has adequately alleged that the Extended Charge constitutes "interest" under 12 U.S.C. § 85. The Court therefore **DENIES** Defendant's Motion to Dismiss.

IV. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss.

**IT IS SO ORDERED**

Dated:  December 19, 2016

_____
Hon. M. James Lorenz
United States District Judge

CC: The Honorable William V. Gallo