JEFFREY D. KALIEL (CA 238293)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*jkaliel@tzlegal.com*

JEFF OSTROW (admitted *pro hac vice*)
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*ostrow@kolawyers.com*

***Counsel for Plaintiff***
***(additional counsel listed on signature page)***

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | CASE NO. 3:16-cv-00492-L-WVG<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**<br>Judge: Hon. M. James Lorenz<br><br>Place: Courtroom 5B<br><br>Hearing Date: December 11, 2017<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY COURT** |

-i-

MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 3:16-cv-00492-L-WVG

# TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION** ................................................................ 1

II.   **STATEMENT OF FACTS** ................................................. 2

     A.    Factual Background ............................................. 1

     B.    History of the Litigation ..................................... 2

     C.    Summary of the Settlement Terms ................... 5

          1.   The Settlement Class ....................................... 5

          2.   Relief for the Benefit of the Settlement Class ........... 5

          3.   Class Release ............................................. 8

          4.   The Notice and Administration Program ................... 7

          5.   Class Representative's Service Awards ................... 7

          6.   Attorneys' Fees and Costs ............................... 8

III.  **ARGUMENT** ............................................................. 8

     A.    The Legal Standard for Preliminary Approval ................ 8

     B.    This Settlement Satisfies the Criteria for Preliminary Approval ........ 11

          1.   This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations ................... 12

          2.   The Facts Support a Preliminary Determination that the Settlement Is Fair, Adequate and Reasonable ........... 13

     B.    The Court Should Approve the Proposed Notice Program ................ 20

          1.   The Notice Program ..................................... 20

          2.   The Court Should Direct That Notice Be Given ........... 23

     D.    Notice Pursuant to the Class Action Fairness Act (CAFA) ........... 24

     E.    Certification of the Settlement Class Is Appropriate ........... 24

IV.   **CONCLUSION** ........................................................ 29

**Cases**

*Adams v. Inter-Con Sec. Sys. Inc.*,
    No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007).....................12

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997). ......................................................................................25, 27

*Arnold v. United Artists Theater, Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994) .........................................................................26

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal 2015) ..........................................................................17

*Berkson v. Gogo LLC*,
    147 F. Supp. 3d 123 (E.D.N.Y. Dec. 4, 2015) .....................................................22

*Bravo v. Gale Triangle, Inc.*,
     2017 WL 708766 (C.D. Cal. Feb.16, 2017)..........................................................17

*Churchill Vill., L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ................................................................................24

*Cohorst v. BRE Props.*,
    No. 3:10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 151719
    (S.D. Cal. Nov. 9, 2011).........................................................................9, 10, 12

*Custom LED, LLC v. eBay, Inc.*,
    No. 12-cv-00350-JST, 2014 U.S. Dist. LEXIS 87180
    (N.D. Cal. June 24, 2014)......................................................................................17

*Dandan Pan v. Qualcomm Inc.*,
    No. 16-cv-01885-JLS-DHB, 2017 U.S. Dist. LEXIS 120150
    (S.D. Cal. July 31, 2017)......................................................................................25

*Dennis v. Kellogg Co.*,
    09-CV-1786-L (WMc), 2013 U.S. Dist. LEXIS 163118
    (S.D. Cal. Nov. 14, 2013)......................................................................................14

*Dennis v. Kellogg Co.*,
    09-CV-1786-L (WMc), 2013 U.S. Dist. LEXIS 64577
    (S.D. Cal. May 3, 2013) .........................................................................9, 10, 11

*Dyer v. Wells Fargo Bank, N.A.*,
    No. 13-cv-02859-JST, 2014 WL 1900682 (N.D. Cal. May 12, 2014) ..........9, 10, 11

-iii-

*Gutierrez v. Wells Fargo Bank, N.A.*,
No. C 07-05923 WHA, 2008 WL 4279550
(N.D. Cal. Sept. 11, 2008) ........................................................ 10, 25, 26, 27

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*,
No. 16-CV-0182 H BLM, 2017 U.S. Dist. LEXIS 170982
(S.D. Cal. Oct. 16, 2017) ................................................................ 10, 25, 27

*Guy v. Casal Institute of Nevada, LLC*,
No. 13-cv-02263, 2014 WL 1899006 (D. Nev. May 12, 2014) .............................. 22

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................ 10, 26, 27

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................... 19

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) .................................................. 18

*In re TD Ameritrade Account Holder Litig.*,
No. C 07–2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ...................... 22

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
150 F. Supp. 3d 593 (D.S.C. 2015) ...................................................... 14

*Jaffe v. Morgan Stanley & Co.*,
No. C 06-3903 THE, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ......................... 18

*Lane v. Facebook, Inc.*,
No. C 08-3845 RS, 2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) ....................... 22

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ........................................................... 18

*Malta v. Fed. Home Loan Mortg. Corp.*,
No. 10-CV-1290 BEN (NLS), 2013 U.S. Dist. LEXIS 15731
(S.D. Cal. Feb. 4, 2013) .............................................................. 18, 26

*Maywalt v. Parker and Parsley Petroleum Co.*,
67 F.3d 1072 (2nd Cir. 1995) ............................................................ 23

*McGee v. Bank of Am., N.A.*,
2015 WL 4594582 (S.D. Fla. July 30, 2015) .............................................. 14

*McPhail v. First Command Fin. Plan., Inc.*,
No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) 15

-iv-

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ...................................................................................... 23

*Nat'l Rural Telecomm. Coop. v. DirectV, Inc.*,
   221 F.R.D. 528  (C.D. Cal. Jan. 5, 2004) .................................................... 19

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015) .................................................................. 22

*Officers for Justice v. Civil Service Com.*,
   688 F.2d 615 (9th Cir. 1982) .............................................................. 11, 17

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ........................................................................ 28

*Reilly v. Tucson Elec. Power Co.*,
   512 U.S. 1220 (1994) ..................................................................................... 23

*Roberti v. OSI Sys.*,
   No. CV-13-09174 MWF (MRW), 2015 U.S. Dist. LEXIS 164312
   (C.D. Cal. Dec. 8, 2015) ................................................................................ 17

*Rodriguez v. West Pub. Corp.*,
   No. CV05-3222, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ............... 10, 16, 28

*Shaw v. BOKF, Nat'l Ass'n*,
   2015 WL 6142903 (N.D. Okla. Oct. 19, 2015) ........................................ 14

