JEFF OSTROW (*pro hac vice*)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*ostrow@kolawyers.com*

HASSAN ZAVAREEI (CA 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, DC  20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*hzavareei@tzlegal.com*

*Attorneys for Plaintiffs and the Settlement Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, RONALD ANTHONY DINKINS, and LARICE ADDAMO on Behalf of themselves and all others similarly situated, | CASE NO. 3:16-cv-00492-L-WVG |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED APPLICATION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS** |
| vs. | |
| BAN OF AMERICA, N.A., | |
| Defendant. | Judge: Hon. M. James Lorenz<br>Place: Courtroom 5B<br>Hearing Date: June 18, 2018 at 11:00am |

1

**TABLE OF CONTENTS**

2

I.   INTRODUCTION                                                                                    1

3

II. HISTORY OF CLASS COUNSEL'S WORK IN THIS LITIGATION          3

4

III. LEGAL ARGUMENT                                                                          7

5

   A. CLASS COUNSEL'S FEE REQUEST IS REASONABLE WITHIN
      NINTH CIRCUIT PRECEDENT                                                          7

6

     1.   The Percentage-of-the-Fund Method is Appropriate              7

7

     2.   Class Counsel's Requested Fee is Reasonable                       9

8

     3.   The Value of the Benefits and Results Achieved By Class Counsel   11

9

     4.   The Risks Assumed by Class Counsel and the Complexity of the
        Case Favor the Fee Award Sought                                         13

10

11

     5.   The Case Settled Only After Class Counsel Had Attained
        Maximum Leverage and Sufficient Information to Value the
        Possible Relief                                                                14

12

13

     6.   The Non-Monetary Benefits Obtained By Class Counsel          16

14

     7.   The Percentages in Standard Contingency-Fee Agreements in
        Similar Individual Cases                                                   17

15

     8.   The Requested Fee is Justified by Awards in Similar Cases     18

16

     9.   A Lodestar Cross-Check Supports a 25% Benchmark Award        20

17

   B. CLASS COUNSEL SHOULD BE REIMBURSED FOR COSTS AND
      EXPENSES REASONABLY SPENT DURING THE LITIGATION          23

18

19

   C. THE CLASS REPRESENTATIVES SHOULD RECEIVE THE
      REQUESTED SERVICE AWARDS FOR THEIR EFFORTS                 24

20

IV. CONCLUSION                                                                                25

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Beaver v. Tarsadia Hotels,*
No. 11-cv-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214 ..................................... 21

*In re Bluetooth Headset Products Liab. Litig.,*
654 F.3d 935, 941 (9th Cir. 2011) ...................................................................... 7

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ................................................................................... 7, 8

*Chalmers v. Los Angeles,*
796 F.2d 1205 (9th Cir. 1986) ........................................................................ 21

*Chavez v. WIS Holding Corp.,*
No. 07cv1932 L(NLS), 2010 U.S. Dist. LEXIS 56138 (S.D. Cal. June 7,
2010) .......................................................................................... 9, 18, 20, 25

*Cicero v. DirecTV, Inc.,*
No. EDCV 07-1182, 2010 U.S. Dist. LEXIS 86920 (C.D. Cal. July 27, 2010) ......... 25

*Cullen v. Whitman Med. Corp.,*
197 F.R.D. 136 (E.D. Pa. 2000) ...................................................................... 13

*In re Daou Sys., Secs. Litig.,*
No. 98-CV-1537-L(AJB), 2008 U.S. Dist. LEXIS 56320 (S.D. Cal. July 24,
2008) ...................................................................................... 8, 9, 18, 20

*Dennis v. Kellogg Co.,*
No. 09-CV-1786-L (WMc), 2013 U.S. Dist. LEXIS 163118
(S.D. Cal., Nov. 14, 2013) ...................................................................... 9, 18, 24, 25

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),*
213 F.3d 454 (9th Cir. 2000) .......................................................................... 25

*In re: Easysaver Rewards Litig.,*
No. 09-cv-02094-BAS-WVG, 2016 WL 4191048 (S.D. Cal. Aug. 9, 2016) ......... 13, 21

*Fischel v. Eq. Life Assur. Soc'y of the U.S.,*
307 F.3d 997 (9th Cir. 2002) .......................................................................... 22

*Fontes v. Heritage Operating, Ltd. P'ship,*
No. 14cv1413-MMA (NLS), 2016 U.S. Dist. LEXIS 50502 (S.D. Cal. Apr.
14, 2016) .................................................................................................. 25

*Foos v. Ann, Inc.,*
No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS 136918 (S.D. Cal. Sept. 23,
2013) ........................................................................................................ 7

*In re Google Referrer Header Privacy Litig.,*
869 F.3d 737 (9th Cir. 2017) .......................................................................... 20

*Grant v. Cap. Mgmt. Servs., L.P.,*
No. 10-CV-2471-WQH (BGS), 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ............. 22

-iii-

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ........................................................... 23

*Hartless v. Clorox Co.,*
    273 F.R.D. 630 (S.D. Cal. 2011) ................................................ 21

*Hazlin v. Botanical Labs., Inc.,*
    No. 13CV0618-KSC, 2015 WL 11237634 (S.D. Cal. May 20, 2015) ......................... 21

*In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation,*
    851 F.Supp.2d 1040, 1080 (S.D. Tex. 2012) ................................ 9

*Ingram v. Oroudjian,*
    647 F.3d 925 (9th Cir. 2011) ..................................................... 21

*Jacobs v. Huntington Bancshares Inc.,* No. 11-CV-000090
    (Oh. Com. Pl. June 2, 2017) ..................................................... 13

*Kelly v. Wengler,*
    822 F.3d 1085 (9th Cir. 2016) ................................................... 21

*Kerr v. Screen Extras Guild, Inc.,*
    526 F.2d 67 (9th Cir. 1975) ............................................... 20, 22

*In re Lloyd's Am. Tr. Fund Litig.,*
    No. 96 Civ. 1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .................... 13

*Makaeff v. Trump Univ., L.L.C.,*
    No. 10CV0940 GPC(WVG), 2015 WL 1579000 (S.D. Cal. Apr. 9, 2015) ................. 21

*McGee v. Bank of Am., N.A.,*
    No. 15-60480, 2015 WL 4594582 (S.D. Fla. July 30, 2015) ....................... 3, 13, 20

*McGee v. Bank of Am., N.A.,*
    674 Fed. App'x. 958 (11th Cir. Jan. 18, 2017) ......................... 12

*Michael A. Cramer, MAI, SRPA, Inc. v. United States,*
    47 F.3d 379 (10th Cir. 1995) ................................................ 11, 16

*Moore v. MB Fin. Bank, N.A.,*
    No. 17 C 4716, 2017 U.S. Dist. LEXIS 189585 (Nov. 16, 2017) ............... 14

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) ............................................... 12, 13

*In re Pacific Enterprises Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995) ................................................... 8, 16

*Paul, Johnson, Alston & Hunt v. Graulty,*
    886 F.2d 268 (9th Cir. 1989) ................................................. 8, 9

*Powers v. Eichen,*
    229 F.3d 1249 (9th Cir. 2000) ................................................... 10

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ................................................... 24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED APPLICATION
FOR AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

*Ruiz v. XPO Last Mile, Inc.*,
   No. 5-CV-2125 JLS (KSC), 2017 WL 6513962 (S.D. Cal. Dec. 20, 2017) ................... 8

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................. 16

*Shaw v. BOKF, N.A.*,
   No. 15-CV-0173-CVE-FHM, 2015 WL 6142903 (N.D. Okla. Oct. 19,
   2015) ................................................................................. 3, 13, 20

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ...................................................... 8, 9, 11

*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003) .................................................. 8, 10, 11, 16, 24

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
   No. 2613, 2015 WL 8493979 (D.S.C. Dec. 10, 2015) .......................... 13

