# EXHIBIT 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | CASE NO. 3:16-cv-00492-L-WVG<br><br>**JOINT DECLARATION OF CLASS COUNSEL JEFF OSTROW, HASSAN ZAVAREEI, CRISTINA M. PIERSON AND BRYAN S. GOWDY IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND SERVICE AWARDS**<br><br>Judge: Hon. M. James Lorenz<br>Place: Courtroom 5B<br>Hearing Date: June 18, 2018 at 11:00am |

We, Jeff Ostrow, Hassan Zavareei, Cristina M. Pierson and Bryan S. Gowdy ("Class Counsel"), pursuant to 18 U.S.C. § 1746, hereby declare as follows:

1. We are Class Counsel under the Settlement with Bank of America, N.A. ("BANA") being presented to the court for Final Approval. We submit this declaration in support of Plaintiffs' Application for Attorneys' Fees and Costs and for Service Awards ("Fee and Expense Application"). We have personal knowledge of the facts set forth in this declaration, and could testify competently as to them if called upon to do so. This declaration summarizes the work performed by Class Counsel in this litigation that led to an outstanding result for the class.

**A. History of the Litigation**

2. Prior to and during this litigation, Class Counsel conducted an investigation relating to the assessment of Extended Overdrawn Balance Charges ("EOBCs") upon checking accounts held by BANA customers. Throughout the litigation, Class Counsel

worked closely together to formulate case strategy. Work was divided between all four firms to avoid unnecessary duplication.

3. Class Counsel interviewed the Plaintiffs in this action at length regarding their bank statements and any EOBCs assessed and paid. In addition, Class Counsel analyzed the legislative history of the National Bank Act ("NBA") and its implementing regulations, as well as other regulations, guidance, academic articles, press releases, and consumer complaints to understand the purpose and impact of EOBCs and other similar charges assessed by other banks. This includes our participation in prosecuting claims in *McGee v. Bank of America, N.A.*, 2015 WL 4594582 (S.D. Fla. July 30, 2015), *aff'd*, 674 Fed. Appx. 958 (11th Cir. January 18, 2017) (unpublished), and *Shaw v. BOKF, N.A.*, No. 15-CV-0173-CVE-FHM, 2015 WL 6142903 (N.D. Okla. Oct. 19, 2015) (case dismissed). Throughout this litigation, Class Counsel has continued to monitor, research, and review these materials.

4. In February 2016, Class Counsel worked with Plaintiff Joanne Farrell to review and understand her bank statements.

5. Based on Class Counsel's experience with the *McGee* and *Shaw* usury cases under the NBA, Class Counsel drafted a Class Action Complaint setting forth Plaintiff Farrell's allegations in a clear and detailed manner.

6. In April 2016, BANA filed a Motion to Dismiss on the ground, among others, that the EOBCs do not constitute "interest" under the NBA. BANA's brief cited district court cases from across the country in which the courts dismissed similar claims alleging that extended overdraft fees like the EOBCs are usurious interest charges under the NBA.

7. Class Counsel reviewed and researched BANA's arguments on issues like the applicability of guidance from the Office of the Comptroller of the Currency ("OCC") and the definition of an "extension of credit," and Class Counsel drafted a substantial opposition to BANA's motion to dismiss.

JOINT DECLARATION OF CLASS COUNSEL IN SUPPORT OF
PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

8. On December 19, 2016, the Court denied BANA's Motion to Dismiss in its entirety without oral argument.

9. Class Counsel then researched and drafted a motion to appoint Class Counsel as interim class counsel under Federal Rule of Civil Procedure 23(g). The motion addressed Class Counsel's qualifications, efforts litigating the case, and ability to represent the interests of a putative class. Class Counsel also began to prepare to file a motion for class certification by researching issues relating to class certification under the NBA.

10. After BANA filed its Answer and Affirmative Defenses, Class Counsel reviewed and researched BANA's affirmative defenses. Class Counsel researched and drafted a Motion to Strike certain Affirmative defenses on the grounds that BANA's common law defenses do not apply to a federal statutory claim and that s other defenses were irrelevant or merely denials. Later, after the BANA filed an Amended Answer to address some of the issues raised in the initial motion to strike, Class Counsel prepared and filed a second motion to strike the affirmative defenses in the amended answer. Class Counsel also investigated potential additional class representatives who could adequately represent the interests of the putative class alongside Plaintiff Farrell.

11. Meanwhile, in January 2017, BANA filed a Motion for Certification of an Interlocutory Appeal of the Order denying the Motion to Dismiss. Class Counsel researched the standard for an interlocutory appeal and drafted an opposition to the motion. Class Counsel carefully and thoughtfully researched and drafted the opposition, because of the significance of a possible appeal.

