Tucker | Pollard
Caroline Tucker, Esq.
556 N. Diamond Bar Blvd.
Suite 213
Diamond Bar, CA 91765
Office 909-398-1800
Fax 949-269-6401
ctucker@tuckerpollard.com

*Attorney for Objector*
STEPHEN KRON

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE FARRELL, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>BANK OF AMERICA, N.A.,<br><br>　　　　　Defendant. | CASE NO. 3:16-cv-00492-L-WVG |

**OBJECTION TO CLASS ACTION SETTLEMENT**

Class member and objector, Stephen Kron, ("hereinafter Objector") opposes the approval of this class action settlement. His contact information is: P.O. Box 7015, Laguna Niguel, CA 92607, 949-283-2214. My client does not recall any information about past objections, but has objected in the past. My past objections are not relevant, but I have objected in several cases. A district court may approve a class action settlement only if the settlement is "fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2). The district court fulfills both its "duty to act as a fiduciary who must serve as a guardian of the rights of absent class members and ... the requirement of a searching assessment regarding attorneys' fees that should properly be performed in each case." *In*

1

*re Bank of Am. Corp. Securities, Derivative, and Employee Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014) citing *McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 419 (2d Cir. 2010).

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). Unlike ordinary settlements, "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. *Id*. "[T]hus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id*.

The Court must ensure that the class certification criteria have been met pursuant to the 9th Circuit's recent opinion in *In re Hyundai and Kia Fuel Econ. Litig.,* 15-56014, 2018 WL 505343, at *3–4 (9th Cir. Jan. 23, 2018):

> Rule 23 "does not set forth a mere pleading standard." *Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. The plaintiff seeking class certification bears the burden of demonstrating that all the requirements of Rule 23 have been met. *See Zinser*, 253 F.3d at 1188. This requirement means that the plaintiff must first demonstrate through evidentiary proof that the class meets the prerequisites of Rule 23(a), which provides that class certification is proper only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. The Rule 23(a) prerequisites "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 564 U.S. at 349, 131 S.Ct. 2541 (internal quotation marks omitted). To meet the commonality requirement of Rule 23(a)(2), the plaintiffs' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350, 131 S.Ct. 2541.

After carrying its burden of satisfying Rule 23(a)'s prerequisites, the plaintiff must establish that the class meets the prerequisites of at least one of the three types of class actions set forth in Rule 23(b). Fed. R. Civ. P. 23(b); *Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. Here, the district court certified the class under Rule 23(b)(3), which provides that a class action may be maintained only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," and which lists a number of matters "pertinent to these findings." Fed. R. Civ. P. 23(b)(3).[2]

The Rule 23(b)(3) predominance inquiry is "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The "presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Rather, a court has a "duty to take a close look at whether common questions predominate over individual ones," and ensure that individual questions do not "overwhelm questions common to the class." *Comcast*, 569 U.S. at 34, 133 S.Ct. 1426 (internal quotation marks omitted). In short, "[t]he main concern of the predominance inquiry under Rule 23(b)(3) is the balance between individual and common issues." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545–46 (9th Cir. 2013) (internal quotation marks omitted).

Where plaintiffs bring a nationwide class action under CAFA and invoke Rule 23(b)(3), a court must consider the impact of potentially varying state laws, because "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996). "Variations in state law do not necessarily preclude a 23(b)(3) action." *Hanlon*, 150 F.3d at 1022. For instance, even when some class members "possess slightly differing remedies based on state statute or common law," there may still be "sufficient common issues to warrant a class action." *Id.* at 1022–23; *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301–02 (3d Cir. 2011) (discussing the "pragmatic response to certifications of common claims arising under varying state laws," and citing a case that affirmed "the district court's decision to subsume the relatively minor differences in state law within a single class" as illustrative) (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998)); *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) (noting that even though "state laws may differ in ways that could prevent class treatment if they supplied the principal theories of recovery," class representatives in that case met the predominance requirement in part by limiting "their theories to federal law plus aspects of state law that are uniform"). On the other hand, where "the consumer-protection laws of the affected States vary in material ways, no common legal issues favor a class-action approach to resolving [a] dispute." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011).

