THEODORE H. FRANK (SBN 196332)
Competitive Enterprise Institute
  Center for Class Action Fairness
1310 L Street NW, 7th Floor
Washington, DC 20005
Voice: (202) 331-2263
Email: ted.frank@cei.org
*Attorney for Rachel Threatt*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, on behalf of herself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>                                    Defendant,<br>_____<br>RACHEL THREATT,<br><br>                                    Objector. | Case No. 3:16-cv-00492-L-WVG<br><br>**OBJECTION OF RACHEL THREATT**<br><br>Judge:  Hon. M. James Lorenz<br><br>Place:  Courtroom 5B<br><br>Hearing Date:  June 18, 2018, at 11:00 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

**I.**    Rachel Threatt is a member of the class and intends to appear through counsel at the fairness hearing. ....................................................................................... 2

**II.**    The Court owes a fiduciary duty to unnamed class members. ............................ 3

**III.**    Before the settlement can be approved, the parties must amend the settlement's residual clause to comport with limitations on *cy pres*. .................................... 5

**IV.**    The lodestar cross-check illuminates the excess of class counsel's fee request. ............ 7

      A.    Class counsel's proclaimed lodestar includes non-compensable hours; the actual multiplier approaches 18. ............................................................ 11

      B.    A multiplier of 18 or of 11 is unreasonable. ............................................ 14

**V.**    The percentage of recovery requested by class counsel is excessive and should be reduced to augment class recovery. ................................................................ 18

**VI.**    The Court should strike or disregard the Fitzpatrick Declaration. ................... 23

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*7-Eleven, Inc. v. Etwa Enter.*,
  2013 WL 2947112 (D. Md. Jun. 12, 2013) ............................................... 13

*ACLU v. Barnes*,
  168 F.3d 423 (11th Cir. 1999) ................................................................ 12

*Alexander v. FedEx Ground Package Sys.*,
  No. 05-cv-00038, 2016 WL 3351017 (N.D. Cal. June 15, 2016) ................... 8, 20

*Allen v. Dairy Farmers of Am.*,
  No. 5:09-cv-230, 2016 WL 3361544 (D. Vt. June 14, 2016) .......................... 21

*Anderson Living v. Wpx Energy Prod.*,
  306 F.R.D. 312 (D.N.M. 2015) .................................................................. 9

*In re BankAmerica Corp. Secs. Litig.*,
  775 F.3d 1060 (8th Cir. 2015) ............................................................... 6, 7

*Bayat v. Bank of the West*,
  2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ............................................. 10

*Beckman v. Keybank, N.A.*
  293 F.R.D. 467 (S.D.N.Y. 2013) .............................................................. 16

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................... 8, 15, 17, 20

*Blum v. Stenson*,
  465 U.S. 886 (1984) .............................................................................. 17

*Brown v. 22nd Dist. Agricultural Ass'n*,
  2017 WL 3131557 (S.D. Cal. Jul. 21, 2017) ............................................. 17

*Bruno v. Quten Research Inst.*, No. SACV 11-00173 DOC(Ex),
  2013 WL 990495 (C.D. Cal. Mar. 13, 2013) ............................................. 13

*Brytus v. Spang & Co.*,
  203 F.3d 238 (3d Cir. 2000) ..................................................................... 9

*In re Cendant Corp. PRIDES Litig.*,
  243 F.3d 722 (3d Cir. 2001) ................................................................... 16

*In re Chiron Corp. Sec. Litig.*,
  2007 WL 4249902 (N.D. Cal. Nov. 30, 2007) ............................................ 10

*In re Citigroup Inc. Secs. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ...................................................... 11

*In re Continental Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) .................................................................... 5

*Cosgrove v. Citizens Auto. Finance*,
    No. 09-1095, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011 .................................. 19

*Couser v. Comenity Bank*,
    No. 12-cv-2484-MMA, 2017 WL 2312080 (S.D. Cal. May 26, 2017) ................. 6

*Cruz v. Sky Chefs, Inc.*,
    2014 WL 7247065, at *7 (N.D. Cal. Dec. 19, 2014) ........................................... 10

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) .......................................................................4, 5, 6, 7

*Drazin v. Horizon Blue Cross Blue Shield of N.J.*,
    832 F. Supp. 2d 432 (D.N.J. 2011) .................................................................... 12

*Dugan v. Lloyds Tsb Bank*,
    No. C 12-02549 WHA, 2014 WL 1647652 (N.D. Cal. Apr. 24, 2014) ............. 14

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ............................................................................... 4

*Fangman v. Genuine Title*,
    2016 U.S. Dist. LEXIS 160434 (D. Md. Nov. 18, 2016) ................................. 11

*Florin v. Nationsbank, N.A.*,
    34 F.3d 560 (7th Cir. 1994) ............................................................................... 16

*Fujiwara v. Yasuda LTD.*,
    58 F. Supp. 3d 424 (S.D.N.Y. 2014) ................................................................ 16

*Gabriel Techs. Corp. v. Qualcomm*,
    No. 08-cv-1992 AJB (MDD), 2013 WL 410103 (S.D. Cal. Feb. 1, 2013) ........ 13

*Gehrich v. Chase Bank U.S.*,
    316 F.R.D. 215 (N.D. Ill. 2016) ........................................................................ 22

*GPF Waikiki Galleria v. DFS Group*,
    No. 07-cv-00293, 2007 WL 3195089 (D. Haw. Oct. 30, 2007) ........................ 24

*Greenberg v. Colvin*,
    2015 WL 4078042 (D.D.C. July 1, 2015) ......................................................... 10

*Grunin v. International House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ............................................................................. 10

*Gutierrez v. Wells Fargo Bank, N.A.*,
    No. 07-cv-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ............. 5

*Halley v. Honeywell Int'l, Inc.*,
    861 F.3d 481 (3d Cir. 2017) .............................................................................. 12

*Heighley v. J.C. Penney Life Ins. Co.*,
    257 F. Supp. 2d 1241 (C.D. Cal. 2003) ............................................................ 25

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983).................................................................................. 11, 13

*Hillson v. Kelly Servs.,*
    2017 WL 3446596 (E.D. Mich. Aug 11, 2017)...................................... 11

*Hofmann v. Dutch LLC,*
    317 F.R.D. 566 (S.D. Cal. 2016)............................................................. 6

*Hofmann v. Dutch LLC,*
    No. 14-cv-02418-GPC, 2017 WL 840646 (S.D. Cal. Mar. 2, 2017) ................... 6

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
    No. 09-md-2087-BTM, 2013 WL 6086933 (S.D. Cal. Nov. 19, 2013) ............... 5

*In re Hyundai and Kia Fuel Economy Litig.,*
    881 F.3d 679 (9th Cir. 2018)...................................................8, 15, 16, 17

*In re Infospace, Inc. Secs. Litig.,*
    330 F. Supp. 2d 1203 (W.D. Wash. 2004) .......................................... 12

*Johnston v. Comerica Mortg. Corp.,*
    83 F.3d 241 (8th Cir. 1996)................................................................... 23

*Klier v. Elf Atochem N. Am.,*
    658 F.3d 468 (5th Cir. 2011)................................................................... 7

*Kmiec v. Powerwave Tech.,*
    2016 WL 5938709 (C.D. Cal. Jul. 11, 2016) ...................................... 17

*Koby v. ARS Nat'l Servs.,*
    846 F.3d 1071 (9th Cir. 2017).......................................................... 6, 23

*Lota v. Home Depot U.S.A, Inc.,*
    2013 WL 6870006 (N.D. Cal. Dec. 31, 2013) .................................... 12

