Theodore H. Frank (SBN 196332)
**COMPETITIVE ENTERPRISE INSTITUTE**
  **CENTER FOR CLASS ACTION FAIRNESS**
1310 L Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 331-2263
Email: ted.frank@cei.org
*Attorney for Rachel Threatt*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>                                    Defendant. | Case No. 3:16-cv-00492-L-WVG<br><br>**DECLARATION OF THEODORE H. FRANK**<br><br>Judge: Hon. M. James Lorenz<br><br>Place: Courtroom 5B<br><br>Hearing Date: June 18, 2018, at 11:00 a.m. |
| RACHEL THREATT,<br><br>                                    Objector. | |

I, Theodore H. Frank, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. My business address is Competitive Enterprise Institute, 1310 L Street NW, 7th

Floor, Washington, DC 20005. My telephone number is (202) 331-2263. My email address is ted.frank@cei.org.

3. I represent Objector Rachel Threatt, a class member in this matter.

## Center for Class Action Fairness

4. I founded the non-profit Center for Class Action Fairness ("CCAF"), a 501(c)(3) non-profit public-interest law firm based out of Washington, DC, in 2009. In 2015, CCAF merged with the non-profit Competitive Enterprise Institute ("CEI") and became a division within their law and litigation unit.

5. CCAF's mission is to litigate on behalf of class members against unfair class action procedures and settlements. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (praising CCAF's work); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objections in ascertaining the fairness of a settlement") (rejecting settlement approval and certification.) The Center has won millions of dollars for class members and received national acclaim for its work. *See, e.g.*, Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013 ("the leading critic of abusive class action settlements"); Roger Parloff, *Should Plaintiffs Lawyers Get 94% of a Class Action Settlement?*, FORTUNE, Dec. 15, 2015 ("the nation's most relentless warrior against class-action fee abuse"); The Editorial Board, *The Anthem Class-Action Con*, WALL ST. J., Feb. 11, 2018 (opining "[t]he U.S. could use more Ted Franks" while covering CCAF's role in exposing "legal looting" in the Anthem data breach MDL).

6. The Center has been successful, winning reversal or remand in fifteen federal appeals decided to date. *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017); *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608 (8th Cir. 2017); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016); *In re EasySaver Rewards Litig.*, 599 Fed. Appx.

274 (9th Cir. 2015) (unpublished); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560 (9th Cir. 2014) (unpublished); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). Several of these appeals centered around excessive fee awards. *E.g., Redman*; *Pearson*; *Bluetooth*. While, like most experienced litigators, we have not won every appeal we have litigated, CCAF has won the majority of them, including the majority of appeals brought in the Ninth Circuit.

7. CCAF has won more than a hundred million dollars for class members by driving the settling parties to reach an improved bargain or by reducing outsized fee awards. Andrea Estes, *Critics hit law firms' bills after class-action lawsuits,* BOSTON GLOBE (Dec. 17, 2016). *See also, e.g., McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members") (internal quotation omitted); *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (reducing fees, and thus increasing class recovery, by more than $26 million to account for a "significantly overstated lodestar"); *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) (parties nullify objection by eliminating *cy pres* and augmenting class fund by $2.5 million).

**Representation of Ms. Threatt**

8. On or about April 10, 2018, Ms. Threatt contacted CCAF regarding the proposed settlement in this action. After confirming that she is a class member and that she sought to object for good-faith reasons, CCAF agreed to represent Ms. Threatt in this case and file an objection on her behalf. In addition to myself, CCAF attorneys representing Ms. Threatt are Anna St. John, Adam Schulman, and Frank Bednarz.

## Pre-empting *Ad Hominem* Attacks

9. In my experience, class counsel, including some of the attorneys in this case, often respond to CCAF objections by making a variety of *ad hominem* attacks, often wildly false. The vast majority of district court judges do not fall for such transparent and abusive tactics. In an effort to anticipate such attacks and to avoid collateral litigation over a right to file a reply, I discuss and refute the most common ones below. If the Court is inclined to disregard the *ad hominem* attacks, it can avoid these collateral disputes entirely.

10. Class counsel often try to tar CCAF as "professional objectors," and then cite court opinions criticizing for-profit attorneys who threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of attorneys' fees. But this is not the non-profit CCAF's *modus operandi*, so the court opinions class counsel rely upon to tar CCAF are inapposite. *See* Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal F. 403, 437 n. 150 (public interest groups are not professional objectors); Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: Class Action Litig. Report (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements, and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees. The difference between a for-profit "professional objector" and a public-interest objector is a material one. As the federal rules are currently set up, "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection. In contrast, a public-interest objector such as myself has to triage dozens of requests for *pro bono* representation and dozens of unfair class action settlements, loses money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success, and has no interest in wasting limited resources and time on a "baseless objection." CCAF objects to only a small fraction of the number of unfair class action settlements it sees.

