1  Timothy R. Hanigan (SBN 125791)
2  LANG, HANIGAN & CARVALHO, LLP
   21550 Oxnard Street, Suite 760
3  Woodland Hills, CA 91367
   Tel: (818) 883-5644
4  Fax: (818) 704-9372
5  Attorneys for Objector/Class Member,
   Amy Collins
6
7              UNITED STATES DISTRICT COURT
8            SOUTHERN DISTRICT OF CALIFORNIA
9
10  JOANNE FARRELL, RONALD            Case No. 3:16-cv-00492-L-WVG
    ANTHONY DINKINS, and LARICE
11  ADDAMO on Behalf of themselves and
    all others similarly situated,
12                    Plaintiffs,
13
14  v.
15  BANK OF AMERICA, N.A,             **OBJECTION OF AMY COLLINS**
16                    Defendant.
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Class counsels' $16.6 million fee request cannot be reconciled with the less than two years of labor required to achieve the settlement. That is not to say class counsel did not work hard in mastering the relevant facts, drafting complaints and memoranda, formulating strategy, preparing motions, and preparing for and attending mediation. Doc. 80-2, at 8. But, they litigated this matter for less than two years, and asked to be paid as if it were many times that.

They admit that "[a]pplying [their] requested rates to the total hours expended results in $1,428,047.50 lodestar. **An award of $16.65 million would require a multiplier of 11.66**." Doc. 80-1, at 22 (emphasis added). If we pause a moment to consider those statements, the fee request is absurd. At least three partners who ordinarily charge a reasonable hourly rate of $800 will be compensated at $9,280 per hour. Doc. 8-8, at 4. Associates whose rates are normally between $250 and $500 will be compensated at rates between $2,900 and $5,800 per hour. *Id.* Those are not just on the high end for attorneys' fees, they are unconscionable. *See Gutierrez v. Wells Fargo Bank, N.A.*, C 07-05923 WHA, 2015 WL 2438274, at *8 (N.D. Cal. May 21, 2015) (noting that lodestar multiplier "would translate to [fees at] more than $4,900 per hour" and that "[s]uch compensation is 'ridiculous'"0.

The 11.6 multiplier is nearly three times the outer range (4) for typical multipliers in the Ninth Circuit. And though class counsel hired an expert to support it, his own study suggests it is out of bounds.

The Ninth Circuit recently reminded that when reviewing fee requests in class actions, "the district court has "an independent obligation to ensure that the award, like the settlement itself, is reasonable, even [as here] if the parties have already agreed to an amount." *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 705–06 (9th Cir. 2018) (quotation omitted). When the court fails to take into account, on cross-check, the ""comparison between the lodestar amount and a reasonable percentage award,' [the Ninth Circuit] may remand the case to the district court for further consideration." *Id.* at 706 (quotation omitted).

With this binding precedent in mind, the Court should exercise its fiduciary duty on behalf of the absent class members and deny class counsels' overreaching fee request. Nothing in excess of a 4 multiplier on cross-check should be permitted. Resultingly, class counsel should be awarded no more than $5.7 million in fees for their less than two years of work, which amounts to 8.5% of the settlement fund. The excess $10.9 million should be returned to the class.

## STANDING AND PRELIMINARY STATEMENTS

Objector's full name, address, telephone number, are as follows: Amy Collins, 111 Illinois Street, Rochester, NY 14609-7432; 585-626-0853.

Ms. Collins is a member of the class because she is a holder of a Bank of America, N.A. (BANA) consumer checking account who between February 25, 2014 and December 30, 2017, was assessed at least one extended overdrawn balance charge that was not refunded. *See* Exhibit 1 attached hereto, Declaration of Amy

Collins, incorporated by reference herein as if set forth in full. Specifically, on September 27, 2016, Ms. Collins was assessed a $35 Extended Overdrawn Balance Charge to her Bank of America personal checking account number ending in 4924. *Id*. Additionally, on January 31, 2017, she was assessed a $35 Extended Overdrawn Balance Charge to her Bank of America personal checking account number ending in 4924. *Id.* Upon information and belief, her account was not refunded for these charges. *Id*. There may be additional extended overdrawn balance charges to her Bank of America personal checking account ending in 4924 of which she is unaware. *Id*. She is therefore a class member as defined by the class notice, and has standing to make this objection.

