JEFF OSTROW (*pro hac vice*)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*ostrow@kolawyers.com*

HASSAN ZAVAREEI (CA 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, DC  20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*hzavareei@tzlegal.com*

*Attorneys for Plaintiffs and the Settlement Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br> vs.<br><br>BANK OF AMERICA, N.A.,<br><br>     Defendant. | CASE NO. 3:16-cv-00492-L-WVG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS**<br><br>Judge: Hon. M. James Lorenz<br>Place: Courtroom 5B<br>Hearing Date: June 18, 2018 at 11:00am |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................1

II.   STATEMENT OF FACTS .........................................................................3

      A. BACKGROUND ..................................................................................3

      B. HISTORY OF THE LITIGATION .....................................................3

      C. SUMMARY OF THE SETTLEMENT TERMS....................................6

          1. The Settlement Class .....................................................................6

          2. Relief for the Benefit of the Settlement Class.............................7

              a. Practice Change – Cessation of EOBC .................................7

              b. $66.6 Million Settlement Amount.........................................7

              c. Payment of the Costs of Notice and Administration...........8

          3. Class Release .................................................................................9

          4. The Notice and Administration Program.....................................9

III.  ARGUMENT...........................................................................................10

      A. The Legal Standard for Final Approval............................................10

      B. This Settlement Satisfies the Criteria for Final Approval.................11

          1. The Risk, Expense, Complexity, and Likely Duration of
             Further Litigation .......................................................................12

          2. The Risk of Maintaining Class Action Status Throughout Trial ...................13

          3. The Amount Offered in the Settlement ......................................14

          4. The Extent of Discovery Completed and the Stage of the Proceedings........16

          5. The Experience and Views of Counsel.......................................17

          6. The Presence of a Governmental Participant.............................18

          7. The Reaction of the Class Members to the Proposed Settlement .................19

      C. Notice to the Class was Adequate and Satisfied
         Rule 23 and Due Process .................................................................19

      D. Certification of the Settlement Class Is Appropriate........................21

IV.   CONCLUSION........................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................ 21, 23

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal 2015) ...................................... 15

*Bravo v. Gale Triangle, Inc.*,
  2017 WL 708766, *10 (C.D. Cal. Feb.16, 2017) .............. 15

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 ...................................................................... 21

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ........................................ 10

*Cohorst v. BRE Props.*,
  No. 3:10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 151719
  (S.D. Cal. Nov. 9, 2011) .................................................. 10

*Custom LED, LLC v. eBay, Inc.*,
  No. 12-cv-00350-JST, 2014 U.S. Dist. LEXIS 87180 (N.D. Cal. June 24, 2014) ...... 15

*Dennis v. Kellogg Co.*,
  09-CV-1786-L (WMc), 2013 U.S. Dist. LEXIS 64577
  (S.D. Cal. May 3, 2013).. ...........................................10, 13, 14

*Dorsey v. T.D. Bank, N.A.*,
  No. 6:17-cv-01432, Dkt. No. 30 (D.S.C. Feb. 28, 2018) .............................. 12

*Fawcett v. Citizens Bank, N.A.*,
  No. 17-11043, Dkt. No. 37 (D. Mass., Apr. 19, 2018) ...................................... 12

*Franklin v. Wells Fargo Bank, N.A.*,
  No. 14cv2349-MMA (BGS), 2016 U.S. Dist. LEXIS 13696
  (S.D. Cal. Jan. 29, 2016) .................................................. 16

*Gutierrez v. Wells Fargo Bank, N.A.*,
  No. C 07-05923 WHA, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008) ..................... 22

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*,
  No. 16-CV-0182 H BLM, 2017 U.S. Dist. LEXIS 170982
  (S.D. Cal. Oct. 16, 2017) .................................................. 11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................. *passim*

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................ 17, 19

*In re Infosonics Corp. Secs. Litig.*,
  No. 06CV1231JLS(WMc), 2009 U.S. Dist. LEXIS 136057
  (S.D. Cal. May 5, 2009) .................................................. 16

*In re NVIDIA Corp. Derivative Litig.*,
  2008 WL 5382544 (N.D. Cal. 2008) ................................................ 18

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................... 16

*In re Pacific Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .......................................................... 10

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
  150 F. Supp. 3d 593 (D.S.C. 2015) ................................................ 12

*Jaffe v. Morgan Stanley & Co.*,
  No. C 06-3903 THE, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ............. 16

*Johnson v. BOKF, N.A. d/b/a Bank of Texas*,
  No. 3:17-cv-663, Dkt. No. 30 (N.D. Tex. Oct. 24, 2017) ..................... 12

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ....................................................... 16

*McGee v. Bank of Am., N.A.*,
  2015 WL 4594582 (S.D. Fla. July 30, 2015) .................................... 12

*McGee v. Bank of Am., N.A.*,
  674 Fed. App'x. 958 (11th Cir. Jan. 18, 2017) ................................. 12

*McPhail v. First Command Fin. Plan., Inc.*,
  No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544
  (S.D. Cal. Mar. 30, 2009)............................................................ 13

*Mendoza v. Tucson Sch. Dist. No.1*,
  623 F.3d 1338 (9th Cir. 1980) ...................................................... 21

*Moore v. MB Fin. Bank, N.A.*,
  No. 17 C 4716, 2017 U.S. Dist. LEXIS 189585 (Nov. 16, 2017) ............ 12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .................................................................... 19

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
  No. 16-CV-2162 JLS (NLS), 2017 U.S. Dist. LEXIS 188192 (Nov. 14, 2017) ......... 22

*Officers for Justice v. Civil Svc. Comm'n of the City and County of San Francisco*,
  688 F.2d 615 625 (9th Cir. 1982) ......................................... 10, 11, 14, 16, 19

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ........................................................ 24

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .................................................................... 19

*Roberti v. OSI Sys.*,
  No. CV-13-09174 MWF (MRW), 2015 U.S. Dist. LEXIS 164312
  (C.D. Cal. Dec. 8, 2015) .............................................................. 15

*Roberts v. City of Chula Vista,*
    No. 16cv1955-MMA (DHB), 2017 U.S. Dist. LEXIS 210384
    (S.D. Cal. Dec. 21, 2017) ......................................................................... 16

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2010) ................................................................. 24

*Rodriguez v. West Pub. Corp.,*
    No. CV05-3222, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ................. 13

*Rodriquez v. West Pub'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ................................................................... 13

*Satchell v. Fed. Express Corp.,*
    No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................ 11

