# EXHIBIT B

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | CASE NO. 3:16-cv-00492-L-WVG<br><br>**JOINT DECLARATION OF CLASS COUNSEL JEFF OSTROW AND HASSAN ZAVAREEI IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FOR APPLICATION OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS** |

Class Counsel, Jeff Ostrow and Hassan Zavareei, hereby declare as follows:

1. Pursuant to the Preliminary Approval Order, we are Class Counsel under the Settlement with Bank of America, N.A. ("BANA" or "Bank") being presented to the Court for Final Approval. We submit this declaration in support of the Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement, Application for Attorneys' Fees and Costs and Service Awards ("Memorandum").[1] We have personal knowledge of the facts set forth in this declaration, and could testify competently as to them if called upon to do so.

## Background and Procedural History

2. This Action seeking relief under the National Bank Act's ("NBA") usury provisions has been litigated for nearly two years. Class Counsel have been involved in other

---

[1] The definitions and capitalized terms in the Settlement Agreement ("Agreement") and Memorandum are hereby incorporated as though fully set forth in this Order, and shall have the same meanings attributed to them in those documents.

1

litigation against major U.S. banks for almost a decade.

3. The litigation has been hard-fought. The Parties have engaged in motion practice, briefing pertaining to whether the Ninth Circuit would grant the Bank interlocutory appeal of the Order denying the Motion to Dismiss, extensive mediation briefing, and discovery.

4. Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. In negotiating this Settlement, Class Counsel had the benefit of years of experience litigating against national banks, including many cases involving the assessment of overdraft fees. Class Counsel also litigated and settled another class action against BANA involving a different BANA overdraft fee policy.

5. In litigating and resolving other consumer class actions against national banks involving overdraft fees, Class Counsel has been at the forefront of the NBA usury claims pertaining to continuous (a/k/a sustained) overdraft fees like the Extended Overdrawn Balance Charges ("EOBCs").

6. Before filing suit, Class Counsel spent many hours investigating the usury claims of several potential plaintiffs against the Bank. Class Counsel interviewed a number of customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon consumers. This information was essential to Class Counsel's ability to understand the nature of the Bank's conduct, the language of the Account agreements at issue, and potential remedies. In addition, Class Counsel also expended significant resources researching and developing the legal claims at issue.

7. Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive briefing on the fundamental legal issue of whether the EOBCs are a usurious charge, data analysis with the assistance of Plaintiffs' expert, and confirmatory discovery with the Bank. Class Counsel's review enabled it to gain an understanding of the law and evidence related to central questions in the case, and prepared it for well-informed settlement negotiations. Class Counsel was also well-positioned to

2

evaluate the strengths and weaknesses of Plaintiffs' claims, and the appropriate basis upon which to settle them, as a result of their litigating similar claims in courts across the country.

8. Class Counsel led the investigation that resulted in this Action. Indeed, Class Counsel persisted to pursue the usury claim even after three other district courts had rejected it in other cases. *See McGee v. Bank of Am., N.A.*, 2015 WL 4594582 (S.D. Fla. July 30, 2015), *aff'd* 674 Fed. Appx. 958 (11th Cir. Jan. 18, 2017); *Shaw v. BOKF, Nat'l Ass'n*, 2015 WL 6142903 (N.D. Okla. Oct. 19, 2015); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 641-642 (D.S.C. 2015). Since then others lost on the same theory. *See Johnson v. BOKF, N.A. d/b/a Bank of Texas*, No. 3:17-cv-663, Dkt. No. 30 (N.D. Tex. Oct. 24-2017); *Moore v. MB Fin. Bank, N.A.,* No. 17 C 4716, 2017 U.S. Dist. LEXIS 189585 (Nov. 16, 2017); *Dorsey v. T.D. Bank, N.A.*, No. 6:17-cv-01432, Dkt. No. 30 (D.S.C. Feb. 28, 2018), *appeal filed*, Case No. 18-1356 (4th Cir.); *Fawcett v. Citizens Bank, N.A.*, No. 17-11043, Dkt. No. 37 (D. Mass., Apr. 19, 2018). To date, six federal courts have granted seven separate motions to dismiss similar cases holding that the respective banks' charges were not interest and therefore not subject to the NBA's usury limit.