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir.1993) ......................................................................... 23

**Statutes**

28 U.S.C. § 1715 .................................................................................................. 24

28 U.S.C. §1292(b) .............................................................................................. 3

**Rules**

12 C.F.R. § 7.4001 ............................................................................................... 2

Fed. R. Civ. P. 23 ........................................................................................ passim

**Treatises**

*Newberg on Class Actions*, § 11.41 (4th Ed. 2007) .................................... 13, 26

# I.  INTRODUCTION

Plaintiff, Joanne Farrell ("Plaintiff Farrell"), respectfully moves for Preliminary Approval of the Settlement Agreement and Release ("Settlement" or "Agreement"), attached as *Exhibit 1*, which will resolve all claims against Bank of America, N.A. ("BANA" or the "Bank") in the above-captioned action ("Action").[1] The Court should grant Preliminary Approval because the Settlement provides substantial relief for the class of BANA Bank account holders defined in paragraph 2.1. of the Agreement ("Settlement Class"), and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law. The Settlement requires BANA to cease charging the extended overdrawn balance charge of $35 ("EOBC") that it has been assessing for years, a fundamental shift in overdraft practices that will save class members approximately $1.2 billion over the next five years. The Settlement also provides for $66.6 million in monetary relief to all members of the Settlement Class who do not opt-out of the Settlement ("Settlement Class Members"), all of which will be delivered automatically, without Settlement Class Members having to submit claims. Importantly, the Settlement also provides that there is no reverter of any portion of the $66.6 million Settlement Amount to BANA. In addition, BANA will pay notice and administration costs estimated to be $2 million—another benefit that will accrue to the Settlement Class. In short, the Settlement accomplishes real and valuable benefits for the Settlement Class, especially in the face of certain risks discussed below, and the Settlement Class should now be notified of the proposed Settlement.

# II.  STATEMENT OF FACTS

## A. Background

This case is a putative class action focused on the Bank's practice of levying a $35 EOBC against Account holders for failing to cure negative balances on overdrawn

---

[1] Capitalized terms are defined in this memorandum or have the same meanings as those found in the Agreement.

deposit accounts within five business days.

When a customer has insufficient funds in a checking account to cover a check or other debit, the Bank under its deposit agreement has discretion either to pay the overdraft or return it without any payment. If the Bank chooses to pay the overdraft, the deposit agreement allows the Bank to charge an overdraft fee and requires the customer "to repay [the Bank] immediately, without notice or demand from [the Bank]." Plaintiff's claims in no way challenge this initial overdraft fee. Plaintiff's claims exclusively concern the EOBC, which the Bank separately charges if a negative account balance is not cured within 5 business days. The deposit agreement explains the EOBC as follows:

> The Extended Overdrawn Balance Charge is an overdraft fee. This fee is in addition to Overdraft Item and NSF: Returned Item fees that may apply to your account for each overdraft or returned item. This additional charge applies to your account when we determine that your account has been overdrawn for 5 or more consecutive business days. You can avoid this fee by promptly covering your overdraft - deposit or transfer enough available funds to cover your overdraft, plus any fees we assessed, within the first 5 consecutive business days that your account is overdrawn.

Plaintiff alleges that the EOBC is a charge for the use of the Bank's money over time, or interest charged pursuant to an extension of credit. Plaintiff alleges that the EOBC is "interest" under the National Bank Act and its associated regulation (12 C.F.R. § 7.4001) because the charge compensates the Bank for continued use of funds it already advanced to a customer when honoring an overdraft transaction. Consequently, Plaintiff alleges that the amount of the EOBC is usurious under the NBA. On December 19, 2016, this Court provisionally agreed with Plaintiff Farrell and denied BANA's Motion to Dismiss.

C.     **History of the Litigation**

On February 25, 2016, Plaintiff Farrell filed a class action Complaint in this Court seeking monetary damages, restitution and declaratory relief from the Bank, based on its alleged unfair assessment of EOBCs. *See generally* Complaint [DE # 1].

Plaintiff Farrell, a customer of the Bank, alleges that EOBCs are not a "fee," but are actually interest charges for the advancement of funds. Accordingly, they are subject to usury restrictions enacted by the Bank's home state, North Carolina. Plaintiff Farrell alleges the amount of the EOBC exceeds the 8% usury rate set by North Carolina state law and incorporated by the National Bank Act. *Id*

On April 29, 2016, the Bank moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that as a matter of law an EOBC does not constitute interest, and consequently, that Plaintiff Farrell's case should be dismissed with prejudice. [DE #8]. On June 13, 2016, Plaintiff Farrell filed her response in opposition to the motion to dismiss. [DE# 16]. On June 20, 2016, the Bank filed its Reply to the Response to the Motion to Dismiss. [DE #18]. On December 19, 2016, this Court denied the Bank's motion to dismiss. [DE #20].

On January 3, 2017, the Bank filed an Answer to the Complaint, which the Bank then amended on January 24, 2017. [DE #25, 42]. On January 24 and again on January 27, 2017, Plaintiff Farrell moved to strike most of the Bank's affirmative defenses. [DE #41, 45]. The Bank filed its Response in Opposition to the Motion to Strike on February 13, 2017. [DE #53]. Plaintiff Farrell filed a Reply to the Response to Motion to Strike on February 17, 2017. [DE #57].

On January 6, 2017, the Bank moved for certification of the Court's denial of its motion to dismiss to seek interlocutory review under 28 U.S.C. §1292(b), and to stay proceedings pending that review. [DE #29]. Plaintiff Farrell opposed that Motion on January 30, 2017. [DE #48]. The Bank filed a Reply to the Response to its motion for certification on February 6, 2017. [DE #50].

Plaintiff Farrell filed her Unopposed Motion to Amend Complaint, to Add Class Representatives, and to Modify Case Style on March 13, 2017, for purposes of adding Ronald Dinkins, Larice Addamo and Tia Little as additional plaintiffs ("Plaintiffs"). [DE #60]. On April 11, 2017, before ruling on the Motion to Amend, the Court granted

-3-

the Motion to Stay and certifying its order denying BANA's motion to dismiss for interlocutory review. [DE #61].

On April 21, 2017, the Bank filed a petition for permission to appeal with United States Court of Appeals for the Ninth Circuit. [DE #62]. On June 14, 2017, the Ninth Circuit granted the Bank's request to appeal and on June 15, 2017, the Bank filed its Notice of Appeal. [DE #63, 64]. A briefing scheduled was set in Ninth Circuit Case No. 17-55847.