*Trombley v. Nat'l City Bank*,
   826 F. Supp. 2d 179 (D.D.C. 2011) ................................................. 16

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ........................................................ 21

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ................................................. 24

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................... *passim*

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................... 17, 18

*Williams v. Costco Wholesale Corp.*,
   2010 U.S. Dist. LEXIS 67731 (S.D. Cal. July 7, 2010) ...................... 25

*Williamson v. Microsemi Corp.*,
   No. 5:14-cv-01827-LHK, 2015 U.S. Dist. LEXIS 191692 (N.D. Ca. Feb.
   19, 2015) ........................................................................... 15

*Yamada v. Nobel Biocare Holding AG*,
   825 F.3d 536 (9th Cir. 2016) ....................................................... 20

**Statute**

12 U.S.C. § 86 ......................................................................... 1, 15

**Other**

Fed. R. Civ. P. 23(g) ................................................................ 4

Fed. R. Civ. P. 23(h) ................................................................ 7

*Principles of the Law of Aggregate Litigation*,
   § 3.13(b) (American Law Institute, 2010) ...................................... 10

## I.  INTRODUCTION

Plaintiffs, Joanne Farrell, Ronald Anthony Dinkins, Tia Little and Larice Addamo ("Plaintiffs" or "Class Representatives"), through Class Counsel, respectfully submit this Memorandum of Points and Authorities in Support of their Unopposed Application for Award of Attorneys' Fees and Costs and Service Awards. Plaintiffs brought this Action against Defendant Bank of America, N.A. ("BANA"), alleging that Extended Overdrawn Balance Charges ("EOBCs") on checking accounts violates the usury provision of the National Bank Act ("NBA"), 12 U.S.C. § 86. As detailed in Plaintiffs' Motion for Preliminary Approval, Dkt 69, the Parties settled the Action. BANA has agreed to: (1) stop assessing the EOBC charge on consumer checking accounts for a period of five years; and (2) establish a $37.5 million cash Settlement Fund and $29.1 million Debt Reduction Amount. BANA will also update reports to credit reporting bureaus regarding customers with outstanding EOBCs.  The Settlement benefits will automatically be distributed to Settlement Class Members without reversion to BANA. This is a common fund settlement, coupled with extraordinary non-monetary injunctive relief.

The non-monetary relief is BANA's agreement to stop charging the EOBC for at least five years, unless the U.S. Supreme Court declares the practice of charging EOBCs lawful and not usurious. This occurred despite three other district courts disagreeing with this Court, previously holding extended overdraft fees are not interest. In one case, BANA was the defendant, and after this Court denied BANA's motion to dismiss, BANA still persuaded the U.S. Court of Appeals for the Eleventh Circuit to affirm the Florida district court's judgment of dismissal on the same issue. Thus, considering this precedent, Class Counsel took a great risk in even filing this action in the first instance, and the results obtained, including the notable cessation of charging EOBCs, is even more extraordinary.

Accordingly, consistent with standard class action practice and procedure, and as stated in the Notices, Class Counsel respectfully request a fee award of 25% of the value of the common fund created for the benefit of Settlement Class Members, for a total

amount of $16,650,000. BANA does not oppose Plaintiffs' request.

The Court's overall analysis of the reasonableness of the requested fee award should consider the fact that the percentage of the fund request is much lower if the Court includes remuneration related to BANA's agreement to pay the estimated $2 million in notice and settlement administration costs (24.3%), or the $1.2 billion in savings that the Settlement Class and other accountholders will benefit from over the next five years related to BANA's cessation of the very practice at the heart of Plaintiffs' Complaint. Considering these tremendous benefits to the Settlement Class—and, indeed, to future BANA consumers who will not be assessed EOBCs—Class Counsel's requested fee represents far less than 5% of the total financial value of the settlement. The fee will fairly compensate Class Counsel for its work, which it undertook on a contingency basis, as well as work which remains to be done, including preparing the Final Approval motion, attending the June 18, 2018 Final Approval Hearing, continuing to work with members of the Settlement Class to answer questions they have regarding the Settlement, and ensuring that the Settlement is administered pursuant to its terms before and after Final Approval.

The Parties discussed attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement. Joint Declaration of Class Counsel, attached as *Exhibit 1* ("Joint Decl."), ¶22. The amount of the requested attorneys' fees is well within the range of common fund recoveries regularly approved by courts in this Circuit for a settlement of this size, when considering the significant monetary and non-monetary relief. In support of the reasonableness of the requested fee award, Class Counsel retained Professor Brian Fitzpatrick, whose declaration is attached as *Exhibit 2* ("Fitzpatrick Decl."), and who offers opinions supporting the Court's application of the percentage-of-the-fund method, with consideration given for a discretionary lodestar cross-check to the extent the Court elects do so. Professor Fitzpatrick is a law professor at Vanderbilt University who focuses his research on class action litigation. He formerly clerked for Judge O'Scannlain of the Ninth Circuit and Justice Scalia of the Supreme Court.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED APPLICATION
FOR AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

Fitzpatrick Decl., ¶¶1-2. He is the author of the most comprehensive examination of federal class action settlements and attorneys' fees that has even been published, and has been extensively published on the topic of class action settlements. *Id.* ¶3. Professor Fitzpatrick's study has been relied upon by a number of courts, scholars, and testifying experts. *Id.* ¶3 n.1. He opines that the awarding a fee in the amount requested here, and as a percentage of the common fund, is justified and reasonable in this case. *Id.* ¶¶9-13.

To substantiate the requested hourly rates used in the discretionary lodestar cross-check, Class Counsel (Jeff Ostrow, Hassan Zavareei, Cristina Pierson and Bryan Gowdy) submit Declarations on behalf of each of their firms, attached as ***Exhibits 3 to 6*** respectively, and the Declaration of Jason Hartley, Esq., who opines in attached ***Exhibit 7*** that the rates are commensurate with reasonable rates charged in the Southern District of California. In addition, Class Counsel seek reimbursement for costs and fees reasonably expended during the litigation, as reflected in their Declarations. Class Counsel also seek a Service Award for each Class Representative for the efforts and risk in this litigation.

For the reasons detailed herein, the Court should approve the requested fees and costs, and Service Awards, as appropriate, fair and reasonable.

## II. HISTORY OF CLASS COUNSEL'S WORK IN THIS LITIGATION

Prior to and during this case, Class Counsel investigated the assessment of EOBCs upon BANA checking accounts. Class Counsel interviewed the Class Representatives at length regarding their bank statements and any EOBCs assessed and paid. Joint Decl. ¶¶3, 16. In addition, Class Counsel analyzed the NBA's legislative history and its implementing regulations, as well as other regulations, guidance, academic articles, press releases, and consumer complaints in order to understand the purpose and impact of EOBCs and similar charges levied by other banks. *Id.* ¶3. This includes Class Counsel's participation in prosecuting extended overdraft claims in *McGee v. Bank of America, N.A.*, No. 15-60480, 2015 WL 4594582 (S.D. Fla. July 30, 2015), *aff'd*, 674 Fed. App'x 958 (11th Cir. January 18, 2017) (unpublished), and *Shaw v. BOKF, N.A.*, No. 15-CV-0173-CVE-FHM, 2015 WL

6142903 (N.D. Okla. Oct. 19, 2015) (case dismissed). Throughout this litigation, Class Counsel has continued to monitor, research, and review these materials. *Id.*

Class Counsel worked with Plaintiff Farrell to review and understand her bank statements. Joint Decl. ¶4. Based on Class Counsel's experience with usury cases under the NBA, Class Counsel drafted the Class Action Complaint, filing it on February 25, 2016. *Id.* ¶5. Plaintiff asserted claims on behalf of herself and a proposed class of accountholders who were assessed EOBCs. Plaintiff alleged the EOBCs were usurious interest that violated the NBA.