12. Class Counsel also drafted a Reply in Support of Plaintiff Farrell's Motion for Class Counsel to be Appointed Lead Counsel.

13. In February 2017, Class Counsel began to explore the possibility of settlement and internally discuss what a settlement proposal might look like. Class Counsel expended significant effort researching numerous issues relating to an appropriate

settlement proposal for this highly unique case. Class Counsel drafted a settlement proposal and demand letter, and sent the same to BANA.

14. Class Counsel also researched and drafted a Reply in Support of Plaintiff Farrell's motion to strike BANA's Affirmative Defenses in its Amended Answer.

15. On March 1, 2017, Class Counsel prepared for and participated in an Early Neutral Evaluation conference before United States Magistrate Judge William V. Gallo.

16. Also in March, Class Counsel began to prepare to file the Amended Complaint. Class Counsel held meetings with all new clients, reviewed their bank statements, and drafted new fact sections to be added to the Complaint. Plaintiff Farrell's Motion for Leave to File an Amended Complaint was filed on March 13, 2017. Before filing the Amended Complaint, Class Counsel researched whether additional claims could be brought on legal theories, other than the usury theory, including, for example, a potential claim under the Equal Credit Opportunity Act. Ultimately, Class Counsel determined the best course of action was to amend the Complaint so as to add the new clients as plaintiffs but not to add any new legal theories.

17. After the Court granted BANA's Motion to Certify an Interlocutory Appeal on April 11, 2017, Class Counsel began to prepare to defend against an appeal in the Ninth Circuit, first by preparing detailed briefing to persuade the Ninth Circuit not to entertain the question certified by this Court. Once the Ninth Circuit agreed to decide the certified question, Class Counsel incurred significant time contacting, and coordinating with, organizations who might have an interest in filing amicus briefs in support of the Plaintiffs.

18. Meanwhile, Class Counsel began to pursue the possibility of mediation. In early June 2017, the parties agreed to mediate before the Honorable Layn R. Phillips (Ret.), a highly respected mediator with extensive experience in the mediation of complex class actions.

19. Class Counsel expended significant effort preparing a robust, detailed mediation statement, which directly contributed to the excellent result obtained for the

Settlement Class in the Settlement Agreement. The mediation statement made Plaintiffs' best case for the merits of their arguments and incorporated detailed factual and legal analyses. Class Counsel expended significant effort researching every possibly legal angle, including the meaning of the "knowingly" standard under the NBA and other statutes and researching and reviewing OCC regulations.  Class Counsel pressed BANA to provide certain data necessary to evaluate damages by drafting and serving a demand letter.  Class Counsel identified, retained, and met with an expert (Arthur Olsen) who provided substantial support for Plaintiffs' damages analysis.

20. Upon receipt of BANA's mediation statement materials in August 2017, Class Counsel reviewed and researched the materials and discussed a response. Class Counsel drafted a Mediation Reply Statement to respond to the mediator's targeted questions presented to both sides, and also reviewed and researched the arguments presented in BANA's mediation statement.

21. On August 25, 2017, Class Counsel attended an all-day mediation with Judge Phillips in Newport Beach, California, diligently and in good faith negotiating the potential resolution of the Action, but were unable to reach an agreement that day.

22. During September and October 2017, Judge Phillips continued to communicate with the parties to further settlement efforts. Class Counsel communicated with Judge Phillips, BANA's outside counsel, and its Deputy General Counsel, Jana Litsey, as part of the negotiations. The negotiations were adversarial, and required numerous telephone calls, emails, and discussions over the details of the ultimate Settlement.  After approximately two months of negotiations, the parties agreed to the material terms of this Settlement. The parties first discussed attorneys' fees and costs after agreeing to the material terms of the Settlement.

23. In October 2017, Class Counsel prepared for and participated in a confirmatory discovery meeting in Charlotte, North Carolina with BANA's Fee Management Executive, Riaz Bhamani. Mr. Bhamani supervised gathering and analysis of

-5-

the data used to calculate the damage figures that were provided before the mediation. During the interview, Mr. Bhamani explained the assumptions made and methods used for each of these calculations in great detail. We explored those assumptions and methods with rigorous questioning and became confident that the numbers we relied on were indeed trustworthy and accurate.

24. Based on that meeting and the prior negotiations, Class Counsel drafted a Settlement Agreement, Preliminary Approval Motion, Class Notices, and a Preliminary Approval Order for the Court's consideration. The Court preliminarily approved the Settlement, subject to the parties making changes to the Class Notices. Thereafter, Class Counsel began working with and continues to work with the Notice and Settlement Administrator to effectuate notice and all other aspects of the notice plan.