In determining whether predominance is defeated by variations in state law, we proceed through several steps. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

3

590 (9th Cir. 2012). First, the class action proponent must establish that the forum state's substantive law may be constitutionally applied to the claims of a nationwide class. *Id*. at 589–90.³ If the forum state's law meets this requirement, the district court must use the forum state's choice of law rules to determine whether the forum state's law or the law of multiple states apply to the claims. *Id.* at 590. "[I]f the forum state's choice-of-law rules require the application of only one state's laws to the entire class, then the representation of multiple states within the class does not pose a barrier to class certification." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015). But if class claims "will require adjudication under the laws of multiple states," *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 922, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001), then the court must determine whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently. *Id.* As with any other requirement of Rule 23, plaintiffs seeking class certification bear the burden of demonstrating through evidentiary proof that the laws of the affected states do not vary in material ways that preclude a finding that common legal issues predominate. *See Castano*, 84 F.3d at 741 (indicating that class action proponents must show that variations in state laws will not affect predominance; "[a] court cannot accept such an assertion on faith.") (quoting *Walsh v. Ford Motor Co., 807 F.2d 1000, 1016 (D.C. Cir. 1986) (Ruth Bader Ginsburg, J.)).In re Hyundai and Kia Fuel Econ. Litig*., 881 F.3d 679, 690-691 (9th Cir. 2018).

In addition to ensuring that class certification criteria have been met, the Court must also evaluate the settlement for any potential collusion between class counsel and defendant. The Court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self interests … to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  Rather than explicit collusion, there need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Id.* at 949 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) and *In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 819-20 (3d Cir. 1995).

Here, class counsel has secured the class a benefit of $66.6 million of the possible recoverable damage of $756 million it could have recovered at trial.   This compensation is not

4

adequate for the class, especially considering that class counsel had already overcome, by its own admission, some large hurdles in potentially prevailing at trial.

Furthermore, class counsel has secured its own payday of $16.65 million, which, when compared to its lodestar, it outrageously high. Class counsel expects to expend 2,158 hours, which includes anticipated hours after final approval, with rates ranging from $250 - $825 per hour. While $250 may be a reasonable rate, $825 is not reasonable. Even with these extraordinary rates, the lodestar is still $1,428,047.50. An award of $16.65 million equate to a multiplier of 11.66. A multiplier of 11.66 is both shocking and offensive.

Though this circuit has established 25% of the common fund as a benchmark award for attorney fees, this amount is excessive when compared to its lodestar of 11.66 multiplier. A district court must also provide adequate justification for the use of a multiplier, which is appropriate in only "rare" or "exceptional" cases. See *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). Even if the Court were to find that this case is "rare" or "exceptional," there is no way that a multiplier of 11.66 multiplier is remotely reasonable. The Court should order that class counsel receives its lodestar with no multiplier and disburse the remaining $15 million to the class. Additionally, the Court should evaluate the value of the total settlement compared to the amount received by individual members.

Costs related to administration of the settlement should not be included in calculating the fee award. If the Court were to include these costs, it would have "eliminated the incentive of class counsel to economize on that expense—and indeed may have created a perverse incentive; for higher administrative expenses make class counsel's proposed fee appear smaller in relation to the total settlement than if those costs were lower." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014).

5

For the foregoing reasons, the Court should deny final approval of the settlement. Neither Objector nor I intend to appear at the fairness hearing.

DATE: /s/ 4-20-2018

Stephen Kron

Tucker | Pollard

By: /s/ Caroline Tucker

Caroline Tucker

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on April 20, 2018, and served by the same means on all counsel of record.

/s/ Caroline Tucker

Caroline Tucker