*Lukov v. Schindler Elevator Corp.,*
    No. 5:11-CV-00201-EJD, 2012 WL 2428251 (N.D. Cal. June 26, 2012) .......... 25

*In re Magsafe Apple Power Adapter Litig.,*
    571 Fed. Appx. 560 (9th Cir. 2014) .................................................... 17

*Makaeff v. Trump Univ.,*
    2015 WL 1579000 (S.D. Cal. Apr. 9, 2015) ...................................... 14

*Manner v. Gucci Am.. Inc..*
    2016 WL 6025850 (S.D. Cal. Oct. 13, 2016) .................................... 14

*McGee v. Bank of Am., N.A.,*
    2015 WL 4594582 (S.D. Fla. July. 30, 2015)................................... 12, 13

*In re Mercury Interactive Corp.,*
    618 F.3d 988 (9th Cir. 2010)............................................................ 4, 5

*Nachshin v. AOL, LLC,*
  663 F.3d 1034 (9th Cir. 2011)............................................................................ 4, 6

*Nat'l Alliance for Accessability v. Hull Storey Retail Group*, No. 10-cv-778-J-34JBT,
  2012 WL 3853520 (M.D. Fla. Jun 28, 2012)................................................. 13

*Nationwide Transport Finance v. Cass Info. Sys.,*
  523 F.3d 1051 (9th Cir. 2008).......................................................................... 23

*Nitsch v. DreamWorks Animation SKG,*
  2017 WL 2423161 (N.D. Cal. June 5, 2017)................................................. 11

*Nguyen v. BMW of N. Am.,*
  No. C 10-02257 SI, 2012 WL 1380276 (N.D. Cal. Apr. 20, 2012)................... 13

*In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010,*
  2016 WL 6215974 (E.D. La. Oct. 25, 2016).................................................... 12

*Parsons v. Volkswagen,*
  341 P.3d 662 (Okla. 2014) ............................................................................... 12

*Pearson v. NBTY, Inc.,*
  772 F.3d 778 (7th Cir. 2014)............................................................................. 7

*Perdue v. Kenny A.,*
  559 U.S. 542 (2010)............................................................................ 15, 16, 17

*In re Pet Food Prods. Liab. Litig.,*
  629 F.3d 333 (3d Cir. 2010) ............................................................................ 15

*Pinal Creek Group v. Newmont Mining Corp.,*
  352 F. Supp. 2d 1037 (D. Ariz. 2005)............................................................ 24

*Reyes v. Bakery & Confectionary Union,*
  2017 WL 6623031 (N.D. Cal. Dec. 28, 2017) ............................................... 14

*Rodriguez v. Barrita, Inc.,*
  53 F. Supp. 3d 1268 (N.D. Cal. 2014) ............................................................ 17

*Rose v. Bank of Am. Corp.,*
  2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ............................................... 10

*In re Sears Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.,*
  867 F.3d 791 (7th Cir. 2017)............................................................................ 15

*Shaw v. BOKF, N.A.,*
  2015 WL 6142903 (N.D. Okla. Oct. 19, 2015) ......................................... 12, 13

*Sinanyan v. Luxury Suite Int'l,*
  No. 2:15-cv-00225-GMN-VCF, 2016 WL 4394484 (D. Nev. Aug. 17, 2016).. 22

*Smith v. CRST Van Expedited, Inc.,*
  10-CV-1116-IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013)............... 18

*Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM,
2011 WL 2559565 (D. Nev. Jun. 27, 2011) .......................................... 17

*St. Hilaire v. Indus. Roofing Co.*,
346 F. Supp. 2d 212 (D. Me. 2004)...................................................... 14

*Stathakos v. Columbia Sportswear Co.*,
No. 15-cv-04543-YGR, 2018 WL 1710075 (N.D. Cal. Apr. 9, 2018)............... 24

*Stobie Creek Invs. v. United States*,
81 Fed. Cl. 358 (Ct. Fed. Cl. 2008) ...................................................... 24

*Thomas v. Magnachip Semiconductor Inc.*,
No. 14-cv-01160-JST, 2016 WL 1394278 (N.D. Cal. Apr. 7, 2016)................... 7

*Viceral v. Mistras Group*,
2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ................................... 10, 17

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)......................................................8, 16, 18

*Xuechen Yang v. Focus Media Holding*,
2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ......................................... 10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
MDL No. 2672 CRB, 2017 WL 1352859 (N.D. Cal. Apr. 12, 2017) ................ 25

*Wal-Mart Stores v. Visa USA*,
396 F.3d 96 (2d Cir. 2005) ................................................................ 20

*Walsh v. Popular, Inc.*,
839 F. Supp. 2d 476 (D.P.R. 2012) ..................................................... 21

*In re Washington Pub. Power Supply Sys. Litig.*,
19 F.3d 1291 (9th Cir. 1994).............................................. 4, 8, 10, 14, 17

*Weeks v. Kellogg Co.*,
No. 09-cv-8102, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ...................... 16

*Wininger v. SI Mgmt. L.P.*,
301 F.3d 1115 (9th Cir. 2002)............................................................... 8

*Yamada v. Nobel Biocare Holding AG*,
825 F.3d 536 (9th Cir. 2016).......................................................... 9, 10

**Rules and Regulations**

Rule 23(h) ............................................................................... 15

42 U.S.C. § 1988 ...................................................................... 15

Advisory Committee Notes on 2003 Amendments to Rule 23....................... 5

## Other Authorities

American Law Institute, Principles of the Law of Aggregate Litig. § 3.07 (2010) ..... 6, 7

Eisenberg, Theodore & Miller, Geoffrey P.,
*Attorney Fees and Expenses in Class Action Settlements: 1993-2008,*
7 J. EMPIRICAL LEGAL STUD. 248 (2010) .............................................. 20

Estes, Andrea,
*Critics hit law firms' bills after class-action lawsuits,*
BOSTON GLOBE (Dec. 17, 2017) ......................................................... 3

Fitzpatrick, Brian T.,
*An Empirical Study of Class Action Settlements and Their Fee Awards,*
7 J. EMPIRICAL LEGAL STUD. 811 (2010) ......................................... 21, 25

Brian T. Fitzpatrick,
*Do Class Action Lawyers Make Too Little?,*
158 U. PA. L. REV. 2043 (2010) ....................................................... 25

Fitzpatrick, Brian T.,
*The End of Objector Blackmail?,*
62 VAND. L. REV. 1623 (2009) ......................................................... 3

Gorsuch, Neil M. & Matey, Paul B.
*Settlements in Securities Fraud Class Actions: Improving Investor Protection,*
WASH. L. FOUND., 23 (2005) ............................................................ 8

Walker, Vaughn R. & Horwich, Ben,
*The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases,*
18 GEO. J. LEGAL ETHICS 1453 (2005) ............................................... 8

Wasserman, Rhonda,
*Cy Pres In Class Action Settlements,*
88 S. CAL. L. REV. 97 (2014) ........................................................... 7

Wolfman, Brian,
*Judges! Stop Deferring to Class-Action Lawyers,*
2 U. MICH J. L. REFORM 80 (2013) ................................................... 8

Wolfman, Brian & Morrison, Alan B.
*Representing the Unrepresented in Class Actions Seeking Monetary Relief,*
71 N.Y.U. L. REV. 439 (1996) ........................................................... 8

Zywicki, Todd J., *et al.,*
*Price Controls on Payment Card Interchange Fees: The U.S. Experience,*
George Mason Law & Economics Research Paper No. 14-18 (2014) ............. 23

## INTRODUCTION

Class counsel seek an astonishing $7,715 per hour in fees for their work over the course of a mere 20 month-litigation that settled on docket entry number 69. The work did not require a massive team of lawyers working around the clock. Rather, it was a fly-by-night operation requiring less than 2200 hours, with counsel lobbing similar actions in various other courts to see where they might succeed. *See* Fee Motion 12, 20. The fee request is audacious on its face, representing more than 11 times the claimed value of their hourly work, but it gets worse once one looks past the superficial lodestar presentation. In particular, counsel improperly seek credit in their lodestar for work on *other* litigations, future anticipated hours, and time spent on their fee request, as well as an excessive number of hours for settlement work. Once one removes those excessive hours, the fee multiplier increases to nearly 18, equal to an hourly rate of $11,894. This unreasonableness is compounded by the strong presumption set by the Supreme Court that lodestar is sufficient without a multiplier.