Case No. 3:16-cv-00492-L-WVG 4
DECLARATION OF THEODORE H. FRANK

11. While one district court called me a "professional objector" in a broader sense, that court stated that it was not meant pejoratively, and awarded CCAF fees for a successful objection and appeal that improved the settlement for the class. *Dewey v. Volkswagen*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012). Similarly, the Seventh Circuit in *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017) referred to me non-pejoratively as a "professional objector" in an opinion agreeing with my objection and reversing a settlement approval and class certification.

12. Indeed, CCAF feels strongly enough about the problem of bad-faith objectors profiting at the expense of the class through extortionate means that it has initiated litigation to require such objectors to disgorge their ill-gotten gains to the class. *See Pearson v. Target Corp.*, No. 17-2275 (7th Cir.); *see generally* Jacob Gershman, *Lawsuits Allege Objector Blackmail in Class Action Litigation*, WALL ST. J., Dec. 7, 2016.

13. Before I joined CEI, I had a private practice unrelated to my non-profit work. One of my former clients, Christopher Bandas, is a professional objector who has settled objections and withdrawn appeals for cash payments. I withdrew from representation of Mr. Bandas in 2015 when he undertook steps that interfered with my non-profit work. Mr. Bandas was criticized by the Southern District of New York after I ceased to represent him, and class counsel in other cases often cites that language and attempts to attribute it to me. Class counsel in multiple cases, using boilerplate language, has tried to make it seem like my paid representation of Mr. Bandas was somehow scandalous, using language like "forced to disclose" and "secret." The sneering is false: my representation of Mr. Bandas was not secret, as I filed declarations in my name on his behalf in multiple cases, noting under oath that I was being paid to perform legal work for him; I filed notices of appearances in cases where he had previously appeared; and my declaration in the *Capital One* case ending the relationship was filed voluntarily at great personal expense to myself, as I had been offered and refused to take a substantial sum of money to accede to a Lieff Cabraser fee award of over $3400/hour. I only worked for Mr. Bandas in cases where I believed there was a meritorious objection to

Case No. 3:16-cv-00492-L-WVG                                                                                       5
DECLARATION OF THEODORE H. FRANK

be made, had no role in any negotiations he made to settle appeals, and my pay was flat-rate or by the hour and not tied to his ability to extract settlements. I argued two appeals for Mr. Bandas, and won both of them. There is nothing scandalous about that, unless one believes it is scandalous for an attorney to be paid to perform successful high-quality legal services for a client. CCAF had no attorney-client relationship with Mr. Bandas, and Mr. Bandas never paid CCAF, other than for his share of printing expenses when he was an independent co-appellant representing clients unrelated to CCAF.

14. Firms whose fees we have objected to have previously (including one of the firms named as class counsel in this case) cited to *City of Livonia Employees' Ret. Sys. v. Wyeth*, No. 07 Civ 10329 (RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013), in efforts to tar CCAF. While the *Wyeth* court did criticize our client's objection (after mischaracterizing the nature of that objection), it ultimately agreed with our client that class counsel's fee request was too high, and reduced it by several million dollars to the benefit of shareholder class members.

15. Class counsel (again including one of the firms in this case) frequently cite an eight-year-old case, *Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 804 (N.D. Ohio 2010), where the district court criticized a policy-based argument by CCAF as supposedly "short on law"; however, CCAF ultimately was successful in the Seventh and Ninth Circuits on that same argument. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) (agreeing that reversionary clauses are a problematic sign of self-dealing); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) (same). Moreover, the court in *Lonardo* stated its belief that "Mr. Frank's goals are policy-oriented as opposed to economic and self-serving" and even awarded CCAF about $40,000 in attorneys' fees for increasing the class benefit by $2 million. *Lonardo*, 706 F. Supp. 2d at 813-17.

16. CCAF has no interest in pursuing "baseless objections," because every objection we bring on behalf of a class member has the opportunity cost of not having time to pursue a meritorious objection in another case. We are confronted with many more opportunities to object (or appeal erroneous settlement approvals) than we have resources to

use, and make painful decisions several times a year picking and choosing which cases to pursue, and even which issues to pursue within the case. CCAF turns down the opportunity to represent class members wishing to object to settlements or fees when CCAF believes the underlying settlement or fee request is relatively fair.