Ms. Collins has not filed an objection to a class action settlement in the preceding five years. Ms. Collins is represented by local counsel, Timothy R. Hanigan, LANG, HANIGAN & CARVALHO, LLP. Ms. Collins is also represented by Bandas Law Firm, PC, as his general counsel in objecting to the settlement. Chris Bandas of Bandas Law Firm does not presently intend on making an appearance for himself or his firm, though he reserves the right to do so.

Ms. Collins objects to the settlement and proposed fees in the *Joanne Farrell v. Bank of America, N.A.,* Case No. 3:16-cv-00492-L-WVG for the reasons stated herein. While reserving the right to do so, Ms. Collins does not intend on appearing at the fairness hearing either in person or through counsel, but asks that her objection be submitted on the papers for ruling at that time. Ms. Collins relies upon the documents

contained in the Court's file in support of these objections. Objection is made to any procedures or requirements to object in this case that require information or documents other than those that are contained herein on grounds that such requirements seek irrelevant information to the objections, are unnecessary, unduly burdensome, are calculated to drive down the number and quality of objections to the settlement and violate Ms. Collins's and counsel's due process rights and/or Rule 23.

Objector incorporates by reference the arguments and authorities contained in other filed objections, if any, made in opposition to the fairness, reasonableness and adequacy of the proposed settlement, the adequacy of class counsel and to the proposed award of attorneys' fees and expenses that are not inconsistent with this objection.

## OBJECTIONS

**I.    Because Defendant Agreed Not to Contest Class Counsels' Fee Request, this Court Should Exercise its Fiduciary Duty Carefully in Assessing Reasonable Attorneys' Fees.**

It is axiomatic that district courts have a fiduciary duty to protect the interests of the absentee class members. *See In re: Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir. 2010) (because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs"). This is because in a common fund settlement, every dollar awarded to class counsel is a dollar taken from the class.

Bank of America, as a settling defendant, only cares about its total settlement payments and keeping them as low as possible. *In re Southwest Voucher Litigation*, 799 F.3d 701, 712 (7th Cir. 2015); *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*"). At the same time, class counsel have a natural incentive to enrich themselves at the expense of the unnamed members of the class. *See Southwest Voucher*, 799 F.3d at 712 ("[j]udicial scrutiny of class action fee awards and class settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost").

When, as here, the parties have agreed to a certain amount of fees,[1] and there is no one with an interest in the outcome (save objecting class members) to protest the amount sought,[2] there is a real danger that fees awarded may be excessive. *In re HP*

---

[1] Doc. 69-2, at 11 ("BANA agrees not to oppose or appeal any such application that does not exceed 25% of the Settlement Value plus reimbursement for costs and expenses incurred in the Action").

[2] Objector anticipates class counsels' response to his objection will be to shoot the messenger rather than focus on the merits of her complaint. Yet, it should be remembered that objectors "add value to the class-action settlement process by . . . preventing collusion between lead plaintiff and defendants." *UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 236 (10th Cir. 2009) (citation omitted); *see also* 2003 Committee Note, Rule 23(h) ("In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as . . . attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of Class Counsel"). Further, "[o]bjectors can encourage scrutiny of a proposed settlement and identify areas that need improvement. They can provide important information regarding the fairness, adequacy, and reasonableness of the settlement terms." *Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562, 568 (Mont. 2012). Because objectors may pose a risk to class counsels' fees "class action

*Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) ("because the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may 'urge a class settlement at a low figure or less-than-optimal basis in exchange for red-carpet treatment on fees'") (quotation omitted). Thus, "[a]s a fiduciary for the class, the district court must 'act with a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is." *Mercury*, 618 F.3d at 994; *In re Daou Sys., Inc., Sec. Litig.*, 98-CV-1537-L(AJB), 2008 WL 2899726, at *1 (S.D. Cal. July 24, 2008) (this Court describing its fiduciary obligation on behalf of the class).

In this respect, "[a]ttorneys' fees provisions included in proposed class action agreements must be 'fundamentally fair, adequate and reasonable.' The court is not bound by the parties' settlement agreement as to the amount of attorneys' fees." *Foos v. Ann, Inc.*, 11CV2794 L MDD, 2013 WL 5352969, at *4 (S.D. Cal. Sept. 24, 2013).

## II. Class Counsels' $16.6 Million Fee Request, With Just $1.4 Million Lodestar Invested and a Resulting 11.6 Multiplier, is Outrageous.