*Shaw v. BOKF, Nat'l Ass'n,*
    2015 WL 6142903 (N.D. Okla. Oct. 19, 2015) .......................................... 12

*Todd v. STARR Surgical Co.,*
    CV 14-5263 MWF (GJSx), 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ...... 11

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .......................................................................... 22, 24

*Woo v. Home Loan Grp., L.P.,*
    No. 07-CV-202 H (POR), 2008 U.S. Dist. LEXIS 65144
    (S.D. Cal. Aug. 25, 2008) ........................................................................ 11

**Statutes**

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 4
Federal Rules of Civil Procedure 23........................................................... 9
Federal Rules of Civil Procedure 23(a) ........................................... 21, 22, 23
Federal Rules of Civil Procedure 23(b)(2) ............................................. 6, 23
Federal Rules of Civil Procedure 23(b)(3) ..................................... 2, 21, 23, 24
Federal Rules of Civil Procedure 23(c)(2) ................................................... 21
Federal Rules of Civil Procedure 23(e) ..................................................... 10
Federal Rule of Civil Procedure 25 ............................................................ 1
12 C.F.R. § 7.4001 ................................................................................... 3
28 U.S.C. § 1292(b) ................................................................................. 4
28 U.S.C. § 1715(b)(1)-(8)........................................................................ 18

## I. INTRODUCTION

Plaintiffs, Joanne Farrell,[1] Ronald Anthony Dinkins, Tia Little, and Larice Addamo ("Plaintiffs" or "Class Representatives"), through Class Counsel, respectfully submit this Memorandum of Points and Authorities in Support of their Unopposed Motion for Final Approval of Class Settlement, Application for Attorneys' Fees and Costs and Service Awards.[2]   The Settlement Agreement and Release ("Settlement" or "Agreement"), attached as **Exhibit A**, if approved, will resolve all claims against Defendant Bank of America, N.A. ("Bank" or "BANA").[3] The Agreement provides substantial relief for the Settlement Class—valued at over $1.2 billion dollars—and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law.

Indeed, given the significant risks inherent in this Action, the Settlement is an excellent result for the Settlement Class as it provides for: (1) BANA's agreement to immediately stop assessing Extended Overdrawn Balance Charges ("EOBCs") on consumer checking accounts for a period of five years (resulting in $1.2 billion in savings); (2) $66.1 million in relief, including substantial cash and debt reduction; (3) automatic distributions with no requirement for claim submissions; (4) no reversion to the Bank for any funds that may remain post-distribution; and (5) separate payment by the Bank of an estimated $2 million in notice and administration costs. Providing certainty that Bank

---

[1] A motion to Substitute Plaintiff Joanne Farrell's adult children (Patrick Michael Farrell, Ryan Thomas Farrell, Timothy Gaelen Farrell and Brooke Ann Farrell) as Plaintiffs and Class Representatives for her surviving adult children was filed on May 25, 2018, pursuant to Fed. R. Civ. P. 25(a), due to her unfortunate death after Preliminary Approval. [DE #100]. As of the date of the filing of this Motion, the Court had not ruled on that motion.

[2] Pursuant to this Court's requirement in the Preliminary Approval Order, Plaintiffs and Class Counsel filed an Unopposed Motion and Memorandum in Support of their Application for Attorneys' Fees and Costs and Service Awards on February 19, 2018. [DE #80 and #80-1]. Plaintiffs' Responses to Objections are filed contemporaneously herewith. As discussed therein, the majority of the objections relate to attorneys' fees. The Parties' Settlement does not depend on the amount of the attorneys' fee award. Thus the Court can enter final approval of the Settlement regardless of the amount of the attorneys' fee award, as determined by the Court.

[3] All capitalized terms in this memorandum shall have the same meanings as those defined in the Agreement.

-1-

customers will not be charged any EOBCs in the future was a goal, and is a crowning achievement of the Settlement, while the Settlement Amount ensures that all Settlement Class members shall receive some monetary relief for the past harm the Bank's EOBC policy inflicted. The Bank's separate payment of settlement administration costs ensures that Settlement Class members receive fair, adequate, and reasonable relief. Based upon controlling Ninth Circuit law and supporting facts, Final Approval is warranted.

The reasonableness and fairness of this Settlement must be judged in the context of similar EOBC actions and the fate they have suffered in federal courts around the country. To date, six other federal courts have granted motions to dismiss in seven nearly identical cases, holding that the respective bank's charges were not interest and therefore not subject to the National Bank Act's usury limit. *See* Joint Declaration of Jeff Ostrow and Hassan Zavareei in Support of Final Approval, attached as ***Exhibit B*** ("Joint Decl.") ¶ 8. In one case against BANA, the U.S. Court of Appeals for the Eleventh Circuit affirmed the Florida district court's judgment of dismissal on the same issue. *Id.* ¶ 9. This Action is the only one of its kind that has survived to date and the only one in which a defendant bank has agreed to pay cash and cease the very practice at the heart of the complaint. *Id.* Considering this precedent, Class Counsel took a great risk in even filing this Action in the first instance, and the results obtained, including the notable cessation of charging EOBCs, is even more extraordinary.

Therefore, Plaintiffs and Class Counsel respectfully request that the Court: (1) grant Final Approval of the Settlement; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(3); (3) appoint Plaintiffs as Class Representatives; (4) appoint as Class Counsel the attorneys previously appointed in the Court's Preliminary Approval Order, as amended; (5) deny the timely and valid objections and accept the withdrawal of objections filed in this Action; (6) award Service Awards, Attorneys' Fees and Costs as previously requested in the application and as further modified herein; and (7) enter Final Judgment dismissing this Action.

## II.   STATEMENT OF FACTS

### A.  BACKGROUND

This case is a class action focused on the Bank's practice of levying a $35 EOBC against account holders for failing to cure negative balances on overdrawn deposit accounts within five business days. When a customer has insufficient funds in a checking account to cover a check or other debit, the Bank under its deposit agreement has discretion either to pay the overdraft or return it without any payment. If the Bank chooses to pay the overdraft, the deposit agreement allows the Bank to charge an overdraft fee and requires the customer "to repay [the Bank] immediately, without notice or demand from [the Bank]." Plaintiffs' claims in no way challenge this initial overdraft fee and solely concern the EOBC, which the Bank separately charges if a negative account balance is not cured within 5 business days. The deposit agreement explains the EOBC as follows:

> The Extended Overdrawn Balance Charge is an overdraft fee. This fee is in addition to Overdraft Item and NSF: Returned Item fees that may apply to your account for each overdraft or returned item. This additional charge applies to your account when we determine that your account has been overdrawn for 5 or more consecutive business days. You can avoid this fee by promptly covering your overdraft - deposit or transfer enough available funds to cover your overdraft, plus any fees we assessed, within the first 5 consecutive business days that your account is overdrawn.