9. In *McGee*, the U.S. Court of Appeals for the Eleventh Circuit affirmed the Florida district court's judgment of dismissal on the same issue. *McGee v. Bank of Am., N.A.*, 2015 WL 4594582 (S.D. Fla. July 30, 2015), *aff'd* 674 F. App'x 958 (11th Cir. Jan. 18, 2017). This Action is the only one of its kind that has survived to date, and the only one in which a defendant bank has agreed to pay cash and cease the very practice at the heart of the complaint. Considering this precedent, Class Counsel took a great risk in even filing this Action in the first instance, and the results obtained, including the notable cessation of charging EOBCs, is even more extraordinary. So not only were the claims in this litigation untested and novel, but it took Class Counsel a substantial amount of pre-filing work to research and develop the legal arguments and claims to support the finding that EOBCs were interest. Nonetheless, Class Counsel developed this case and the few others like it, relying on their unique expertise in consumer banking practices and litigation related thereto.

3

Once the Action was on file, Class Counsel then fought to overcome the Bank's vigorous protestations that the case was wrong-headed; and persisted in driving the hard bargain that resulted in this Settlement. Not one other firm or governmental entity brought or prosecuted these claims. In short, without Class Counsel's hard work, and investment of resources, BANA's alleged misconduct would have gone without recompense.

**The Settlement**

10. Plaintiffs settled the Action with the benefit of important informal discovery resulting in an expert analysis of key documentation and data regarding the Bank's assessment and collection of EOBCs. The review of this information and data positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. As noted above, confirmatory discovery conducted after the Parties executed the term sheet agreeing to the material terms of settlement further aided Plaintiffs' analysis.

11. The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.

12. The Parties engaged in a full day formal mediation before an experienced and respected mediator, Honorable Layn Phillips (Ret.). At the mediation in Newport Beach, California, there were five members of Class Counsel present. The Bank had nearly the same number of people representing its interest. Although the Parties did not settle that day, much progress was made laying the foundation to the eventual resolution of this Action. The Parties continued their settlement discussion for a couple of months with the assistance of Judge Phillips.

13. The parties negotiated and executed a term sheet confirming the material terms of settlement on October 19, 2017.

14. After the Parties executed the term sheet, Class Counsel performed confirmatory discovery at the Bank's headquarters in Charlotte, North Carolina.

4

15. The Parties then turned to drafting the Agreement. On October 31, 2017, the Parties signed the Agreement.

## Terms of the Settlement

16. Under the terms of the Agreement, the Bank has agreed to stop assessing the EOBC charge on consumer checking accounts. For a period of five years, from December 31, 2017, though December 31, 2022, the Bank will not implement and/or assess EOBCs, or an equivalent fee, in connection with accounts.

17. The Bank has agreed to make $29.1 million dollars in Debt Reduction Payments for money it claims is owed for outstanding EOBCs assessed against Settlement Class members whose accounts have been closed. Settlement Class members who incurred an EOBC after February 14, 2014, and had their accounts closed by the Bank and still had an uncollected EOBC outstanding, will have their outstanding balance reduced by an amount of up to $35. If the account balance is less than $35, the Bank will adjust the account to reflect a $0.00 account balance. Further, to the extent BANA has reported the accounts to any credit bureaus, BANA will update the reporting.

18. In addition to the $29.1 million of Debt Reduction, the total Settlement Amount of $66.6 million includes a $37.5 million cash Settlement Fund. The Settlement provides for automatic delivery, without a claims process, to Settlement Class members of the Settlement benefits. Should residual funds remain following a second distribution, or in the event a second distribution is not economically feasible, it is the intent of the Parties that the funds shall be distributed to *cy pres* recipient, Consumers for Responsible Lending (www.responsiblelending.org), a non-profit organization that provides a national voice against abusive financial practices.

19. The cash Settlement Fund will be used to pay: (a) Settlement Class members their respective share of the Net Cash Settlement Amount; (b) Class Counsel for any Court awarded attorneys' fees and litigation costs; (c) any Court awarded Service Awards for the Class Representatives; and (d) any Administrator Hourly Charges. The Bank funded the

cash Settlement Fund on January 10, 2018.