Beginning in June, 2017, the Parties began to exchange settlement communications. Plaintiff requested a significant amount of data regarding EOBC revenue and sample transactional data, which BANA produced. Plaintiff's expert then extensively analyzed this data.

On August 25, 2017, the Parties mediated the Action in Newport Beach, California with Judge Layn Philips (Ret.), a well-respected neutral. The case did not settle that day, but the Parties continued negotiations over the next several weeks, with the assistance of Judge Phillips, reaching agreement on material terms of settlement in early October, 2017.

On October 11, 2017, the Parties filed a Joint Status Report advising the Court that the Parties had reached an agreement to settle the Action [DE #67]. The Parties also filed a Joint Motion for an Extension of Time on October 11, 2017, with the Ninth Circuit, based on the agreement to settle the Action.

The parties negotiated and executed a settlement term sheet confirming the material terms of settlement on October 23, 2017. After the Parties executed a Settlement term sheet, Class Counsel performed confirmatory discovery at the Bank's headquarters in Charlotte, North Carolina. *See* Joint Declaration of Class Counsel ("Joint Decl.") ¶ 11, attached as *Exhibit 2*. The Parties then turned to drafting the comprehensive Agreement. On October 31, 2017, the Parties signed the Agreement. *Id.* ¶ 11.

Class Counsel led the investigation that resulted in this Action. Indeed, Class Counsel persisted to pursue the usury claim even after three other district courts had rejected it in other cases. *Id.* ¶ 7. So not only were the claims in this litigation untested and novel, but it took Class Counsel a substantial amount of pre-filing work to research and develop the legal arguments and claims to support the finding that EOBCs were interest. *Id.* Class Counsel relied on their unique expertise in consumer banking practices and litigation related thereto. *Id.* Once the Action was on file, Class Counsel then persisted in overcoming the Bank's vigorous protestations that the case was wrong-headed; and persisted in driving the hard bargain that resulted in this Settlement. *Id.* Not one other firm or governmental entity brought or prosecuted these claims. In short, without Class Counsel's persistence, hard work, and investment of resources, BANA's alleged misconduct would have gone without recompense. *Id.*

D.   **Summary of the Settlement Terms.**

The Settlement's terms are detailed in the Agreement attached as *Exhibit* 1. The following is a summary of the material terms of the Settlement.

### 1.   The Settlement Class.

The Settlement Class is an opt-out class under Rule 23(b)(2) and (3) of the Federal Rule of Civil Procedure. The Settlement Class is defined as:

> All holders of BANA consumer checking accounts who, during the Class
>
> Period, were assessed at least one EOBC that was not refunded.

Agreement ¶ 2.1. Class Period "means the period from February 24, 2014, through and including December 30, 2017." *Id.* ¶ 1.11.

### 2.   Relief for the Benefit of the Settlement Class.

#### a.   *Practice Change – Cessation of EOBC*

The Bank has agreed to stop assessing the EOBC charge on consumer checking accounts. Agreement ¶ 2.2(a). For a period of five years, from December 31, 2017, though December 31, 2022, the Bank will not implement and/or assess EOBCs, or an

equivalent fee, in connection with accounts. *Id.* The Bank's obligation to cease assessing EOBCs or a similar fee shall be lifted only in the event a United Sates Supreme Court decision expressly holds that EOBCs or equivalent fees are not interest under the National Bank Act. *Id.* Should the Supreme Court so rule, the Bank may begin charging the EOBC or an equivalent fee only after a period of six months has passed from the date such decision is rendered. *Id.*

### b. *$66.6 Million Settlement Amount*

The Settlement Amount consists of a $37.5 million cash Settlement Fund and $29.1 million Debt Reduction Amount for the benefit of Settlement Class Members. Agreement ¶ 2.2(b)(1). The Settlement provides for automatic delivery, without a claims process, to Settlement Class Members of the Settlement benefits. Unlike many class settlements where a large portion of the settlement fund goes unclaimed, here every penny of the $66.6 million will actually be paid by BANA for the benefit of the Settlement Class Members.

The cash Settlement Fund will be used to: (a) pay Settlement Class Members their respective share of the Net Cash Settlement Amount; (b) Class Counsel for any Court awarded attorneys' fees and litigation costs; (c) any Court awarded Service Awards for the Class Representatives; and (d) any Administrator Hourly Charges. *Id.* ¶¶ 2.6, 3.1-3.2, 2.4(a). The Bank is required to establish the Settlement Fund within 30 days of Preliminary Approval.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement or to receive their share of the Net Cash Settlement Amount. Instead, the Bank and the Administrator will automatically distribute the Settlement benefits to Settlement Class Members. *Id.* ¶ 2.6(a). Payments to Settlement Class Members who are current account holders will be made by the Bank crediting such Settlement Class Members' accounts, and notifying them of the credit. *Id.* ¶ 2.6(b). Past account holders will receive payments from the

Settlement Fund by checks mailed by the Administrator. *Id.* ¶ 2.6(c).

All Settlement Class Members who are entitled to a payment will receive a *pro rata* distribution from the Net Cash Settlement Amount based upon the number of EOBCs the Settlement Class Member paid during the Class Period. In addition, the Bank has agreed to make $29.1 million dollars in Debt Reduction Payments for money it claims is owed for outstanding EOBCs assessed against Settlement Class Members whose accounts have been closed. *Id.* ¶ 2.2(b)(1); Joint Decl. ¶ 14. Settlement Class Members who incurred an EOBC after February 14, 2014, and had their account closed by the Bank and still had an uncollected EOBC outstanding, will have their outstanding balance reduced by an amount of up to $35. If the account balance is less than $35, the Bank will adjust the account to reflect a $0.00 account balance. *Id*. Further, to the extent BANA has reported accounts to any credit bureaus, BANA will update the reporting. *Id.* The Administrator will send notices to recipients of Debt Reduction Payments alerting them to the amount of the payment and any updates to credit reporting.

### c. *Payment of the Costs of Notice and Administration*

The settlement Administrator is Epiq Systems ("Administrator"), a leading administration firm. Administration Costs shall be paid separately by the Bank, with the exception of any hourly services requested of the Administrator. The Administrator will oversee the notice program ("Notice Program") and settlement administration. The Parties currently estimate that Administration costs to be paid by the Bank will be approximately $2 million. *Id.* ¶ 16.