BANA moved to dismiss in April 2016. *Id.* ¶6. BANA claimed that the EOBCs are not "interest" under the NBA. BANA's brief cited district court cases from across the country in which the courts dismissed similar claims alleging that extended overdraft fees like the EOBCs are usurious interest charges under the NBA. *Id.* Class Counsel reviewed and researched BANA's arguments on issues like the applicability of guidance from the Office of the Comptroller of the Currency ("OCC") and the definition of an "extension of credit." *Id.* ¶7. Class Counsel drafted a substantial, detailed opposition to the motion to dismiss. *Id.* On December 19, 2016, the Court ruled counter to every other court in similar cases, denying BANA's motion without oral argument. Dkt. 20.

Class Counsel then researched and drafted a motion to appoint Class Counsel as interim class counsel under Fed. R. Civ. P. 23(g). Joint Decl. ¶9. The motion addressed Class Counsel's qualifications, efforts litigating the case, and ability to represent the interests of a putative class. Class Counsel also began to prepare to file a motion for class certification by researching issues related to class certification under the NBA. *Id.*

After BANA filed its Answer, Dkt. 25, Class Counsel reviewed and researched its affirmative defenses. *Id.* ¶10. Class Counsel researched and drafted a motion to strike the affirmative defenses on the grounds that BANA's common law defenses do not apply to a federal statutory claim, and BANA's other defenses were either irrelevant or simply denials. *Id.* Class Counsel also investigated the claims of additional Class Representatives

-4-

who could adequately represent the interests of the putative class. *Id.*

Meanwhile, BANA filed a motion for certification of an interlocutory appeal. Dkt. 29. Class Counsel carefully and thoughtfully researched and drafted an opposition to the motion, because the risks of an appeal were significant. Joint Decl. ¶11. Class Counsel also prepared replies in support of the motions for Class Counsel to be appointed lead counsel and the motion to strike BANA's affirmative defenses. *Id.* ¶¶2, 14.

In February 2017, Class Counsel began to explore the possibility of settlement and internally discussed what a settlement proposal might look like. *Id.* ¶13. Class Counsel expended significant effort researching numerous issues relating to an appropriate settlement proposal for this highly unique case. *Id.* Class Counsel drafted a settlement proposal and demand letter, and sent the same to BANA. *Id.*

On March 1, 2017, Class Counsel prepared for and participated in an Early Neutral Evaluation conference before United States Magistrate Judge William V. Gallo. *Id.* ¶15. That ENE did not lead to settlement, but opened the door to further negotiations. Separately, Class Counsel began to prepare to file the Amended Complaint. Class Counsel met with all new clients, reviewed their bank statements, and drafted new fact sections to be added to the Complaint. *Id.* ¶16. Plaintiffs' motion for leave to file the Amended Complaint was filed on March 13, 2017. Dkt. No. 60.

The Court granted BANA's motion to certify an interlocutory appeal on April 11, 2017, and Class Counsel began to prepare to defend against an appeal in the Ninth Circuit, first opposing BANA's petition filed with Ninth Circuit asking that it accept the case for appeal. Joint Decl. ¶17. Detailed briefing was required in opposition to that petition, which despite Class Counsel's efforts, was granted, resulting in Class Counsel needing to turn its attention to prepare for merits briefing to the Ninth Circuit. Class Counsel coordinated with stakeholder entities regarding amicus support. *Id.*

At the same time, Class Counsel continued to investigate settlement by pursuing mediation. *Id.* ¶18. In early June 2017, the Parties agreed to mediate before the Honorable

Judge Layn R. Phillips (Ret.), a respected mediator with extensive experience in complex class actions. *Id.* Class Counsel prepared a robust mediation statement, and a reply mediation statement at the mediator's request with the mediator asking the Parties to address specific issues after reading the Parties' mediation statements.   *Id.* ¶19. The statements directly contributed to the excellent results achieved in the Settlement Agreement. *Id.* The mediation statements made Plaintiff's best case for the merits of her factual and legal arguments. *Id.* Class Counsel expended significant effort researching every possible legal angle and defense, including the meaning of the "knowingly" standard under the NBA. *Id.* Class Counsel worked with an expert (Arthur Olsen) who provided support for Plaintiff's damages analysis. Class Counsel also pressed BANA to provide certain data necessary to consult with Mr. Olsen to arrive at a settlement by drafting and serving a demand letter. *Id.* Upon receipt of BANA's settlement materials in August 2017, Class Counsel reviewed and researched the materials and discussed a response. *Id.* ¶20.

On August 25, 2017, Class Counsel attended an all-day mediation with Judge Phillips in Newport Beach, California. *Id.* ¶21. The parties discussed the potential resolution of the case in good faith but were unable to reach an agreement that day. *Id.*

During September and October 2017, Judge Phillips continued communicating with the Parties to further settlement efforts. *Id.* ¶22. Class Counsel spent considerable effort communicating with Judge Phillips, BANA's outside counsel, BANA's Deputy General Counsel, Jana Litsey, and internally. *Id.* The negotiations were adversarial, and required numerous telephone calls and emails. *Id.* After about two months of negotiations, the parties were able to reach agreement on the material Settlement terms. *Id.*

In October 2017, Class Counsel participated in a confirmatory discovery meeting in Charlotte, North Carolina, with BANA's Fee Management Executive, Riaz Bhamani. *Id.* ¶22. Mr. Bhamani supervised the analysis of the data used to calculate the damages numbers that were provided prior to the mediation. *Id.* During the interview, Mr. Bhamani explained the assumptions made and methods used for each of these calculations in great

detail. *Id.* Class Counsel explored those assumptions and methods with rigorous questioning and became confident that the numbers relied on were trustworthy and accurate. *Id.* Based on that meeting and the prior negotiations, Class Counsel drafted a Settlement Agreement, preliminary approval motion, and notices. *Id.* ¶24.

To accomplish the work described above, Class Counsel drafted other court filings such as proposed orders, stipulations, notices of motion, and declarations in support of various memoranda. *Id.* ¶25. Throughout the litigation, Class Counsel coordinated internally to formulate case strategy and divide work to avoid duplication. *Id.* ¶2.

## III.      LEGAL ARGUMENT

### A. CLASS COUNSEL'S FEE REQUEST IS REASONABLE UNDER NINTH CIRCUIT PRECEDENT

#### 1.  The Percentage-of-the-Fund Method is Appropriate.

When a representative party confers a substantial benefit upon a class, counsel is entitled to attorneys' fees based on the benefit obtained *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). As this Court has observed in considering awards of attorneys' fees to counsel in class actions, Fed. R. Civ. P. 23(h) provides: "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Quoting *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011), this Court reiterated in *Foos v. Ann, Inc.*, No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS 136918, at *9 (S.D. Cal. Sept. 23, 2013), that attorneys' fees awarded must be "fundamentally fair, adequate, and reasonable."

The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. It removes a potential financial obstacle to a plaintiff's pursuit of a class claim and equitably distributes the fees and costs of successful litigation among all who gained from the named plaintiff's efforts. The doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Boeing Co.*, 444 U.S. at

478. As a result, the Supreme Court and the Ninth Circuit have recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Staton v. Boeing*, 327 F.3d 938, 967 (9th Cir. 2003) (quoting *Boeing Co.*, 444 U.S. at 478).