25. To accomplish the work described above, Class Counsel regularly drafted other court filings such as proposed orders, stipulations, notices of motion, and declarations in support of Plaintiffs' various memoranda.

**B. The Risks Borne by Class Counsel**

26. From the outset, Class Counsel anticipated spending hundreds or even thousands of hours and advancing hundreds of thousands of dollars to advance this claim with no guarantee of success, especially given the dismissal of the *McGee* and *Shaw* actions. Class Counsel knew that prosecuting the claim would require that other work be foregone.

27. This case posed significant risks regarding the applicable legal and factual issues. As noted above, similar claims against other national banks were unsuccessful in every other district court that analyzed them. Thus, the risks in this case were especially significant. As far as we know, this is the only case alleging that extended overdraft fees are usurious interest under the National Bank Act in which the plaintiff survived a motion to dismiss. Thus, numerous examples exist where plaintiffs' counsel in contingent cases such as this, after the expenditure of thousands of hours and advancing hundreds of thousands of dollars, have received no compensation. We are aware of many hard-fought lawsuits

where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar resulted in zero fees.

28. In accepting this case, Class Counsel bore considerable risk. We took this case on a fully contingent basis, meaning that we were not paid for any of our time, and that we agreed to pay all costs and out-of-pocket expenses without any reimbursement. From the outset, Class Counsel recognized that it would be contributing a substantial amount of time and advancing significant costs in prosecuting this class action with no guarantee of compensation or recovery, in the hopes of prevailing against a well-funded defense.

29. Because of the nature of a contingent practice where cases are typically complex and last several years, not only do contingent fee law firms such as Class Counsels' firms have to pay regular overhead, but they also have to advance the expenses of the litigation. Given it often takes years for these cases to conclude, the financial burden on contingent fee counsel is far greater than on a firm that is paid on an ongoing or hourly basis.

30. BANA was represented by a highly-skilled and well-resourced litigation firm, so there was an increased risk that BANA would prevail at the class certification stage or later on summary judgment or after a prolonged trial.

31. Had the parties not agreed to the Settlement, they would have remained embroiled in contested issues of both law and fact for years to come.

32. In reaching the Settlement, Plaintiffs have avoided the very real risk that this Court or the Ninth Circuit might find that an EOBC is not "interest" under the NBA.

**C. The Outstanding Results for the Class**

33. The Settlement Agreement provides outstanding relief for the Settlement Class, which includes "all holders of [BANA's] consumer checking accounts who [from February 25, 2014 to December 30, 2017] were assessed at least one EOBC that was not

refunded." BANA has agreed to a wholesale change in its practice of charging EOBCs, and to no longer assess these fees when an account remains overdrawn. This change will be for a minimum of five years and will save BANA's customers approximately $1.2 billion. In addition, BANA agreed to pay the class $66.6 million in cash and debt relief, update the reports it sent to credit bureaus on any Settlement Class Members that had previously been reported for failing to pay an EOBC, and pay the costs of notifying the class and administering the Settlement.

34. The Settlement Agreement provides extraordinary and definite benefits to the Settlement Class. Millions of Settlement Class Members will benefit and receive compensation for their losses and avoid the very real risk of no recovery.

### D. The Diligent Prosecution of This Case

35. Class Counsel devoted significant resources to the Action by mastering the relevant facts, drafting Complaints and comprehensive memoranda of law in connection with BANA's Motion to Dismiss and efforts to obtain interlocutory review of the Order denying that motion, formulating strategy, preparing the other motions detailed above, preparing for and attending mediation, and otherwise preparing to try the case if necessary.

36. The Settlement is a product of hard-fought litigation and takes into consideration the risks specific to the case. It is the result of extensive arms-length negotiations, and was negotiated by highly experienced and capable counsel with a full understanding of the strengths and weaknesses of their respective positions.

### E. Complexity of the Action

37. As demonstrated by the discussion above of the contested issues in this Action, had the Settlement not been reached by the parties, the complex factual and legal questions at issue would undoubtedly continue to be the subject of substantial analysis and dispute. Numerous complex issues would necessarily be involved in Class Counsel's efforts to prove liability, including whether the EOBC is "interest," whether BANA acted "knowingly," and the issues related to certifying a class.

We declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of February, 2018.

        /s/    Jeff Ostrow
                 **Jeff Ostrow**

        /s/    Hassan Zavareei
                 **Hassan Zavareei**

        /s/    Cristina Pierson
                 **Cristina Pierson**

        /s/    Bryan Gowdy
                 **Bryan Gowdy**