The class should not be billed such an excessive amount. Their claims were significantly compromised; by class counsel's own estimation, they are recovering less than 10% of the value of their claims. In other words, the class is being asked to settle, while counsel is handsomely rewarded many times over with funds that should be used to augment class members' recovery. The Court should reduce the fee award to no more than 10% of the net fund, or $6.66 million, which still amounts to a 4.75 multiplier and will return about $10 million to the class.

That counsel seeks to apply the Circuit's benchmark shows precisely why a lodestar crosscheck is important to prevent windfalls. But even when assessed on its own, 25% of $66.6 million is too high. First, the fund amount includes $29.1 million of "debt reduction," for class members whose accounts were closed with a negative balance—a structure that is less beneficial

to them than cash and costs Bank of America, N.A. ("BANA") significantly less due to the unlikelihood it would ever recover anywhere close to 100% of the delinquent amounts. Second, the size of the fund is due not to the efforts of class counsel but to the size of the class. In such cases, the fee percentage should be reduced from the benchmark to account for economies of scale. Finally, the change in BANA's practice regarding extended overdrawn balance charges ("EOBCs") should be disregarded for purposes of the fee award, as it will simply shift the types of fees that BANA charges the class rather than eliminate them entirely.

In addition, the Court should strike or disregard the Declaration of Brian T. Fitzpatrick because the gist of his report constitutes inadmissible legal conclusions. The Court is solely responsible for, and fully capable of, concluding what the law is and how it applies to the applicable facts. Fitzpatrick's aggregation of the case law and opinions about the value of this particular case are unhelpful and improper.

Finally, the Settlement includes an impermissible provision giving the parties authority to decide whether to redistribute residual funds to an unnamed third party or to the class. The Court should require amendment of this *cy pres* provision before approving the settlement.

## I.   Rachel Threatt is a member of the class and intends to appear through counsel at the fairness hearing.

Objector Rachel Threatt is a member of the class. Her address is 304 Sunset Trail, New Lenox, IL 60451. Her telephone number is (314) 750-0921. *See* Declaration of Rachel Threatt ("Threatt Decl.") ¶ 2. Threatt holds a BANA consumer checking account. Between February 25, 2014, and December 30, 2017, she was assessed at least one EOBC that was not refunded. She received notice by postcard of the proposed settlement in this action. *Id.* ¶¶ 3-4. She has not previously filed an objection to any class action settlement. *Id.* ¶ 6.

Threatt intends to appear at the June 18, 2018, fairness hearing through her *pro bono* attorney Theodore H. Frank of the Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF"). Frank is a member of the bar of the Southern District of California. At this time, Threatt does not intend to call any witnesses at the fairness hearing, but reserves the right to make use of all documents entered on the docket by any settling party or objector and the right to cross-examine any witnesses who testify at the hearing in support of final approval.

CCAF represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. Since it was founded in 2009, CCAF has "recouped more than $100 million for class members" by driving the settling parties to reach an improved bargain or by reducing outsized fee awards. Andrea Estes, *Critics hit law firms' bills after class-action lawsuits*, BOSTON GLOBE (Dec. 17, 2017). CCAF's track record—and preemptive response to the most common false *ad hominem* attacks made against it by attorneys defending unfair settlements and fee requests—can be found in the Declaration of Theodore H. Frank. To avoid doubt about her motives, Threatt is willing to stipulate to an injunction prohibiting her from accepting compensation in exchange for the settlement of her objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem). Threatt brings this objection through CCAF in good faith to protect the interests of the class. Threat Decl. ¶8.

## II.   The Court owes a fiduciary duty to unnamed class members.

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). Unlike

ordinary settlements, "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations…. [T]hus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id.* To guard against this danger, a district court must act as a "fiduciary for the class … with 'a jealous regard'" for the rights and interests of absent class members. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting *In re Washington Pub. Power Supply Sys. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1302 (9th Cir. 1994)). Threatt raises two primary objections, both of which invoke the Court's special fiduciary role: (1) the settlement's residual clause authorizes class counsel to prioritize yet-to-be-designated *cy pres* recipients ahead of class members' interests; and (2) class counsel seeks an excessive and unreasonable fee.

First, *cy pres*, "unbridled by a driving nexus between the plaintiff class and the *cy pres* beneficiaries—poses many nascent dangers to the fairness of the distribution process." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). As such, any *cy pres* provision "must be examined with great care to eliminate the possibility that it serves only the 'self-interests' of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious." *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012).

With respect to Threatt's objection to class counsel's fee request, the need for court oversight is even more apparent. At the fee-setting stage, the relationship between class counsel and the class turns directly and unmistakably adversarial because counsel's "interest in getting paid the most for its work representing the class [is] at odds with the class' interest in securing the largest possible recovery for its members." *Mercury Interactive*, 618 F.3d at 994. Given this inherent adversity, there can be no deference to class counsel's recommendation. Meanwhile,

"in most common-fund cases, defendants have little interest in challenging class counsel's timesheets." *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-05923 WHA, 2015 WL 2438274, at *6 (N.D. Cal. May 21, 2015). That is the case here. The settlement permits without opposition from the defendant, any fee request up to 25% of the gross settlement fund. Settlement § 3.2. No individual class member has the financial incentive to object to an exorbitant fee request either; "[h]is gain from a reduction, even a large reduction, in the fees awarded the lawyers would be miniscule." *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992). The district court (and good-faith public-minded objectors) serve as the last line of defense. "Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process." Advisory Committee Notes on 2003 Amendments to Rule 23.

## III. Before the settlement can be approved, the parties must amend the settlement's residual clause to comport with limitations on *cy pres*.

In relevant part, the settlement provision governing the dispositive of residual settlement funds reads as follows: "At the election of Class Counsel and counsel for BANA, and subject to the approval of the Court, the funds may be distributed to Settlement Class Members via a secondary distribution if economically feasible or through a residual cy pres program." Settlement § 3.5. This provision suffers from two fatal defects. <u>First</u>, neither the settlement nor accompanying class notice identify a proposed *cy pres* beneficiary, thus rendering the settlement "unacceptably vague." *Dennis*, 697 F.3d at 867. <u>Second</u>, Section 3.5 permits the parties to choose between a secondary class distribution or a *cy pres* distribution at their discretion. But there should be no discretion granted; if secondary class distributions are economically feasible, the law requires them. *E.g.* AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.07(b) (2010) ("*ALI Principles*"); *In re BankAmerica Corp. Secs. Litig.*, 775

F.3d 1060, 1066 (8th Cir. 2015) (finding "void ab initio" a provision that purported to override *ALI Principles* § 3.07(b)); *see also In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087-BTM, 2013 WL 6086933, at *4 (S.D. Cal. Nov. 19, 2013) (following *ALI Principles* § 3.07(b) and denying settlement approval). Simply put, *cy pres* "is not appropriate" where "the settlement is distributable to class members." *Hofmann v. Dutch LLC*, 317 F.R.D. 566, 578 (S.D. Cal. 2016).