17. While I am often accused of being an "ideological objector," the ideology of CCAF's objections is merely the correct application of Rule 23 to ensure the fair treatment of class members. Likewise, I have often seen class counsel assert that I oppose all class actions and am seeking to end them, not improve them. The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. I have been writing and speaking about class actions publicly for nearly a decade, including in testimony before state and federal legislative subcommittees, and I have never asked for an end to the class action device, just proposed reforms for ending the abuse of class actions and class-action settlements. That I oppose class action abuse no more means that I oppose class actions than someone who opposes food poisoning opposes food. As a child, I admired Ralph Nader and consumer reporter Marvin Zindler (whose autographed photo was one of my prized childhood possessions), and read every issue of *Consumer Reports* from cover to cover. I have focused my practice on conflicts of interest in class actions because, among other reasons, I saw a need to protect consumers that no one else was filling, and as a way to fulfill my childhood dream of being a consumer advocate. I have frequently confirmed my support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN and in my certiorari petition filed in 2015 in *Frank v. Poertner*. On multiple occasions, successful objections brought by CCAF have resulted in new class-action settlements where the defendants pay substantially more money to the plaintiff class without CCAF objecting to the revised settlement. And I am the class representative in a pending federal class action, represented by a prominent plaintiffs' firm. *Frank v. BMOCorp., Inc.*, No. 4:17-cv-870 (E.D. Mo.).

18. On October 1, 2015, after consultation with its board of directors and its donors, CCAF merged with the much larger Competitive Enterprise Institute ("CEI"), to take advantage of the economies of scale realized by eliminating some of the enormous fixed costs required for bureaucratic administration of and regulatory compliance by non-profits. CCAF was on financially sound footing, and consistently growing its assets faster than its spending, but a disproportionate amount of attorney time was taken up with non-litigation tasks, and we were not large enough to justify hiring full-time communications, fundraising, or regulatory-compliance staff, which I felt was limiting our effect.

19. Prior to its merger with CEI, CCAF never took or solicited money from corporate donors other than court-awarded attorneys' fees. CEI, which is much larger than CCAF, does take a percentage of its donations from corporate donors. As part of the merger agreement, I negotiated a commitment that CEI would not permit donors to interfere with CCAF's case selection or case management. In the event of a breach of this commitment, I am permitted to treat the breach as a constructive discharge entitling me to substantial severance pay. CEI has honored that commitment.

20. To my knowledge, none of the corporate donors to CEI have earmarked contributions to CCAF. I am unaware of whether there exist any corporate donors to CEI who take a position on the underlying litigation in this case, though it is possible one exists. CEI pays me on a salary basis that does not vary with the result in any case. I do not receive a contingent bonus based on success in any case, a structure that would be contrary to I.R.S. restrictions.

21. For example, I am personally the objector-appellant in pending Third Circuit and Supreme Court appeals against two *cy pres* settlements of a corporate donor to CEI. No one at CEI has complained that I am currently prosecuting that appeal against the donor, sought to interfere with the pending appeal, or even told me that I was adverse to the donor. I only discovered that information by happenstance when looking at the corporate donor's website.

22. Similarly, CEI represented an objector to the massive Volkswagen Diesel MDL settlement, arguing that the settlement structure short-changed class members by hundreds of millions of dollars. I learned only after a plaintiffs' attorney opposed our motion for leave to file an *amicus* brief in that case that Volkswagen had previously donated to CEI. No one at CEI had told me Volkswagen was a donor, or asked me to refrain from litigating against a donor's interests.

23. My understanding is that CEI's litigation history includes several lawsuits against the interests of some of its corporate donors. Based on this and based on my own experience working at CEI since 2015, I have every confidence that CCAF will continue to have the autonomy for which I negotiated.

24. CEI was willing to merge with CCAF because it supported CCAF's pro-consumer mission and success in challenging abusive class-action settlements and fee requests. But it is a large organization affiliated with dozens of scholars who take a variety of controversial positions. Neither I nor CCAF's clients agree with all of those positions, and they should not be ascribed to me, my client, or this objection, any more than my support for a Pigouvian carbon tax should be ascribed to CEI scholars who have publicly opposed that position.

25. Some class counsels have accused us of improper motivation because CEI/CCAF has on occasion sought attorneys' fees. While CCAF is funded entirely through charitable donations and court-awarded attorneys' fees, the possibly of a fee award never factors into the Center's decision to accept a representation or object to an unfair class-action settlement or fee request.

26. CCAF's history in requesting attorneys' fees reflects this approach. Despite having made dozens of successful objections and having won over $100 million on behalf of class members, CCAF has not requested attorneys' fees in the majority of its cases or even in the majority of its appellate victories. CCAF regularly passes up the opportunity to seek fees to which it is legally entitled. In *Classmates*, for example, CCAF withdrew its fee request and

Case No. 3:16-cv-00492-L-WVG                                                                              9
DECLARATION OF THEODORE H. FRANK

instead asked the district court to award money to the class; the court subsequently found that an award of $100,000 "if anything" "would have undercompensated CCAF." *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 WL 3854501, at *11 (W.D. Wash. June 15, 2012). In other cases, CCAF has asked the court for a fraction of the fees to which it would be legally entitled based on the benefit CCAF achieved for the class and asked for any fee award over that fractional amount be returned to the class settlement fund.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on April 20, 2018, in Washington, D.C.

                                        */s/ Theodore H. Frank*
                                        Theodore H. Frank

Case No. 3:16-cv-00492-L-WVG                                    10
DECLARATION OF THEODORE H. FRANK