Class counsel attempt to justify their fee as a benchmark 25% recovery. But, the benchmark should be adjusted when "special circumstances indicate the recovery would be either too small or too large in light of the hours devoted to the case or other

---

lawyers may try to fend off interlopers who oppose a proposed settlement as insufficiently generous to the class[.]" *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (Posner, J.). These tactics are improper: objectors "prevent[] cozy deals that favor class lawyers and defendants at the expense of class members. . . ." *Id.*

---

relevant factors." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (quoting *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990)); *In re Daou Sys., Inc., Sec. Litig.*, 98-CV-1537-L(AJB), 2008 WL 2899726, at *1 (S.D. Cal. July 24, 2008) (this Court noting that the 25% benchmark "serves as a starting point for the analysis" and that "[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award") (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)).

Special circumstances are clearly present. Class counsels' 11.6 lodestar multiplier reveals the requested $16.6 million fee would be far too generous considering the 2,158 hours dedicated to the case. An 11.6 multiplier is not just on the fringes of reasonable recovery. It is off the chart. "Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases. *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, *4 (N.D. Cal. 2013); *see also In re Cathode Ray Tube Antitrust Litig..*, 3:07-CV-5944 JST, 2016 WL 721680, at *43 (N.D. Cal. Jan. 28, 2016) (observing the multiplier range of 1-4 for 83% of the 24 class action settlements discussed in *Vizcaino*); *Asghari v. Volkswagen Group of Am., Inc.*, CV1302529MMMVBKX, 2015 WL 12732462, at *51 (C.D. Cal. May 29, 2015) (declining a request for 1.4 multiplier, and holding class counsel to their lodestar despite a "positive result" and the risk undertaken by class counsel); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 277 (E.D. Cal. 2014) (refusing to award a 4.39

multiplier, "which exceeds the range typically awarded in the Ninth Circuit"); *Dennis v. Kellogg Co.*, 09-CV-1786-L WMC, 2013 WL 6055326, at \*7 (S.D. Cal. Nov. 14, 2013) (upholding $1 million fee on lodestar cross-check with essentially no multiplier). Not to mention, in the Ninth Circuit, there is a "strong presumption that the lodestar amount represents a reasonable fee, [and that] adjustments to the lodestar, 'are the exception rather than the rule.'" *Stranger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) (quotation omitted); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010) (noting the "'strong presumption" that the lodestar figure is reasonable").

While Class counsel string cite a number of overdraft fee cases where similar or greater percentage-based fees, they fail to identify a similar case with anything approaching an 11.6 multiplier. Doc. 80-1, at 18-19. In this Circuit, the highest lodestar multiplier counsel for Ms. Collins was able to locate in an overdraft case was a collective 4.53. *Gutierrez v. Wells Fargo Bank, N.A.*, C 07-05923 WHA, 2015 WL 2438274, at \*8 (N.D. Cal. May 21, 2015). Though class counsel in *Gutierrez* petitioned for the 25% benchmark, Judge Alsup found the resulting 10.38 multiplier untenable. *Id.* at \*4 (noting fees sought would require a 10.38 multiplier and that "[s]uch an extraordinary multiplier is not justified"). Accordingly, the court reduced recovery to 9% with a 4.53 multiplier.[3] As Judge Alsup commented, "This is an

---

[3] Judge Alsup allowed a 5.5 multiplier to the law firm of Lieff Cabraser, and a lower multiplier to another firm which produced a collective 4.53 multiplier. *Gutierrez*, 2015 WL 2438274, at \*7.

exceptional fee award compared to multipliers used in other comparable actions. In *Vizcaino,* for example, which involved a bitterly-contested and 'extremely risky' litigation spanning eleven years, our court of appeals affirmed an award amounting to a multiplier of 3.65." *Gutierrez*, 2015 WL 2438274, at *8. Critically, the exceptional 4.53 multiplier was only allowed based on *complete* recovery of $203 million after full blown trial on the merits (and two appeals), which included a trial performance that was one of the best Judge Alsup had seen in sixteen years on the bench. *Id.* at *7.