Plaintiffs allege that the EOBC is a charge for the use of the Bank's money over time, or interest charged pursuant to an extension of credit. Plaintiffs allege that the EOBC is "interest" under the National Bank Act ("NBA") and its associated regulation (12 C.F.R. § 7.4001) because the charge compensates the Bank for continued use of funds it already advanced to a customer when honoring an overdraft transaction. Consequently, Plaintiffs allege that the amount of the EOBC is usurious under the NBA.

### B.  HISTORY OF THE LITIGATION

On February 25, 2016, Plaintiff Farrell filed a class action Complaint in this Court

-3-

seeking monetary damages, restitution and declaratory relief from the Bank, based on its alleged unfair assessment of EOBCs. *See generally* Complaint [DE #1]. Plaintiff Farrell, a customer of the Bank, alleges that EOBCs are not a "fee," but are actually interest charges for the advancement of funds. Accordingly, they are subject to usury interest rate restrictions enacted by the Bank's home state, North Carolina. Plaintiff Farrell alleges the amount of the EOBC exceeds the usury rate set by North Carolina state law and incorporated by the NBA. *Id.*

On April 29, 2016, the Bank moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that, as a matter of law, an EOBC does not constitute interest, and consequently, that Plaintiff Farrell's case should be dismissed with prejudice. [DE #8]. On June 13, 2016, Plaintiff Farrell filed her response in opposition to the motion to dismiss. [DE# 16]. On June 20, 2016, the Bank filed its Reply to the Response to the Motion to Dismiss. [DE #18]. On December 19, 2016, this Court denied the Bank's motion to dismiss. [DE #20].

On January 3, 2017, the Bank filed an Answer to the Complaint, which the Bank then amended on January 24, 2017. [DE #25, 42]. On January 24 and again on January 27, 2017, Plaintiff Farrell moved to strike most of the Bank's affirmative defenses. [DE #41, 45]. The Bank filed its Response in Opposition to the Motion to Strike on February 13, 2017. [DE #53]. Plaintiff Farrell filed a Reply to the Response to Motion to Strike on February 17, 2017. [DE #57].

On January 6, 2017, the Bank moved for certification of the Court's denial of its motion to dismiss to seek interlocutory review under 28 U.S.C. §1292(b) and to stay proceedings pending that review. [DE #29]. Plaintiff Farrell opposed that Motion on January 30, 2017. [DE #48]. The Bank filed a reply to the response to its motion for certification on February 6, 2017. [DE #50].

Plaintiff Farrell filed her Unopposed Motion to Amend Complaint, to Add Class Representatives, and to Modify Case Style on March 13, 2017, for purposes of adding

-4-

Ronald Dinkins, Larice Addamo, and Tia Little as additional plaintiffs ("Plaintiffs"). [DE #60]. On April 11, 2017, before ruling on the Motion to Amend, the Court granted the Motion to Stay and certified its order denying BANA's motion to dismiss for interlocutory review. [DE #61].

On April 21, 2017, the Bank filed a petition for permission to appeal with the United States Court of Appeals for the Ninth Circuit. [DE #62]. On May 1, 2017, Plaintiff Farrell filed her Answer to the Bank's petition for permission to appeal in the Ninth Circuit. Circuit Case No. #: 17-80072 (DE #4). On June 14, 2017, the Ninth Circuit granted the Bank's request to appeal and on June 15, 2017, the Bank filed its Notice of Appeal. [DE #63, 64]. A briefing scheduled was set in Ninth Circuit Case No. 17-55847.

Beginning in June 2017, the Parties began to exchange settlement communications. Plaintiff requested a significant amount of data regarding EOBC revenue and sample transactional data, which BANA produced. Plaintiffs' expert extensively analyzed this data.

On August 25, 2017, the Parties mediated the Action in Newport Beach, California with Judge Layn Philips (Ret.), a well-respected neutral. The case did not settle that day, but the Parties continued negotiations over the next several weeks, with the assistance of Judge Phillips, reaching agreement on material terms of settlement in early October 2017.

On October 11, 2017, the Parties filed a Joint Status Report advising the Court that the Parties had reached an agreement to settle the Action. [DE #67]. The Parties also filed a Joint Motion for an Extension of Time on October 11, 2017, with the Ninth Circuit, based on the agreement to settle the Action.

The parties negotiated and executed a settlement term sheet confirming the material terms of settlement on October 23, 2017. Joint Decl. ¶ 13. After the Parties executed a Settlement term sheet, Class Counsel performed confirmatory discovery at the Bank's headquarters in Charlotte, North Carolina. Joint Decl. ¶ 14. The Parties then turned to drafting the comprehensive Agreement. Joint Decl. ¶ 15. On October 31, 2017, the Parties signed the Agreement. *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION
FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

On October 31, 2017, Plaintiffs filed their Motion and Memorandum in Support of Preliminary Approval of the Class Settlement and for Certification of the Settlement Class. [DE #69]. On December 11, 2017, the Court entered an Order Conditionally Granting Preliminary Approval. [DE #72]. In response, Class Counsel filed a Motion for Approval of Amended Class Notices [DE# 73], which was granted by the Court on December 21, 2017. [DE #75].

Class Counsel led the investigation that resulted in this Action. Indeed, Class Counsel persisted in pursuing the usury claim even after three other district courts had rejected it in other cases. Joint Decl. ¶ 8. So not only were the claims in this litigation untested and novel, but it took Class Counsel a substantial amount of pre-filing work to research and develop the legal arguments and claims to support the finding that EOBCs were interest. Joint Decl. ¶ 9. Nonetheless, Class Counsel persisted in developing this case and the few others like it, relying on their unique expertise in consumer banking practices and litigation related thereto. *Id.* Once the Action was on file, Class Counsel then persisted in overcoming the Bank's vigorous protestations that the case was wrong-headed; and persisted in driving the hard bargain that resulted in this Settlement. *Id.* Not one other firm or governmental entity brought, assumed the risk, and prosecuted these claims. In short, without Class Counsel's persistence, hard work, and investment of resources, BANA's alleged misconduct would have continued and gone without recompense. *Id.*

### C.  SUMMARY OF THE SETTLEMENT TERMS

The Settlement's terms are detailed in the Agreement. The following is a summary of the material terms.