20. Administration Costs shall be paid separately by the Bank, except for any hourly services requested of the Administrator. The Parties currently estimate the Administration Costs to be paid by the Bank at approximately $2 million.

21. Class Counsel is requesting $14.5 Million for attorneys' fees, as well as reimbursement of litigation costs and expenses incurred in connection with the Action totaling $53,119.92. The Parties negotiated and reached agreement regarding attorneys' fees and costs only after agreeing on all material terms of the Settlement.

### Risks of Continued Litigation

22. Continued litigation would have required tremendous time and expenses for both sides associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review.

23. Plaintiffs and Class Counsel are confident in their case, but are also pragmatic in their awareness of the Bank's various defenses, and the risks inherent to litigation of this magnitude that challenges engrained banking industry practice.

24. Plaintiffs faced the risk of losing during the pending appeal of the Order denying the Motion to Dismiss, at summary judgment, at trial, or on a subsequent appeal based on various theories and defenses advanced by the Bank.

25. Each of these risks, by itself, could have impeded the successful prosecution of these claims at trial and in an eventual appeal—resulting in zero benefit to the Settlement Class. Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached with the Bank outweighs the gamble of continued litigation.

26. The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and—given the relatively small value of the claims of the individual members of the Settlement Class—could be impracticable.

6

JOINT DECLARATION OF CLASS COUNSEL JEFF OSTROW AND HASSAN ZAVAREEI IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT,
APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

27. The Settlement provides immediate and substantial benefits to approximately seven million Bank customers. The proposed Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner.

28. Whether the Action would have been tried as a class action is also relevant in assessing the fairness of the Settlement. As the Court had not yet certified a class at the time the Agreement was executed, it is unclear whether certification would have been granted and if granted, whether it would have withstood appellate scrutiny in the likely event of an appeal by the Bank. This litigation activity would have required the Parties to expend significant resources and risk further uncertainty.

29. Based on the Bank's data, Class Counsel estimates that the Settlement Class' most likely recoverable damages at trial would have been $725,508,808.51. This figure was derived from Class Counsel's confirmatory discovery that resulted in BANA furnishing the Declaration of Riaz Bhamani, a BANA employee, an exhibit to the Memorandum. This figure was calculated by aggregating the total EOBCs assessed multiplied by the amount of each EOBC and then factoring in the total amount of chargeoffs and refunds. That most likely recoverable damages figure is dwarfed by the $1.2 billion that will be saved in EOBCs. BANA has agreed to cease charging during the five-year period commencing December 31, 2017.

30. Even counting *only* the direct financial payments that will be made as a result of the Settlement—$66.6 million in payments and account credits to Settlement Class members and another approximately $2 million in Administration Costs paid by the Bank—Plaintiffs and Settlement Class members are recovering approximately 9% of their most probable damages, without further risks attendant to litigation.

31. The benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing merits

7

discovery, pretrial motion practice, trial, final appellate review by providing of substantial current and future relief to almost seven million Bank customers without further delay.

## **Class Treatment is Appropriate**

32. As stated previously, Class Counsel has significant experience litigating class claims, including numerous claims against national banks, through their active roles similar class actions throughout the country. *See also* Firm Resumes of Class Counsel [DE #80-4, 80-5, 80-6, 80-7]. In litigating these cases, Class Counsel has been at the forefront of litigating NBA usury claims pertaining to continuous (a/k/a sustained) overdraft fees like the EOBC.

33. Class Counsel possesses extensive knowledge of and experience in prosecuting class actions in courts throughout the United States, and have recovered hundreds of millions of dollars for the classes they represented. In addition, Class Counsel includes firms with appellate expertise, which was used to extensively analyze the chances of success in both in the Ninth Circuit and the U.S. Supreme Court. The experience, resources, and knowledge Class Counsel brings to this Action is extensive and formidable. Class Counsel is qualified to represent the Settlement Class and has, along with the Class Representatives, vigorously protected the interests of the Settlement Class.[2]

34. The Administrator has overseen the Notice Program. The Notice Program is designed to provide the best notice practicable, and is tailored to take advantage of the information the Bank has available about the Settlement Class.