### 3. Class Release.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Bank from claims relating to the subject matter of the Action. The detailed release language can be found in Section 2.3 of the Agreement.

### 4. The Notice and Administration Program.

-7-

The Notice Program (Agreement, Section 2.4 and described more fully below) is designed to provide the best notice practicable, and is tailored to take advantage of the information the Bank has available about the Settlement Class. Joint Decl. ¶ 27.

### 5.    Class Representatives Service Awards.

Class Counsel will seek incentive payments for serving as Class Representatives ("Service Awards") of up to $5,000 for each of the four named Plaintiffs.[2] Agreement ¶ 3.1. If approved by the Court, the Service Awards will be paid from the Settlement Fund, and will be in addition to the benefits the Plaintiffs will be entitled to under the terms of the Settlement. *Id*. These awards will compensate the Class Representatives for their time and effort in the Action and for the risks they assumed in prosecuting the Action against the Bank. Joint Decl. ¶ 32.   Specifically, Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding responsive documents and information; and (3) participating in conferences with Class Counsel. *Id*. In so doing, the Plaintiffs were integral to the case. *Id.*

### 6.    Attorneys' Fees and Costs.

Class Counsel may request attorneys' fees of up to 25% of the Settlement Value, as well as reimbursement of litigation costs and expenses incurred in connection with the Action. Agreement ¶ 3.2. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all material terms of the Settlement. Joint Decl. ¶ 8.

## III.   ARGUMENT

### A.    The Legal Standard for Preliminary Approval.

The Ninth Circuit maintains a strong judicial policy that favors the settlement of class actions. *Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 U.S. Dist.

---

[2] Plaintiff Farrell will respectfully request entry of an order granting her Motion to Amend Complaint [DE #60] when she seeks final approval of the settlement.

LEXIS 151719, at *33 (S.D. Cal. Nov. 9, 2011) (citing *In re Pacific Enters. Sec. Litig.*, 47 F.3d. 373, 378 (9th Cir. 1995); *Dyer v. Wells Fargo Bank, N.A.*, No. 13-cv-02859-JST, 2014 WL 1900682, at *5 (N.D. Cal. May 12, 2014) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992)). "'Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation.'" *Dennis v. Kellogg Co.*, 09-CV-1786-L (WMc), 2013 U.S. Dist. LEXIS 64577, at *4 (S.D. Cal. May 3, 2013) (Lorenz, J.) (citations omitted) (preliminary approval order).

"Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a 'preliminary determination' concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class." *Dyer*, 2014 WL 1900682 at *5 (citing Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004)). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Dyer*, 2014 WL 1900682 at *5 (quoting *Class Plaintiffs*, 955 F.2d at 1276). "Where the parties reach a class action settlement prior to class certification, courts apply 'a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e).'" *Dyer*, 2014 WL 1900682 at *5 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). "Courts 'must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *Dyer*, 2014 WL 1900682 at *5 (quoting *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011)).

"The Court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'" *Dyer*, 2014 WL 1900682 at *5 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (internal citation omitted)). *See also* MCL, 4th § 21.632 (courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the

-9-

settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). "Second, courts must hold a hearing pursuant to Federal Rule of Civil Procedure 23(e)(2) to make a final determination of whether the settlement is 'fair, reasonable, and adequate.'" *Dyer*, 2014 WL 1900682 at *5. *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Cohorst*, 2011 U.S. Dist. LEXIS 151719, at *33-34. This Motion concerns the first step, and the Court need not review the settlement in detail at this juncture. *Dennis*, 2013 U.S. Dist. LEXIS 64577, at *5-6.

"Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Dyer*, 2014 WL 1900682 at *6 (quoting *In re Tableware,* 484 F. Supp. 2d at 1079) (internal citation omitted)). *See also Manual for Complex Litigation*, *Second* § 30.44 (FJC 1985). "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Dyer*, 2014 WL 1900682 at *6 (citing *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.")).

The Ninth Circuit has adopted the following eight-factor test for determining whether a settlement is fair, reasonable, and adequate:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, No. 16-CV-0182 H BLM, 2017 U.S. Dist. LEXIS 170982, at *15 (S.D. Cal. Oct. 16, 2017). *See also Officers for Justice v. Civil*

*Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982); *Dennis*, 2013 U.S. Dist. LEXIS 64577 at *12. "The proposed settlement must be 'taken as a whole, rather than the individual component parts' in the examination for overall fairness." *Dyer*, 2014 WL 1900682 at *6 (quoting *Hanlon*, 150 F.3d at 1026). "Courts do not have the ability to 'delete, modify, or substitute certain provisions' because the settlement 'must stand or fall in its entirety.'" *Dyer*, 2014 WL 1900682 at *6 (quoting *Hanlon*, 150 F.3d at 1026).

> But because the Court cannot fully assess many of these factors prior to notice and an opportunity for objection, the Court need not conduct a full settlement fairness appraisal before granting preliminary approval; rather, the proposed settlement need only fall within "the range of possible approval." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008). "Essentially, the court is only concerned with whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *Id.*

*Dennis*, 2013 U.S. Dist. LEXIS 64577 at *13.

B.  **This Settlement Satisfies the Criteria for Preliminary Approval.**

Each of the relevant factors weighs in favor of preliminary approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel, in conjunction with an experienced mediator, Honorable Layn Phillips (Ret.). Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that the Settlement warrants Preliminary Approval.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe that the claims asserted are meritorious and that they would prevail if this matter proceeded to trial. The Bank argues that Plaintiffs' claims are unfounded, denies any potential liability, and up to the point of settlement has indicated a willingness to litigate those claims vigorously. Plaintiffs face the challenge of case law from courts in other

federal jurisdictions that rejected their theory of liability, and the potential that the Ninth Circuit would reverse this Court's order denying the Motion to Dismiss on similar grounds as the other courts.

Plaintiffs concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, final appellate review. Joint Decl. ¶ 20.

### 1. This Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations.

The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Joint Decl. ¶ 9. The Parties engaged in a full day formal mediation before an experienced and respected mediator, Honorable Layn Phillips (Ret.)—and only after receiving data from the Bank to adequately estimate potential damages in the Action. *Id*. Although the Parties did not settle that day, much progress was made laying the foundation to the eventual resolution of this Action. The Parties continued their settlement discussion for many weeks with the assistance of Judge Phillips. *Id*.