Although courts in the Ninth Circuit choose to award attorneys' fees in common fund settlements using either the percentage-of-the-fund or the lodestar approach, "the percentage-of-the-fund calculation is preferable to the lodestar calculation." *E.g.*, *Ruiz v. XPO Last Mile, Inc.*, No. 5-CV-2125 JLS (KSC), 2017 WL 6513962, at *6 (S.D. Cal. Dec. 20, 2017); *see also* Fitzpatrick Decl., ¶10.  Indeed, an attorneys' fees award as a percentage of a common fund established by a class action settlement is well-established in Ninth Circuit jurisprudence and is eminently appropriate here.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *In re Daou Sys., Secs. Litig.*, No. 98-CV-1537-L(AJB), 2008 U.S. Dist. LEXIS 56320, at *3 (S.D. Cal. July 24, 2008).  For the reasons discussed below and in Professor Fitzpatrick's Declaration, Class Counsel respectfully requests that the Court employ the percentage method in this common fund settlement instead of the lodestar method.

As Professor Fitzpatrick explains, the Settlement creates a common fund in a class action for which there is no applicable fee-shifting statute. Thus, Class Counsel may only be compensated from the fund created as a result of their work.  Fitzpatrick Decl., ¶¶8-9.  The percentage-of-the-fund method is the superior method for awarding attorneys' fees to Class Counsel because, besides being onerous and difficult to perform, the lodestar method does not align the interests of class counsel with those of the Class. *Id.* Under the lodestar method, Class Counsel's recovery would not depend on how much the Class recovers via the Settlement, but, rather, on how many hours Class Counsel spent. *Id.* In contrast, applying the percentage-of-the-fund method aligns Class Counsel's

interests with the Class's interests because the more the Class recovers, the more Class Counsel recovers. *Id.* This is especially true here, where the value of the settlement, which includes both the cash and non-monetary components, is reliably quantified.[1] *Id.* ¶10.

Under the percentage method, the Court first calculates the value of the Settlement benefits to the Class and then selects a percentage of that value to award to Class Counsel. When calculating the value of the Settlement benefits, this Court should include any cash benefits to class members, cash the defendant must pay to third parties, non-cash benefits that can be reliably valued, attorneys' fees and expenses, and administrative costs paid by the defendant.[2] *Id.* ¶11 (citing *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation*, 851 F.Supp.2d 1040, 1080 (S.D. Tex. 2012) (Rosenthal, J.) (including these items in the denominator of the percentage method); *Dennis v. Kellogg Co.*, No. 09-CV-1786-L (WMc), 2013 U.S. Dist. LEXIS 163118, *21-22 (S.D. Cal., Nov. 14, 2013) (including notice and administration costs in the denominator of the percentage method)). Although some benefits do not go directly to the Class as compensation, they either facilitate compensation to the Class, savings to the Class, or serve to deter defendants such as BANA from future misconduct by making defendants pay more when they cause harm. When selecting the percentage, courts in the Ninth Circuit use 25% as the "'bench mark' percentage for the fee award," which "can then be adjusted upward or downward to account for any unusual circumstances involved in the case." *Paul, Johnson, Alston & Hunt,* 886 F.2d at 272; *Six Mexican Workers*, 904 F.2d at 1311; *Chavez v. WIS Holding Corp.*, No. 07cv1932 L(NLS), 2010 U.S. Dist. LEXIS 56138, at *7-8 (S.D. Cal. June 7, 2010). *See also* Fitzpatrick Decl., ¶11.

### 2. Class Counsel's Requested Fee is Reasonable.

Class Counsel requests a fee equal to 25% of the total $66.6 million value of the

---

[1] Even if the non-monetary component was not valued, the monetary components alone justifies the requested fee award under the percentage-of-the-fund method. *Id.* ¶11.

[2] Here, however, Class Counsel is not including administrative costs paid by BANA in the calculation of the total value of the Settlement for purposes of calculating their requested fee, nor the $1.2 billion value of the injunctive relief.

-9-

1   Settlement, which includes both the $37.5 million for paid EOBCs and $29.1 million for

2   EOBCs charged but not yet paid. If the entire cash value of the settlement is considered

3   (including the $2 million in administration costs separately paid by BANA), the fee request

4   is 24.3% of the total—below the benchmark. And if the entire settlement value is

5   considered, including future monetary savings to the Class from the elimination of

6   EOBCs, the fee request is well below 5%. No matter how the fee percentage is calculated

7   here, it is justified under the pertinent factors, and in light of the empirical data and the

8   economics of class action litigation.  Fitzpatrick Decl., ¶13.

9       The Court would be well justified in including the total settlement value in

10  calculating a reasonable fee. When the non-cash relief portion of a settlement can be

11  reliably valued, courts often include the value of this relief in the common fund and award

12  class counsel a percentage of the total. *See, e.g., Staton*, 327 F.3d at 974 ("[W]here the value

13  to individual class members of benefits deriving from injunctive relief can be accurately

14  ascertained . . . courts [may] include such relief as part of the value of a common fund for

15  purposes of applying the percentage method . . . ."). *See also* Principles of the Law of

16  Aggregate Litigation, § 3.13(b) (American Law Institute, 2010) ("[A] percentage of the

17  fund approach should be the method utilized in most common-fund cases, with the

18  percentage being based on both the monetary and nonmonetary value of the judgment or

19  settlement."). Class counsel is requesting consistent relief here by asking the Court to

20  award 25% of the $66.6 million of which Settlement Class Members will receive immediate

21  benefits upon Final Approval. Class Counsel is not seeking compensation for the

22  approximately $1.2 billion that BANA's customers will save by not being assessed future

23  EOBCs. An award of 25% of the $66.6 million is reasonable. *See generally* Fitzpatrick Decl.

24      In evaluating a fee award, the main inquiry is whether the end result is

25  reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). Ultimately, to ensure

26  that the fee award is reasonable, "[s]election of the benchmark or any other rate must be

27  supported by findings that take into account all of the circumstances of the case."

28

*Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has identified at least eight factors that district courts can examine in deciding whether the benchmark 25% is appropriate:

  a.  The results achieved by class counsel;

  b.  The length the case has transpired;

  c.  The complexity of the case;

  d.  The risks the involved in the case;

  e.  The percentages awarded in other class action cases;

  f.  Any non-monetary benefits obtained by class counsel;

  g.  The percentages in standard contingency-fee agreements in similar individual cases; and

  h.  Class counsel's lodestar.

*See Six (6) Mexican Workers*, 904 F.2d at 1311; *Vizcaino*, 290 F.3d at 1048-50; *Michael A. Cramer, MAI, SRPA, Inc. v. United States*, 47 F.3d 379, 379 (10th Cir. 1995); *SStaton*, 327 F.3d at 946. Consideration of each factor supports the 25% requested by Class Counsel.

### 3.  The Value of the Benefits and Results Achieved By Class Counsel.

When determining the reasonableness of the fee request, the results achieved by Class Counsel should be of paramount concern to the Court. *See Vizcaino*, 290 F.3d at 1048 (considering the "exceptional results for the class"). The benefits achieved in this common fund Settlement are tremendous and easily valued. BANA has agreed to pay the Settlement Class Members $66.6 million as well as to pay approximately $2 million in notice and settlement administration costs, for a total of $68.6 million. However, the practice change BANA agreed to in the settlement—foregoing EOBCs altogether for at least five years—is worth many times this amount. Indeed, account holders will save some $1.2 billion over this time period. *See* Joint Decl., ¶33. This amount was objectively quantified based on historic data provided by BANA and confirmed by Class Counsel via confirmatory discovery. Joint Decl., ¶23. According to data from BANA, the vast majority of class members still have accounts with BANA and will therefore benefit from these

savings.[3] The total settlement value, then, is easily many hundreds of millions of dollars.