As a threshold matter, the residual clause founders by failing to propose a "concrete, identifiable beneficiary." *Hofmann v. Dutch LLC*, No. 14-cv-02418-GPC, 2017 WL 840646, at *5 (S.D. Cal. Mar. 2, 2017). "To ensure that the settlement retains some connection to the plaintiff class and the underlying claims … a cy pres award must qualify as the next best distribution to giving the funds directly to class members." *Dennis*, 697 F.3d at 865. Where the parties do not establish the potential recipient has such an appropriate nexus, the settlement will not be approved. *E.g.*, *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1080 (9th Cir. 2017); *Couser v. Comenity Bank*, 2017 WL 2312080, at *4 (S.D. Cal. May 26, 2017).

Moreover, in an opt-out settlement, providing the identity of potential *cy pres* recipients preserves the right of absent class members to distance themselves from causes or institutions that they would rather not support. The information can underpin a valid objection if there is an abuse of the *cy pres* mechanism if, for example, the intended recipient is related to class counsel or a defendant, or when there is a geographic incongruence between the class and the recipient. *See Nachshin*, 663 F.3d 1034. Even where *cy pres* only arises from residual funds, it is still "impermissible" to decline to specify a particular recipient. *Thomas v. Magnachip Semiconductor Inc.*, No. 14-cv-01160-JST, 2016 WL 1394278, at *8 (N.D. Cal. Apr. 7, 2016). The settlement's failure to designate a recipient deprives the class of its due notice and this Court of any ability to conduct the searching review necessary. "'Just trust us. Uphold the settlement now, and we'll

tell you what it is later'" is not a permissible limiting principle. *Dennis*, 697 F.3d at 869.

Nor is "just trust us" an acceptable proposition for deciding whether remaining funds should go to the class or non-class third parties. "The settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair." *ALI Principles* § 3.07(b). This "last resort" rule follows from the precept that "[t]he settlement-fund proceeds, … generated by the value of the class members' claims, belong solely to the class members." *Klier v. Elf Atochem N. Am.*, 658 F.3d 468, 474 (5th Cir. 2011). To serve the class's interests, *cy pres* can only be employed as a last resort upon a showing that further distributions are impossible. *BankAmerica*, 775 F.3d at 1064; *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).[1] The residual clause unlawfully gives the parties discretion to ignore the last resort rule. The Court should deny settlement approval until the parties amend Section 3.5 to conform with applicable law.

## IV.     The lodestar cross-check illuminates the excess of class counsel's fee request.

The Ninth Circuit encourages cross-checking any percentage-based fee request using the lodestar method to "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir.

---

[1] If additional distributions would provide "a windfall to class members with liquated-damages claims that were 100 percent satisfied by the initial distribution," then a *cy pres* remedy may also be proper. *BankAmerica Corp.*, 775 F.3d at 1064. But "a vague anxiety over windfalls" cannot justify preferring *cy pres* to class redistributions. Rhonda Wasserman, *Cy Pres In Class Action Settlements*, 88 S. Cal. L. Rev. 97, 160 (2014). In any event, there should be no dispute here that class members are not fully compensated. Debt reduction claims are capped at $35, and the cash component of the settlement ($37 million) is less than 5% of the amount plaintiffs claim is at stake in the case ($756 million). Mot. for Prelim. App. (Dkt. 69-1) at 17.

2011). A second method provides a "useful perspective" and enables the Court to "guard against an unreasonable result." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *In re Hyundai and Kia Fuel Economy Litig.*, 881 F.3d 679, 705 (9th Cir. 2018). Cross-checking becomes even more important as the size of the settlement increases. *Alexander v. FedEx Ground Package Sys.*, No. 05-cv-00038, 2016 WL 3351017, at *2 (N.D. Cal. June 15, 2016); *see also WPPSS*, 19 F.3d at 1298 (describing how percentage-based awards become particularly arbitrary for large funds). Keeping in mind the Court's duty to class members, the goal is to uncover a "disparity between the percentage-based award and the fees the lodestar method would support." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1124 n.8 (9th Cir. 2002).

Because of the potential to discourage hasty, undervalued settlements with generous attorney payments, legal scholars, practitioners, and judges have even gone so far as to call the lodestar cross-check "essential." Brian Wolfman & Alan B. Morrison, *Representing the Unrepresented in Class Actions Seeking Monetary Relief*, 71 N.Y.U. L. REV. 439, 503 (1996); *see also* Brian Wolfman, *Judges! Stop Deferring to Class-Action Lawyers*, 2 U. MICH J. L. REFORM 80, 84-85 (2013) (describing risk of cheap, quick and undervalued settlement); Neil M. Gorsuch & Paul B. Matey, *Settlements in Securities Fraud Class Actions: Improving Investor Protection*, WASH. L. FOUND., 23 (2005), *available at* http://www.wlf.org/upload/0405WPGorsuch.pdf (lodestar cross-check is an "important safeguard"); Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18 GEO. J. LEGAL ETHICS 1453, 1454 (2005) ("[W]e argue that courts making common fund fee awards are ethically bound to perform a lodestar cross-check.").

Here, plaintiffs concede that they resolved the case at an early stage, yet they resist the application of the lodestar cross-check that is meant to safeguard the class in such situations.

*Compare* Fee Motion 14-15 *with* Fee Motion 20-21. Plaintiffs' expert Professor Fitzpatrick not only disagrees with Justice Gorsuch that the cross-check is an "important safeguard," he opines that a lodestar cross-check is affirmatively bad policy. Fitzpatrick Decl. ¶ 24. He is incorrect, mostly because he ignores the difference between employing the lodestar as baseline methodology and employing the lodestar as a backup cross-check. When used as a base methodology, lodestar occasions a misalignment between the interests of class members and their counsel, because a counsel's fees do not depend on the success its client obtains. However, when lodestar is only employed as a cross-check, the ultimate fee still depends upon the benefit conferred on class members. The cross-check resolves certain problems created by a pure percentage approach: It prevents a trial penalty,[2] it forecloses hourly windfalls that a functioning marketplace would not allow, and it discourages risk-averse[3] counsel from entering into quick agreements that amount to a small percentage of potential recovery. Fitzpatrick and plaintiffs quote out of context the Ninth Circuit's decision in *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016), to claim that the lodestar cross-check is entirely discretionary. Fee Motion 20; Fitzpatrick Decl. ¶23. The full sentence from *Yamada* reads: "But where, as here, classwide benefits are not easily monetized, a cross-check is entirely discretionary." 825 F.3d at 547. *Yamada* refers only to percentage cross-checks of a base lodestar award; it is irrelevant here. What is relevant is the Ninth Circuit's general principle that "courts cannot rationally apply any particular percentage…without reference to all the circumstances of the case." *WPPSS*, 19 F.3d at 1298. "All the circumstances of the case" certainly includes the time expended

---

[2] *See Brytus v. Spang & Co.*, 203 F.3d 238, 247 (3d Cir. 2000).

[3] Because they have more at stake, class counsel are naturally more risk averse than any given absent class member. *E.g., Anderson Living v. Wpx Energy Prod.*, 306 F.R.D. 312, 442 n.90 (D.N.M. 2015).

by class counsel. "Without such an inquiry there is a grave danger that the bar and bench will be brought into disrepute, and there will be prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are seeking compensation." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 128 (8th Cir. 1975) (cleaned up).