Other bank overdraft cases fall well within the typical multiplier range of one to four. For example, the Northern District of California awarded 25%, supported with a .98 multiplier, in a case where the settlement provided the class with "about a third of the amount they could have recovered if they had prevailed at trial." *Hawthorne v. Umpqua Bank*, 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015). And, in *Johnson v. Cmty. Bank, N.A.*, in the Middle District of Pennsylvania awarded 33% with a 2.96 lodestar multiplier on cross-check in a case where the settlement provided 50% of potential class damages. 3:12-CV-01405, 2013 WL 6185607, at *9 (M.D. Pa. Nov. 25, 2013); *see also Bodnar v. Bank of Am., N.A.*, CV 14-3224, 2016 WL 4582084, at *4 (E.D. Pa. Aug. 4, 2016) (allowing a 4.69 multiplier for a 33% recovery where the settlement provided between 13 and 48% of class damages). Class counsel here, in contrast to those cases, seek an outrageous 11.6 multiplier even though the $66 million settlement fund is less than 9% of the $756 million class damages. Doc. 69-1, at 17.

### III.   Fitzpatrick's Opinions are Contradicted by his Own Study.

Though he tries, class counsels' expert Brian Fitzpatrick, routinely paid to justify fees for class counsel across the nation, cannot rationalize the 11.6 multiplier. Doc. 80-3. Indeed, Fitzpatrick's opinions here are internally consistent with his own study.

*Not one* of the 218 cases in Fitzpatrick's empirical study that considered lodestar in assessing the reasonableness of a fee percentage involved a multiplier as high as 11.6. Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 JOURNAL OF EMPIRICAL LEGAL STUDIES 811, 833-34 (Dec. 2010). In fact, only one court of the 218 permitted a multiplier above 6. *Id*. at 834. As Fitzpatrick's declaration here notes, his results are consistent with other experts' studies. Doc. 80-3, at 17 (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical L. Stud. 248, 273 (2010) (finding mean multiplier of 1.81 for cases between 1993 and 2008); Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. Law Review 937, 965 (2017) (finding mean multiplier of 1.48 for cases between 2009 and 2013)).

In his study, Fitzpatrick remarked these statistically prevalent low multipliers, "with the bulk of the range not much above 1.0 . . . cast doubt on the notion that the percentage-of-the-settlement method results in windfalls to class counsel." *Id*. If those multipliers denote the absence of an excessive recovery, a multiplier ten times greater

confirms a windfall. Nevertheless, Fitzpatrick contends application of the lodestar cross-check here would create a disincentive for attorneys to reach settlement quickly, and might instead encourage unnecessary and protracted litigation. The notion that paying class counsel $5.7 million, or 4 times their hourly rates, is any kind of deterrent for similar efficient work is dubious at best. Indeed, class counsel were aware that they were litigating in a Circuit which recognizes the importance of lodestar relative to a percentage-based fee, and nevertheless reached the proposed settlement in under two years.

Since his study is unsupportive, Fitzpatrick clings to outliers. He references a list of cases in *Vizcaino* which he notes show "multipliers of up to 19.6". *Vizcaino*, 290 F.3d at 1051 n.6 (noting multipliers of up to 19.6). What he leaves out is that the one case allowing a 19.6 multiplier did not even involve a class action settlement at all, but rather was a bankruptcy opinion in which the court approved a contingency fee agreement beforehand. *In re Merry-Go-Round Enterprises, Inc*., 244 B.R. 327, 340 (Bankr. D. Md. 2000). Otherwise, most of the multipliers (83%) fell between 1 and 4, and none came close to 11.6. *Vizcaino*, 290 F.3d at 1052 n.1, n.6 (9th Cir. 2002).

Finally, Fitzpatrick's declaration focuses on the non-monetary aspect of the settlement which benefit class members and non-class members alike. Doc 80-3, at 18. Yet inexplicably, he never takes into account that the $66 million of actual monetary compensation to the class is less than 9% of the $756 million class

damages. Doc. 69-1, at 17. Fitzpatrick's result-oriented opinions provide little reason to indulge class counsels' 11.6 multiplier.

### IV. Class Counsels' Lodestar is Inflated, Meaning the Multiplier is Actually Greater than 11.6.

Even then, the actual multiplier is almost certainly greater than 11.6. Fitzpatrick's study anticipates that "there is always the possibility that class counsel are optimistic with their timesheets when they submit them for lodestar consideration." Fitzpatrick, Empirical Study, at 834. That appears to be the case here.