#### 1.  The Settlement Class.

The Settlement Class is an opt-out class under Rule 23(b)(2) and (3) of the Federal Rule of Civil Procedure. The Settlement Class is defined in the Preliminary Approval Order, as:

All holders of BANA consumer checking accounts who, during the period

-6-

between February 25, 2014 and December 30, 2017, were assessed at least one Extended Overdrawn Balance Charge that was not refunded.

[DE #72 at ¶ 2].

### 2. Relief for the Benefit of the Settlement Class.

#### a. *Practice Change – Cessation of EOBC*

The Bank has agreed to stop assessing EOBCs on consumer checking accounts—an approximate $1.2 billion value to the Settlement Class and other account holders. Agreement ¶ 2.2(a). Specifically, for a period of five years (December 31, 2017 through December 31, 2022), it will not implement and/or assess EOBCs, or an equivalent fee. *Id.* The Bank's obligation to cease assessing EOBCs or a similar fee shall be lifted only if a United States Supreme Court decision expressly holds that EOBCs or equivalent fees are not interest under the NBA. *Id.* Even if this occurs, the Bank must wait six months to begin charging the EOBC or an equivalent fee. *Id.* The monthly savings to the Settlement Class and other account holders will be approximately $20 million ($1.2 billion over five years). *See* Declaration of Riaz Bhamani, attached as **Exhibit C** ("Bhamani Decl.") ¶ 8.

#### b. *$66.6 Million Settlement Amount*

The Settlement Amount consists of a $37.5 million cash Settlement Fund and $29.1 million of Debt Reduction Amount for the benefit of Settlement Class members. Agreement ¶ 2.2(b). Settlement benefits will be automatically delivered to Settlement Class members, eliminating risk of a portion of the fund going unclaimed. Here, every penny of the $66.6 million is guaranteed for the Settlement Class members' benefit.

The cash Settlement Fund will be used to pay: (a) Settlement Class members their respective share of the Net Cash Settlement Amount; (b) Class Counsel for any Court awarded attorneys' fees and litigation costs; (c) any Court awarded Service Awards for the Class Representatives; and (d) any Administrator Hourly Charges. *Id.* ¶¶ 2.2(b)(3), 2.4, 3.1, 3.2. The Bank funded the cash Settlement Fund on January 10, 2018. Joint Decl. ¶ 19. The Settlement does not require claims submissions or any other affirmative step by Settlement

-7-

Class members to receive relief or a share of the Net Cash Settlement Amount. Instead, the Bank and the Administrator will *automatically* distribute the Settlement benefits. Agreement ¶ 2.6. Payments to Settlement Class members who are current account holders will be made by the Bank crediting such Settlement Class members' accounts and notifying them of the credit. *Id.* Past account holders will receive payments from the Settlement Fund by checks mailed by the Administrator. *Id.*

Following the Effective Date, all Settlement Class members who are entitled to a Class Member Award will receive a *pro rata* distribution from the Net Cash Settlement Amount based upon the number of EOBCs the Settlement Class member paid during the Class Period. In addition, the $29.1 million in Debt Reduction Payments will be credited to Settlement Class members for money the Bank claims is owed for outstanding EOBCs assessed against Settlement Class members whose accounts have been closed. *Id.* ¶ 2.2(b)(4). Specifically, Settlement Class members who incurred an EOBC after February 14, 2014, and had their account closed by the Bank with an uncollected EOBC outstanding will have their outstanding balance reduced by an amount of up to $35. If the account balance is less than $35, the Bank will adjust the account to reflect a $0.00 account balance. *Id.* Further, to the extent BANA has reported accounts to any credit bureaus, BANA will update the reporting. *Id.* Pursuant to the Agreement, provided it is economically feasible should any funds remain after the initial distribution, the Parties shall do a second distribution to those who received their Class Member Awards, provided it was by direct deposit or by cashed check. Agreement ¶ 3.5.  Should residual funds remain following a second distribution, or in the event a second distribution is not economically feasible, it is the intent of the Parites that the funds shall be distributed to cy pres recipient, Consumers for Responsible Lending (www.respnsiblelending.org), a non-profit organization that provides a national voice against abusive financial practices. *Id.*; *see also* Joint Decl. ¶ 18.

### c.  *Payment of the Costs of Notice and Administration*

The Court appointed Administrator is Epiq Systems. Epiq is a leading class action

-8-

administration firm in the United States. Administration Costs have been and will continue to be paid separately by the Bank, with the exception of any hourly services requested of the Administrator. The Administrator oversees the notice program and settlement administration. The Parties currently estimate that Administration costs to be paid by the Bank shall be approximately $2 million. Joint Decl. ¶ 20.

### 3.    *Class Release.*

In exchange for the benefits conferred by the Settlement, all Settlement Class members will be deemed to have released the BANA Releases from claims relating to the subject matter of the Action. Agreement ¶ 2.3.

### 4.    *The Notice and Administration Program.*

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information BANA has available about the Settlement Class. Joint Decl. ¶ 34. It was reasonably calculated under the circumstances to apprise members of the Settlement Class of the following: a description of the material terms of the Settlement; a date by which persons in the Settlement Class may exclude themselves from or opt-out of the Settlement Class; a date by which members of the Settlement Class may object to the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which persons in the Settlement Class may access the Agreement and other related documents and information. *See* Declaration of Cameron Azari, attached as *Exhibit D* and filed herewith pursuant to the Court's requirement in the Preliminary Approval Order ("Azari Decl.") ¶¶ 10, 11, 28-34. The Notice and Notice Program constituted sufficient notice to all persons entitled to notice. *Id.* ¶ 11; Joint Decl. ¶ 35. The Notice Program satisfied all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and constitutional due process. Azari Decl. ¶ 34; Joint Decl. ¶ 11.

As discussed at greater length in Plaintiffs' Response to Objections, certain Settlement Class members, including several represented by professional objector counsel,

-9-

filed objections to the settlement. Joint Decl. ¶¶ 41-45.