35. The Notice Program constituted sufficient notice to all persons entitled to notice. The Notice Program satisfied all applicable requirements of law, including, but not

---

[2] Class Representative Joanne Farrell ("Farrell") passed away January 18, 2018. Farrell passed away intestate and is survived solely by her adult children. Farrell vigorously protected the interests of the Settlement Class before her death, and a motion has been filed to substitute her adult children as Plaintiffs and Class Representatives pursuant to Fed. R. Civ. P. 25. [DE #100]. The motion had not yet been ruled as of the time the Motion and Memorandum were filed.

8

limited to, Federal Rule of Civil Procedure 23 and constitutional due process.

36. The Notice Program was completed pursuant to this Court's instructions in the Preliminary Approval Order, and was comprised of three parts: (1) email notice ("Email Notice") designed to reach those Settlement Class members for which the Bank maintains email addresses; (2) direct mail postcard notice ("Postcard Notice") to all Settlement Class members for whom BANA did not provide an email address and those who were sent an email that was returned undeliverable; and (3) a "Long Form Notice" containing more detail than the two other notices that has been available on the Settlement website (*www.eobcsettlement.com*) and via U.S. mail upon request.

37. Names and direct contact information for members of the Settlement Class were identified by the Bank. Individual Notice was sent to virtually all members of the Settlement Class as name and direct contact information was identified for more than 99.9% of all Accounts included in the Settlement Class.

38. The Notice properly informed and continues to inform members of the Settlement Class of the substantive terms of the Settlement. It advised members of the Settlement Class of their options for opting-out of or objecting to the Settlement, and how to obtain additional information about the Settlement. The Notice Program was designed to reach a high percentage of the Settlement Class and exceeded the requirements of constitutional due process.

39. The Administrator also worked with Class Counsel to communicate with Settlement Class members who had questions the Administrator could answer.

40. Further, the injunctive relief provided for in the Settlement is warranted because until agreeing to cease the practice for the Settlement, BANA's EOBC policy was uniformly applied to all Settlement Class members. BANA has agreed, subject to Final Approval, to change its business practices beginning on or before December 31, 2017, agreeing not to implement or assess EOBCs, or any equivalent fee, in connection with BANA consumer checking accounts, for a period of five years, or until December 31, 2022.

9

JOINT DECLARATION OF CLASS COUNSEL JEFF OSTROW AND HASSAN ZAVAREEI IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT,
APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

## Objectors

41. A total of 13 individuals have lodged objections to the Settlement, 11 of which are timely and two of which are untimely. Timely Objector Khobragade has since notified Class Counsel of his intention to withdraw his objection. The objectors are either (1) represented by "professional objector" counsel, who routinely object to settlements not out of concern for class members but to advance their own financial or ideological interests, or (2) pro se objectors, whose concerns are not grounds to deny approval and, in some cases, are not even true objections.

| Professional Objectors | Represented by |
|---|---|
| Rachel Threatt | Ted Frank |
| Amy Collins | Timothy Hanigan and Chris Bandas |
| Stephen Kron | Caroline Tucker |
| Steven Helfand | An attorney appearing *pro se* |
| Estefania Osorio Sanchez | Michael Luppi and Albert Bacharach |
| **Pro se Objectors** | |
| Shenita Thompson | |
| Ashwin Khobragade | |
| George O'Dell | |
| Bruce Ebneter | |
| Algerine Romero | |
| Ochiochioya Eidon | |
| **Untimely Pro se Objectors** | |
| Michael Colley | |
| Mark Gullickson | |

42. Objector Estefania Osorio Sanchez [DE #88] is represented by professional objectors Michael Luppi and Albert Bacharach. Mr. Bacharach did not appear in the paperwork for Ms. Sanchez's objection, but when Class Counsel attempted to schedule a mediation with the objectors, Mr. Bacharach contacted Class Counsel claiming to represent Ms. Sanchez.

43. Although Class Counsel had suspicions regarding the professional objectors'

10

motives, Class Counsel reached out to all objectors in an effort to mediate the objections and address their concerns prior to final approval with the hope of avoiding an appeal that would delay recovery by the class.