"The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007). *See also Cohorst*, 2011 U.S. Dist. LEXIS 151719, at *35 ("voluntary mediation before a retired judge in which the parties 'reached an agreement-in-principle to settle the claims in the litigation' are 'highly indicative of fairness'" . . . . "'We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.'"). Moreover, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at

-12-

arm's-length by counsel for the class, is presented for Court approval." *Newberg on Class Actions*, § 11.41 (4th Ed. 2007).

Furthermore, Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Joint Decl. ¶ 4. In negotiating this Settlement, Class Counsel had the benefit of years of experience and a familiarity with the facts of this case as well as with cases involving initial overdraft fees, including a previous case against BANA involving a different BANA overdraft fee policy. *Id*. This intimate understanding of the intricacies of consumer banking practices and law provided Class Counsel with needed tools and perspective to achieve the legal victories they did in this Action—and prepared them to fight the Action to its conclusion in the Ninth Circuit and Supreme Court if necessary.

Before filing suit, Class Counsel spent many hours investigating the usury claims of several potential plaintiffs against the Bank. Joint Decl. ¶ 5. Class Counsel interviewed a number of customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon consumers. *Id*. This information was essential to Class Counsel's ability to understand the nature of the Bank's conduct, the language of the account agreements at issue, and potential remedies. *Id*. In addition, Class Counsel also expended significant resources researching and developing the legal claims at issue. *Id*.

As detailed herein, Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive briefing on the fundamental legal issue of whether the EOBC is a usurious charge, informal discovery, data analysis with the assistance of Plaintiffs' expert, and confirmatory discovery with the Bank. Class Counsel's review enabled it to gain an understanding of the law and evidence related to central questions in the case, and prepared it for well-informed settlement negotiations. *Id*. ¶ 6. Class Counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, and the appropriate basis upon which to settle

-13-

them, as a result of their litigating similar claims in courts across the country. *Id.*

### 2. The Facts Support a Preliminary Determination that the Settlement Is Fair, Adequate and Reasonable.

A preliminary review of the below factors supports a determination that Settlement falls within the "range of reason," such that notice to the Settlement Class and a Final Approval Hearing as to the fairness, adequacy, and reasonableness of the Settlement are warranted.

#### a. *The Strength of Plaintiffs' Case.*

Plaintiffs and Class Counsel are confident in the strength of their case, but are also pragmatic in their awareness of the various defenses available to the Bank, and the risks inherent to litigation of this magnitude—which challenges engrained banking industry practice. Joint Decl. ¶ 19. Indeed, previous to this Action, cases brought against financial institutions on a similar legal theory were dismissed, including a case against the Bank. *See McGee v. Bank of Am., N.A.*, 2015 WL 4594582 (S.D. Fla. July 30, 2015), *aff'd* 674 Fed. Appx. 958 (11th Cir. Jan. 18, 2017); *Shaw v. BOKF, Nat'l Ass'n*, 2015 WL 6142903 (N.D. Okla. Oct. 19, 2015); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 641-642 (D.S.C. 2015).

Plaintiffs faced the risk of losing during the pending appeal of the order denying the Motion to Dismiss, at summary judgment, at trial, or on a subsequent appeal based on various theories and defenses advanced by the Bank. Joint Decl. ¶ 19. The success of Plaintiffs' claims in future litigation turns on these and other questions that are certain to arise in the context of motions for summary judgment and at trial, as they have in other similar cases.

Each of these risks, by itself, could have impeded Plaintiffs' and the Settlement Class' successful prosecution of these claims at trial and in an eventual appeal—resulting in zero benefit to the Settlement Class. *Dennis v. Kellogg Co.*, 09-CV-1786-L (WMc), 2013 U.S. Dist. LEXIS 163118, at *9 (S.D. Cal. Nov. 14, 2013) (Lorenz, J.)

-14-

("plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication"). Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached with the Bank outweighs the gamble of continued litigation. Joint Decl. ¶ 20. Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. *McPhail v. First Command Fin. Plan., Inc.*, No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544, at *13 (S.D. Cal. Mar. 30, 2009) (likelihood that appellate proceedings could delay class recovery favors settlement approval). This Settlement provides substantial relief to Settlement Class Members without further delay.

### b. *The Risk, Expense, Complexity, and Likely Duration of Further Litigation.*

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and—given the relatively small value of the claims of the individual members of the Settlement Class—could be impracticable. Joint Decl. ¶ 21. There is no doubt that continued litigation here would be difficult, expensive, and time consuming. *Id.* Recovery by any means other than settlement would require additional years of litigation in this Court and the Ninth Circuit Court of Appeals. *Id.*; *See McPhail*, 2009 U.S. Dist. LEXIS 26544, at *12-13 (noting potential complexity and possible duration of trial weighs in favor of granting final approval, and that post-judgment appeal would require many years to to resolve and delay payment to class members).

The Settlement provides immediate and substantial benefits to over 5 million Bank customers. Joint Decl. ¶ 22. The proposed Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner.

### c. The Risk of Maintaining Class Action Status Throughout Trial.

Whether the Action would have been tried as a class action is also relevant in assessing the fairness of the Settlement. As the Court had not yet certified a class at the time the Agreement was executed, it is unclear whether certification would have been granted. *Id.* ¶ 23. Given the Bank's vigorous defense of this Action thus far, the Bank would have opposed Plaintiffs' certification motion, and "would surely [have] challenge[d] class certification on appeal" in the event of an adverse judgment. *Rodriguez v. West Pub. Corp.*, No. CV05-3222, 2007 WL 2827379, at *8 (C.D. Cal. Sept. 10, 2007) (finding that the likelihood that a certification decision would be appealed meant this factor weighed in favor of approval), *rev'd on other grounds*, 563 F.3d 948 (9th Cir. 2009). This litigation activity would have required the Parties to expend significant resources. Joint Decl. ¶ 23. Accordingly, this factor weighs in favor of preliminary approval.

### d. The Amount Offered in the Settlement.

The Settlement reached here is squarely within the range of possible approval. As discussed above, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel and initially under the supervision of a reputable and skilled mediator. As a result of these negotiations, the Parties have reached a Settlement that Class Counsel believes to be fair, reasonable, and in the Settlement Class' best interests. Class Counsel's assessment in this regard is entitled to considerable deference.

The cessation of the practice at the heart of Plaintiffs' Complaint is a massive benefit for the Settlement Class, and the additional $66.6 million recovery adds to the outstanding Settlement result. These benefits are especially valuable given the complexity of the litigation and the significant barriers that would loom in the absence of settlement, including motions for summary judgment, trial and appeals after a

Plaintiffs' verdict. And this is all against a very stark backdrop: a loss on the legal issue at the center of this case—whether or not EOBCs are interest charges—would extinguish the Settlement Class' ability for any recovery whatsoever.

Based on the Bank's data, Class Counsel estimates that the Settlement Class' most likely recoverable damages at trial would have been $756 million. Joint Decl. ¶ 24. That figure is dwarfed by the $1.2 billion that the Settlement Class will save in EOBCs during the five year period during which BANA has agreed to cease charging the fee. *Id*. Even counting *only* the direct financial payments that will be made as a result of the Settlement—$66.6 million in payments and credits to Settlement Class Members and another approximate $2 million in notice and administration costs paid by the Bank—Plaintiffs and the Settlement Class are recovering approximately 9% of their most probable damages, without further risks attendant to litigation. *Id.* Even without the massive prospective relief benefit in this case, courts in this Circuit routinely grant final approval to settlements providing between 5-10% of maximum potential damages. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. *See also Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, *10 (C.D. Cal. Feb.16, 2017) (approving a settlement where net recovery to class members was approximately 7.5% of the projected maximum recovery amount); *Roberti v. OSI Sys.*, No. CV-13-09174 MWF (MRW), 2015 U.S. Dist. LEXIS 164312, at *12-13 (C.D. Cal. Dec. 8, 2015) (approving settlement of 8.8% of maximum potential recovery); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal 2015) (approving a settlement where the gross recovery to the class was approximately 8.5% of the maximum recovery amount); *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 U.S. Dist. LEXIS 87180, at *13-14 (N.D. Cal. June 24, 2014) (noting courts have held that recovery of only 3% of the maximum potential recovery is fair and reasonable when the plaintiffs face a real possibility of recovering

-17-

nothing absent settlement); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (approving settlement of 9% of maximum potential recovery).

The Settlement is a significant achievement considering the obstacles that Plaintiffs faced in the litigation. *See Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 THE, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) ("a sizeable discount is to be expected in exchange for avoiding uncertainties, risks, and costs that come with litigation a case to trial. Again, the issue is not whether the settlement "could be better," but whether it falls within the range of appropriate settlements. *Hanlon*, 150 F.3d at 1027.").

The $66.6 million Settlement Amount, the payment of notice and administration costs, and the near $1.2 billion dollars in savings related to the practice changes are fair and reasonable in light of the Bank's defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement. Joint Decl. ¶ 20.

### e. *The Extent of Discovery Completed and the Stage of the Proceedings.*

"In regards to class action settlements, 'formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.' *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (internal quotation marks omitted)." *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN (NLS), 2013 U.S. Dist. LEXIS 15731, at *14-15 (S.D. Cal. Feb. 4, 2013) (noting that parties engaged in the exchange of informal discovery between class counsels' consultants and Wells Fargo's IT professionals in addition to some formal written discovery).

Plaintiffs settled the Action with the benefit of important informal discovery resulting in an expert analysis of key documentation and data regarding the Bank's assessment and collection of EOBCs. Joint Decl. ¶ 8. As noted above, the review of this information and data positioned Class Counsel to evaluate with confidence the

strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.* Confirmatory discovery done after the Parties executed the Term Sheet further aided Plaintiffs' analysis. *Id.*

In addition, the Parties briefed one motion to dismiss, a motion to strike affirmative defenses, an interlocutory appeal motion, extensive mediation briefing, and had begun research and writing in briefing an appeal at the Ninth Circuit. Thus, the Settlement was reached after considerable investigation and careful consideration and discussions. The Parties were thus fully aware of the issues and risks associated with their respective claims and defenses.

The record provides sufficient information for this Court to determine that the Settlement is fair. Further, there is no reason to doubt the Settlement's fairness. Plaintiffs have litigated this Action for nearly two years. *Id.* ¶ 2. Plaintiffs' counsel have been involved in other litigation against major American banks for almost a decade. *Id.* The litigation has been hard-fought. Accordingly, this factor also weighs in favor of preliminary approval.

### f. *The Experience and Views of Counsel.*

Class Counsel's expertise allowed it to build a case no others have. Indeed, it may be that no other firm or group of firms in the country could have succeeded here—even if they had tried (which they have not). Class Counsel has successfully litigated and resolved several other consumer class actions against national banks. Employing this experience and skill, Class Counsel aggressively and swiftly worked to litigate, then resolve, this case in an efficient manner.

A great deal of weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. at 528 (C.D. Cal. Jan. 5, 2004). As stated previously, Class Counsel has significant experience litigating class claims,

-19-

including numerous claims against national banks, through their active roles similar class actions throughout the country. Joint Decl. ¶ 25, Exhibits 1-4. In litigating these cases, Class Counsel has been at the forefront of litigating NBA usury claims pertaining to continuous (a/k/a sustained) overdraft fees like the EOBCs. *Id.* ¶ 25.

Class Counsel possesses extensive knowledge of and experience in prosecuting class actions in courts throughout the United States, and have recovered hundreds of millions of dollars for the classes they represented. *Id.* ¶ 26. In addition, Class Counsel includes firms with appellate expertise, which was used to extensively analyze the chances of success in both in the Ninth Circuit and the U.S. Supreme Court. The experience, resources and knowledge Class Counsel brings to this Action is extensive and formidable. *Id.* Class Counsel is qualified to represent the Settlement Class and will, along with the Class Representatives, vigorously protect the interests of the Settlement Class. *Id.*

**g.**     ***The Presence of a Governmental Participant.***

No governmental actor participated in this Action, rendering this factor immaterial to the settlement approval process.

**h.**     ***The Reaction of the Class Members to the Proposed Settlement.***

The Court should wait until the Final Approval Hearing and the expiration of the Opt-Out Period to determine the reaction of the Settlement Class.

**C.**     **The Court Should Approve the Proposed Notice Program**

The Parties have devised a Notice Plan that will ensure that virtually all Settlement Class members, whether current or former customers of BANA, will receive individual notice within 60 days of this Court's preliminary approval of the Settlement Agreement.

**1.**     **The Notice Program**

Here, the Notice Program is reasonably calculated under the circumstances to

apprise members of the Settlement Class of the following: a description of the material terms of the Settlement; a date by which persons in the Settlement Class may exclude themselves from or opt-out of the Settlement Class; a date by which members of the Settlement Class may object to the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which persons in the Settlement Class may access the Agreement and other related documents and information. Agreement ¶ 2.4 and Exhibits B-D thereto. The Class Notice and Notice Program constitute sufficient notice to all persons entitled to notice. Joint Decl. ¶ 28. The Notice Program satisfies all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and constitutional due process. *Id.*

The Notice Program is comprised of three parts: (1) email notice ("Email Notice"); (2) direct mail postcard notice ("Postcard Notice") to all other members of the Settlement Class to those Settlement Class members that the Bank maintains email addresses for; and (3) Long Form notice containing more detail than the Postcard Notice and Published Notice, that will be available on the Settlement website and via U.S. mail upon request. Agreement ¶ 2.4 and Exhibits B-D thereto.

Among the additional information provided, the Long Form notice will describe the procedure that members of the Settlement Class must follow to opt-out of the Settlement or to object to the Settlement, and/or to Class Counsel's application for attorneys' fees, costs and expenses and for the Service Awards to the Plaintiffs. *Id.* Specifically, all opt-outs must be postmarked within 60 days after Notice is complete, and any objections must be postmarked by the same time. Agreement ¶ 2.5. For an objection to be valid, it must include: the name of the Action; the objector's name, address, and telephone number; an explanation of how the objector is a member of the Settlement Class; the basis for the objection; a description of the number of times the objector or the objector's counsel has objected to a class settlement in the last five years, the names of any such cases, and any relevant orders issued in response to such

-21-

past objections; a statement confirming whether the objector will appear at the Final Approval Hearing and a description of counsel or witnesses who will appear on behalf of the objector at the Final Approval Hearing; and the objector's signature. *Id.* ¶ 2.5(b).

The Notice Program shall be completed no later than 60 days after Preliminary Approval. Agreement ¶ 4.1. These actions will ensure virtually all Class Members will receive individualized notice and sufficient time to decide whether to opt-out or object. Courts routinely approve notice regimes involving either only email or combinations of email or First-Class mail. *E.g.*, *Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 133, 135, 139 (E.D.N.Y. Dec. 4, 2015) (approving email-only notice); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 499 (N.D. Ill. 2015) (rejecting objector's argument that email notice is insufficient); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 605 (N.D. Cal. 2015) (approving email notice with mailed notice to persons with emails returned as undeliverable); *In re TD Ameritrade Account Holder Litig.*, No. C 07–2852 SBA, 2011 WL 4079226, at *10 (N.D. Cal. Sept. 13, 2011) (approving email notice even where class members did not receive mailed notice "in cases where the delivery via email failed," as "there is no requirement that notice be perfect"); *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2010 WL 9013059, at *2 (N.D. Cal. Mar. 17, 2010) (even though some e-mail filtered through a SPAM e-mail filter and not all class members saw it, the notice was adequate); *Guy v. Casal Institute of Nevada, LLC*, No. 13-cv-02263, 2014 WL 1899006, at *7 (D. Nev. May 12, 2014) ("The Court in *Phelps* stated that there was no indication that service by first class mail or email would be ineffective or inadequate.").

The Settlement Website (which will include hyperlinks to the Settlement, the Long Form Notice, the Preliminary Approval Order and such other documents as Class Counsel and the Bank's Counsel agree to post or that the Court orders posted on the Settlement Website) will be established following Preliminary Approval and prior to the commencement of the Notice Program. Agreement ¶ 2.4(c).

Settlement Class members will be provided with at least 60 days to submit any

-22-

objections—and some Settlement Class members will be provided significantly more time. That is more than sufficient under applicable case law. *See Maywalt v. Parker and Parsley Petroleum Co.*, 67 F.3d at 1079; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993), *cert. denied sub nom;. Reilly v. Tucson Elec. Power Co.*, 512 U.S. 1220 (1994).

Upon preliminary approval, the Administrator will obtain from the Bank and Class Counsel the name and address physical and email address information (to the extent it is reasonably available) for members of the Settlement Class, and, to, the extent necessary, verify and update the addresses received through the National Change of Address database, for the purpose of mailing the Mailed Notice, and later mailing distribution checks to past account holders, and to current account holders where it is not feasible or reasonable for the Bank to make the payment by a direct credit to the Settlement Class Members' accounts. The Administrator will also establish and maintain an automated toll-free telephone line for members of the Settlement Class to call with Settlement-related inquiries, answer the questions of members of the Settlement who call with or otherwise communicate such inquiries, and to accept requests for Long Form Notices to be sent in the mail.

## 2. <u>The Court Should Direct That Notice Be Given</u>

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable

efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311. In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No.1*, 623 F.3d 1338, 1352 (9th Cir. 1980)).

The proposed Notice Program satisfies these content requirements. The Class Notices will properly inform members of the Settlement Class of the substantive terms of the Settlement. It will advise members of the Settlement Class of their options for opting-out of or objecting to the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of the Settlement Class and exceeds the requirements of constitutional due process. Joint Decl. ¶ 29. Here, the Settlement benefits from the fact that the Bank maintains reliable mailing and email address information for both its current and former account holders. Therefore, the Court should approve the Notice Program and the form and content of the Class Notices attached to the Agreement as Exhibits B-D.

D.  **Notice Pursuant to the Class Action Fairness Act (CAFA)**

CAFA requires that settling defendants give notice of a proposed class action settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply all of the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). The Administrator will serve the CAFA Notice, along with a CD containing the documents described in Section 1715(b), within ten days of the Court's granting of Preliminary Approval.

E.  **Certification of the Settlement Class Is Appropriate**

For settlement purposes, Plaintiffs respectfully requests that the Court certify the Settlement Class defined above, and in paragraph 2.1 of the Agreement. "Confronted

-24-

with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). *See also Dandan Pan v. Qualcomm Inc.,* No. 16-cv-01885-JLS-DHB, 2017 U.S. Dist. LEXIS 120150, at \*17-18 (S.D. Cal. July 31, 2017) (citing *Anchem*).

Certification of the proposed Settlement Class will allow notice of the proposed Settlement to issue to the class to inform the Settlement Class of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, §§ 21.632, 21.633. For purposes of this Settlement only, the Bank does not oppose class certification. For the reasons set forth below, certification is appropriate under Rule 23(a), (b)(2) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), certification is appropriate if questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of nearly six million Bank customers, and joinder of all such persons is impracticable. Joint Decl. ¶ 30. *See* Fed. R. Civ. P. 23(a)(1). *See Gutierrez-Rodriguez*, 2017 U.S. Dist. LEXIS 170982 at \*10 (noting damages settlement class containing 61,939 satisfies numerosity); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2008 WL 4279550, \*14 (N.D. Cal. Sept. 11, 2008) ("Given the large number of

-25-

checking account customers at Wells Fargo, the numerosity requirement is met."); *See also* 1 Newberg on Class Actions 3.05, at 3-25 (3d ed. 1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (citation omitted). "All questions of fact and law need to be common to satisfy the rule." *Hanlon*, 150 F.3d 1019. However, "'[t]he existence of shared legal issues with divergent factual predicates is sufficient' to meet the requirements of Rule 23(a)(2)." *Gutierrez*, 2008 WL 4279550 at *14 (quoting *Hanlon*, 150 F.3d at 1019). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on BANA Bank's systematic practice of assessing EBOCs – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers central to the viability of the claims were the Action to proceed to trial.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent members of the Settlement Class, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Gutierrez*, 2008 WL 4279550 at *15. The Ninth Circuit interprets typicality permissively. *Hanlon*, 150 F.3d at 1020. It is sufficient for the named plaintiff's claims to arise from the same remedial and legal theories as the class claims. *Malta*, 2013 U.S. Dist. LEXIS 15731, at *7; *Arnold v. United Artists Theater, Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994). Plaintiffs are typical of absent members of the Settlement Class because they were subjected to the same Bank practices and claim to have suffered from the same injuries, and because they will benefit equally from the

-26-

relief provided by the Settlement.

Plaintiffs and Class Counsel satisfy the adequacy of representation requirement of Rule 23(a)(4), which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Gutierrez*, 2008 WL 4279550 at *15. *See also Gutierrez-Rodriguez*, 2017 U.S. Dist. LEXIS 170982 at *12-13 (noting no conflict of interest between plaintiff and the purported class members, and plaintiff and class counsel's vigorous prosecution of the class's interests). Adequacy of representation requires that the class representatives do not have conflicts of interest with other class members and that the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent members of the Settlement Class have the same interest in the relief afforded by the Settlement, and the absent members of Settlement Class have no diverging interests. Further, Plaintiffs are represented by qualified and competent counsel who has extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. Joint Decl. ¶ 26. Class Counsel has devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class. *Id.*

Certification of the Settlement Class is further appropriate because the questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the Action. *See* Fed. R. Civ. P. 23(b)(3). For purposes of satisfying Rule 23(b)(3), the "predominance inquiry tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623). *See also Gutierrez*, 2008 WL 4279550 at *14 (predominance satisfied "when common questions present a significant portion of the case and can be resolved for all members of the class

-27-

in a single adjudication"). Plaintiffs readily satisfy the Rule 23(b)(3) predominance requirement because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class. Joint Decl. ¶ 31. For example, each Settlement Class member's relationship with the Bank arises from an account agreement that is the same or substantially similar in all relevant respects to other Settlement Class members' account agreements. *Id.* Most importantly, each was subjected to the same EOBC policy. *Id.*

Conditional certification pursuant to Rule 23(b)(2) is also warranted. Certification under that rule is appropriate where the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole. . . . That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)).

Here, BANA's EOBC policy has been applied and continues to be applied uniformly to all Settlement Class members. BANA has agreed, subject to Final Approval of the Settlement, to change its business practices beginning on or before December 31, 2017, agreeing not to implement or assess EOBCs, or any equivalent fee, in connection with BANA consumer checking accounts, for a period of five years, or until December 31, 2022.

Further, resolution of millions of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

## IV.    **CONCLUSION**

Based on the foregoing, Plaintiff Farrell respectfully requests that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Joanne Farrell, Ronald Dinkins, Larice Addamo, and Tia Little as Class Representatives; (4) approve the Notice Program set forth in the Agreement and approve the form and content of the Class Notices, attached to the Agreement as Exhibits B-D; (5) approve and order the opt-out and objection procedures set forth in the Agreement; (6) stay the Action against the Bank pending Final Approval of the Settlement; (7) appoint as Class Counsel the law firms listed in Section 1 of the Agreement; and (8) schedule a Final Approval Hearing. For the Court's convenience, a [Proposed] Order Preliminarily Approving Class Settlement and Certifying Settlement Class ("Proposed Order") and setting forth the various deadlines referenced herein and outlined in the Agreement, and a [Proposed] Order and Judgment Granting Final Approval of Class Settlement are attached as exhibits to the Settlement Agreement.

Pursuant to the Settlement Agreement and the Proposed Order, Plaintiffs and Class Counsel will file their motion and memorandum for Final Approval, Fee Application and request for Service Awards for Plaintiffs no later than 150 days after Preliminary Approval, unless otherwise ordered by the Court.

Dated: October 31, 2017            Respectfully submitted,

/s/ Jeffrey Kaliel
JEFFREY KALIEL (CA 238293)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*jkaliel@tzlegal.com*

JEFF OSTROW (*pro hac vice*)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*ostrow@kolawyers.com*

BRYAN GOWDY (*pro hac vice*)
**CREED AND GOWDY, P.A.**
865 May Street
Jacksonville, FL 32204
Telephone: 904-350-0075
Facsimile: 904-503-0441
*bgowdy@appellate-firm*.com

JOHN JOSEPH UUSTAL (*pro hac vice*)
CRISTINA MARIA PIERSON (*pro hac vice*)
JOHN R. HARGROVE (*pro hac vice*)
**KELLEY UUSTAL PC**
500 North Federal Highway, Suite 200
Fort Lauderdale, FL 33301
Telephone: 954-522-6601
*jju@kulaw.com*
*cmp@kulaw.com*
*jhr@hargrovelawgroup.com*

WALTER W. NOSS (CA 277580)
**SCOTT + SCOTT LLP**
707 Broadway,10th Floor
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
*wnoss@scott-scott.com*

***Counsel for Plaintiff***