This benefit is extraordinary considering the legal hurdles Plaintiffs faced, as discussed below. As Professor Fitzpatrick observes, the Class will save 100% of the EOBCs over the next five years pursuant to the agreed practice change.  Fitzpatrick Decl., ¶19. Settlement Class Members will receive their monetary distributions without the need to submit a claim. The amount each Settlement Class Member will recover will be fairly allocated and paid by direct deposit or by paper check. In short, the Settlement provides incredible benefits to Settlement Class Members. The risks and uncertainty attendant in this litigation were substantial and extraordinary. All other prior cases (including one involving BANA) had been unsuccessful. And, after this Court denied BANA's motion to dismiss, the Eleventh Circuit affirmed a decision of a Florida federal district court finding BANA's EOBC to be non-usurious and lawful. *See McGee v. Bank of Am., N.A.*, 674 Fed. App'x. 958 (11th Cir. Jan. 18, 2017) (unpublished). Plaintiffs pursued the same claim here. Thus, recovery was far from certain, and there was a significant risk that the Class could receive no recovery at all had Plaintiffs continued to litigate this case.

At a minimum, even excluding the $2 million in administrative costs and the $1.2 billion in injunctive relief, the total settlement value here is $66.6 million in cash ($37.5 million in cash and debt forgiveness of $29.1 million). *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015), an antitrust case alleging that an agreement between Netflix and Walmart was anti-competitive, is an example of the Ninth Circuit affirming a fee awarded that recognized the total settlement value. Walmart agreed in the settlement to pay "a total amount of $27,250,000, comprising both a 'Cash Component' and a 'Gift Card Component.'" *Id.* at 940. Class counsel sought, and was granted, a fee award of "25% of the overall settlement award of $27,250,000." *Id.* at 949. The Ninth Circuit held the district court had properly calculated attorneys' fees based on the total settlement amount,

---

[3] Moreover, new account holders, will automatically benefit from this practice change as well because now they, too, will not be at risk of being charged EOBCs.

not just the "cash component." *Id.* at 949-50.[4] Class Counsel requests consistent relief here, asking the Court to award 25% of the $66.6 million that Settlement Class Members will receive immediate benefits upon Final Approval. An award of 25% of the $66.6 million total value of the Settlement is reasonable. *See generally* Fitzpatrick Decl.

### 4. The Risks Assumed by Class Counsel and the Complexity of the Case Favor the Fee Award Sought.

Class Counsel assumed a very real risk in taking on this complex case. These two factors are conveniently addressed in tandem, and hue closely with the results achieved by Class Counsel discussed above.  Class Counsel took the case on a contingency basis, and invested substantial time, effort and money with no guarantee of any recovery. They did so in the face of their own repeated defeats in other federal courts on the NBA usury claim. Joint Decl., ¶¶26-32. Most notably, BANA prevailed on the identical claims and issues in the Southern District of Florida and the Eleventh Circuit in *McGee v. Bank of Am., N.A.*, 2015 WL 4594582 (S.D. Fla. July 30, 2015), *aff'd*, 674 F. App'x 958 (11th Cir. Jan. 18, 2017). That this Action survived a Motion to Dismiss and later settled with the relief it did, is in and of itself a tremendous victory. In addition to *McGee*, other courts rejected the theory of liability, both before and after this Court denied BANA's motion to dismiss, in *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, No. 2613, 2015 WL 8493979 (D.S.C. Dec. 10, 2015) (case dismissed);[5] *Shaw v. BOKF, N.A.*, No. 15-CV-0173-CVE-FHM, 2015

---

[4] *See also In re: Easysaver Rewards Litig.*, No. 09-cv-02094-BAS-WVG, 2016 WL 4191048, at *2, *4-5 (S.D. Cal. Aug. 9, 2016) (approving 22.7% of $38 million, which included both "a $12.5 million non-reversionary cash fund plus $20.0 merchandise credits automatically sent" to class members); *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *8 (S.D.N.Y. Nov. 26, 2002) (approving approximately 28% of the total settlement value, which included $8,500,000 in cash and "$11,500,000 in Credit Notes to be used by Class Members to reduce debt they owed or were claimed to owe"); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 46-47 (E.D. Pa. 2000) (approving 1/3 of the net settlement, plus 1/3 of the interest accrued on the fund, where total settlement value included $5.97 million in cash and $1.3 million in loan forgiveness); *Jacobs v. Huntington Bancshares Inc.*, No. 11-CV-000090 (Oh. Com. Pl. June 2, 2017) (approving 40% award of the total settlement value, with a $8,975,000 cash fund and $7,000,000 debt forgiveness).
[5] *Dorsey v. TD Bank, N.A.*, No. 6:17-cv-01432 (D.S.C.), is a separately filed putative class case that was transferred to the same MDL asserting the NBA usury claim, and a motion to dismiss pending before the MDL court.

WL 6142903 (N.D. Okla. Oct. 19, 2015) (case dismissed); *Johnson v. BOKF, N.A. d/b/a Bank of Texas*, No. 3:17-cv-663, Dkt. No. 30 (N.D. Tex. Oct. 24-2017) (dismissed with leave to amend and motion to dismiss amended complaint is pending); *Moore v. MB Fin. Bank, N.A.*, No. 17 C 4716, 2017 U.S. Dist. LEXIS 189585 (Nov. 16, 2017) (amended complaint dismissed and appeal pending before the Seventh Circuit).

The case involved complicated issues and unsettled law. Had Settlement not been reached by the parties, there is a very real possibility that the entire case could have been wiped out by an adverse Ninth Circuit ruling, consistent with the ruling from Eleventh Circuit. Thus, as Professor Fitzpatrick observes, in light of other courts' rejection of this very legal theory, "unlike most other class action settlements, we do not need to speculate that class counsel here have overcome incredible risks; we have the *empirical proof* that they have done so. In light of the legal challenges this case faced (and continues to face—as I noted, this court certified the National Bank Act question for interlocutory appeal and the Ninth Circuit agreed to decide the issue), the Class's recovery here is *outstanding*." Fitzpatrick Decl., ¶19. Class Counsel's success in the face of all these prior rulings should be a significant and primary factor when evaluating the reasonableness of the fee requested. Indeed, *Vizcaino* recognized that "[r]isk is a relevant circumstance" in considering an attorneys' fee award where plaintiffs previously received adverse rulings over the course of litigation. *Vizcaino*, 290 F.3d at 1048. The same should hold true here, as Class Counsel previously experienced adverse rulings on this very issue in other cases.

### 5. The Case Settled Only After Class Counsel Had Attained Maximum Leverage and Sufficient Information to Value the Possible Relief.

This case has been pending for two years, and it settled while BANA's interlocutory appeal to the Ninth Circuit of the Court's denial of its motion to dismiss is pending. Sufficient work and legal and factually analysis occurred to allow Class Counsel to determine the benefits of resolving the case at what is arguably an "early" stage to give the Class immediate relief. Most critically, Class Counsel attained a significant victory on the fundamental contested issue—whether EOBCs are interest under the NBA—an issue on

-14-

1    which every other court had ruled for the banks. In addition, Class Counsel conducted

2    sufficient informal and confirmatory discovery to value the case and to attain a fair result,

3    including the extraordinary injunctive relief. The Court certified the question to the Ninth

4    Circuit, which could have agreed with the Eleventh Circuit's decision in *McGee* and erased

5    the value created by the early victory in this Court.  Moreover, even if the Plaintiffs had

6    won the appeal, they faced BANA's non-pleadings defense that it did not act "knowingly,"

7    as required by, 12 U.S.C. §86, because courts had ruled its EOBC is not NBA interest.

8         The length of this litigation is not a basis to reduce the fee award.  Fitzpatrick Decl.,

9    ¶20 ("'[T]he length-the-case-has-transpired factor is more a proxy for class counsel's

10   performance than a measure of class counsel's performance itself; it would not make much

11   sense otherwise: why would we want to encourage class counsel to delay resolving cases

12   for no reason?'").  As he further explains, the key issue is whether class counsel advanced

13   the case to the point where it can properly evaluate the risks and value of the case:

> [T]his factor makes sense only when it is a proxy for whether class counsel
> have dug far enough into the case to know what the case is worth and to
> provide the court with information about what the case is worth so it can
> evaluate whether the recovery is warranted by the risks and complexities
> of the case. *See Vizcaino*, 290 F.3d at 1050 n.5 ("We do not mean to imply
> that class counsel should necessarily receive a lesser fee for settling a case
> quickly; in many instances, it is relevant that counsel achieved a timely
> result for class members in need of immediate relief." (emphasis added));
> *Williamson v. Microsemi Corp.*, No. 5:14-cv-01827-LHK, 2015 U.S. Dist.
> LEXIS 191692 (N.D. Ca. Feb. 19, 2015) ("This Court will not reward
> attorneys for unnecessary litigation, nor punish them for resolving matters
> quickly, when such quick resolution is, as here, highly beneficial to the
> class."). No further litigation was needed here to uncover that
> information: as I explained above, we can examine what happened in the
> other EOBC litigation and figure out very quickly that the recovery here
> is incredible compared to most class actions in light of the risks the class
> faced.  Indeed, with all the cases that class counsel here have collectively
> litigated against EOBCs, they are likely the most well versed lawyers in the
> entire country in this area of the law.  Given that we know the track record
> of other cases litigated under the same theory, we know this case was very
> difficult to win without years and years of additional litigation to tell us
> that.  But if there were any doubt about all this, it should be noted that
> class counsel had plenty of opportunity to intimately familiarize
> themselves with this case through the pre-mediation and post-mediation
> settlement processes—activities that included confirmatory discovery.  As
> such, I do not believe this factor is good reason to reduce class counsel's
> fee award.  Indeed, early settlement can be to the benefit of a class: it

-15-

cannot be forgotten that the Ninth Circuit had agreed to hear the interlocutory appeal at the time this case settled; had the case continued and had the Ninth Circuit joined the courts listed above and ruled against the class here, the class would have ended up with nothing. As one might expect, the class members charged EOBCs are typically those who can least afford to be charged overdraft fees; accelerating relief to such class members is a virtue, not a vice.

Fitzpatrick Decl., ¶20 (emphasis added).

Armed with extensive experience litigating overdraft fee and other class action cases, *see generally **Exhibits 3-6***, Class Counsel's collective wisdom was to make every reasonable effort to achieve a settlement during the Ninth Circuit interlocutory appeal. Notwithstanding the adverse appellate result in *McGee*, Class Counsel obtained an outstanding result. Prior to and during the litigation, Class Counsel engaged in an extensive factual investigation of the class claims, actively and diligently analyzing the strengths and weaknesses of the case. With the clear risk of Ninth Circuit reversal, Class Counsel took the opportunity to settle the case. Following *Vizcaino* and *Williamson*, no reduction should be made from the 25% benchmark.[6] To do otherwise would only chill other lawyers from pursuing risky consumer class cases worthy of pursuit on a contingent fee basis.

### 6. The Non-Monetary Benefits Obtained by Class Counsel.

The benchmark award sought here is supported by the Ninth Circuit's long-standing recognition that non-monetary benefits for a class obtained by Class Counsel is a laudable consideration in determining the percentage of the fund. *See Pacific Enters. Securities Litig.*, 47 F.3d at 379; *Vizcaino*, 290 F.3d at 1049; *Staton*, 327 F.3d at 946. Professor Fitzpatrick notes that his empirical study revealed that while 89% of class action settlement included cash relief, only 23% conferred injunctive or declaratory relief. Fitzpatrick Decl., ¶21. He opines that "if courts do not depart upward when class counsel secures such [non-

---

[6] *See also Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 199 (D.D.C. 2011) (settlement here "does not come too early to be suspicious nor too late to be a waste of resources, but instead at a desirable point in the litigation for the parties to reach an agreement and to resolve the issues without further delay, expense, and litigation.") (internal quotations omitted); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 588 (N.D. Ill. 2011) ("That a case is settled early does not establish that the class was ill-represented or that the settlement was the product of collusion.").

monetary] relief, then class action lawyers will have no incentive to fight to obtain these benefits—even though, as here, these benefits can be even more valuable to the class than cash." *Id.* Yet, Class Counsel is not directly asking to be compensated for that incredibly valuable non-monetary benefit.[7] They only ask that the Court's consideration of the non-monetary relief result in the Court determining that a 25% benchmark award (measured from direct monetary relief) is especially justified and reasonable. *Cf. Vizcaino*, 290 F.3d at 1049 (discussing non-monetary benefits as partial justification for a 28% award).

### 7. The Percentages in Standard Contingency-Fee Agreements in Similar Individual Cases.

Class Counsel confirm that the retention agreements with the Plaintiffs are contingent fee agreements. ***Exhibit 3***, ¶16. No payment of attorneys' fees would occur in this case but for a fee award in an individual or class settlement. *Id.* Consistent with standard-contingent fee agreements in individual cases, were the case to settle on an individual basis, Class Counsel agreed to set its fees at 33.33% of any recovery. *Id.* Class Counsel took on this case with no guarantee they would receive any compensation for their work, which occupied significant resources at Class Counsel firms even before this case was filed two years ago. Public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that might be paid nothing at all for their work. This practice encourages attorneys to assume this risk and allows plaintiffs who would otherwise not be able to hire an attorney to obtain competent counsel. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Class Counsel's representation of Plaintiffs and the Settlement Class supports the 25% benchmark award requested, a rate considerably below the standard 33% rate at which contingent fee attorneys regularly contract. Fitzpatrick Decl., ¶22.

---

[7] BANA will also update the reports it sent to any credit bureau to show that Settlement Class Members now owe BANA no monies or lesser monies than had been previously reported to account for forgiveness of EOBCs.

### 8.  The Requested Fee is Justified by Awards in Similar Cases.

The most common fee percentages awarded in common fund class actions are 25%, 30%, and 33%, with the mean and median at 25%. *Id.*  ¶¶16-18 (detailing consistency with the 111 settlements in the Ninth Circuit). Examples of this Court granting 25% benchmark awards include *In re Daou Sys. Secs. Litig.*, 2008 U.S. Dist. LEXIS 56320, at *6-7; *Dennis*, 2008 U.S. Dist. LEXIS 163118 at *21-22 (awarding 25% of cash portion of settlement); *Chavez*, 2010 U.S. Dist. LEXIS 56138 at *7 (awarding "$2,000 less than 25%"). Class Counsel is seeking far less than 5% of the total monetary and non-monetary value of the Settlement, 24.3% of the cash benefit if the notice and administration costs are included, and 25% of the $66.6 million cash benefits to be directly distributed to the Class. Under any of these metrics, the fee percentage requested here is either *far below, below, or at* virtually all the average and median data both nationwide and in the Ninth Circuit. *Vizcaino* instructs that it is appropriate "to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size."  290 F.3d at 1050. Here, the requested fee, 25% of the Settlement Payment, is well within the range of acceptable attorneys' fees in Ninth Circuit cases.

Since 2010, numerous courts have awarded percentage of the fund fees in other bank overdraft fee class actions (based on different—and arguably less difficult—theories of liability). The following table depicts overdraft fee settlements nationwide, all of which resulted in fee awards at or significantly above the Ninth Circuit's 25% benchmark:

| **Overdraft Fee Case Name** | **Percentage-of-the-Fund Awarded** |
|---|---|
| *Lopez v. JPMorgan Chase Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **44%** of value of settlement, which includes 30% of $110 million cash fund and 30% of value of practice changes |
| *Jacobs v. Huntington Bancshares Inc.* No. 11-cv-000090 (Lake County Ohio) | **40%** of value of settlement, which includes 40% of $8.975 million and 40% of $7 Million in debt forgiveness |
| *Nelson v. Rabobank, N.A.*, No. RIC 1101391 (Cal. Supr.) | **35.2%** ($750k fee includes % of practice changes) |
| *Molina v. Intrust Bank, N.A.*, No. 10-CV-3686 (Dist. Ct. Ks.) | **33%** of $2.7 million |

-18-

| | |
|---|---|
| *Hawkins et al v. First Tenn. Bank, N.A.* (Cir. Ct. Tenn.) | **35%** of $16.75 million |
| *Swift v BancorpSouth*, No. 1:10-cv-00090-GRJ (N.D. Fla.) | **35%** of $24 million |
| *Casto v. City National Bank, N.A.*, No. 10-C-1089 (Cir. Ct. W.Va.) | **33%** of $3 million |
| *Schulte v. Fifth Third Bank*, No. 09-cv-6655 (N.D. Ill.) | **33%** of $9.5 million |
| *Johnson v. Community Bank, N.A.*, No. 12-cv-01405-RDM (M.D. Pa.) | **33%** of $2.5 million |
| *Bodnar v. Bank of America*, No. 5:14-cv-03224-EGS (E.D. Pa.) | **33%** of $27 million |
| *Harris v. Associated Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $13 million |
| *Duval v. Citizens Bank Fin. Group, Inc.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $137.5 million |
| *Mosser v. TD Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $62 million |
| *Anderson v. Compass Bank* No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $11.5 million |
| *Casayuran v. PNC Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $90 million |
| *Orallo v. Bank of the West*, No. 1:09-MD-02036 JLK (S.D. Fla.) | **30%** of $18 million |
| *Wolfgeher v. Commerce Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of value of settlement, which includes 30% of $18.3 million cash and 30% of value of practice changes |
| *McKinley v. Great Western Bank*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $2.2 million |
| *Eno v. M & I Marshall & Ilsley Bank*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $4 million |
| *Larsen v. Union Bank*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $35 million |
| *Tornes v. Bank of America, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $410 million |
| *Case v. Bank of Oklahoma, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $19 million |
| *Allen v. UMB Bank*, No. 1016-CV34791 (Cir. Ct. Mo.) | **30%** of $7.8 million |
| *Jones v. United Bank*, (Jackson, WV) | **30%** of $3.3 million |
| *Higgins v. Pinnacle Bank*, (Tenn. St. Ct.) | **30%** of $1.25 million |
| *Beason v. Liberty Bank*, (Ark. St. Ct.) | **30%** of $325k |
| *Trombley v. National City Bank*, No. 10-00232 (JDB) (D.D.C.) | **25%** of $12 million |
| *LaCour v. Whitney Bank*, No. 11-cv-1896-T-33-MAP (M.D. Fla.) | **25%** of $6.8 million |
| *Mathena v. Webster Bank, N.A.*, No. 3:10-cv-1448-SRU (D. Conn.) | **25%** of $2.8 million |
| *Taulava v. Bank of Hawaii*, No. 11-1-0037-02 KTN (1st Cir. Haw.) | **25%** $9 million |

The results in those cases were tremendous for consumers. However, in contrast

-19-

to Plaintiffs' legal theory that has gained acceptance only by this Court, those cases involved a legal theory that ultimately gained wide acceptance. This comparison supports Class Counsel's request for a $16.65 million dollar, which is the benchmark 25%.

**9.      A Lodestar Cross-Check Supports a 25% Benchmark Award.**

The Court is not obligated to perform a lodestar cross-check in evaluating the percentage of the fund to be awarded. *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737 (9th Cir. 2017) (district court did but was not required to do a lodestar cross-check); *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 547 (9th Cir. 2016) ("a cross-check is entirely discretionary"); *compare Chavez*, 2010 U.S. Dist. LEXIS 56138 at *7-*8 (awarding fee with no lodestar crosscheck) *with In re Daou*, 2008 U.S. Dist. LEXIS 56320, at *5-*6 (awarding fee with lodestar crosscheck). The foregoing should assuage the Court that using the percentage-of-the-fund method is appropriate without a cross-check. Fitzpatrick Decl., ¶¶23-25.   Nevertheless, recognizing that this Court at times conducts a lodestar cross-check, Class Counsel has provided the Court with the information needed to do so. The first step is to determine the lodestar amount, multiplying the Class Counsel's total number of hours expended by their reasonable hourly rates. *E.g.*, *Bluetooth*, 654 F.3d at 941-42. The second step requires the Court to consider a multiplier to add or subtract from the lodestar. *See Id.; Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Class Counsel's declarations evidence that they reasonably expended a total of 2,158 hours, inclusive of an estimate of the hours that they will spend to work to complete the Final Approval process and accounting for time that will be spent post-Final Approval, along with the requested hourly rates.[8] *See* **Exhibits 3-6**. Consistent with formatting this Court has previously requested, the declarations summarize the categories of major stages of the case, explaining the hours spent by the different billers at each of the Class Counsel's law firms and their respective hourly rates that are requested to be approved as reasonable.

---

[8] Some hours are for Class Counsel's time litigating *McGee* and *Shaw*, which work benefited the Class. Fitzpatrick Decl., ¶26 n.6 (noting it is not uncommon to treat time intertwined across cases as one when performing a lodestar crosscheck (cases citations omitted)).

"[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). A "reasonable hourly rate is ordinarily the prevailing market rate in the relevant community." *KKelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *see also HaHartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011) (stating that rates are "reasonable where they [are] similar to those charged in the community and approved by other courts."). The requested hourly rates are supported by an expert opinion from a class action litigator in the Southern District of California. *See* **Exhibit 7**. "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

In addition to affidavits and evidence, the court may also "rely on its own familiarity with the legal market." *IIngram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). The Court should also consider the recent decisions in which this Court approved rates similar to, or higher than, Class Counsel's requested rates. *See, e.g., Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214, at \*43 (S.D. Cal. Sept. 28. 2017)) (hourly rates of $740, $725, $720, $650, $575, $400, and $395 for attorneys, $225 for law clerks, $150 for summer interns, and $200 for law students were "the prevailing rates in the community for attorneys of comparable skill, experience and reputation"); *In re: Easysaver Rewards Litig.*, 2016 WL 4191048, at \*4 ("the rates billed by the attorneys (ranging from $625 to $750 for partners; $240 to $450 for associates, $125 to $260 for paralegals, $575 for of-counsel, and $105 for legal assistants) are reasonable and reflect the prevailing rate seen by this court in other similar cases"); *Hazlin v. Botanical Labs., Inc.*, No. 13CV0618-KSC, 2015 WL 11237634, at \*7 (S.D. Cal. May 20, 2015) (hourly rates of $750, $575, and $375 were reasonable in a consumer class action); *Makaeff v. Trump Univ., L.L.C.*, No. 10CV0940 GPC(WVG), 2015 WL 1579000, at \*4-5 (S.D. Cal. Apr. 9, 2015) (approving

-21-

rates "ranging from $250 to $440 for associates, and $600 to $825 for partners" as "consistent with . . . those previously approved by this Court and this District in class action settlements, and with this Court's familiarity of the rates charged in the San Diego community"); *Grant v. Cap. Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH (BGS), 2014 WL 888665, at *6 (S.D. Cal. Mar. 5, 2014)(approving as "reasonable" rates of $875, $695, $525, $395, and $245 for attorneys and $150 for paralegals in a consumer class action).

Ninth Circuit precedent permits Class Counsel to base their lodestar calculations on current market rates in recognition that Class Counsel has taken this litigation as a contingent fee matter delaying any recovery until the outcome of the case. *Fischel v. Eq. Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1050-51. Class Counsel submits that its hourly rates ranging from $250 to $800 for attorneys, and $180 to $200 for paralegals, are reasonable and in line with, or below, prevailing rates in the Southern District for similar services rendered by comparably skilled and experienced attorneys. Applying the requested rates to the total hours expended results in a $1,428,047.50 lodestar. An award of $16.65 million would result in a multiplier of 11.66.

Class Counsel's contingent representation, combined with the excellent results obtained in this risky litigation, and the quality of Class Counsel's previous work and future work to be done, support application of the requested multiplier under the *Kerr* factors. 526 F.2d at 69-70. Although this is a higher multiplier, the cross-check should not be given undue weight given that Class Counsel maximized the value for the class by settling the case at the point of maximum leverage. The lodestar crosscheck should not be used to undermine the rationale of the preferred percentage-of-the-fund method in a case like this.

> [C]ourts that entertain the lodestar crosscheck do not create the best incentives for class action lawyers. *In particular, the lodestar crosscheck reintroduces the very same undesirable consequences of the lodestar method that the percentage method was designed to correct in the first place.* For example, as the Ninth Circuit has observed, if class counsel believe that courts will cap the percentage awarded at some multiple of their lodestar, then *they will have precisely the same incentives they would if courts used the lodestar method alone: to be inefficient, perform unnecessary projects, delay results, and overbill and overstaff work in order to run up their lodestar. See Vizcaino*, 290 F.3d at 1050 n. 5 ("[I]t is

widely recognized that the lodestar [cross-check] creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee . . . ."). *The lodestar crosscheck also caps the amount of compensation class counsel can receive from a settlement, thereby misaligning their incentives from those of class members, and blunting their incentive to achieve the largest possible award for the class.  See* Fitzpatrick, *Class Action Lawyers, supra,* at 2065-66.

Fitzpatrick Decl., ¶24 (emphasis added).

Professor Fitzpatrick also offers empirical evidence of multipliers that have been approved by Courts in the range that Class Counsel requests here, exhibiting that when other factors justify the requested fee (like those detailed herein), courts should not be afraid to employ an above-average lodestar multiplier. *Id.* ¶26.  As he concludes:

> Not only is this the only EOBC-usury case—among many—that has survived dismissal, but the relief class counsel have won here will save class members and others *over a billion dollars* over the next five years in addition to reimbursing them *tens of millions of dollars* of past EOBC charges. In other words, the results in this case far exceed what a reasonable observer might have forecast when this case was filed.  It is not unreasonable to award class counsel a fee percentage that results in a high lodestar multiplier when class counsel have achieved results that are even higher.

*Id.* Giving due consideration for all of the foregoing, the Court should conclude that a lodestar cross-check against the $16.65 million fee award requested by Class Counsel supports that award, in recognition of Class Counsel's achievements for the Class.

## B.   CLASS COUNSEL SHOULD BE REIMBURSED FOR COSTS AND EXPENSES REASONABLY SPENT DURING THE LITIGATION

An attorney is entitled to "recover as part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client.*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). Class Counsel's declarations detail each of the claimed and recoverable costs and expenses, separating each by category. The expenses were incurred to initiate the action; to allow experienced overdraft class action litigators to appear pro hac vice; to retain the services of a preeminent mediator that assisted the parties in successfully settling the case; to retain a well-qualified banking data expert to prepare for mediation; for travel expenses (requested at 50% of amounts expended); and legal research costs. ***Exhibits 3-6***. Because the costs and expenses are

-23-

small relative to the common fund amount, and are facially reasonable and necessary, the Court should award the requested **$53,119.92**. Class Counsel has incurred fees for engaging Professor Fitzpatrick's services in this action, but are not seeking reimbursement for his charges. Moreover, Class Counsel anticipates incurring future expenses in connection with seeking Final Approval of the Settlement, but likewise will not seek reimbursement.

## C.  THE CLASS REPRESENTATIVES SHOULD RECEIVE THE REQUESTED SERVICE AWARDS FOR THEIR EFFORTS

Class Counsel seek Service Awards of $5,000.00 for each Class Representative's services. Totaling $20,000.00, the Service Awards will represent 0.0003% of $66.6 million, making such awards eminently reasonable.  As this Court observed in *Dennis*, 2013 U.S. Dist. LEXIS 163118, at *25: "Incentive awards are fairly typical in class action cases" (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)).

> "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Id.* "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

*Dennis*, 2013 U.S. Dist. LEXIS 163118, at *25.  *Staton*, 327 F.3d at 977, addresses the relevant factors, similarly referring to the actions the plaintiff has taken to protect the interests of the class; the degree to which the class has benefitted from those actions; the amount of time and effort the plaintiff expended in pursuing the litigation.

The Class Representatives all took risks by offering their services when the legal landscape for NBA usury claims was particularly averse to their interests. Their claims, which publicly disclose their personal financial difficulties, create notoriety regardless of their success on the claims.  Had they failed, they created risk to their reputations. They should be commended for taking action to protect the interests of millions of

-24-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED APPLICATION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

accountholders who were affected by BANA's EOBC policy, on top of their own individual usury claims. It cannot be disputed that the Plaintiffs' efforts have created extraordinary financial benefits for the Class, compensating them for past harm and protecting them from future harm. Their efforts will also inure to the benefit of new accountholders whose accounts will not be subject to EOBCs for at least the next five years. Plaintiffs expended hours in advancing this litigation against a large and powerful adversary. Each conferred with Class Counsel on a number of occasions. Joint Decl., ¶3. They gathered documents pertaining to their EOBC charges and explained them to Class Counsel to confirm that they had claims which could be pursued. *Id.*

The $5,000 requested for each Class Representatives in recognition of their service on behalf of the Settlement Class is reasonable and appropriate. This amount was approved by this Court in *Dennis*, 2013 U.S. Dist. LEXIS 163118, at *25 (citing cases within this District and without, including *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 U.S. Dist. LEXIS 86920, at *19-20 (C.D. Cal. July 27, 2010), which also approved a $7,500 and $5,000 service awards). *See also Chavez*, 2010 U.S. Dist. LEXIS 56138, at *8 (approving $7,500 awards); *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 457 (9th Cir. 2000) (affirming $5,000 award out of a fund of $1.725 million); *Fontes v. Heritage Operating, Ltd. P'ship*, No. 14cv1413-MMA (NLS), 2016 U.S. Dist. LEXIS 50502, at *22 (S.D. Cal. Apr. 14, 2016) (approving $5,000 award out of $550,000.00 common fund); *Williams v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 67731, at *19-20 (S.D. Cal. July 7, 2010) (approving $5,000 award in an antitrust case settling for $440,000).

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs and Class Counsel respectfully request that the Court award attorneys' fees of **$16,650,000.00** and costs of **$53,119.92**.   In addition, Plaintiffs and Class Counsel request that the Court approve Service Awards of **$5,000.00** per Class Representative for a total of **$20,000.00**.

Dated: February 19, 2018

Respectfully submitted,

*s/ Jeff Ostrow*
JEFF OSTROW (*pro hac vice*)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*ostrow@kolawyers.com*

BRYAN S. GOWDY (*pro hac vice*)
**CREED AND GOWDY, P.A.**
865 May Street
Jacksonville, FL 32204
Telephone: 904-350-0075
Facsimile: 904-503-0441
*bgowdy@appellate-firm.com*

WALTER W. NOSS (CA 277580)
**SCOTT + SCOTT LLP**
707 Broadway, 10th Floor
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
*wnoss@scott-scott.com*

HASSAN A. ZAVAREEI (CA 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*hzavareei@tzlegal.com*

JOHN R. HARGROVE (*pro hac vice*)
CRISTINA M. PIERSON (*pro hac vice*)
JOHN JOSEPH UUSTAL (*pro hac vice*)
**KELLEY UUSTAL PC**
500 North Federal Highway, Suite 200
Fort Lauderdale, FL 33301
Telephone: 954-522-6601
*jju@kulaw.com*
*cmp@kulaw.com*
*jhr@hargrovelawgroup.com*

**Counsel for Plaintiffs and the Settlement Class**