Unsurprisingly then, a large number of courts have heeded the Ninth Circuit's advice by employing a lodestar cross-check, reducing fees and augmenting class recovery, even where class counsel has requested no more than the 25% benchmark. *See, e.g.*, *In re Chiron Corp. Sec. Litig.*, 2007 WL 4249902, at *7 (N.D. Cal. Nov. 30, 2007) (refusing to grant 25% where it equated to excessive multiplier of 8-10); *Rose v. Bank of Am.*, 2014 WL 4273358, at *12-*13 (N.D. Cal. Aug. 29, 2014) (refusing to grant 25% where it  equated to excessive multiplier of 8.65, instead granting multiplier of 2.59 or 7.4% of fund); *Xuechen Yang v. Focus Media Holding*, 2014 WL 4401280, at *16 (S.D.N.Y. Sept. 4, 2014) (refusing to award 25% where it amounted to a 3.99 multiplier, instead awarding 10%); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *7 (N.D. Cal. Dec. 19, 2014) (refusing to grant 25% where it would have amounted to a 1.63 multiplier; instead awarding 17% in fees for 1.12 multiplier); *Bayat v. Bank of the West*, 2015 WL 1744342, at *8-*9 (N.D. Cal. Apr. 15, 2015) (refusing to award 25% that equated to 2.76 multiplier when result was less than stellar); *Greenberg v. Colvin*, 2015 WL 4078042, at *8 (D.D.C. July 1, 2015) (reducing fee from 25% to 20% where class counsel would have otherwise been entitled to $3,000/hour); *Fangman v. Genuine Title*, 2016 U.S. Dist. LEXIS 160434, at *36 (D. Md. Nov. 18, 2016) (refusing to grant 20% of constructive common fund with 7.5 multiplier, instead granting fees of 15% for 5.6 multiplier); *Viceral v. Mistras Group*, 2017 WL 661352, at *4 (N.D. Cal. Feb. 17, 2017) (refusing to grant 25% where 1.13 multiplier would result); *Nitsch v. DreamWorks Animation SKG*, 2017 WL 2423161 (N.D. Cal. June 5, 2017) (finding 3.91 multiplier too high

(amounting to 21%), awarding 2.0 multiplier (amounting to 11%)); *Hillson v. Kelly Servs.*, 2017 WL 3446596, at *5-*6 (E.D. Mich. Aug 11, 2017) (declining to award 25% when it amounted to 4.5 multiplier; following Newberg's presumptive multiplier ceiling of 4 and awarding 21.5%).

The Court should cross-check plaintiffs' fee request using the lodestar method, and find, for reasons discussed below, that awarding class counsel the fee they seek would in fact result in the type of "exorbitant hourly rate" that the crosscheck seeks to protect against.

### A. Class counsel's proclaimed lodestar includes non-compensable hours; the actual multiplier approaches 18.

Although the lodestar cross-check does not require the bean-counting that the base lodestar method entails, it would "serve[] little purpose as a crosscheck if it is accepted at face value." *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369, 389 (S.D.N.Y. 2013). For purposes of the calculation, plaintiffs proffer that class counsel here has reasonably expended a total of 2,158 hours. Fee Motion 20. But district courts "should exclude" "hours that were not reasonably expended" where cases are "overstaffed" and hours are "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Here, the following categories of hours should be excluded entirely: (1) pre-*Farrell* time for work on other litigation (*i.e. McGee v. Bank of Am., N.A.*, 2015 WL 4594582 (S.D. Fla. July. 30, 2015); *Shaw v. BOKF, N.A.*, 2015 WL 6142903 (N.D. Okla. Oct. 19, 2015)); (2) anticipated future hours that have not yet been expended; and (3) time spent on class counsel's fee application. Additionally, time spent on settlement mediation, negotiation and drafting is excessive and should be reduced.

Contrary to Fitzpatrick's unsupported assertion,[4] attorney time is not compensable when

---

[4] The only case Fitzpatrick cites for the proposition that "it is not uncommon to treat time intertwined across cases as one for purposes of the lodestar crosscheck" is *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 2016 WL 6215974 (E.D.

it is "fundamentally related to a separate legal proceeding." *Lota v. Home Depot U.S.A*, 2013 WL 6870006, at *8 (N.D. Cal. Dec. 31, 2013); *In re Infospace, Inc. Secs. Litig.*, 330 F. Supp. 2d 1203, 1214 (W.D. Wash. 2004); *Parsons v. Volkswagen*, 341 P.3d 662, 667-68 (Okla. 2014). "An attorney is not entitled to be paid in [an action] for the work he or another attorney did in some other case." *ACLU v. Barnes*, 168 F.3d 423, 430 (11th Cir. 1999); *cf. also Halley v. Honeywell Int'l*, 861 F.3d 481, 501 (3d Cir. 2017) (vacating decision allowing attorney expenses from one case to be charged in settlement of another). There is good reason to treat each litigation as its own unit. While classes may overlap across cases, they are not coextensive. For example, neither *McGee* nor *Shaw* was brought on behalf of *Farrell* class members who incurred their first extended overdrawn balance charge in 2017 (*McGee* and *Shaw* had terminated by then). Such class members should not be charged for class counsel's earlier work on behalf of other persons. More generally, it does not "confer a benefit on the class" to incur litigation costs from two duplicative parallel cases. *Drazin v. Horizon Blue Cross Blue Shield of N.J.*, 832 F. Supp. 2d 432, 443 (D.N.J. 2011), *aff'd* 528 Fed. Appx. 211 (3d Cir. 2013). Further, class counsel seek to be awarded Southern District of California rates (a blended rate of more than $660/hr)[5] for work done in less expensive forums: Ft. Lauderdale, FL (*McGee*) and Tulsa, OK (*Shaw*). Finally, paying class counsel for unsuccessful

---

La. Oct. 25, 2016). Fitzpatrick Decl. ¶26 n.6. But that decision has no analysis of the issue, nor the further problem of work expended in cases spanning multiple jurisdictions.

    [5] Although Threatt does not contest class counsel's hourly rates *per se*, a blended rate of $661/hour is likely well above the typical blended rate in this Circuit. *Bruno v. Quten Research Inst.*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013) (blended rate of $366.87/hr); *Nguyen v. BMW of N. Am.*, 2012 WL 1380276, at *3 (N.D. Cal. Apr. 20, 2012) (blended rate of $470/hr); *see also Gabriel Techs. Corp. v. Qualcomm*, 2013 WL 410103, at *9 (S.D. Cal. Feb. 1, 2013) (blended rate of $447/hr is "in line with that of the community" when compared to California peers).

outside work undermines their fundamental argument for a lodestar multiplier: that the risk of this litigation necessitates a multiplier to make them whole. Thus the 343.75 hours[6] spent litigating pre-*Farrell* cases should be eliminated from the lodestar.

Second, courts do not permit attorneys to include anticipated future time in their lodestar. "The law is settled that in calculating the lodestar, the Court must use 'the number of hours reasonably **expended** on the litigation,' and the movant 'should submit evidence supporting the hours worked." *See Nat'l Alliance for Accessability v. Hull Storey Retail Group*, No. 2012 WL 3853520, at *4 (M.D. Fla. Jun 28, 2012) (quoting *Hensley*, 461 U.S. at 433 (1983) and adding emphasis); *see also 7-Eleven, Inc. v. Etwa Enter.*, 2013 WL 2947112, at *5 (D. Md. Jun. 12, 2013) ("Plaintiff has not identified any authority that would entitle it to an award of 'anticipated legal fees and costs,' nor is the court aware of any."); *St. Hilaire v. Indus. Roofing*, 346 F. Supp. 2d 212, 215 (D. Me. 2004) (rejecting "Plaintiff's bald projection of reasonable future fees without corroborating support in the record"). The 88 anticipated future hours[7] should be excluded.

Third, "[t]ime spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the plaintiff class." *WPPSS*, 19 F.3d at 1999; *accord Manner v. Gucci Am., Inc.*, 2016 WL 6025850, at *4 (S.D. Cal. Oct. 13, 2016). The 64.75[8] hours spent on the fee application should be excluded.

---

[6] *See* Decl. of Jeff Ostrow (Dkt. 80-4) ¶10.2; Decl. of Hassan Zavareei (Dkt. 80-5) ¶16.2; Decl. of Cristina M. Pierson (Dkt. 80-6) ¶6.2; Decl. of Bryan S. Gowdy (Dkt. 80-7) ¶7.2. The fact that counsel channeled more than five times greater effort into this case in comparison to the unsuccessful *McGee* and *Shaw* also demonstrates why a multiplier is not warranted.

[7] *See* Ostrow Decl. ¶¶10.15-10.16; Zavareei Decl. ¶¶16.15-16.16; Pierson Decl. ¶¶6.15-6.16; Gowdy Decl. ¶¶7.13, 7.16.

[8] Ostrow Decl. ¶10.14; Zavareei Decl. ¶16.14; Pierson Decl. ¶6.14; Gowdy Decl. ¶7.14.

Fourth, class counsel includes an excessive 561.75 hours[9] spent on settlement mediation, negotiation and drafting. *See Dugan v. Lloyds Tsb Bank*, No. C 12-02549, 2014 WL 1647652, at *4 (N.D. Cal. Apr. 24, 2014) (327 hours for class settlement negotiation "is excessive"). The root of the overbilling is that plaintiffs involved at least 8 high-priced attorneys in the settlement process. *See Makaeff v. Trump Univ.*, 2015 WL 1579000, at *14 (S.D. Cal. Apr. 9, 2015) (it was "excessive to have three partners participating in the settlement conference"); *Reyes v. Bakery & Confectionary Union*, 2017 WL 6623031, at *11 (N.D. Cal. Dec. 28, 2017) ("no ... justification for having five partners attend the mediation"; reducing time by 60%). Threatt recommends that the Court reduce time spent on settlement to 300 hours to account for the duplication and inefficiency of so many attorneys.

All said, the proclaimed 2,158 hours are due to be reduced by approximately 758 hours, bringing the compensable hour count to 1399.75 hours. Keeping constant class counsel's blended rate of $661.74/hour—itself remarkably high—class counsel's actual lodestar amounts to $926,278.72, and actual requested multiplier is almost 18. In other words, class counsel seeks a total fee award equal to a fee of $11,894/hour of compensable work.

## B.    A multiplier of 18 or of 11 is unreasonable.

"[T]here is a strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Perdue v. Kenny A*, 559 U.S. 542, 546 (2010). *Kenny A.* allocates "the burden of proving that an enhancement is necessary [to] the fee applicant." *Id.* at 553. A lodestar enhancement is only justified in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id.* at 554; *accord Hyundai*, 881 F.3d at 706-07. Here, there was no trouble attracting counsel as there are four

---

[9] Ostrow Decl. ¶10.10; Zavareei Decl. ¶16.10; Pierson Decl. ¶6.10; Gowdy Decl. ¶7.10.

firms serving as class counsel who achieved a quick settlement for a small fraction of potential recovery. A multiplier of 18 or 11 is outside the permissible range of outcomes.

*Kenny A*'s limitation on enhancements was made in the context of interpreting 42 U.S.C. § 1988's language of "reasonable" fee awards, but there's little justification for claiming that "reasonable" in § 1988 means something different than "reasonable" in class action fee awards made under Fed. R. Civ. P. 23(h). *E.g., Hyundai*, 881 F.3d at 706-07 (applying *Kenny A.* to Rule 23(h) fee award pursuant to settlement); *Bluetooth*, 654 F.3d at 942 n.7 ("the Kerr factors only warrant a departure from the lodestar figure in rare and exceptional cases") (internal quotation omitted); *In re Sears Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 867 F.3d 791 (7th Cir. 2017) (applying *Kenny A.* to reduce 1.75 multiplier to 1); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 361 (3d Cir. 2010) (Weis, J. concurring/dissenting) (referring to *Kenny A.* as an "analogous statutory fee-shifting case."); *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *34 n.157 (C.D. Cal. Nov. 23, 2013) (citing *Kenny A.* and finding "little basis for an application of a multiplier" when calculating lodestar cross-check). All but one case cited by Fitzpatrick (Fitzpatrick Decl. ¶26) that awarded a significant multiplier predates *Kenny A.*, and that one outlier was an out-of-circuit decision that did not mention *Kenny A. Beckman v. Keybank, N.A.* 293 F.R.D. 467 (S.D.N.Y. 2013) (endorsing multiplier of 6.3). Indeed the very sentence plaintiffs rely on from *Beckman*—"courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers"—has been criticized as having "made its way into many court 'decisions' in [the Second] Circuit via proposed orders drafted by plaintiffs' attorneys." *Fujiwara v. Yasuda LTD.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014). But in reality, "the cases cited … in support of this

proposition provide weak support for such loft multipliers." *Id.* at 438.[10]

In fact, the Third Circuit has "strongly suggest[ed]" that a multiplier of 3 is an "appropriate ceiling for a fee award." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (vacating award that amounted to a multiplier of 7 or 10). Likewise, the Seventh Circuit has suggested that a multiplier of 2 might be a "sensible ceiling" to avoid unwarranted attorney windfalls." *E.g. Florin v. Nationsbank*, 34 F.3d 560, 565 (7th Cir. 1994). And while, *Vizcaino* ratified a 3.65 multiplier in 2002, the Ninth Circuit has more recently been skeptical of multipliers even less than 2. *See Hyundai*, 881 F.3d at 706-07 (doubting propriety of 1.22 multiplier); *In re Magsafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 564 (9th Cir. 2014) (doubting propriety of 1.51 multiplier).

Class counsel fail to provide a proper legal basis for the requested multiplier here. A multiplier "may not be awarded based on a factor that is subsumed in the lodestar calculation"— either in the number of hours or hourly rate. *Kenny A.*, 559 U.S. at 553. Thus, "the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are fully reflected in the number of billable hours recorded by counsel." *Id.* (cleaned up); *accord Bluetooth*, 654 F.3d at 942 n.7; *Brown v. 22nd Dist. Agricultural Ass'n*, 2017 WL 3131557, at * 7 (S.D. Cal. Jul. 21, 2017) (quoting *Blum v. Stenson*, 465 U.S. 886, 899 (1984)). Similarly, a multiplier based on outstanding results requires "exceptional success" beyond the "expectancy of excellent or extraordinary results" already baked into high hourly rates. *WPPSS*, 19 F.3d at 1304; *accord Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1287 (N.D. Cal. 2014); *Brown*,

---

[10] It is true that *Vizcaino* "noted" a multiplier as high as 19.6, but it never endorsed such a multiplier. The case involved only a 3.65 multiplier, and observed also that 83% of the multipliers it surveyed were less than 4.0. *See* 290 F.3d at 1051 n.6.

2017 WL 3131557, at * 7.

The settlement provides the class with less than 10% of its potential damages, with cash payouts of less than 5% of potential damages. Meanwhile, class counsel requests an 11 multiplier that is in reality an 18 multiplier, equating to fees of more than $11,000/hour. "[T]he class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright." *Sobel v. Hertz*, No. 3:06-CV-00545, 2011 WL 2559565, at *14 (D. Nev. Jun. 27, 2011).

Besides outstanding results, the other basis plaintiffs offer for an enhancement multiplier is the riskiness of the litigation. Fee Motion 13-14. But "the weak strength of Plaintiffs' case should not constitute a 'special circumstance' justifying enhancement of the fee award." *Viceral*, 2017 WL 661352, at *3. "This rationale would have the perverse effect of rewarding counsel for taking on weak or otherwise dubious cases" amounting to a "no lose proposition." *Id.* Rewarding weak cases more than strong cases is, to put it nicely, an "uncomfortable rule." *Kmiec v. Powerwave Tech.*, 2016 WL 5938709, *5 (C.D. Cal. Jul. 11, 2016); *see also Hyundai*, 881 F.3d at 706-07 (rejecting multiplier based on risk and complexity of case).

Even if risk multipliers are sometimes appropriate, granting the excessive one requested here is inappropriate for several reasons. Class counsel (1) included time spent on unsuccessful outside litigation in its lodestar accounting, effectively insuring away risk by seeking compensation whether they win or lose; (2) demonstrated the ability to funnel most of its hours to successful litigation and away from unsuccessful litigation; (3) took little opportunity risk in pursuing an overdraft action, an area with which it has great familiarity, and; (4) reached an early settlement. A 10% fee award of the undiscounted overinflated settlement value ($6.66 million) still amounts to a multiplier of 4.75. That stands at the outer limits of what this Court should permit.

## V.  The percentage of recovery requested by class counsel is excessive and should be reduced to augment class recovery.

The fee request is excessive even if the Court relies exclusively on the percentage-of-recovery approach. Again, "courts cannot rationally apply any particular percentage—whether 13.6[%], 25[%] or any other number—in the abstract, without reference to all the circumstances of the case." *Vizcaino*, 290 F.3d at 1048 (cleaned up). Here, there are several circumstances that make a $16.6 million fee based on the 25% benchmark independently excessive.

*First*, the $66 million that plaintiffs use as the denominator in the calculation is not all cash and should not be valued as equivalent to such in the fee analysis. Under the settlement, BANA will pay $37.5 million in cash and reduce debt currently owed by class members whose accounts were closed while an EOBC was still due by $29.1 million. Settlement §2.2(b). This structure costs BANA and benefits class members far less than the $66.6 million aggregate figure suggests because the "debt reduction" is worth less than cash to class members and costs BANA significantly less than a cash payment. Either the percentage should be reduced or the $29.1 million of debt reduction should be heavily discounted to account for its lower value.

The parties do not disclose whether BANA has already sold any debt from the closed, overdrawn accounts or how it otherwise has accounted for the debt. BANA may have sold the debt for mere pennies on the dollar or may not expect to recover anything from the accounts and have already written them off. (At least some of the class members with overdrawn accounts would have declared bankruptcy and had debts extinguished.) While these questions remain open, there is no question that BANA would not have recovered 100% of the $29.1 million debt eligible for reduction under the settlement. If a consumer has not paid her balance within 60 days—typically the length of time before a bank will close an overdrawn account—and has her account closed, the likelihood of later repayment is low.

At the same time, class members are worse off with debt reduction than cash. The parties do not disclose how many of these former accountholder-class members owe more than $35. (Since the $35 represents a credit of one EOBC, it is likely that many of them owe more than that amount because a negative balance is what would have triggered the EOBCs.).

As a result, it is not surprising that class attorneys commonly seek less than the 25% benchmark where the settlement relief includes debt reduction, even when courts recognize that such relief is of some benefit to class members. *E.g.*, *Smith v. CRST Van Expedited*, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) (approving request for 33.3% of cash payment, equaling 7.5% of settlement that included $2.6 million in cash and $9 million in debt relief, without including outreach to credit agency outreach and changes to training); *Cosgrove v. Citizens Auto. Finance*, 2011 WL 3740809, at *9-*10 (E.D. Pa. Aug. 25, 2011) (approving request for 11.7% of cash and debt relief without including value of credit repair).

**Second**, the percentage should be reduced to account for the economies of scale represented by the large settlement fund. "Absent unusual circumstances, the percentage will decrease as the size of the fund increases." *Alexander*, 2016 WL 3351017, at *1 (quoting a previous order of the court) (cleaned up). The Ninth Circuit has thus instructed that where, for example, awarding 25% of a "megafund" settlement yields "windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *Bluetooth*, 654 F.3d at 942-43. This holding reflects that "[t]he existence of a scaling effect—the fee percent decreases as class recovery increases—is central to justifying aggregate litigation such as class actions. Plaintiffs' ability to aggregate into classes that reduce the percentage of recovery devoted to fees should be a hallmark of a well-functioning class action system." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class*

*Action Settlements: 1993-2008*, 7 J. EMPIRICAL LEGAL STUD. 248, 263 (2010). Failing to apply a sliding scale will result in overcompensating law firms "who obtain huge settlements, whether by happenstance or skill, … to the detriment of the class members they represent." *Wal-Mart Stores v. Visa USA*, 396 F.3d 96, 122 (2d Cir. 2005).

At $66.6 million, this settlement at least approaches "megafund" status and, in any event, is large enough to implicate windfall concerns. Due to economics of scale, "[i]t is not [66] times more difficult to prepare, try, and settle a [$66] million case than it is to try a $1 million case. In many instances, the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." *Alexander*, 2016 WL 3351017, at *1 (cleaned up). Such is the case here. The settlement class includes approximately 5.9 million people. Notice § 5. Plaintiffs do not claim any added difficulty from the size of the class. Rather, the primary challenges were due to uncertainty over how certain legal issues involving the EOBCs would be resolved. Fee Motion 12-13. The work would have been the same whether there were 59 accountholders or 5.9 million. The 8-figure recovery is simply a result of plaintiffs targeting a large company.

No other factor justifies the windfall 25% sought by plaintiffs' counsel either. As discussed above, the result here was far from extraordinary, with class counsel compromising over 90% of the value of the class's claims. Counsel billed under 2200 hours on the case (and less than half of that on actual litigation of *this* case), settling about 20 months after filing the initial complaint. In other words, class counsel seek over $16.6 million for what amounts to barely more than one attorney-year of work. Few private attorneys, associate or partner, make an annual salary of $16.6 million. Plaintiffs try to explain away the significance of this factor, Fee Mem. 15, but, in reality, they had put little time or resources on the line by the time of

settlement. *See Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 483-84 (D.P.R. 2012) (reducing fees from 33% to 23% of $8.2 million fund where full discovery was not conducted in case involving "complicated web of jurisprudence" and motion to dismiss but no motion for summary judgment had been filed).

Further, while it is true, as reflected in class counsel's citations to cherry-picked case law, that courts have awarded fees of 25% or higher even in larger cases, empirical studies demonstrate that courts apply a sliding scale to prevent a windfall for plaintiffs' attorneys at the expense of the class. This is reflected even in the empirical work of plaintiffs' expert. Fitzpatrick has found that "fee percentages are strongly and inversely associated with the size of the settlement" and "the age of the case is positively associated with fee percentages." Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 814 (2010). For settlements in the $30 million to $72.5 million range for the study's two-year period, the scaling effect is apparent, with mean and median percentages of 22.3% and 24.9%, respectively. *Id.* at 839. *See also, e.g., Allen v. Dairy Farmers of Am.*, No. 5:09-cv-230, 2016 WL 3361544, at *8-*9 (D. Vt. June 14, 2016) (reducing fee from 33% to 14% of $80 million fund to augment recovery). In a short litigation such as this, where the fund is relatively large, and the class recovery relatively small compared to the amount sought by the complaint, then, a percentage further below the benchmark is appropriate.

That plaintiffs' counsel have retention agreements with the named plaintiffs setting their fees at 33.33% should not alter the Court's analysis. Such agreements "are owed little weight, given that named plaintiffs are usually paws of the class lawyers, and do not have a sufficient stake to drive a hard—or any—bargain with the lawyer[s]." *Gehrich v. Chase Bank U.S.*, 316 F.R.D. 215, 235 (N.D. Ill. 2016) (cleaned up); *Sinanyan v. Luxury Suite Int'l*, No. 2:15-cv-00225-

GMN-VCF, 2016 WL 4394484, at *3 n.3 (D. Nev. Aug. 17, 2016) (court must fully assess reasonableness of fee regardless of percentage agreed to by class representative).

*Finally*, the change in BANA's business practices will not benefit class members and thus does not provide any support for a higher percentage of recovery. Class counsel do not directly ask for fees to be based on the espoused benefit of the change but mention "non-monetary benefits" as a relevant consideration, and their expert opines that an upward departure where such benefits are achieved will incentivize class counsel to secure non-monetary relief. *See* Fee Mem. 16-17; Fitzpatrick Decl. ¶21. The problem, however, is that accountholders will not actually benefit. They will not "save" the estimated hundreds of millions of dollars in EOBC fees resulting from the change in practice.

Instead, BANA will simply charge accountholders other fees to make up for the revenue loss, leaving them no better off than if EOBCs were undisturbed. The effect of the Durbin Amendment to the Dodd-Frank financial reform legislation is illustrative. That amendment capped debit card interchange fees for large banks. The cap cut the average interchange fee for covered banks by about 50% per transaction, reducing annual revenues from these fees by $6-$8 billion. The banks nevertheless found ways to recover these lost revenues. For example, they reduced the availability of free accounts, tripled the minimum holding for free accounts, and doubled the monthly fee on non-free accounts, contributing to many with lower incomes leaving the banking system. Todd J. Zywicki, *et al.*, *Price Controls on Payment Card Interchange Fees: The U.S. Experience*, George Mason Law & Economics Research Paper No. 14-18 (2014).

Proverbially, there is no such thing as a free lunch. Accountholders who may be at risk of extended overdrawn balances will not suddenly receive a free benefit from BANA. Many of them may get frozen out of the banking system, or they will incur higher monthly account fees.

Plaintiffs have not made any showing to overcome this economic reality, yet they carry the burden of showing that class members will benefit from the settlement relief and of establishing a factual basis to support the requested fees. *See Koby*, 846 F.3d at 1079; *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). Nor have they established that BANA would not have changed its EOBC practice for business reasons and to avoid further litigation in the absence of the settlement. *Koby*, 846 F.3d at 1080.

## VI.     The Court should strike or disregard the Fitzpatrick Declaration.

Threatt asks the Court to strike or, in the alternative, to disregard the Fitzpatrick Declaration because it contains inadmissible legal conclusions and other legal arguments regarding the calculation of attorneys' fees. Testimony regarding matters of law is inadmissible under either Rule 701 or 702 because "[r]esolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Nationwide Transport Finance v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (internal quotation omitted). It is well established that "that expert testimony by lawyers, law professors, and others concerning legal issues is improper." *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005). Such legal opinions invade this Court's province as the "sole arbiter of the law." *GPF Waikiki Galleria v. DFS Group*, 2007 WL 3195089, at *5 (D. Haw. Oct. 30, 2007). "[T]he court is well equipped to instruct itself on the law." *Stobie Creek Invs. v. United States*, 81 Fed. Cl. 358, 361 (Ct. Fed. Cl. 2008), *aff'd* 608 F.3d 1366 (Fed. Cir. 2010). Having recently and successfully moved to strike expert testimony similar to Fitzpatrick's for offering legal opinions on the reasonableness of fees, class counsel should be familiar with these principles. *See Stathakos v. Columbia Sportswear*, No. 15-cv-04543, 2018 WL 1710075, at *5 n.6 (N.D. Cal. Apr. 9, 2018).

Here, the plaintiffs' expert seeks to usurp the Court's role by telling the Court which of

the available methodologies it should use and how to apply it to award fees and concluding that "this fee request is within the range of reason" under his review of the law. *E.g.*, Fitzpatrick Decl. ¶¶8, 11-12, 19. The Fitzpatrick Declaration predominantly analyzes *case law*, not facts. Class counsel may argue that the declaration presents factual "empirical data," but the declaration consists of little more than discussion of Fitzpatrick's interpretation of the case law and improper legal opinion dressed up as statistics, but derived exclusively from case law. (He also usurps the Court's role by opining on the value of BANA's change in practice regarding EOBCs and the risk in litigating over EOBCs without establishing *any* authority by which to do so. *E.g.*, *id.* ¶¶14, 19.) Citations to case law remain legal argument when the case law is averaged, and this is especially true when the averages are stretched into dubious legal conclusions. District courts often approve unopposed fee requests, and Fitzpatrick does not discuss how the characteristics of the averaged cases fare in comparison to this case. "Expert testimony" which simply surveys the law ought to be excluded under Rule 702. *See Lukov v. Schindler Elevator Corp.*, 2012 WL 2428251, at *2 (N.D. Cal. June 26, 2012) (excluding expert opinion based on "survey of state laws"); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260 & n.23 (C.D. Cal. 2003) (striking "interpretations of case law").

To the extent the Court considers the declaration, Fitzpatrick's opinion supports a deterrence-based class-members-don't-matter approach that would hold that it is appropriate to pay the attorneys 100% of the fund—and indeed, he has taken that position in his writings. Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?*, 158 U. PA. L. REV. 2043, 2047 (2010). It is little wonder that he is willing to endorse a contingency fee that pays the attorneys over $7700/hour—despite the fact that his own empirical work shows that a sub-25% fee is more typical in a settlement of this magnitude—and to excuse those characteristics that favor a

OBJECTION OF RACHEL THREATT

downward adjustment, such as length of litigation and double-digit lodestar multiplier. *See* Fitzpatrick, *supra*, 7 J. EMPIRICAL L. STUD. at 836, 839. This Court should join others in refusing to follow Fitzpatrick's opinion and apply its own discretion to award a more reasonable fee than the windfall requested by counsel. *E.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 1352859, at *3 (N.D. Cal. Apr. 12, 2017).

## CONCLUSION

For the foregoing reasons, the Court should deny settlement approval until the parties agree to amend the *cy pres* provision and reduce attorneys' fees to $6.66 million.

Dated: April 20, 2018          Respectfully submitted,


                               */s/ Theodore H. Frank*
                               Theodore H. Frank (SBN 196332)
                               COMPETIVE ENTERPRISE INSTITUTE
                                 CENTER FOR CLASS ACTION FAIRNESS
                               1310 L Street NW 7th Floor
                               Washington, DC 20005
                               Email: ted.frank@cei.org
                               Telephone: (202) 331-2263

                               *Attorney for Objector Rachel Threatt*

1        I, Rachel Threatt, am the objector. I sign my this written objection drafted by my

2  attorneys as required by the Court's Preliminary Approval Order (Dkt. 72) ¶ 4(a)(i) and Class

3  Notice § 14.

_Rachel Threatt_
Rachel Threatt