Class counsels' 2,158 hours include considerable time spent preparing their motion for attorneys' fees (Docs. 80-4, at 3; 80-5, at 6, 80-6, at 4, 80-7, at 3) and a substantial amount of time spent on other cases. Docs. 80-4, at 3, 80-5, at 5, 80-6, at 3, 80-7, at 3. Fitzpatrick believes that "*much* of the work class counsel did in these cases was of benefit to the class in this case." Doc. 80-3, at 17 n.6 (emphasis added). Presumably *some* of it was not. It is not clear to what extent the hours from the other unsuccessful cases were limited to those useful in this litigation. Further, a significant amount of time, if not the majority of it, appears dedicated to mediation and settlement rather than litigation. Docs. 80-4, at 3-4, 80-5, at 5-6, 80-6, at 3-4, 80-7, at 3-4. *See Manner v. Gucci Am., Inc.*, 15-CV-00045-BAS(WVG), 2016 WL 6025850, at *4 (S.D. Cal. Oct. 13, 2016) (the fact "that a substantial portion of the requested

fees were incurred *after* the settlement was reached at the mediation" "casts doubt on the value to the class of the billed hours") (emphasis original).[4]

Class counsels' actual lodestar is likely less, and probably much less, than the $1.4 million represented, which means the real multiplier necessary to reach $16.6 million is likely to be even greater than the already ridiculous 11.6 multiplier.

## V.    The Relevant Factors Do Not Support 25%.

At least three of the factors relevant to awarding fees under the percentage indicate $16.6 million is not a reasonable fee in this case. *See Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, 16-CV-00182-H-BLM, 2018 WL 1470198, at *6 (S.D. Cal. Mar. 26, 2018) (listing factors)[5] (citing *Vizcaino,* 290 F.3d at 1048-50).

The results are considerably overstated. Class members who were wrongfully charged the EOBC will not receive full refunds, but rather a *pro rata* division of $37.5 million among class members with current Bank of America checking accounts who paid the EOBCs. Doc. 80-3, at 5. The remaining $29.1 million is earmarked for those who have yet to pay the EOBCs. *Id.* As it turns out, the total $66.6 million compensation is less than 9% of the $756 million in class damages. While it is true

---

[4] Because class counsels' lodestar declarations include essentially the same generic categorization of work tasks, it is impossible to assess the extent to which their work was duplicative. Considering four firms were involved, there was almost certainly some duplicative labor.

[5] The factors include "(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases." *Gutierrez-Rodriguez*, 2018 WL 1470198, at *6 (citing *Vizcaino*, 290 F.3d at 1048-50.).

---

that "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair[,]" that does not amount to a result that warrants more than 11 times class counsels' hourly rates. Meanwhile, the future practice changes flouted by class counsel apply equally to class members and non-class members alike.

As described *supra*, similar cases have allowed similar percentages, but all with lodestar multipliers only a fraction of what class counsel submit here. And finally, the contingent nature of the fees, and the time and labor spent here do not justify anything approaching a 11.6 multiplier. Just a year after filing suit, class counsel began to explore settlement. Doc. 80-1, at 4-5 (suit filed on February 25, 2016 and in "February 2017 . ..began to explore the possibility of settlement"). And, they settled in less than two. Doc. 69-2 (settlement executed on October 30, 2017). That is far less than the average three years it takes to reach a class action settlement. Fitzpatrick, *Empirical Study*, at 820. "Where [the lodestar] investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050; *In re ECOtality, Inc. Sec. Litig.*, 13-CV-03791-SC, 2015 WL 5117618, at *4 (N.D. Cal. Aug. 28, 2015) ("[e]ven when applying the percentage method, the Court should use the lodestar method as a cross-check to determine the fairness of the fee award") (citing *Vizcaino,* 290 F.3d at 1050).

**CONCLUSION & PRAYER**

Objector/Class Member Amy Collins urges that this Court reject class counsels' request to be paid more than eleven times their lodestar in a case where the monetary compensation afforded the class is under 9% of the class damages. Any award of attorneys' fees should be substantially less than class counsels' requested $16.6 million, and in no case above a 4 lodestar multiplier, with the difference applied to the benefit of the class.

DATED:  April 20, 2018                    Respectfully submitted,

                                          */s/ Timothy R. Hanigan*
                                          Timothy R. Hanigan (125791)
                                          LANG, HANIGAN &
                                          CARVALHO, LLP,
                                          21550 Oxnard Street, Suite 760
                                          Woodland Hills, California 91367
                                          (818) 883-5644
                                          trhanigan@gmail.com
                                          Attorney for Objector/Class Member

1   DATED:  April 20, 2018

2

3                                                    Amy Collins

4                                                    Objecting Class Member

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16