## III.   ARGUMENT

### A. The Legal Standard for Final Approval

Fed. R. Civ. P. 23(e) requires court approval before a class action can be dismissed via a settlement. The Settlement's proponents (lead plaintiffs and defendant), have the burden of presenting evidence showing that the Settlement should be approved and the action dismissed. *See, e.g., Officers for Justice v. Civil Svc. Comm'n of the City and County of San Francisco*, 688 F.2d 615 625 (9th Cir. 1982); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (finding settlement to be a preferred method for resolving disputes, particularly "where complex class action litigation is concerned"). "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 151719, at *33 (S.D. Cal. Nov. 9, 2011) (citing *In re Pacific Enters. Sec. Litig.*, 47 F.3d. 373, 378 (9th Cir. 1995)). "'Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation.'" *Dennis v. Kellogg Co.*, 09-CV-1786-L (WMc), 2013 U.S. Dist. LEXIS 64577, at *4 (S.D. Cal. May 3, 2013) (Lorenz, J.) (citations omitted).

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Also, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.'" *Id.* at 1027. The Court balances the *Hanlon* factors in deciding the Settlement is fair, adequate, and reasonable:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, No. 16-CV-0182 H BLM, 2017 U.S. Dist. LEXIS 170982, at *15 (S.D. Cal. Oct. 16, 2017). "'The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.'" *Woo v. Home Loan Grp., L.P.*, No. 07-CV-202 H (POR), 2008 U.S. Dist. LEXIS 65144, at *8 (S.D. Cal. Aug. 25, 2008) (quoting *Officers for Justice*, 688 F.2d at 625).

When a court exercises its discretion to approve a settlement, the Ninth Circuit has instructed:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice*, 688 F.2d at 625. "The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.* (emphasis in original).

## B. This Settlement Satisfies the Criteria for Final Approval

As detailed below, each of the relevant *Hanlon* factors weighs in favor of Final Approval. The Settlement is also the product of good-faith, informed, and arms-length negotiations between competent counsel, as the Settlement was reached in the absence of collusion in conjunction with using an experienced and highly regarded mediator, the Honorable Layn Phillips (Ret.). A full day formal mediation served as the foundation for the eventual resolution of this Action. Although the Parties did not settle that day, much progress was made, with the Parties continuing their settlement discussions in subsequent months with the assistance of Judge Phillips. Joint Decl. ¶ 12. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *E.g.*, *Todd v. STARR Surgical Co.*, CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (quoting *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI,

-11-

2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)). As such, the Court should give a presumption of fairness to arms-length settlements reached by experienced counsel. *Rodriquez v. West Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive negotiated resolution . . . .").

Furthermore, when determining settlement fairness, parties are required to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Although Plaintiffs believe that their claims are meritorious, and that they would prevail at trial, BANA disagrees, denies any potential liability and, up to the point of settlement, indicated a willingness to litigate vigorously. Plaintiffs and Class Counsel are confident in their case, but are also pragmatic in their awareness of the Bank's various defenses, and the risks inherent to litigation of this magnitude that challenges engrained banking industry practice. Joint Decl. ¶ 23.  Indeed, before this Action, cases brought against financial institutions on a similar legal theory were dismissed, including a case against the Bank. *See McGee v. Bank of Am., N.A.*, 2015 WL 4594582 (S.D. Fla. July 30, 2015), *aff'd* 674 F. App'x 958 (11th Cir. Jan. 18, 2017); *Shaw v. BOKF, Nat'l Ass'n*, 2015 WL 6142903 (N.D. Okla. Oct. 19, 2015); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 641-642 (D.S.C. 2015). Since then others lost on the same theory. *See Johnson v. BOKF, N.A. d/b/a Bank of Texas*, No. 3:17-cv-663, Dkt. No. 30 (N.D. Tex. Oct. 24, 2017) (dismissal with leave to amend but renewed motion to dismiss pending); *Moore v. MB Fin. Bank, N.A.,* No. 17 C 4716, 2017 U.S. Dist. LEXIS 189585 (Nov. 16, 2017); *Dorsey v. T.D. Bank, N.A.*, No. 6:17-cv-01432, Dkt. No. 30 (D.S.C. Feb. 28, 2018), *appeal filed*, Case No. 18-1356 (4th Cir.); *Fawcett v. Citizens Bank, N.A.*, No. 17-11043, Dkt. No. 37 (D. Mass., Apr. 19, 2018).  In all, seven similar complaints have been dismissed.

### 1.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation.

Plaintiffs faced the risk of losing during the pending appeal of this Court's order denying BANA's Motion to Dismiss, at summary judgment, at trial, or on a subsequent

-12-

appeal based on various factual and legal defense theories. Joint Decl. ¶ 24. Each of these risks, standing alone, could have impeded Plaintiffs' and the Settlement Class' success at a trial and in an eventual appeal, delaying any recovery for years or resulting in zero benefit to the Settlement Class. *See Dennis v. Kellogg Co.*, 09-CV-1786-L (WMc), 2013 U.S. Dist. LEXIS 163118, at *9 (S.D. Cal. Nov. 14, 2013) (Lorenz, J.) ("[I]t is plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication."); *McPhail v. First Command Fin. Plan., Inc.*, No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544, at *12-13 (S.D. Cal. Mar. 30, 2009) (noting that the potential complexity and possible duration of trial weighs in favor of granting final approval, and that post-judgment appeal would require many years to resolve and delay payment to class members). In addition, continued litigation would require tremendous time and expenses for both sides associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review. Joint Decl. ¶ 31. Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement's terms far outweigh the gamble of continued litigation by providing, without further delay, over $1.2 billion of substantial current and future relief to almost seven million Bank customers. *Id.*

> ## 2. The Risk of Maintaining Class Action Status Throughout Trial.

Whether the Action would have been tried as a class action is also relevant in assessing the fairness of the Settlement. As the Court had not yet certified a class at the time the Agreement was executed, it is unclear whether certification would have been granted. Joint Decl. ¶ 28. Given the Bank's vigorous defense of this Action thus far, the Bank would have opposed Plaintiffs' certification motion, and "would surely [have] challenge[d] class certification on appeal" in the event of an adverse judgment. *Rodriguez v. West Pub. Corp.*, No. CV05-3222, 2007 WL 2827379, at *8 (C.D. Cal. Sept. 10, 2007) (finding that the likelihood that a certification decision would be appealed meant this factor

-13-

weighed in favor of approval), *rev'd on other grounds*, 563 F.3d 948 (9th Cir. 2009). *See also Dennis*, 2013 U.S. Dist. LEXIS 163118 at *8-9. This litigation activity would have required the Parties to expend significant resources. Joint Decl. ¶ 28. Accordingly, this factor weighs in favor of preliminary approval. The proposed Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled. *See, e.g., Officers for Justice*, 688 F.2d at 625 (approving settlement based in part on the possibility that a judgment after a trial, when discounted, might not reward class members for their patience and the likely delay reflected in the "track record" for large class actions).

### 3.    The Amount Offered in the Settlement.

The Settlement is squarely more than sufficient to warrant approval. It is the product of arms-length negotiations conducted by the Parties' experienced counsel and initially under the supervision of a reputable and skilled mediator. These negotiations led the Parties to a Settlement that is fair, reasonable, and in the Settlement Class' best interests. Despite objections to the contrary—none of which acknowledge the tremendous risk that Plaintiffs undertook in pursuing this theory of liability—that will be addressed and responded to in a separate document filed contemporaneously with this Motion, Class Counsel's assessment in this regard is entitled to considerable deference.

The cessation of BANA's EOBC practice at the heart of Plaintiffs' Complaint, which would have continued but for this case, is a massive benefit for the Settlement Class—valued at $1.2 billion. The additional $66.6 million cash recovery adds to this outstanding result. These benefits are especially valuable given the significant barriers looming in the absence of settlement, including motions for class certification and summary judgment, trial, and appeals before and after a Plaintiffs' verdict. And this is all against a very stark backdrop: a loss on the legal issue at the center of this case—whether or not EOBCs are interest charges—that could occur via the pending Ninth Circuit appeal, would extinguish the Settlement Class' ability to receive any recovery whatsoever.

Based on the Bank's data, which Plaintiffs confirmed during discovery provided by

-14-

BANA, the most likely recoverable damages at trial would have been $725,508,808.51. Bhamani Decl., ¶ 2.[4] This figure was calculated by aggregating the total EOBCs assessed multiplied by the amount of each EOBC and then factoring in the total amount of chargeoffs and refunds. Joint Decl. ¶ 29. That figure is dwarfed by the $1.2 billion that the Settlement Class will save in EOBCs during the five-year period during which BANA has agreed to cease charging the fee. Bhamani Decl. ¶ 8 (expressed as $20 million/month, which amounts to $1.2 billion over five years). Even counting *only* the direct financial payments that will be made as a result of the Settlement—$66.6 million in payments and credits to Settlement Class members and another approximate $2 million in notice and administration costs paid by the Bank—Plaintiffs and the Settlement Class are recovering approximately 9% of their most probable damages, without further risks attendant to litigation. Joint Decl. ¶ 30

Courts in this Circuit routinely grant final approval to settlements providing between 5 and 10% of maximum potential damages, even without additional prospective relief, which has been obtained here. *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, *10 (C.D. Cal. Feb.16, 2017) (approving net class recovery at approximately 7.5% of projected maximum recovery); *Roberti v. OSI Sys.*, No. CV-13-09174 MWF (MRW), 2015 U.S. Dist. LEXIS 164312, at *12-13 (C.D. Cal. Dec. 8, 2015) (8.8% of maximum potential recovery); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal 2015) (approving gross class recovery of approximately 8.5% of the maximum recovery); *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 U.S. Dist. LEXIS 87180, at *13-14 (N.D. Cal. June 24, 2014) (noting courts have held that recovery of only 3% of the maximum potential recovery is fair and reasonable in face of real possibility of recovering nothing absent

---

[4] The recoverable damages amount is below the $756 million figure in the Preliminary Approval Order because the results of confirmatory discovery revealed a lower figure after accounting for EOBCs that had been refunded or charged off. *Id.*

settlement); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (approving settlement of 9% of maximum potential recovery). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628 (lauding fact that settlement involved monetary and non-monetary relief). "[I]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.*

The Settlement benefits are tremendous achievements and are fair and reasonable in light of the Bank's defenses (all other courts have rejected Plaintiffs' theory of liability, concluding fees equivalent to the EOBC are not NBA interest charges), and the challenging and unpredictable path of litigation Plaintiffs would have faced absent settlement. *See Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 THE, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) ("[A] sizeable discount is to be expected in exchange for avoiding uncertainties, risks, and costs that come with litigation a case to trial. Again, the issue is not whether the settlement 'could be better,' but whether it falls within the range of appropriate settlements. *Hanlon*, 150 F.3d at 1027.").

### 4. The Extent of Discovery Completed and the Stage of the Proceedings.

"In regards to class action settlements, 'formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). *See also Roberts v. City of Chula Vista*, No. 16cv1955-MMA (DHB), 2017 U.S. Dist. LEXIS 210384, at *12-13 (S.D. Cal. Dec. 21, 2017) (approving settlement after substantial informal discovery without formal discovery); *Franklin v. Wells Fargo Bank, N.A.*, No. 14cv2349-MMA (BGS), 2016 U.S. Dist. LEXIS 13696, at *11-13 (S.D. Cal. Jan. 29, 2016) (same); *In re Infosonics Corp. Secs. Litig.*, No. 06CV1231JLS(WMc), 2009 U.S. Dist. LEXIS 136057, at *22-23 (S.D. Cal. May 5, 2009) (same).

-16-

Plaintiffs settled the Action with the benefit of important informal discovery resulting in an expert analysis of key documentation and data regarding the Bank's assessment and collection of EOBCs. Joint Decl. ¶ 10. As noted above, the review of this information and data positioned Class Counsel to evaluate with confidence the claims' strengths and weaknesses and the prospects for success at class certification, summary judgment, and trial. *Id.* Confirmatory discovery conducted after the Parties executed the Term Sheet further aided Plaintiffs' analysis. *Id.*

In addition, the Parties briefed one motion to dismiss, an opposition to an interlocutory appeal motion, and had begun research and writing to brief an appeal at the Ninth Circuit. Thus, the Settlement was reached after considerable investigation and careful consideration and discussions of the central legal issue. The Parties were thus fully aware of the issues and risks associated with their respective claims and defenses.

The record provides sufficient information for the Court to find that the Settlement is fair. Further, there is no reason to doubt the fairness. Plaintiffs have litigated this Action for more than two years. Joint Decl. ¶ 2. Plaintiffs' counsel have been involved in other overdraft fee litigation against major American banks for almost a decade. The litigation has been hard-fought, as the Parties have engaged in motion practice, briefing as to whether the Ninth Circuit would grant the Bank interlocutory appeal of the Court's Order denying BANA's Motion to Dismiss, extensive mediation briefing, and discovery. Accordingly, this factor weighs in favor of preliminary approval. Joint Decl. ¶ 3.

### 5.    The Experience and Views of Counsel.

Employing their experience and skill, Class Counsel aggressively and swiftly worked to litigate, then resolve, this case in an efficient manner. A great deal of weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). Class Counsel's expertise allowed it to build a case no others have. Indeed, it may be that no other firm or group of firms in the country could have succeeded here—

-17-

even if they had tried (which they have not).

Class Counsel has successfully litigated and resolved several other consumer class actions against national banks involving overdraft fees. Joint Decl. ¶ 5. In doing so, Class Counsel has been at the forefront of litigating NBA usury claims pertaining to continuous (a/k/a sustained) overdraft fees like the EOBCs. *Id.* ¶ 33. Class Counsel possesses extensive knowledge of and experience in prosecuting class actions in courts throughout the United States, and have recovered hundreds of millions of dollars for the classes they represented. *Id.* In addition, Class Counsel includes firms with significant appellate expertise—expertise that was used to extensively analyze the chances of success in both the Ninth Circuit and the U.S. Supreme Court. *Id.* In this context, "[s]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement." *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 at *4 (N.D. Cal. 2008). The experience, resources and knowledge Class Counsel has is extensive and formidable. Joint Decl. ¶ 33. Class Counsel is qualified to represent the Settlement Class and will, along with the Plaintiffs, vigorously protect members' interests. *Id.*

### 6. *The Presence of a Governmental Participant.*

No governmental actor is relevant to this Action, rendering this factor immaterial to Final Approval. Plaintiffs and Class Counsel do note that as reflected in the Declaration of Stephanie J. Fiereck, Esq. on Implementation of CAFA Notice, which is attached as ***Exhibit E***, and filed herewith pursuant to the Court's requirement in the Preliminary Approval Order, the required CAFA Notice[5] was delivered to each state's respective Attorney General and those of the District of Columbia and the United States Territories; the United States Department of Justice; and, perhaps most important, to the Office of the Comptroller of the Currency ("OCC"), the chief regulator of BANA, pursuant to the

---

[5] CAFA requires a settling defendant give notice of a proposed class action settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice fully complied with the requirements set forth in 28 U.S.C. § 1715(b)(1)-(8).

NBA. The purpose of CAFA notice is to protect class members from being involved in a settlement that may be deemed unfair or inconsistent with regulatory policies, and to protect consumers from class action abuse, particularly settlements that generate large attorney's fees which consume most of the economic value of the settlement.  Notably, none of those authorities have objected to the Settlement, including Class Counsel's application for attorneys' fees. [DE# 80]; Joint Decl. ¶ 46.

### 7.   The Reaction of the Class Members to the Proposed Settlement.

The Reaction of the Settlement Class has been overwhelmingly positive. Of approximately seven million class members, only 100 have timely opted out,[6] and only 13 have filed objections, two of which are untimely. Azari Decl. ¶ 26-27. Timely Objector Khobragade has since notified Class Counsel of his intention to withdraw his objection. Joint Decl. ¶ 41. None of those objections, which are addressed *infra*, offer a reason to deny Final Approval of the Settlement.

## C. Notice to the Class was Adequate and Satisfied Rule 23 and Due Process

In addition to having personal jurisdiction over the Plaintiffs, who are parties to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1170 (quoting *Officers for Justice*, 688 F.2d at 624).

The Notice Program was completed pursuant to this Court's instructions in the Preliminary Approval Order, and was comprised of three parts: (1) email notice ("Email Notice") designed to reach those Settlement Class members for which the Bank maintains email addresses; (2) direct mail postcard notice ("Postcard Notice") to all Settlement Class

---

[6] The proposed Final Approval Order identifies those who opted-out.

members for whom BANA did not provide an email address and those who were sent an email that was returned undeliverable; and (3) a "Long Form Notice" containing more detail than the two other notices that has been available on the Settlement website (*www.eobcsettlement.com*) and via U.S. mail upon request. Joint Decl. ¶ 36; Azari Decl. ¶¶ 13-25. Each facet of the Notice Program was timely and properly accomplished.  Azari Decl. ¶¶ 13-25, 28-32, 34.

The Administrator received the data files identifying the Settlement Class members' names, last known addresses and email addresses, and ran the mailing addresses through the National Change of Address Database; Azari Decl. ¶¶ 14-15.  The Postcard Notice facet was timely completed. Azari Decl. ¶¶ 16, 18, and 29. From February 6, 2018, through February 18, 2018, the Settlement Administrator timely and successfully sent 7,065,538 emails to Settlement Class members for which the Bank maintained addresses. *Id.* ¶ 19. Postcard Notice was mailed to 758,293 Settlement Class Members. In addition, the Settlement Website, with a Long Form Notice[7] and other important filings relating to the Settlement, was established on February 5, 2018. Azari Decl. ¶ 22. It allowed Settlement Class members to obtain detailed information about the Action and the Settlement. *Id.*  As of May 24, 2018, the Settlement Website had 178,181 visitor sessions with 266,310 page views. *Id.* ¶ 24. The Notice Program was effective as approximately 93% of Settlement Class members received individual notice. Azari Decl. ¶ 36.

On February 5, 2018, the Administrator also established and maintained an automated toll-free telephone line, available 24 hours/day, 7 days/week, for Settlement Class members to call to listen to answers to frequently asked questions and to request Long Form Notices be sent via mail. *Id.* ¶ 25; Agreement ¶ 2.4(c). As of May 24, 2018, the

---

[7] Among the additional information the Long Form Notice provided was the opt-out and objection procedures and requirements for Settlement Class members to follow, notifying them that objections could be made to the Settlement, Class Counsel's application for attorneys' fees, costs and expenses, and to the requested Service Awards. Agreement ¶ 2.4 and Exhibit C thereto.

-20-

1   toll-free number has handled 69,329 calls representing 211,347 minutes of use. Azari Decl.

2   ¶ 25. The Administrator also worked with Class Counsel to communicate with Settlement

3   Class members who had questions the Administrator could answer. Joint Decl. ¶ 39.

4       In this Circuit, it has long been the case that a notice of settlement pursuant to Fed.

5   R. Civ. P. 23(c)(2) is satisfactory if it "'generally describes the terms of the settlement in

6   sufficient detail to alert those with adverse viewpoints to investigate and to come forward

7   and be heard.'" *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (citing *Mendoza v. Tucson*

8   *Sch. Dist. No.1*, 623 F.3d 1338, 1352 (9th Cir. 1980)). Here, the Notice Program satisfied

9   these content requirements. Thus, the Notice Program in this case was adequate and

10  satisfied the requirements of both Rule 23 and due process.

11  **D. Certification of the Settlement Class Is Appropriate**

12      For settlement purposes, Plaintiffs respectfully request that the Court certify the

13  Settlement Class defined above, and in paragraph 2.1 of the Agreement. "Confronted with

14  a request for settlement-only class certification, a district court need not inquire whether

15  the case, if tried, would present intractable management problems . . . for the proposal is

16  that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For

17  purposes of this Settlement only, the Bank does not oppose class certification. For the

18  reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

19      Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that:

20  (1) the class is so numerous that joinder of all members is impracticable; (2) there are

21  questions of law or fact common to the class; (3) the claims or defenses of the

22  representative parties are typical of the claims or defenses of the class; and (4) the

23  representative parties will fairly and adequately protect the interests of the class. *See* Fed.

24  R. Civ. P. 23(a). Under Rule 23(b)(3), certification is appropriate if questions of law or fact

25  common to members of the class predominate over individual issues of law or fact and if

26  a class action is superior to other available methods for the fair and efficient adjudication

27  of the controversy. *See* Fed. R. Civ. P. 23(b)(3).

28

-21-

Rule 23(a)(1)'s numerosity requirement is satisfied because the Settlement Class consists of several million customers, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *see also Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2008 WL 4279550, at *14 (N.D. Cal. Sept. 11, 2008) ("Given the large number of checking account customers at Wells Fargo, the numerosity requirement is met."); *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, No. 16-CV-2162 JLS (NLS), 2017 U.S. Dist. LEXIS 188192, at *12-13 (Nov. 14, 2017) (courts generally find any class consisting of more than forty members satisfies numerosity).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (citation omitted). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient" to meet the requirement of Fed. R. Civ. P. 23(a)(2). *Hanlon*, 150 F.3d at 1019. Here, commonality is readily satisfied. There are multiple common questions of law and fact based on the Bank's systematic practice of assessing EOBCs, which is alleged to have injured all Settlement Class members the same way. These common questions would generate common answers central to the viability of Plaintiffs' claims were the Action to proceed to trial.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent members of the Settlement Class, such that the Fed. R. Civ. 23(a)(3) typicality requirement is satisfied. *See Nunez*, 2017 U.S. Dist. LEXIS 188192 at *14. The Ninth Circuit interprets typicality permissively. *Id.* (citing *Hanlon*, 150 F.3d at 1020). Plaintiffs are typical of absent members of the Settlement Class because they were subjected to the same Bank practices and claim to have suffered from the same injuries. *Id.*

Plaintiffs and Class Counsel likewise satisfy the adequacy of representation

-22-

requirement of Fed. R. Civ. P. 23(a)(4). Adequacy of representation requires that the class representatives do not have conflicts of interest with other class members and that the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs' interests are coextensive with—not antagonistic to—the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and they have no diverging interests. Further, Plaintiffs are represented by qualified and competent counsel who has extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. Joint Decl. ¶ 33. Class Counsel has devoted substantial time and resources to this Action and has vigorously protected the Settlement Class's interests. *Id.*

Certification of the Settlement Class is further appropriate because the questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the Action. *See* Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623). The predominance requirement is readily satisfied because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each Settlement Class member. For example, each Settlement Class member's banking relationship arises from an account agreement that is the same or substantially similar in all relevant respects. Most importantly, each was subjected to the same EOBC policy.

Rule 23(b)(2) certification is also warranted because where the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "In other words, Rule 23(b)(2) applies only when a single injunction or

-23-

declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. Indeed,

> [t]hese requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole. . . . That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries.

*Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)). Here, until agreeing to cease the practice for the Settlement, BANA's EOBC policy was uniformly applied to all Settlement Class members. BANA has agreed, subject to Final Approval, to change its business practices beginning on or before December 31, 2017, not to implement or assess EOBCs, or any equivalent fee, in connection with consumer checking accounts, until December 31, 2022.

Further, resolution of millions of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Joanne Farrell's children, Patrick Michael Farrell, Ryan Thomas Farrell, Timothy Gaelen Farrell, and Brooke Ann Farrell, Ronald Dinkins, Larice Addamo, and Tia Little as Class Representatives; (4) appoint as Class Counsel the attorneys previously appointed in the Preliminary Approval Order, as amended; (5) deny the timely and valid objections filed in this Action and accept the withdrawn objections; (6) award Class Representatives Service Awards in the amount of **$5,000.00** each, with the exception of Joanne Farrell's children

-24-

who shall be awarded **$1,250.00** each; (7) award attorneys' fees to Class Counsel in an amount of **$14.5 million⁸**; (8) award Class Counsel reimbursement of litigation costs and expenses in the amount of **$53,119.92**; and (9) enter final judgment dismissing this Action, and reserving jurisdiction over settlement implementation pursuant to the Parties' Consent to Magistage Judge for Post-Judgment Class Action Implementation, attached hereto as *Exhibit F*. A copy of a proposed Final Approval Order is attached as *Exhibit G.*

Dated: May 30, 2018                          Respectfully submitted,

*s/ Jeff Ostrow*
JEFF OSTROW (*pro hac vice*)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*ostrow@kolawyers.com*

BRYAN S. GOWDY (*pro hac vice*)
**CREED AND GOWDY, P.A.**
865 May Street
Jacksonville, FL 32204
Telephone: 904-350-0075
Facsimile: 904-503-0441
*bgowdy@appellate-firm.com*

WALTER W. NOSS (CA 277580)
**SCOTT + SCOTT LLP**
707 Broadway,10th Floor
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
*wnoss@scott-scott.com*

HASSAN A. ZAVAREEI (CA 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*hzavareei@tzlegal.com*

JOHN R. HARGROVE (*pro hac vice*)
CRISTINA M. PIERSON (*pro hac vice*)
JOHN JOSEPH UUSTAL (*pro hac vice*)
**KELLEY UUSTAL PC**
500 North Federal Highway, Suite 200
Fort Lauderdale, FL 33301
Telephone: 954-522-6601
*jju@kulaw.com*
*cmp@kulaw.com*
*jhr@hargrovelawgroup.com*

***Counsel for Plaintiffs and the Settlement Class***

---

⁸ Plaintiffs have voluntarily reduced their attorneys' fee request from $16.65 million to $14.5 million.  An explanation for the reduction is contained in the Plaintiffs' Responses to Objecdtions filed contemporaneously with this Motion.