44. On May 15, 2018, counsel for all of the professional objectors—except for Ted Frank, who refused to attend the mediation or even discuss his objection with Class Counsel—participated in a telephonic mediation with JAMS mediator Linda Singer. The participants included Chris Bandas, Caroline Tucker, Albert Bacharach, and Steven Helfand, along with *pro se* objector Thompson. Class Counsel made repeated efforts to persuade Mr. Frank to participate in the mediation, which he refused.

45. Class Counsel does not now know whether objector mediation participants will formally withdraw their objections, but each, except for Helfand, confirmed to Class Counsel and the mediator that a reduced $14.5 million request was acceptable to them and reasonable.

## CAFA Notice

46. The required CAFA Notice was delivered to the Attorney Generals of the United States for all 50 states, the District of Columbia, and the United States Territories; the United States Department of Justice; and perhaps most important to the Office of the Comptroller of the Currency ("OCC"), which the Court is fully aware is the chief regulator of BANA, pursuant to the NBA. The purpose of CAFA notice is to protect class members from being involved in a settlement that may be deemed unfair or inconsistent with regulatory policies, and to protect consumers from class action abuse, particularly settlements that generate large attorney's fees which consume most of the economic value of the settlement. Notably, none of those authorities have objected to the Settlement, including Class Counsel's application for attorneys' fees.

## Attorneys' Fees

47. In the time since filing Plaintiffs' Attorneys' Fee and Cost Application, Class Counsel has spent significant additional time on this matter. Tycko & Zavareei ("TZ") has

11

already exceeded all of the estimated future hours listed in the Application, and has spent an additional 164.30 hours on top of that communicating with Settlement Class members and objectors, preparing for and attending mediation with objectors, and working on the Motion for Final Approval and Plaintiffs' Response to Objections. This amounts to a lodestar increase of approximately $73,515.90 over their estimate in the Application.

48. Kopelowitz Ostrow Ferguson Weiselberg Gilbert ("KO") has likewise exceeded all of the estimated future hours listed in the Application, and has spent an additional 144.25 hours on top of that communicating with Settlement Class members and objectors, preparing for and attending mediation with objectors, and working on the Motion for Final Approval and Plaintiffs' Response to Objections. This amounts to a lodestar increase of approximately $104,581.25 over KO's estimate in the Fee Application.

49. Creed & Gowdy ("CG") has likewise exceeded all of the estimated future hours listed in the Application, and has spent an additional 37 hours on top of that communicating with Settlement Class members and objectors, preparing for mediation with objectors, and working on the Motion for Final Approval and Plaintiffs' Response to Objections. This amounts to a lodestar increase of approximately $25,900.00 over CG's estimate in the Fee Application.

50. Kelly/Uustal, PLC ("KU") has likewise exceeded all of the estimated future hours listed in the Fee Application, and has spent an additional 18.2 hours on top of that communicating with Settlement Class members and objectors, preparing for and attending mediation with objectors, and working on the Motion for Final Approval and Plaintiffs' Response to Objections. This amounts to a lodestar increase of approximately $10,525.50 over KU's estimate in the Fee Application.

51. In total, after subtracting for "future time" already accounted for in the Attorneys' Fee and Cost Application, Class Counsel's total lodestar has increased by approximately $214,522.65 to a total of approximately $1,642,570.15 in the time since filing the Fee Application.

52. This revised lodestar does not include any additional future time for appearing at the Final Approval hearing or defending the Settlement on appeal. From TZ's recent experience defending final approval of a class action settlement that was attacked on appeal by Frank, TZ has spent an additional 104.4 hours *after* the final approval briefing, and the appeal has yet to be argued in that matter. Additionally, TZ has co-counsel in that matter which has spent even more time in the appellate proceedings, so it is conservative to estimate that Class Counsel will spend at least another 200 hours on this matter after filing the Final Approval brief, if Frank attacks final approval on appeal.

We declare under penalty of perjury that the foregoing is true and correct. Signed on May 30, 2018.

/s/ Jeff Ostrow
JEFF OSTROW
**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
Fort Lauderdale, Florida

/s/ Hassan Zavareei
HASSAN ZAVAREEI
**TYCKO & ZAVAREEI LLP**
Washington, D.C.

13

JOINT DECLARATION OF CLASS COUNSEL JEFF OSTROW AND HASSAN ZAVAREEI IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS