# EXHIBIT D

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, | Case No.: 3:16-cv-00492-L-WVG |
| Plaintiff, | |
| v. | |
| BANK OF AMERICA, NA., | |
| Defendant. | |

## AMENDED DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE PROGRAM

I, CAMERON R. AZARI, ESQ., hereby declare as follows:

1.     My name is Cameron R. Azari, Esq. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.     I am the Director of Legal Notice for Hilsoft Notifications ("Hilsoft); a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  Hilsoft is a business unit of Epiq Class Action & Claims Solutions Inc. ("Epiq").

3.     Hilsoft has been involved with some of the most complex and significant notices and notice programs in recent history.  We have been recognized by courts for our testimony as to which method of notification is appropriate for a given case, and we have provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances.

4.     In the case resolved by this settlement, *Joanne Farrell v. Bank of America, N.A.,* Case No. 3:16-cv-00492-L-WVG, my colleagues and I were asked to design a Notice Program (or "Notice Plan") to inform Settlement Class members about their rights under the proposed class action

settlement.  In the "*Declaration of Cameron R. Azari,*" executed on December 12, 2017, I detailed my review of the proposed email notice and responded to the Court's order that the email notice be formatted "in a manner designed to escape email inbox spam filters."

5.      Hilsoft has served as notice expert and has been recognized and appointed by courts to design and provide notice in many large and complex cases, including: *In re: Takata Airbag Products Liability Litigation (Settlements with – BMW, Mazda, Subaru, Toyota, Honda and Nissan)*, MDL No. 2599 (S.D. Fla.) ($1.2 billion in settlements regarding Takata airbags.  The monumental Notice Plans included individual mailed notice to more than 51.5 million potential Class Members and extensive nationwide media via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and specialized behaviorally targeted digital media.  Combined, the Notice Plan reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle an average of 4.0 times each);  *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.) (Multiple bank settlements between 2010-2018 involving direct mail and email to millions of class members and publication in relevant local newspapers.  Representative banks include, Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M & I Bank, Community Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, Bancorp, Whitney Bank, Associated Bank, and Susquehanna Bank); *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL 2179* (E.D. La.) (Dual landmark settlement notice programs to separate "Economic and Property Damages" and "Medical Benefits" settlement classes.  Notice effort included over 7,900 television spots, over 5,200 radio spots, and over 5,400 print insertions and reached over 95% of Gulf Coast residents); *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability*

*Litigation* (Bosch Settlement), MDL No. 2672 (N.D. Cal.) (Comprehensive notice program within the Volkswagen Emissions Litigation that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email.  A targeted internet campaign further enhanced the notice effort); and *Rose v. Bank of Am. Corp.*, Case No. 11-cv-02390-EJD (N.D. Cal.) (TCPA settlement with email and postcard notice to over 6.9 million Class Members and publication notice in *Parade Magazine* and other consumer publications).

6.     We have been recognized by courts for our testimony as to which method of notification is appropriate for a given case, and have provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances. For example:

a)     *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (Bosch Settlement), MDL No. 2672 (N.D. Cal.), Judge Charles R. Breyer on May 17, 2017:

> *The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)*

b)     In *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.*, No. 14-23120 (S.D. Fla.) Judge Marcia G. Cooke stated on April 11, 2016:

> *Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016.  The Court finds that the notice process was designed to advise Class Members of their rights.  The form and method for*

*notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.*

    c)    In *Steen v. Capital One, N.A.,* No. 2:10-cv-01505-JCZ-KWR (E.D. La.) and

No. 1:10-cv-22058-JLK (S.D. Fla.) as part of *In Re: Checking Account Overdraft Litigation,*

MDL 2036 (S.D. Fla.): Judge James Lawrence King stated on May 22, 2015:

*The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15). This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. Azari Decl. ¶¶ 30-39.*

    d)    *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* No. 5:11-

CV-02390-EJD; 5:12-CV-04009-EJD (N.D. Cal.), Judge Edward J. Davila on August 29,

2014: d

*The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

e)      In *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,*

*on April 20, 2010* (Economic and Property Damages Settlement), MDL No. 2179 (E.D.

La.): Judge Carl J. Barbier stated on December 21, 2012:

> *The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.*
>
> *The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

f)      In *In re: Heartland Payment Systems, Inc. Customer Data Security Breach*

*Litigation,* MDL 09-2046 (S.D. Tex.), Judge Lee Rosenthal stated on March 2, 2012:

> *The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement... Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at \*23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197 (internal quotation marks omitted).*

7.      Numerous other court opinions and comments as to our testimony, and opinions on

the adequacy of our notice efforts, are included in Hilsoft's curriculum vitae included as

**Attachment 1**.

8.      On December 11, 2017, the Court appointed Epiq as the Administrator.  The Court

also approved the Notice Program and the proposed forms of Notice in the *Order Conditionally*

*Granting Preliminary Approval of Class Action Settlement*.   With the Court's approval, and according to the *Order Granting Plaintiffs' Unopposed Motion for Approval of Amended Class Notice Forms and Granting Motion to Substitute Class Counsel*, which the Court entered on December 21, 2017, Hilsoft began to implement each element of the Notice Plan.

9.    This declaration will detail the successful implementation of the Notice Program and document the completion of all of the notice activities and will also discuss the administration activity to date.   The facts in this declaration are based on information provided to me by colleagues from Hilsoft and Epiq.

## **SUMMARY OF CONCLUSIONS**

10.    The Notice Program we designed and implemented achieves each of the planned objectives:

A.    Names and direct contact information for members of the Settlement Class were identified for Bank of America's accounts.   Individual Notice was sent to virtually all[1] members of the Settlement Class.

B.    Each person reached had an opportunity to view a Notice, with an adequate amount of time prior to the Final Approval Hearing to make appropriate decisions such as whether to object or opt-out.

C.    The Notices were designed to be noticeable, clear, simple, substantive, and informative.   No significant or required information was missing.

D.    The program was consistent with other notice programs we have designed and implemented for similar settlements that have received final approval.

---

[1] Name and direct contact information was identified for more than 99.9% of all Accounts included in the Settlement Class.

E.      The Notice Plan was developed with the active participation of counsel.

11.      In my view, the Notice Plan provides reasonable notice of the settlement of the class action in this case in such a manner as the Court directed, and satisfied due process, including its "desire to actually inform" requirement.[2]

12.      This declaration will detail the notice activities undertaken and explain how and why the settlement Notice Plan was comprehensive, well suited to the Settlement Class and was the best notice practicable under the circumstances of this case, and satisfied due process obligations.

## NOTICE PLAN IMPLEMENTATION

13.      The Order defines the "Settlement Class" as consisting of, "All holders of BANA consumer checking accounts who, during the period between February 25, 2014 and December 30, 2017, were assessed at least one Extended Overdrawn Balance Charge that was not refunded." I have reviewed the Orders and Settlement Agreement and I fully understand the defined term used in the definition of the Settlement Class "EOBC" or, plural, "EOBCs," means "the Extended Overdrawn Balance Charge that BANA applies to a consumer checking account when that account is overdrawn by the accountholder and the account remains overdrawn for five (5) or more consecutive business days, as described in the Personal Schedule of Fees."

### *Individual Notice – Postcard Notice*

14.      Bank of America provided Epiq with names and direct contact information for virtually all of the Settlement Class. On December 29, 2017, Epiq received data for approximately

---

[2] "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950).

7,122,408 records for Bank of America's accounts relating to Settlement Class members' Accounts. Epiq identified all account holders with multiple Accounts.

15.     Prior to the initial mailing of the Summary Postcard Notice; postal mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS"), which contains records of all reported permanent moves for the past four years.   Any addresses that were returned by the NCOA database as invalid were updated through a third-party address search service prior to mailing.   In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

16.     Beginning on February 9, 2018 and continuing through February 12, 2018, Epiq sent 758,293 Summary Postcard Notices by USPS First Class Mail to potential Settlement Class members.   Each notice was a two image 4.25" x 5.5" Summary Postcard Notice.   A copy of the Summary Postcard Notice is included as **Attachment 2**.

17.     Additionally, a Long Form Notice was mailed to all persons who requested one via the toll-free phone number.   As of May 24, 2018, 15,441 Long Form Notices have been mailed as a result of such requests.

18.     The return address on the Summary Postcard Notice is a post office box maintained by Epiq.   As of May 24, 2018, Epiq has re-mailed 96,887 Summary Postcard Notices for addresses that were corrected through the USPS and via an extra search for different addresses using a third-party lookup service ("ALLFIND", maintained by LexisNexis).   Address updating and re-mailing for

undeliverable Summary Postcard Notices is ongoing and will continue through the June 18, 2018 Final Approval Hearing.

*Individual Notice – Emailed Notice*

19.    Beginning on February 6, 2018 and continuing through February 18, 2018, Epiq sent a Summary Email Notice to the 7,065,538 email addresses provided by Bank of America.   The Summary Email Notice included substantially the same content as the Summary Postcard Notice. The Summary Email Notice was created using an embedded html text format.   This format provided easy to read text without graphics, tables, images and other elements to decrease the likelihood that the message would be blocked by Internet Service Providers (ISPs) and/or SPAM filters. Each Summary Email Notice was transmitted with a unique message identifier. If the receiving e-mail server could not deliver the message, a "bounce code" was returned along with the unique message identifier. For any Summary Email Notice for which a bounce code was received indicating that the message was undeliverable, at least two additional attempts were made to deliver the Notice by email.   To optimize this electronic form, the Summary Email Notice included embedded links to the Case Website where the Detailed Notice could be viewed and/or downloaded.   A copy of the Summary Email Notice is included as **Attachment 3**.

20.    After completion of the initial Email Notice effort, Epiq received back 1,559,366 undeliverable emails.   If a physical mailing address existed, a Summary Postcard Notice was mailed. On March 30, 2018, Epiq sent a Summary Postcard Notice via USPS First Class Mail to 1,191,323 Settlement Class members whose Summary Email Notice was undeliverable after several attempts.

21.    As of May 24, 2018, Epiq has mailed and/or emailed Notices to 7,078,199 unique Settlement Class members, with Notice to 6,612,767 unique, likely Settlement Class members

currently known to be deliverable. In my experience, this approximate 93% deliverable rate to Settlement Class members exceeds the expected range and is indicative of the extensive address research, updating and re-mailing protocols used.

### *Case Website*

22.    On February 5, 2018, an informational, neutral case website was established by Epiq and went live (www.EOBCsettlement.com).  The website address was displayed prominently in all notice documents.  By visiting this website, members of the Settlement Class can view additional information about the settlement, including: the Preliminary Approval Order, Settlement Agreement, Long Form Notice and Frequently Asked Questions and Answers.

23.    Settlement Class members may download a copy of the Long Form Notice at the Case Website or request one via the toll-free number.  A copy of the Long Form Notice is included as **Attachment 4**.

24.    As of May 24, 2018, there have been 178,181 website visitor sessions, with 266,310 page views.

### *Toll Free Number*

25.    On February 5, 2018, the toll free number (1-888-396-9598), set up and hosted by Epiq, became operational.  By calling this number, members of the Settlement Class can listen to answers to frequently asked questions and request a copy of the Long Form Notice be mailed to them.  This automated system is available 24 hours per day, 7 days per week.  As of May 24, 2018, the toll free number has handled 69,329 calls representing 211,347 minutes of use.

*Exclusions and Objections*

26.    The deadline to request exclusion from the settlement or to object to the settlement passed on April 20, 2018.  Epiq received 100 timely requests for exclusion from the Settlement Class.  An Exclusion Report listing all timely requests for exclusion is included as **Attachment 5**.

27.    I am aware of thirteen objections to the Settlement, two of which were not timely submitted.  I have reviewed all thirteen objections and some purport to include objections to the adequacy of notice (not the method or timeliness of the notice, but the content).  These objections generally surround Class Counsel's request for attorney fees and the potential for *Cy Pres* if there are any unclaimed funds after all Settlement Class members receive their automatic distribution.  All notices (mailed or emailed) directed Settlement Class members to the www.EOBCsettlement.com website for detailed information.  The *Settlement and Release Agreement* and all exhibits, and Class Counsel's *Notice of Motion and Plaintiffs' Unopposed Application for Award of Attorneys' Fees and Costs and Service Awards* were both posted to and are still available at the Case Website.  These documents made available in PDF format for print or download (along with all the other information and documents provided) include all of the Settlement's terms.  The notice process did not deprive any Settlement Class member of any information about the Settlement, the lawsuit, or Class Counsel's request for fees.  An Objection Report listing all objections received is included as **Attachment 6**.

## PERFORMANCE AND DESIGN OF NOTICE PROGRAM

28.    ***Objectives were met.***  The primary objective of this settlement notice effort is to effectively reach the greatest practicable number of Settlement Class members with a "noticeable" Notice of the settlement, and provide them with every reasonable opportunity to understand that

their legal rights were affected, including the right to be heard, to object or to exclude themselves, if they so choose.

29.     ***Plenty of time and opportunity to react to Notices.***  The initial mailing of notices was completed on February 18, 2018, which allows an adequate amount of time for members of the Settlement Class to see the Notice and respond accordingly before the April 20, 2018 exclusion and objection deadlines.  With approximately 61 days from the completion of the initial Notice mailing until the exclusion and objection deadlines, members of the Settlement Class are allotted adequate time to act on their rights.

30.     ***Notices were designed to increase noticeability and comprehension.***  Because mailing recipients are accustomed to receiving junk mail, which they may be inclined to discard unread, the program called for steps to bring the Notice to the attention of the Settlement Class. Once people "noticed" the Notices, it was critical that they could understand them.  As such, the Notices, as produced, were clearly worded with simple, plain language text to encourage readership and comprehension.  The design of the Notices followed the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov.

31.     The Summary Postcard Notice featured a prominent headline ("**If You Incurred One or More $35 Extended Overdrawn Balance Charges in Connection with Your Bank of America Personal Checking Account, You May be Entitled to Benefits from a Proposed Class Action Settlement.**") in bold text.  The headline alerts recipients that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice.

32.     The Long Form Notice began with a summary page providing a concise overview of the important information and Settlement Class members' key options.  It contained a prominent focus on the options that Settlement Class members have, using a straightforward table design, and included details about the Settlement, such as who is affected, and their rights.  A table of contents, categorized into logical sections, helped to organize the information, while a question and answer format made it easy to find answers to common questions by breaking the information into simple headings and brief paragraphs.

### *Cost of Notice Implementation and Administration*

33.     Administration Costs have been and will continue to be paid separately by the Bank, with the exception of any hourly services requested by Epiq in accordance with the Settlement Agreement.  Epiq's hourly services for the months of January, February and March, 2018 totaled $62,242.00 and were paid from the Settlement Fund. Epiq oversees the Notice Program and settlement administration. It is currently estimated that administration costs to be paid by the Bank shall be approximately $2.9 million.

## CONCLUSIONS

34.     In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice.  This framework directs that the notice program be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice program itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way.  All of these requirements were met in this case.

35.    Many courts have accepted and understood that a 75 or 80 percent reach is more than adequate.  In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.  This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%[3].

36.    As reported above, the extensive individual notice efforts of the Notice Plan to virtually all Settlement Class members reached approximately 93% of the Settlement Class.

37.    In my expert opinion, the Notice Program comported with Federal Rule of Civil Procedure 23, and also the guidance for effective notice articulated in the FJC's *Manual for Complex Litigation*, 4th.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed on June 18, 2018.


Cameron R. Azari, Esq.

---

[3] FED. JUDICIAL CTR, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010), available at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

AMENDED DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE PROGRAM

# Attachment 1

# HILSOFT
# NOTIFICATIONS

Hilsoft Notifications is a leading provider of legal notice services for large-scale class action and bankruptcy matters.  We specialize in providing quality, expert, notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny.  For more than 23 years, Hilsoft Notifications' notice plans have been approved and upheld by courts.  Hilsoft Notifications has been retained by defendants and/or plaintiffs on more than 300 cases, including more than 30 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world.  Case examples include:

➢ Hilsoft designed and implemented a monumental notice campaign to notify current or former owners or lessees of certain BMW, Mazda, Subaru and Toyota vehicles as part of a $553 million settlement regarding Takata airbags.  The Notice Plan included individual mailed notice to more than 19.7 million potential Class Members and notices via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and specialized behaviorally targeted digital media.  Combined, the Notice Plan reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle with a frequency of 4.0 times.  ***In re: Takata Airbag Products Liability Litigation (OEMS – BMW, Mazda, Subaru and Toyota)***, MDL No. 2599 (S.D. Fla.).

➢ A comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email.  A targeted internet campaign further enhanced the notice effort.  ***In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)***, MDL No. 2672 (N.D. Cal.).

➢ Hilsoft designed and implemented an extensive settlement Notice Plan for a class period spanning more than 40 years for smokers of light cigarettes.  The Notice Plan delivered a measured reach of approximately 87.8% of Arkansas Adults 25+ with a frequency of 8.9 times and approximately 91.1% of Arkansas Adults 55+ with a frequency of 10.8 times.  Hispanic newspaper notice, an informational release, radio PSAs, sponsored search listings and a case website further enhanced reach.  ***Miner v. Philip Morris USA, Inc.***, No. 60CV03-4661 (Ark. Cir.).

➢ One of the largest claim deadline notice campaigns ever implemented, for BP's $7.8 billion settlement claim deadline relating to the Deepwater Horizon oil spill.  Hilsoft Notifications designed and implemented the claim deadline notice program, which resulted in a combined measurable paid print, television, radio and Internet effort that reached in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas an average of 5.5 times each.  ***In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010***, MDL No. 2179 (E.D. La.).

➢ Large asbestos bar date notice effort, which included individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience.  ***In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Date Notice)***, 14-10979(CSS) (Bankr. D. Del.).

➢ Landmark $6.05 billion settlement reached by Visa and MasterCard.  The intensive notice program involved over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications.  Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a case website in eight languages, and acquisition of sponsored search listings to facilitate locating the website.  ***In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation***, MDL No. 1720 (E.D.N.Y.).

- BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill emerged from possibly the most complex class action in U.S. history.  Hilsoft Notifications drafted and opined on all forms of notice.  The 2012 notice program designed by Hilsoft reached at least 95% Gulf Coast region adults via television, radio, newspapers, consumer publications, trade journals, digital media and individual notice.  *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No. 2179 (E.D. La.).

- Momentous injunctive settlement reached by American Express regarding merchant payment card processing.  The notice program provided extensive individual notice to more than 3.8 million merchants as well as coverage in national and local business publications, retail trade publications and placement in the largest circulation newspapers in each of the U.S. territories and possessions.  *In re American Express Anti-Steering Rules Antitrust Litigation (II)*, MDL No. 2221 (E.D.N.Y.) ("Italian Colors").

- Overdraft fee class actions have been brought against nearly every major U.S. commercial bank.  For related settlements, Hilsoft Notifications has developed programs that integrate individual notice and paid media efforts.  PNC, Citizens, TD Bank, Fifth Third, Harris Bank M&I, Comerica Bank, Susquehanna Bank, Capital One, M&T Bank and Synovus are among the more than 20 banks that have retained Hilsoft.  *In re Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.).

- Possibly the largest data breach in U.S. history with approximately 130 million credit and debit card numbers stolen.  *In re Heartland Data Security Breach Litigation*, MDL No. 2046 (S.D. Tex.)

- Largest and most complex class action in Canadian history.  Designed and implemented groundbreaking notice to disparate, remote aboriginal people in the multi-billion dollar settlement.  *In re Residential Schools Class Action Litigation*, 00-CV-192059 CPA (Ont. Super. Ct.).

- Extensive point of sale notice program of a settlement providing payments up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period.  *Vereen v. Lowe's Home Centers*, SU10-CV-2267B (Ga. Super. Ct.).

- Largest discretionary class action notice campaign involving virtually every adult in the U.S. for the settlement.  *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.).

- Most complex national data theft class action settlement involving millions of class members.  *Lockwood v. Certegy Check Services, Inc.,* 8:07-cv-1434-T-23TGW (M.D. Fla.).

- Largest combined U.S. and Canadian retail consumer security breach notice program.  *In re TJX Companies, Inc., Customer Data Security Breach Litigation*, MDL No. 1838 (D. Mass.).

- Most comprehensive notice ever in a securities class action for the $1.1 billion settlement of *In re Royal Ahold Securities and ERISA Litigation*, MDL No. 1539 (D. Md.).

- Most complex worldwide notice program in history.  Designed and implemented all U.S. and international media notice with 500+ publications in 40 countries and 27 languages for $1.25 billion settlement.  *In re Holocaust Victims Assets,* "Swiss Banks", No. CV-96-4849 (E.D.N.Y.).

- Largest U.S. claim program to date.  Designed and implemented a notice campaign for the $10 billion program.  *Tobacco Farmer Transition Program,* (U.S. Dept. of Ag.).

- Multi-national claims bar date notice to asbestos personal injury claimants.  Opposing notice expert's reach methodology challenge rejected by court.  *In re Babcock & Wilcox Co*, No. 00-10992 (E.D. La.).



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

2

**LEGAL NOTICING EXPERTS**

***Cameron Azari, Esq., Director of Legal Notice***
Cameron Azari, Esq. has more than 17 years of experience in the design and implementation of legal notification and claims administration programs.  He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes.  Cameron has been responsible for hundreds of legal notice and advertising programs.  During his career, he has been involved in an array of high profile class action matters, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, Heartland Payment Systems, In re: Checking Account Overdraft Litigation, Lowe's Home Centers, Department of Veterans Affairs (VA),* and *In re Residential Schools Class Action Litigation.*  He is an active author and speaker on a broad range of legal notice and class action topics ranging from amendments to FRCP Rule 23 to email noticing, response rates and optimizing settlement effectiveness.  Cameron is an active member of the Oregon State Bar.  He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College.  Cameron can be reached at caza@legalnotice.com.

***Lauran Schultz, Executive Director***
Lauran Schultz consults extensively with clients on notice adequacy and innovative legal notice programs.  Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration for the past seven years.  High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation.  Prior to joining Epiq Systems in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio.  Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies.  Lauran can be reached at lschultz@hilsoft.com.

**ARTICLES AND PRESENTATIONS**

➢ **Cameron Azari** Co-Author, "A Practical Guide to Chapter 11 Bankruptcy Publication Notice."  E-book, published, May 2017.

➢ **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates," DC Consumer Class Action Lawyers Luncheon, December 6, 2016.

➢ **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit.  Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model."  King & Spalding, Atlanta, GA, April 25, 2016.

➢ **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise."  Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.

➢ **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration."  PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

➢ **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs."  *Class Action Litigation Report*, June 2014.

➢ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations."  PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments."  ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Building Products Cases."  HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.


HILSOFT NOTIFICATIONS
PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697
PHILADELPHIA AREA OFFICE     1420 LOCUST ST 30 F          PHILADELPHIA, PA 1910          T 215-721-2120

3

- **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, April 2013.

- **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.

- **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

- **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.

- **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

- **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.

- **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

- **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

- **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

- **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

- **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.

- **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan litigation group, Los Angeles, CA, 2005.

- **Cameron Azari** Author, "Twice the Notice or No Settlement." Current Developments – Issue II, August 2003.

- **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

4

## JUDICIAL COMMENTS

**Judge Charles R. Breyer,** *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (May 17, 2017) MDL No. 2672 (N.D. Cal.):

> The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)

**Judge Joseph F. Bataillon,** *Klug v. Watts Regulator Company* (April 13, 2017) No. 8:15-cv-00061-JFB-FG3 (D. Neb.):

> The court finds that the notice to the Settlement Class of the pendency of the Class Action and of this settlement, as provided by the Settlement Agreement and by the Preliminary Approval Order dated December 7, 2017, constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class, and fully complied with the requirements of Federal Rules of Civil Procedure Rule 23 and due process. Due and sufficient proof of the execution of the Notice Plan as outlined in the Preliminary Approval Order has been filed.

**Judge Yvonne Gonzales Rogers,** *Bias v. Wells Fargo & Company, et al.* (April 13, 2017) No. 4:12-cv-00664-YGR (N.D. Cal.):

> The form, content, and method of dissemination of Notice of Settlement given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including both individual notice to all Settlement Class Members who could be identified through reasonable effort and publication notice.

> Notice of Settlement, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.

> Notice of the Settlement was provided to the appropriate regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1).

**Judge Carlos Murguia,** *Whitton v. Deffenbaugh Industries, Inc., et al* (December 14, 2016) No. 2:12-cv-02247 (D. Kan.) and *Gary, LLC v. Deffenbaugh Industries, Inc., et al* (December 14, 2016) No. 2:13-cv-2634 (D. Kan.):

> The Court determines that the Notice Plan as implemented was reasonably calculated to provide the best notice practicable under the circumstances and contained all required information for members of the proposed Settlement Class to act to protect their interests. The Court also finds that Class Members were provided an adequate period of time to receive Notice and respond accordingly.

**Judge Yvette Kane,** *In re: Shop-Vac Marketing and Sales Practices Litigation* (December 9, 2016) MDL No. 2380 (M.D. Pa.):

> The Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.

**Judge Timothy D. Fox,** *Miner v. Philip Morris USA, Inc.* (November 21, 2016) No. 60CV03-4661 (Ark. Cir.):

> The Court finds that the Settlement Notice provided to potential members of the Class constituted the best and most practicable notice under the circumstances, thereby complying fully with due process and Rule 23 of the Arkansas Rules of Civil Procedure.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

5

**Judge Eileen Bransten,** *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation* (October 13, 2016) No. 650562/2011 (Sup. Ct. N.Y.):

> This Court finds that the Notice Program and the Notice provided to Settlement Class members fully satisfied the requirements of constitutional due process, the N.Y. C.P.L.R., and any other applicable laws, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all persons entitled thereto.

**Judge Jerome B. Simandle,** *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* (September 20, 2016) MDL No. 2540 (D. N.J.):

> The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.

**Judge Marcia G. Cooke,** *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.* (April 11, 2016) No. 14-23120 (S.D. Fla.):

> Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016.  The Court finds that the notice process was designed to advise Class Members of their rights.  The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.

**Judge Christopher S. Sontchi,** *In re: Energy Future Holdings Corp, et al.,* (July 30, 2015) 14-10979(CSS) (Bankr. D. Del.):

> Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**Judge David C. Norton,** *In re: MI Windows and Doors Inc. Products Liability Litigation* (July 22, 2015) MDL No. 2333, No. 2:12-mn-00001 (D. S.C.):

> The court finds that the Notice Plan, as described in the Settlement and related declarations, has been faithfully carried out and constituted the best practicable notice to Class Members under the circumstances of this Action, and was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to be provided with Notice.
>
> The court also finds that the Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of: (1) the pendency of this class action; (2) their right to exclude themselves from the Settlement Class and the proposed Settlement; (3) their right to object to any aspect of the proposed Settlement (including final certification of the Settlement Class, the fairness, reasonableness, or adequacy of the proposed Settlement, the adequacy of the Settlement Class's representation by Named Plaintiffs or Class Counsel, or the award of attorney's and representative fees); (4) their right to appear at the fairness hearing (either on their own or through counsel hired at their own expense); and (5) the binding and preclusive effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all Persons who do not request exclusion from the Settlement Class. As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the rules of this court, and any other applicable law, and provided sufficient notice to bind all Class Members, regardless of whether a particular Class Member received actual notice.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

6

**Judge Robert W. Gettleman,** *Adkins v. Nestle Purina PetCare Company, et al.,* (June 23, 2015) No. 12-cv-2871 (N.D. Ill.):

> *Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

**Judge James Lawrence King,** *Steen v. Capital One, N.A.* (May 22, 2015) No. 2:10-cv-01505-JCZ-KWR (E.D. La.) and No. 1:10-cv-22058-JLK (S.D. Fla.) as part of *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.)

> The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts,* 472 U.S. at 812 (quoting *Mullane,* 339 U.S. at 314-15). This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. Azari Decl. ¶¶ 30-39.

**Judge Rya W. Zobel,** *Gulbankian et al. v. MW Manufacturers, Inc.,* (December 29, 2014) No. 1:10-cv-10392-RWZ (D. Mass.):

> *This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law. The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances. The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices. Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

**Judge Edward J. Davila,** *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* (August 29, 2014) No. 5:11-CV-02390-EJD; 5:12-CV-04009-EJD (N.D. Cal.):

> *The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

**Judge James A. Robertson, II,** *Wong et al. v. Alacer Corp.* (June 27, 2014) No. CGC-12-519221 (Cal. Super. Ct.):

> *Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*

**Judge John Gleeson,** *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, (December 13, 2013) No. 1:05-cv-03800 (E.D. NY.):

> *The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications. The notice here meets the requirements of due process and notice standards… The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*


PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

7

**Judge Lance M. Africk,** *Evans, et al. v. TIN, Inc., et al,* (July 7, 2013) No. 2:11-cv-02067 (E.D. La.):

> *The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Judge Edward M. Chen,** *Marolda v. Symantec Corporation,* (April 5, 2013) No. 08-cv-05701 (N.D. Cal.):

> *Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . .  The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications.  These were the best practicable means of informing class members of their rights and of the settlement's terms.*

**Judge Ann D. Montgomery,** *In re Zurn Pex Plumbing Products Liability Litigation,* (February 27, 2013) No. 0:08cv01958 (D. Minn.):

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan.  The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.*

> *The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [\*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

**Magistrate Judge Stewart,** *Gessele et al. v. Jack in the Box, Inc.,* (January 28, 2013) No. 3:10-cv-960 (D. Or.):

> *Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing.  Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.*

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Medical Benefits Settlement),* (January 11, 2013) MDL No. 2179 (E.D. La.):

> *Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed.  Only 10,700 mailings—or 3.3%—were known to be undeliverable. (Azari Decl. ¶¶ 8, 9.)  Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements).  Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each. (Id. ¶¶ 8, 10.)  All notice documents were designed to be clear, substantive, and informative. (Id. ¶ 5.)*

> *The Court received no objections to the scope or content of the [Medical Benefits] Notice Program.  (Azari Supp. Decl. ¶ 12.)  The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort.  Likewise, the Notice and Notice Plan satisfied the requirements of Due Process.  The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

8

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Economic and Property Damages Settlement),* (December 21, 2012) MDL No. 2179 (E.D. La.):

> *The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation. The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

> *The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval. The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers. Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights. See Azari Decl. ¶¶ 8, 15, 68. The Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.*

> *The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

**Judge Alonzo Harris, Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.,** (August 17, 2012) No. 12-C-1599 (27th Jud. D. Ct. La.):

> *Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class. Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.*

**Judge James Lawrence King, In re Checking Account Overdraft Litigation (IBERIABANK),** (April 26, 2012) MDL No. 2036 (S.D. Fla):

> *The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment." In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. The Notice also informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.*



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

9

**Judge Bobby Peters,** *Vereen v. Lowe's Home Centers,* (April 13, 2012) SU10-CV-2267B (Ga. Super. Ct.):

> *The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.*

> *The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.*

**Judge Lee Rosenthal,** *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation,* (March 2, 2012) MDL No. 2046 (S.D. Tex.):

> *The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members.  (Docket Entry No. 106, ¶ 32).  Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement.  See Katrina Canal Breaches, 628 F.3d at 197.  Both the summary notice and the detailed notice "were written in easy-to-understand plain English."  In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at \*23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23.  Katrina Canal Breaches, 628 F.3d at 197.*

**Judge John D. Bates,** *Trombley v. National City Bank,* (December 1, 2011) 1:10-CV-00232 (D.D.C.)

> *The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process.  The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances.  In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.*

**Judge Robert M. Dow, Jr.,** *Schulte v. Fifth Third Bank,* (July 29, 2011) No. 1:09-cv-6655 (N.D. Ill.):

> *The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

**Judge Ellis J. Daigle,** *Williams v. Hammerman & Gainer Inc.,* (June 30, 2011) No. 11-C-3187-B (27th Jud. D. Ct. La.):

> *Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*



PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

10

**Judge Stefan R. Underhill,** ***Mathena v. Webster Bank, N.A.,*** (March 24, 2011) No. 3:10-cv-1448 (D. Conn.):

> *The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.*

**Judge Ted Stewart,** ***Miller v. Basic Research, LLC,*** (September 2, 2010) No. 2:07-cv-871 (D. Utah):

> *Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans. Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number. Similar mixed media plans have been approved by other district courts post class certification. The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi,** ***Pavlov v. Continental Casualty Co.,*** (October 7, 2009) No. 5:07cv2580 (N.D. Ohio):

> *As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims. With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson,** ***In re Department of Veterans Affairs (VA) Data Theft Litigation,*** (September 23, 2009) MDL No. 1796 (D.D.C.):

> *The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances. The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement. Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*

**Judge Lisa F. Chrystal,** ***Little v. Kia Motors America, Inc.,*** (August 27, 2009) No. UNN-L-0800-01 (N.J. Super. Ct.):

> *The Court finds that the manner and content of the notices for direct mailing and for publication notice, as specified in the Notice Plan (Exhibit 2 to the Affidavit of Lauran R. Schultz), provides the best practicable notice of judgment to members of the Plaintiff Class.*

**Judge Barbara Crowder,** ***Dolen v. ABN AMRO Bank N.V.,*** (March 23, 2009) No. 01-L-454, 01-L-493 (3rd Jud. Cir. Ill.):

> *The Court finds that the Notice Plan is the best notice practicable under the circumstances and provides the Eligible Members of the Settlement Class sufficient information to make informed and meaningful decisions regarding their options in this Litigation and the effect of the Settlement on their rights. The Notice Plan further satisfies the requirements of due process and 735 ILCS 5/2-803. That Notice Plan is approved and accepted. This Court further finds that the Notice of Settlement and Claim Form comply with 735 ILCS 5/2-803 and are appropriate as part of the Notice Plan and the Settlement, and thus they are hereby approved and adopted. This Court further finds that no other notice other than that identified in the Notice Plan is reasonably necessary in this Litigation.*

**Judge Robert W. Gettleman,** ***In re Trans Union Corp.,*** (September 17, 2008) MDL No. 1350 (N.D. Ill.):

> *The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law… Accordingly, all objections are hereby OVERRULED.*



| | | | |
|---|---|---|---|
| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

11

**Judge Steven D. Merryday,** *Lockwood v. Certegy Check Services, Inc.***,** (September 3, 2008) No. 8:07-cv-1434-T-23TGW (M.D. Fla.):

> The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable and constituted the best notice practicable in the circumstances.  The notice as given provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions of the Settlement Agreement, and these proceedings to all persons entitled to such notice, and the notice satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, and due process.

**Judge William G. Young,** *In re TJX Companies***,** (September 2, 2008) MDL No. 1838 (D. Mass.):

> The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.

**Judge Philip S. Gutierrez,** *Shaffer v. Continental Casualty Co.***,** (June 11, 2008) SACV-06-2235-PSG (PJWx) (C.D. Cal.):

> …was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.

**Judge Robert L. Wyatt,** *Gunderson v. AIG Claim Services, Inc.***,** (May 29, 2008) No. 2004-002417 (14th Jud. D. Ct. La.):

> Notices given to Settlement Class members…were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.

**Judge Mary Anne Mason,** *Palace v. DaimlerChrysler Corp.***,** (May 29, 2008) No. 01-CH-13168 (Ill. Cir. Ct.):

> The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process and complied with 735 ILCS §§5/2-803 and 5/2-806.

**Judge David De Alba,** *Ford Explorer Cases***,** (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> [T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved—submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.

**Judge Kirk D. Johnson**, *Webb v. Liberty Mutual Ins. Co.***,** (March 3, 2008) No. CV-2007-418-3 (Ark. Cir. Ct.):

> The Court finds that there was minimal opposition to the settlement.  After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members.

**Judge Carol Crafton Anthony,** *Johnson v. Progressive Casualty Ins. Co.***,** (December 6, 2007) No. CV-2003-513 (Ark. Cir. Ct.):

> Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort.  Notice reached a large majority of the Class members.  The Court finds that such notice constitutes the best notice practicable…The Forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

12

**Judge Kirk D. Johnson,** *Sweeten v. American Empire Insurance Co.,* (August 20, 2007) No. CV-2007-154-3 (Ark. Cir. Ct.):

> The Court does find that all notices required by the Court to be given to class members was done within the time allowed and the manner best calculated to give notice and apprise all the interested parties of the litigation. It was done through individual notice, first class mail, through internet website and the toll-free telephone call center…The Court does find that these methods were the best possible methods to advise the class members of the pendency of the action and opportunity to present their objections and finds that these notices do comply with all the provisions of Rule 23 and the Arkansas and United States Constitutions.

**Judge Robert Wyatt**, *Gunderson v. F.A. Richard & Associates, Inc.,* (July 19, 2007) No. 2004-2417-D (14th Jud. D. Ct. La.):

> This is the final Order and Judgment regarding the fairness, reasonableness and adequacy. And I am satisfied in all respects regarding the presentation that's been made to the Court this morning in the Class memberships, the representation, the notice, and all other aspects and I'm signing that Order at this time.

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litigation,* (July 19, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> The Court finds that the distribution of the Notice, the publication of the Publication Notice, and the notice methodology…met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, (including the Due Process clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. 78u-4, et seq.) (the "PSLRA"), the Rules of the Court, and any other applicable law.

**Judge Joe Griffin,** *Beasley v. The Reliable Life Insurance Co.,* (March 29, 2007) No. CV-2005-58-1 (Ark. Cir. Ct.):

> [T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process…So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter.

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litigation,* (March 1, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> The court approves, as to form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and the form set forth in Paragraph 6 of this Order…meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.

**Judge Anna J. Brown,** *Reynolds v. The Hartford Financial Services Group, Inc.,* (February 27, 2007) No. CV-01-1529-BR (D. Or):

> [T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class. The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.

**Judge Kirk D. Johnson,** *Zarebski v. Hartford Insurance Company of the Midwest,* (February 13, 2007) No. CV-2006-409-3 (Ark. Cir. Ct.):

> Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminary Approval Order, was the best notice practicable under the circumstances to all members of the Settlement Class. Accordingly, the Class Notice and Claim Form as disseminated are



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD         BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE  1420 LOCUST ST 30 F        PHILADELPHIA, PA 1910  T 215-721-2120

13

*finally approved as fair, reasonable, and adequate notice under the circumstances. The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the notice campaign described in the Preliminary Approval Order and completed by the parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Richard J. Holwell,** *In re Vivendi Universal, S.A. Securities Litigation,* 2007 WL 1490466, at *34 (S.D.N.Y.):

*In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. According to this…the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*

**Judge Samuel Conti,** *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.,* (November 17, 2006) No. C-05-04289-SC (N.D. Cal.):

*After reviewing the evidence and arguments presented by the parties…the Court finds as follows…The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court.*

**Judge Ivan L.R. Lemelle**, *In re High Sulfur Content Gasoline Prods. Liability Litigation,* (November 8, 2006) MDL No. 1632 (E.D. La.):

*This Court approved a carefully-worded Notice Plan, which was developed with the assistance of a nationally-recognized notice expert, Hilsoft Notifications…The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litigation,* (November 2, 2006) MDL No. 1539 (D. Md.):

*The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district. The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages. The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.*

**Judge Elaine E. Bucklo,** *Carnegie v. Household International,* (August 28, 2006) No. 98 C 2178 (N.D. Ill.):

*[T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant, Hilsoft Notification[s]…who the Court recognized as experts in the design of notice plans in class actions. The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.*

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest,* (June 13, 2006) No. CV-2005-58-1 (Ark. Cir. Ct.):

*Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances…and the requirements of due process under the Arkansas and United States Constitutions.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

14

**Judge Norma L. Shapiro,** ***First State Orthopedics et al. v. Concentra, Inc., et al.,*** (May 1, 2006) No. 2:05-CV-04951-NS (E.D. Pa.):

> *The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law. The Court further finds that the notice is reasonable, and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, is the best practicable notice; and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Lawsuit and of their right to object or to exclude themselves from the proposed settlement.*

**Judge Thomas M. Hart,** ***Froeber v. Liberty Mutual Fire Ins. Co.,*** (April 19, 2006) No. 00C15234 (Or. Cir. Ct.):

> *The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.*

**Judge Catherine C. Blake,** ***In re Royal Ahold Securities and "ERISA" Litigation,*** (January 6, 2006) MDL No. 1539 (D. Md.):

> *I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms of its plain language and in terms of its international reach, to do what I hope will be a very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possibly can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.*

**Judge Catherine C. Blake,** ***In re Royal Ahold Securities & "ERISA" Litigation,*** 437 F.Supp.2d 467, 472 (D. Md. 2006):

> *The court hereby finds that the Notice and Notice Plan described herein and in the Order dated January 9, 2006 provided Class Members with the best notice practicable under the circumstances.  The Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons entitled to such notice, and the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Robert H. Wyatt, Jr.,** ***Gray v. New Hampshire Indemnity Co., Inc.,*** (December 19, 2005) No. CV-2002-952-2-3 (Ark. Cir. Ct.):

> *Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated.  The Notice contained the essential elements necessary to satisfy due process, including the Settlement Class definition, the identities of the Parties and of their counsel, a summary of the terms of the proposed settlement, Class Counsel's intent to apply for fees, information regarding the manner in which objections could be submitted, and requests for exclusions could be filed. The Notice properly informed Class members of the formula for the distribution of benefits under the settlement…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort.  Notice was also effected by publication in many newspapers and magazines throughout the nation, reaching a large majority of the Class members multiple times.  The Court finds that such notice constitutes the best notice practicable.*

**Judge Michael J. O'Malley,** ***Defrates v. Hollywood Entm't Corp.,*** (June 24, 2005) No. 02 L 707 (Ill. Cir. Ct.):

> *[T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.*

**Judge Wilford D. Carter,** ***Thibodeaux v. Conoco Phillips Co.,*** (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

> *Notice given to Class Members…were reasonably calculated under all the circumstances and have been sufficient, both as to the form and content…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

15

**Judge Michael Canaday,** *Morrow v. Conoco Inc.,* (May 25, 2005) No. 2002-3860 G (14th J.D. Ct. La.):

> *The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge John R. Padova,** *Nichols v. SmithKline Beecham Corp.,* (April 22, 2005) No. 00-6222 (E.D. Pa.):

> *Pursuant to the Order dated October 18, 2004, End-Payor Plaintiffs employed Hilsoft Notifications to design and oversee Notice to the End-Payor Class. Hilsoft Notifications has extensive experience in class action notice situations relating to prescription drugs and cases in which unknown class members need to receive notice…After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*

**Judge Douglas Combs,** *Morris v. Liberty Mutual Fire Ins. Co.,* (February 22, 2005) No. CJ-03-714 (D. Okla.):

> *I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class. That, to me, is admirable. And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Joseph R. Goodwin,** *In re Serzone Products Liability Litigation,* 231 F.R.D. 221, 231 (S.D. W. Va. 2005):

> *The Notice Plan was drafted by Hilsoft Notifications, a Pennsylvania firm specializing in designing, developing, analyzing and implementing large-scale, unbiased legal notification plans. Hilsoft has disseminated class action notices in more than 150 cases, and it designed the model notices currently displayed on the Federal Judicial Center's website as a template for others to follow…To enhance consumer exposure, Hilsoft studied the demographics and readership of publications among adults who used a prescription drug for depression in the last twelve months. Consequently, Hilsoft chose to utilize media particularly targeting women due to their greater incidence of depression and heavy usage of the medication.*

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litigation,* (November 24, 2004) MDL No. 1430 (D. Mass.):

> *After review of the proposed Notice Plan designed by Hilsoft Notifications…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litigation,* (November 23, 2004) MDL No. 1430 (D. Mass.):

> *I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge James S. Moody, Jr.,** *Mantzouris v. Scarritt Motor Group Inc.,* (August 10, 2004) No. 8:03 CV- 0015-T-30 MSS (M.D. Fla.):

> *Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the members of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement, it is hereby determined that all members of the Class, except for Ms. Gwendolyn Thompson, who was the sole person opting out of the Settlement Agreement, are bound by this Order and Final Judgment entered herein.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

16

**Judge Robert E. Payne,** *Fisher v. Virginia Electric & Power Co.,* (July 1, 2004) No. 3:02CV431 (E.D. Va.)**:**

> *The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently…The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job…So I don't believe we could have had any more effective notice.*

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (April 14, 2004) No. 809869-2 (Cal. Super. Ct.):

> *The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances. The Court finds that the notice program provided class members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to class members and all other persons wishing to be heard…The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due, and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*

*Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.,* 356 S.C. 644, 663, 591 S.E.2d 611, 621 (Sup. Ct. S.C. 2004):

> *Clearly, the Cox court designed and utilized various procedural safeguards to guarantee sufficient notice under the circumstances. Pursuant to a limited scope of review, we need go no further in deciding the Cox court's findings that notice met due process are entitled to deference.*

**Judge Joseph R. Goodwin,** *In re Serzone Prods. Liability Litigation,* 2004 U.S. Dist. LEXIS 28297, at *10 (S.D. W. Va.):

> *The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.*

**Judge James D. Arnold,** *Cotten v. Ferman Mgmt. Servs. Corp.,* (November 26, 2003) No. 02-08115 (Fla. Cir. Ct.):

> *Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the member of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement…*

**Judge Judith K. Fitzgerald,** *In re Pittsburgh Corning Corp.,* (November 26, 2003) No. 00-22876-JKF (Bankr. W.D. Pa.):

> *The procedures and form of notice for notifying the holders of Asbestos PI Trust Claims, as described in the Motion, adequately protect the interests of the holders of Asbestos PI Trust Claims in a manner consistent with the principles of due process, and satisfy the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.*

**Judge Carter Holly,** *Richison v. American Cemwood Corp.,* (November 18, 2003) No. 005532 (Cal. Super. Ct.):

> *As to the forms of Notice, the Court finds and concludes that they fully apprised the Class members of the pendency of the litigation, the terms of the Phase 2 Settlement, and Class members' rights and options…Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice…The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860.*



PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

17

**Judge Thomas A. Higgins,** *In re Columbia/HCA Healthcare Corp.,* (June 13, 2003) MDL No. 1227 (M.D. Tenn.):

> *Notice of the settlement has been given in an adequate and sufficient manner. The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 68 (S.D.N.Y. 2003):

> *In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement…The notice provides, in language easily understandable to a lay person, the essential terms of the settlement, including the claims asserted…who would be covered by the settlement…[T]he notice campaign that defendant agreed to undertake was extensive…I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.*

**Judge Edgar E. Bayley,** *Dimitrios v. CVS, Inc.,* (November 27, 2002) No. 99-6209; *Walker v. Rite Aid Corp.,* No. 99-6210; and *Myers v. Rite Aid Corp.,* No. 01-2771 (Pa. Ct. C.P.):

> *The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.*

**Judge Dewey C. Whitenton,** *Ervin v. Movie Gallery, Inc.,* (November 22, 2002) No. 13007 (Tenn. Ch.):

> *The content of the class notice also satisfied all due process standards and state law requirements…The content of the notice was more than adequate to enable class members to make an informed and intelligent choice about remaining in the class or opting out of the class.*

**Judge James R. Williamson,** *Kline v. The Progressive Corp.,* (November 14, 2002) No. 01-L-6 (Ill. Cir. Ct.):

> *Notice to the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The notice contained the essential elements necessary to satisfy due process…*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (September 13, 2002) No. L-008830.00 (N.J. Super. Ct.):

> *Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were placed…throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* (September 3, 2002) No. 00 Civ. 5071-HB (S.D.N.Y.):

> *The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members. In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Milton Gunn Shuffield,** *Scott v. Blockbuster Inc.,* (January 22, 2002) No. D 162-535 (Tex. Jud. Dist. Ct.) ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

> *In order to maximize the efficiency of the notice, a professional concern, Hilsoft Notifications, was retained. This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all*



PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

18

*the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections…The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (October 30, 2001) No. MID-L-8839-00-MT (N.J. Super. Ct.):

*The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process…The form of the notice is reasonably calculated to apprise class members of their rights. The notice program is specifically designed to reach a substantial percentage of the putative settlement class members.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (October 29, 2001) No. L-8830-00-MT (N.J. Super. Ct.):

*I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life…it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (April 1, 2001) J.C.C.P. No. CJC-00-004106 (Cal. Super. Ct.):

*[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied.  I think it's amazing if you're really getting 80 percent coverage. That's very reassuring.  And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (March 30, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct.):

*Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition.  The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation. The Court further finds that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*

**LEGAL NOTICE CASES**

Hilsoft Notifications has served as a notice expert for planning, implementation and/or analysis in the following partial listing of cases:

| | |
|---|---|
| ***Andrews v. MCI (900 Number Litigation)*** | S.D. Ga., CV 191-175 |
| ***Harper v. MCI (900 Number Litigation)*** | S.D. Ga., CV 192-134 |
| ***In re Bausch & Lomb Contact Lens Litigation*** | N.D. Ala., 94-C-1144-WW |
| ***In re Ford Motor Co. Vehicle Paint Litigation*** | E.D. La., MDL No. 1063 |
| ***Castano v. Am. Tobacco*** | E.D. La., CV 94-1044 |
| ***Cox v. Shell Oil (Polybutylene Pipe Litigation)*** | Tenn. Ch., 18,844 |
| ***In re Amino Acid Lysine Antitrust Litigation*** | N.D. Ill., MDL No. 1083 |
| ***In re Dow Corning Corp. (Breast Implant Bankruptcy)*** | E.D. Mich., 95-20512-11-AJS |



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

19

| | |
|---|---|
| *Kunhel v. CNA Ins. Companies* | N.J. Super. Ct., ATL-C-0184-94 |
| *In re Factor Concentrate Blood Prods. Litigation (Hemophiliac HIV)* | N.D. Ill., MDL No. 986 |
| *In re Ford Ignition Switch Prods. Liability Litigation* | D. N.J., 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Ins. Litigation)* | M.D. Ga., 95-52-COL |
| *Kalhammer v. First USA (Credit Card Litigation)* | Cal. Cir. Ct., C96-45632010-CAL |
| *Navarro-Rice v. First USA (Credit Card Litigation)* | Or. Cir. Ct., 9709-06901 |
| *Spitzfaden v. Dow Corning (Breast Implant Litigation)* | La. D. Ct., 92-2589 |
| *Robinson v. Marine Midland (Finance Charge Litigation)* | N.D. Ill., 95 C 5635 |
| *McCurdy v. Norwest Fin. Alabama* | Ala. Cir. Ct., CV-95-2601 |
| *Johnson v. Norwest Fin. Alabama* | Ala. Cir. Ct., CV-93-PT-962-S |
| *In re Residential Doors Antitrust Litigation* | E.D. Pa., MDL No. 1039 |
| *Barnes v. Am. Tobacco Co. Inc.* | E.D. Pa., 96-5903 |
| *Small v. Lorillard Tobacco Co. Inc.* | N.Y. Super. Ct., 110949/96 |
| *Naef v. Masonite Corp (Hardboard Siding Litigation)* | Ala. Cir. Ct., CV-94-4033 |
| *In re Synthroid Mktg. Litigation* | N.D. Ill., MDL No. 1182 |
| *Raysick v. Quaker State Slick 50 Inc.* | D. Tex., 96-12610 |
| *Castillo v. Mike Tyson (Tyson v. Holyfield Bout)* | N.Y. Super. Ct., 114044/97 |
| *Avery v. State Farm Auto. Ins. (Non-OEM Auto Parts)* | Ill. Cir. Ct., 97-L-114 |
| *Walls v. The Am. Tobacco Co. Inc.* | N.D. Okla., 97-CV-218-H |
| *Tempest v. Rainforest Café (Securities Litigation)* | D. Minn., 98-CV-608 |
| *Stewart v. Avon Prods. (Securities Litigation)* | E.D. Pa., 98-CV-4135 |
| *Goldenberg v. Marriott PLC Corp (Securities Litigation)* | D. Md., PJM 95-3461 |
| *Delay v. Hurd Millwork (Building Products Litigation)* | Wash. Super. Ct., 97-2-07371-0 |
| *Gutterman v. Am. Airlines (Frequent Flyer Litigation)* | Ill. Cir. Ct., 95CH982 |
| *Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litigation)* | Cal. Super. Ct., 97-AS 02993 |
| *In re Graphite Electrodes Antitrust Litigation* | E.D. Pa., MDL No. 1244 |
| *In re Silicone Gel Breast Implant Prods. Liability Litigation, Altrichter v. INAMED* | N.D. Ala., MDL No. 926 |
| *St. John v. Am. Home Prods. Corp. (Fen/Phen Litigation)* | Wash. Super. Ct., 97-2-06368 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

20

| | |
|---|---|
| *Crane v. Hackett Assocs. (Securities Litigation)* | E.D. Pa., 98-5504 |
| *In re Holocaust Victims Assets Litigation (Swiss Banks)* | E.D.N.Y., CV-96-4849 |
| *McCall v. John Hancock (Settlement Death Benefits)* | N.M. Cir. Ct., CV-2000-2818 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding Litigation)* | Cal. Super. Ct., CV-995787 |
| *Kapustin v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 98-CV-6599 |
| *Leff v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 95-CV-89 |
| *In re PRK/LASIK Consumer Litigation* | Cal. Super. Ct., CV-772894 |
| *Hill v. Galaxy Cablevision* | N.D. Miss., 1:98CV51-D-D |
| *Scott v. Am. Tobacco Co. Inc.* | La. D. Ct., 96-8461 |
| *Jacobs v. Winthrop Financial Associates (Securities Litigation)* | D. Mass., 99-CV-11363 |
| *Int'l Comm'n on Holocaust Era Ins. Claims – Worldwide Outreach Program* | Former Secretary of State Lawrence Eagleburger Commission |
| *Bownes v. First USA Bank (Credit Card Litigation)* | Ala. Cir. Ct., CV-99-2479-PR |
| *Whetman v. IKON (ERISA Litigation)* | E.D. Pa., 00-87 |
| *Mangone v. First USA Bank (Credit Card Litigation)* | Ill. Cir. Ct., 99AR672a |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Barbanti v. W.R. Grace and Co. (Zonolite / Asbestos Litigation)* | Wash. Super. Ct., 00201756-6 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042, 711400 |
| *Wilson v. Servier Canada Inc. (Canadian Fen/Phen Litigation)* | Ont. Super. Ct., 98-CV-158832 |
| *In re Texaco Inc. (Bankruptcy)* | S.D.N.Y. 87 B 20142, 87 B 20143, 87 B 20144 |
| *Olinde v. Texaco (Bankruptcy, Oil Lease Litigation)* | M.D. La., 96-390 |
| *Gustafson v. Bridgestone/Firestone, Inc. (Recall Related Litigation)* | S.D. Ill., 00-612-DRH |
| *In re Bridgestone/Firestone Tires Prods. Liability Litigation* | S.D. Ind., MDL No. 1373 |
| *Gaynoe v. First Union Corp. (Credit Card Litigation)* | N.C. Super. Ct., 97-CVS-16536 |
| *Carson v. Daimler Chrysler Corp. (Fuel O-Rings Litigation)* | W.D. Tenn., 99-2896 TU A |
| *Providian Credit Card Cases* | Cal. Super. Ct., J.C.C.P. 4085 |
| *Fields v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., 302774 |

HILSOFT NOTIFICATIONS   PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

21

| | |
|---|---|
| *Sanders v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., 303549 |
| *Sims v. Allstate Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., 99-L-393A |
| *Peterson v. State Farm Mutual Auto. Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., 99-L-394A |
| *Microsoft I-V Cases (Antitrust Litigation Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. 4106 |
| *Westman v. Rogers Family Funeral Home, Inc. (Remains Handling Litigation)* | Cal. Super. Ct., C-98-03165 |
| *Rogers v. Clark Equipment Co.* | Ill. Cir. Ct., 97-L-20 |
| *Garrett v. Hurley State Bank (Credit Card Litigation)* | Miss. Cir. Ct., 99-0337 |
| *Ragoonanan v. Imperial Tobacco Ltd. (Firesafe Cigarette Litigation)* | Ont. Super. Ct., 00-CV-183165 CP |
| *Dietschi v. Am. Home Prods. Corp. (PPA Litigation)* | W.D. Wash., C01-0306L |
| *Dimitrios v. CVS, Inc. (PA Act 6 Litigation)* | Pa. C.P., 99-6209 |
| *Jones v. Hewlett-Packard Co. (Inkjet Cartridge Litigation)* | Cal. Super. Ct., 302887 |
| *In re Tobacco Cases II (California Tobacco Litigation)* | Cal. Super. Ct., J.C.C.P. 4042 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees Litigation)* | 136th Tex. Jud. Dist., D 162-535 |
| *Anesthesia Care Assocs. v. Blue Cross of Cal.* | Cal. Super. Ct., 986677 |
| *Ting v. AT&T (Mandatory Arbitration Litigation)* | N.D. Cal., C-01-2969-BZ |
| *In re W.R. Grace & Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., 01-01139-JJF |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion Litigation)* | N.J. Super. Ct.,, MID-L-8839-00 MT |
| *Kent v. Daimler Chrysler Corp. (Jeep Grand Cherokee Park-to-Reverse Litigation)* | N.D. Cal., C01-3293-JCS |
| *Int'l Org. of Migration – German Forced Labour Compensation Programme* | Geneva, Switzerland |
| *Madsen v. Prudential Federal Savings & Loan (Homeowner's Loan Account Litigation)* | 3rd Jud. Dist. Ct. Utah, C79-8404 |
| *Bryant v. Wyndham Int'l., Inc. (Energy Surcharge Litigation)* | Cal. Super. Ct., GIC 765441, GIC 777547 |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., 01-02094-RJN |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices Litigation)* | S.D.N.Y., 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch., CV-13007 |
| *Peters v. First Union Direct Bank (Credit Card Litigation)* | M.D. Fla., 8:01-CV-958-T-26 TBM |
| *National Socialist Era Compensation Fund* | Republic of Austria |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

22

| | |
|---|---|
| *In re Baycol Litigation* | D. Minn., MDL No. 1431 |
| *Claims Conference–Jewish Slave Labour Outreach Program* | German Government Initiative |
| *Wells v. Chevy Chase Bank (Credit Card Litigation)* | Md. Cir. Ct., C-99-000202 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 01-2771 |
| *In re PA Diet Drugs Litigation* | C.P. Pa., 9709-3162 |
| *Harp v. Qwest Communications (Mandatory Arbitration Lit.)* | Or. Circ. Ct., 0110-10986 |
| *Tuck v. Whirlpool Corp. & Sears, Roebuck & Co. (Microwave Recall Litigation)* | Ind. Cir. Ct., 49C01-0111-CP-002701 |
| *Allison v. AT&T Corp. (Mandatory Arbitration Litigation)* | 1st Jud. D.C. N.M., D-0101-CV-20020041 |
| *Kline v. The Progressive Corp.* | Ill. Cir. Ct., 01-L-6 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Ill. Cir. Ct., 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litigation)* | M.D. Tenn., MDL No. 1227 |
| *Foultz v. Erie Ins. Exchange (Auto Parts Litigation)* | C.P. Pa., 000203053 |
| *Soders v. General Motors Corp. (Marketing Initiative Litigation)* | C.P. Pa., CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. 4215 |
| *Curtis v. Hollywood Entm't Corp. (Additional Rental Charges)* | Wash. Super. Ct., 01-2-36007-8 SEA |
| *Defrates v. Hollywood Entm't Corp.* | Ill. Cir. Ct., 02L707 |
| *Pease v. Jasper Wyman & Son, Merrill Blueberry Farms Inc., Allen's Blueberry Freezer Inc. & Cherryfield Foods Inc.* | Me. Super. Ct., CV-00-015 |
| *West v. G&H Seed Co. (Crawfish Farmers Litigation)* | 27th Jud. D. Ct. La., 99-C-4984-A |
| *Linn v. Roto-Rooter Inc. (Miscellaneous Supplies Charge)* | C.P. Ohio, CV-467403 |
| *McManus v. Fleetwood Enter., Inc. (RV Brake Litigation)* | D. Ct. Tex., SA-99-CA-464-FB |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., 809869-2 |
| *Stetser v. TAP Pharm. Prods, Inc. & Abbott Laboratories (Lupron Price Litigation)* | N.C. Super. Ct., 01-CVS-5268 |
| *Richison v. Am. Cemwood Corp. (Roofing Durability Settlement)* | Cal. Super. Ct., 005532 |
| *Cotten v. Ferman Mgmt. Servs. Corp.* | 13th Jud. Cir. Fla., 02-08115 |
| *In re Pittsburgh Corning Corp. (Asbestos Related Bankruptcy)* | Bankr. W.D. Pa., 00-22876-JKF |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE      10300 SW ALLEN BLVD      BEAVERTON, OR 97005      T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30F       PHILADELPHIA, PA 1910    T 215-721-2120

23

| | |
|---|---|
| *Mostajo v. Coast Nat'l Ins. Co.* | Cal. Super. Ct., 00 CC 15165 |
| *Friedman v. Microsoft Corp. (Antitrust Litigation)* | Ariz. Super. Ct., CV 2000-000722 |
| *Multinational Outreach - East Germany Property Claims* | Claims Conference |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive Litigation)* | D. La., 94-11684 |
| *Walker v. Tap Pharmaceutical Prods., Inc. (Lupron Price Litigation)* | N.J. Super. Ct., CV CPM-L-682-01 |
| *Munsey v. Cox Communications (Late Fee Litigation)* | Civ. D. La., Sec. 9, 97 19571 |
| *Gordon v. Microsoft Corp. (Antitrust Litigation)* | 4th Jud. D. Ct. Minn., 00-5994 |
| *Clark v. Tap Pharmaceutical Prods., Inc.* | 5th Dist. App. Ct. Ill., 5-02-0316 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., 3:02-CV-431 |
| *Mantzouris v. Scarritt Motor Group, Inc.* | M.D. Fla., 8:03-CV-0015-T-30-MSS |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | W. Va. Cir. Ct., 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Schlink v. Edina Realty Title* | 4th Jud. D. Ct. Minn., 02-018380 |
| *Tawney v. Columbia Natural Res. (Oil & Gas Lease Litigation)* | W. Va. Cir. Ct., 03-C-10E |
| *White v. Washington Mutual, Inc. (Pre-Payment Penalty Litigation)* | 4th Jud. D. Ct. Minn., CT 03-1282 |
| *Acacia Media Techs. Corp. v. Cybernet Ventures Inc., (Patent Infringement Litigation)* | C.D. Cal., SACV03-1803 GLT (Anx) |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans)* | Wash. Super. Ct., 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding Litigation)* | Wash. Super. Ct., 00-2-17633-3SEA |
| *Poor v. Sprint Corp. (Fiber Optic Cable Litigation)* | Ill. Cir. Ct., 99-L-421 |
| *Thibodeau v. Comcast Corp.* | E.D. Pa., 04-CV-1777 |
| *Cazenave v. Sheriff Charles C. Foti (Strip Search Litigation)* | E.D. La., 00-CV-1246 |
| *National Assoc. of Police Orgs., Inc. v. Second Chance Body Armor, Inc. (Bullet Proof Vest Litigation)* | Mich. Cir. Ct., 04-8018-NP |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., 00-6222 |
| *Yacout v. Federal Pacific Electric Co. (Circuit Breaker)* | N.J. Super. Ct., MID-L-2904-97 |
| *Lewis v. Bayer AG (Baycol)* | 1st Jud. Dist. Ct. Pa., 002353 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litigation* | E.D. La., MDL No. 1643 |
| *Stefanyshyn v. Consol. Indus. Corp. (Heat Exchanger)* | Ind. Super. Ct., 79 D 01-9712-CT-59 |
| *Barnett v. Wal-Mart Stores, Inc.* | Wash. Super. Ct., 01-2-24553-8 SEA |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

24

| | |
|---|---|
| *In re Serzone Prods. Liability Litigation* | S.D. W. Va., MDL No. 1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., J.C.C.P. 4226 & 4270 |
| *In re Solutia Inc. (Bankruptcy)* | S.D.N.Y., 03-17949-PCB |
| *In re Lupron Marketing & Sales Practices Litigation* | D. Mass., MDL No. 1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., CJ-03-714 |
| *Bowling, et al. v. Pfizer Inc. (Bjork-Shiley Convexo-Concave Heart Valve)* | S.D Ohio, C-1-91-256 |
| *Thibodeaux v. Conoco Philips Co.* | D. La., 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Perry v. Mastercard Int'l Inc.* | Ariz. Super. Ct., CV2003-007154 |
| *Brown v. Credit Suisse First Boston Corp.* | C.D. La., 02-13738 |
| *In re Unum Provident Corp.* | D. Tenn., 1:03-CV-1000 |
| *In re Ephedra Prods. Liability Litigation* | D.N.Y., MDL No. 1598 |
| *Chesnut v. Progressive Casualty Ins. Co.* | Ohio C.P., 460971 |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Or. Cir. Ct., 00C15234 |
| *Luikart v. Wyeth Am. Home Prods. (Hormone Replacement)* | W. Va. Cir. Ct., 04-C-127 |
| *Salkin v. MasterCard Int'l Inc. (Pennsylvania)* | Pa. C.P., 2648 |
| *Rolnik v. AT&T Wireless Servs., Inc.* | N.J. Super. Ct., L-180-04 |
| *Singleton v. Hornell Brewing Co. Inc. (Arizona Ice Tea)* | Cal. Super. Ct., BC 288 754 |
| *Becherer v. Qwest Commc'ns Int'l, Inc.* | Ill. Cir. Ct., 02-L140 |
| *Clearview Imaging v. Progressive Consumers Ins. Co.* | Fla. Cir. Ct., 03-4174 |
| *Mehl v. Canadian Pacific Railway, Ltd* | D.N.D., A4-02-009 |
| *Murray v. IndyMac Bank. F.S.B* | N.D. Ill., 04 C 7669 |
| *Gray v. New Hampshire Indemnity Co., Inc.* | Ark. Cir. Ct., CV-2002-952-2-3 |
| *George v. Ford Motor Co.* | M.D. Tenn., 3:04-0783 |
| *Allen v. Monsanto Co.* | W. Va. Cir. Ct., 041465 |
| *Carter v. Monsanto Co.* | W. Va. Cir. Ct., 00-C-300 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., 98-C-2178 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

25

| | |
|---|---|
| *Daniel v. AON Corp.* | Ill. Cir. Ct., 99 CH 11893 |
| *In re Royal Ahold Securities and "ERISA" Litigation* | D. Md., MDL No. 1539 |
| *In re Pharmaceutical Industry Average Wholesale Price Litigation* | D. Mass., MDL No. 1456 |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., 583-318 |
| *Walton v. Ford Motor Co.* | Cal. Super. Ct., SCVSS 126737 |
| *Hill v. State Farm Mutual Auto Ins. Co.* | Cal. Super. Ct., BC 194491 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa. 2:05-CV-04951-AB |
| *Sauro v. Murphy Oil USA, Inc.* | E.D. La., 05-4427 |
| *In re High Sulfur Content Gasoline Prods. Liability Litigation* | E.D. La., MDL No. 1632 |
| *Homeless Shelter Compensation Program* | City of New York |
| *Rosenberg v. Academy Collection Service, Inc.* | E.D. Pa., 04-CV-5585 |
| *Chapman v. Butler & Hosch, P.A.* | 2nd Jud. Cir. Fla., 2000-2879 |
| *In re Vivendi Universal, S.A. Securities Litigation* | S.D.N.Y., 02-CIV-5571 RJH |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., SU-04-CV-3637 |
| *In re: Propulsid Products Liability Litigation* | E.D. La., MDL No. 1355 |
| *Baxter v. The Attorney General of Canada (In re Residential Schools Class Action Litigation)* | Ont. Super. Ct., 00-CV-192059 CPA |
| *McNall v. Mastercard Int'l, Inc. (Currency Conversion Fees)* | 13th Tenn. Jud. Dist. Ct., CT-002506-03 |
| *Lee v. Allstate* | Ill. Cir. Ct., 03 LK 127 |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., SU-2006-CV-3764-6 |
| *Harper v. Equifax* | E.D. Pa., 2:04-CV-03584-TON |
| *Beasley v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2005-58-1 |
| *Springer v. Biomedical Tissue Services, LTD (Human Tissue Litigation)* | Ind. Cir. Ct., 1:06-CV-00332-SEB-VSS |
| *Spence v. Microsoft Corp. (Antitrust Litigation)* | Wis. Cir. Ct., 00-CV-003042 |
| *Pennington v. The Coca Cola Co. (Diet Coke)* | Mo. Cir. Ct., 04-CV-208580 |
| *Sunderman v. Regeneration Technologies, Inc. (Human Tissue Litigation)* | S.D. Ohio, 1:06-CV-075-MHW |
| *Splater v. Thermal Ease Hydronic Systems, Inc.* | Wash. Super. Ct., 03-2-33553-3-SEA |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE     10300 SW ALLEN BLVD     BEAVERTON, OR 97005     T 503-597-7697
PHILADELPHIA AREA OFFICE     1420 LOCUST ST 30F     PHILADELPHIA, PA 1910     T 215-721-2120

26

| | |
|---|---|
| *Peyroux v. The United States of America (New Orleans Levee Breech)* | E.D. La., 06-2317 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., 01:CVS-1555 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc. (Sienna Run Flat Tires)* | N.D. Cal., C-05-04289-BZ |
| *In re Bridgestone Securities Litigation* | M.D. Tenn., 3:01-CV-0017 |
| *In re Mutual Funds Investment Litigation (Market Timing)* | D. Md., MDL No. 1586 |
| *Accounting Outsourcing v. Verizon Wireless* | M.D. La., 03-CV-161 |
| *Hensley v. Computer Sciences Corp.* | Ark. Cir. Ct., CV-2005-59-3 |
| *Peek v. Microsoft Corporation* | Ark. Cir. Ct., CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Or., CV-01-1529 BR |
| *Schwab v. Philip Morris USA, Inc.* | E.D.N.Y., CV-04-1945 |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2006-409-3 |
| *In re Parmalat Securities Litigation* | S.D.N.Y., MDL No. 1653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Ark. Cir. Ct., CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Ark. Cir. Ct., 2007-154-3 |
| *Govt. Employees Hospital Assoc. v. Serono Int., S.A.* | D. Mass., 06-CA-10613-PBS |
| *Gunderson v. Focus Healthcare Management, Inc.* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc., et al.* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Perez v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-00574-E |
| *Pope v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-01451-B |
| *West v. Carfax, Inc.* | Ohio C.P., 04-CV-1898 (ADL) |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Ark. Cir. Ct., CV-2007-155-3 |
| *In re Conagra Peanut Butter Products Liability Litigation* | N.D. Ga., MDL No. 1845 (TWT) |
| *The People of the State of CA v. Universal Life Resources (Cal DOI v. CIGNA)* | Cal. Super. Ct., GIC838913 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., 05-05437-RBL |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | W. Va. Cir. Ct., 04-C-296-2 |
| *In re Alstom SA Securities Litigation* | S.D.N.Y., 03-CV-6595 VM |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., 05-CIV-21962 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE       10300 SW ALLEN BLVD       BEAVERTON, OR 97005       T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F       PHILADELPHIA, PA 1910     T 215-721-2120

27

| | |
|---|---|
| *Hoorman v. SmithKline Beecham* | Ill. Cir. Ct., 04-L-715 |
| *Santos v. Government of Guam (Earned Income Tax Credit)* | D. Guam, 04-00049 |
| *Johnson v. Progressive* | Ark. Cir. Ct., CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *In re SCOR Holding (Switzerland) AG Litigation (Securities)* | S.D.N.Y., 04-cv-7897 |
| *Shoukry v. Fisher-Price, Inc. (Toy Safety)* | S.D.N.Y., 07-cv-7182 |
| *In re: Guidant Corp. Plantable Defibrillators Prod's Liab. Litigation* | D. Minn., MDL No. 1708 |
| *Clark v. Pfizer, Inc (Neurontin)* | C.P. Pa., 9709-3162 |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | W. Va. Cir. Ct., 06-C-855 |
| *In re TJX Companies Retail Security Breach Litigation* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Ark. Cir. Ct., CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Ins.)* | C.D. Cal., SACV06-2235-PSG |
| *Palace v. DaimlerChrysler (Defective Neon Head Gaskets)* | Ill. Cir. Ct., 01-CH-13168 |
| *Lockwood v. Certegy Check Services, Inc. (Stolen Financial Data)* | M.D. Fla., 8:07-cv-1434-T-23TGW |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., DV-03-220 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (AIG)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Jones v. Dominion Resources Services, Inc.* | S.D. W. Va., 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *In re Trans Union Corp. Privacy Litigation* | N.D. Ill., MDL No. 1350 |
| *Gudo v. The Administrator of the Tulane Ed. Fund* | La. D. Ct., 2007-C-1959 |
| *Guidry v. American Public Life Insurance Co.* | 14th Jud. D. Ct. La., 2008-3465 |
| *McGee v. Continental Tire North America* | D.N.J., 2:06-CV-06234 (GEB) |
| *Sims v. Rosedale Cemetery Co.* | W. Va. Cir. Ct., 03-C-506 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., 2004-002417 |
| *In re Katrina Canal Breaches Consolidated Litigation* | E.D. La., 05-4182 |
| *In re Department of Veterans Affairs (VA) Data Theft Litigation* | D.D.C., MDL No. 1796 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CD's)* | Ill. Cir. Ct., 01-L-454 and 01-L-493 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

28

| *Pavlov v. CNA (Long Term Care Insurance)* | N.D. Ohio, 5:07cv2580 |
| *Steele v. Pergo( Flooring Products)* | D. Or., 07-CV-01493-BR |
| *Opelousas Trust Authority v. Summit Consulting* | 27th Jud. D. Ct. La., 07-C-3737-B |
| *Little v. Kia Motors America, Inc. (Braking Systems)* | N.J. Super. Ct., UNN-L-0800-01 |
| *Boone v. City of Philadelphia (Prisoner Strip Search)* | E.D. Pa., 05-CV-1851 |
| *In re Countrywide Customer Data Breach Litigation* | W.D. Ky., MDL No.1998 |
| *Miller v. Basic Research (Weight-loss Supplement)* | D. Utah, 2:07-cv-00871-TS |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Cambridge)* | 14th Jud. D. Ct. La., 2004-002417 |
| *Weiner v. Snapple Beverage Corporation* | S.D.N.Y., 07-CV-08742 |
| *Holk v. Snapple Beverage Corporation* | D.N.J., 3:07-CV-03018-MJC-JJH |
| *Coyle v. Hornell Brewing Co. (Arizona Iced Tea)* | D.N.J., 08-CV-2797-JBS-JS |
| *In re Heartland Data Security Breach Litigation* | S.D. Tex., MDL No. 2046 |
| *Satterfield v. Simon & Schuster, Inc. (Text Messaging)* | N.D. Cal., 06-CV-2893 CW |
| *Schulte v. Fifth Third Bank (Overdraft Fees)* | N.D. Ill., 1:09-CV-06655 |
| *Trombley v. National City Bank (Overdraft Fees)* | D.D.C., 1:10-CV-00232 |
| *Vereen v. Lowe's Home Centers (Defective Drywall)* | Ga. Super. Ct., SU10-CV-2267B |
| *Mathena v. Webster Bank, N.A. (Overdraft Fees)* | D. Conn, 3:10-cv-01448 |
| *Delandro v. County of Allegheny (Prisoner Strip Search)* | W.D. Pa., 2:06-cv-00927 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (First Health)* | 14th Jud. D. Ct. La., 2004-002417 |
| *Williams v. Hammerman & Gainer, Inc. (Hammerman)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (Risk Management)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (SIF Consultants)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Gwiazdowski v. County of Chester (Prisoner Strip Search)* | E.D. Pa., 2:08cv4463 |
| *Williams v. S.I.F. Consultants (CorVel Corporation)* | 27th Jud. D. Ct. La., 09-C-5244-C |
| *Sachar v. Iberiabank Corporation (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *LaCour v. Whitney Bank (Overdraft Fees)* | M.D. Fla., 8:11cv1896 |
| *Lawson v. BancorpSouth (Overdraft Fees)* | W.D. Ark., 1:12cv1016 |
| *McKinley v. Great Western Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

29

| | |
|---|---|
| *Wolfgeher v. Commerce Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Harris v. Associated Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Case v. Bank of Oklahoma (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Nelson v. Rabobank, N.A. (Overdraft Fees)* | Cal. Super. Ct., RIC 1101391 |
| *Fontaine v. Attorney General of Canada (Stirland Lake and Cristal Lake Residential Schools)* | Ont. Super. Ct., 00-CV-192059 CP |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Marolda v. Symantec Corporation (Software Upgrades)* | N.D. Cal., 3:08-cv-05701 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement* | E.D. La., MDL No. 2179 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Medical Benefits Settlement* | E.D. La., MDL No. 2179 |
| *Vodanovich v. Boh Brothers Construction (Hurricane Katrina Levee Breaches)* | E.D. La., 05-cv-4191 |
| *Gessele et al. v. Jack in the Box, Inc.* | D. Or., No. 3:10-cv-960 |
| *RBS v. Citizens Financial Group, Inc. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Mosser v. TD Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Mastercard & Visa)* | E.D.N.Y., MDL No. 1720 |
| *Saltzman v. Pella Corporation (Building Products)* | N.D. Ill., 06-cv-4481 |
| *In re Zurn Pex Plumbing, Products Liability Litigation* | D. Minn., MDL No. 1958 |
| *Blahut v. Harris, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Eno v. M & I Marshall & Ilsley Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Casayuran v. PNC Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Anderson v. Compass Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Evans, et al. v. TIN, Inc. (Environmental)* | E.D. La., 2:11-cv-02067 |
| *Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Williams v. SIF Consultants of Louisiana, Inc. et al.* | 27th Jud. D. Ct. La., 09-C-5244-C |
| *Miner v. Philip Morris Companies, Inc. et al.* | Ark. Cir. Ct., 60CV03-4661 |
| *Fontaine v. Attorney General of Canada (Mistassini Hostels Residential Schools)* | Qué. Super. Ct., 500-06-000293-056 & No. 550-06-000021-056 (Hull) |
| *Glube et al. v. Pella Corporation et al. (Building Products)* | Ont. Super. Ct., CV-11-4322294-00CP |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

30

| | |
|---|---|
| *Yarger v. ING Bank* | D. Del., 11-154-LPS |
| *Price v. BP Products North America* | N.D. Ill, 12-cv-06799 |
| *National Trucking Financial Reclamation Services, LLC et al. v. Pilot Corporation et al.* | E.D. Ark., 4:13-cv-00250-JMM |
| *Johnson v. Community Bank, N.A. et al. (Overdraft Fees)* | M.D. Pa., 3:12-cv-01405-RDM |
| *Rose v. Bank of America Corporation, et al. (TCPA)* | N.D. Cal., 11-cv-02390-EJD |
| *McGann, et al., v. Schnuck Markets, Inc. (Data Breach)* | Mo. Cir. Ct., 1322-CC00800 |
| *Simmons v. Comerica Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.* | 27th Jud. D. Ct. La., 09-C-5242-B |
| *Simpson v. Citizens Bank (Overdraft Fees)* | E.D. Mich, 2:12-cv-10267 |
| *In re Plasma-Derivative Protein Therapies Antitrust Litigation* | N.D. Ill, 09-CV-7666 |
| *In re Dow Corning Corporation (Breast Implants)* | E.D. Mich., 00-X-0005 |
| *Mello et al v. Susquehanna Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wong  et al. v. Alacer Corp. (Emergen-C)* | Cal. Super. Ct., CGC-12-519221 |
| *In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant)* | E.D.N.Y., 11-MD-2221, MDL No. 2221 |
| *Costello v. NBT Bank (Overdraft Fees)* | Sup. Ct. Del Cnty., N.Y., 2011-1037 |
| *Gulbankian et al. v. MW Manufacturers, Inc.* | D. Mass., No. 10-CV-10392 |
| *Hawthorne v. Umpqua Bank (Overdraft Fees)* | N.D. Cal., 11-cv-06700-JST |
| *Smith v. City of New Orleans* | Civil D. Ct., Parish of Orleans, La., 2005-05453 |
| *Adkins et al. v. Nestlé Purina PetCare Company et al.* | N.D. Ill., 1:12-cv-02871 |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re MI Windows and Doors Products Liability Litigation (Building Products)* | D. S.C., MDL No. 2333 |
| *Childs et al. v. Synovus Bank, et al. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Steen v. Capital One, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Kota of Sarasota, Inc. v. Waste Management Inc. of Florida* | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., 2011-CA-008020NC |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement  (Claim Deadline Notice)* | E.D. La., MDL No. 2179 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

31

| | |
|---|---|
| *Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc.* | Cir. Ct., Lawrence Cnty, Ala., 42-cv-2012-900001.00 |
| *In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice)* | Bankr. D. Del., 14-10979(CSS) |
| *Gattinella v. Michael Kors (USA), Inc., et al.* | S.D.N.Y., 14-civ-5731 (WHP) |
| *Kerry T. Thibodeaux, M.D. (A Professional Medical Corporation) v. American Lifecare, Inc.* | 27th Jud. D. Ct. La., 13-C-3212 |
| *Ono v. Head Racquet Sports USA* | C.D.C.A., 2:13-cv-04222-FMO(AGRx) |
| *Opelousas General Hospital Authority v. PPO Plus, L.L.C., et al.* | 27th Jud. D. Ct. La., 13-C-5380 |
| *In re: Shop-Vac Marketing and Sales Practices Litigation* | M.D. Pa., MDL No. 2380 |
| *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* | D. N.J., MDL No. 2540 |
| *In Re: Citrus Canker Litigation* | 11th Jud. Cir., Flo., No. 03-8255 CA 13 |
| *Whitton v. Deffenbaugh Industries, Inc., et al.*<br>*Gary, LLC v. Deffenbaugh Industries, Inc., et al.* | D. Kan., 2:12-cv-02247<br>D. Kan., 2:13-cv-2634 |
| *Swift v. BancorpSouth Bank (Overdraft Fees)* | N.D. Fla., No. 1:10-cv-00090 |
| *Forgione v. Webster Bank N.A. (Overdraft Fees)* | Sup. Ct.Conn., X10-UWY-CV-12-6015956-S |
| *Small v. BOKF, N.A.* | D. Col., 13-cv-01125 |
| *Anamaria Chimeno-Buzzi & Lakedrick Reed v. Hollister Co. & Abercrombie & Fitch Co.* | S.D. Fla., 14-cv-23120-MGC |
| *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation* | Sup. Ct. N.Y., No. 650562/11 |
| *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch)* | N.D. Cal., MDL No. 2672 |
| *Hawkins v. First Tennessee Bank, N.A., et al. (Overdraft Fees)* | 13th Jud. Cir. Tenn., No. CT-004085-11 |
| *Greater Chautauqua Federal Credit Union v. Kmart Corp., et al. (Data Breach)* | N.D. Ill., No. 1:15-cv-02228 |
| *Bias v. Wells Fargo & Company, et al. (Broker's Price Opinions)* | N.D. Cal., No 4:12-cv-00664-YGR |
| *Klug v. Watts Regulator Company (Product Liability)* | D. Neb., No. 8:15-cv-00061-JFB-FG3 |
| *Ratzlaff v. BOKF, NA d/b/a Bank of Oklahoma, et al. (Overdraft Fees)* | Dist. Ct. Okla., No. CJ-2015-00859 |
| *Morton v. Greenbank (Overdraft Fees)* | 20th Jud. Dist. Tenn., No. 11-135-IV |
| *Jacobs, et al. v. Huntington Bancshares Inc., et al. (FirstMerit Overdraft Fees)* | Ohio C.P., No. 11CV000090 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

32

| *Farnham v. Caribou Coffee Company, Inc. (TCPA)* | W.D. Wis., No. 16-cv-00295-WMC |
| *Gottlieb v. Citgo Petroleum Corporation (TCPA)* | S.D. Fla., No. 9:16-cv-81911 |
| *McKnight v. Uber Technologies, Inc.* | N.D. Cal., No 3:14-cv-05615-JST |
| *Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.)* | N.C. Gen. Ct of Justice, Sup. Ct. Div., No. 05 CVS 188, No. 05 CVS 1938 |
| *T.A.N. v. PNI Digital Media, Inc.* | S.D. GA., No. 2:16-cv-132-LGW-RSB. |
| *In re: Syngenta Litigation* | 4th Jud. Dist. Minn., No. 27-CV-15-3785 |
| *The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy)* | D. Puerto Rico, No. 17-04780(LTS) |
| *Callaway v. Mercedes-Benz USA, LLC (Seat Heaters)* | C.D. Cal., No 14-cv-02011 JVS |
| *In re: Takata Airbag Products Liability Litigation (OEMs – BMW, Mazda, Subaru and Toyota)* | S.D. Fla, MDL No. 2599 |

Hilsoft-cv-140

HILSOFT NOTIFICATIONS    PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

33

# Attachment 2

Settlement Administrator
P.O. Box 3170
Portland, OR 97208-3170

PRESORTED
FIRST CLASS MAIL
AUTO
U.S. POSTAGE
PAID
PORTLAND, OR
PERMIT NO. 2882

## Legal Notice about a Class Action Settlement



2
2

## If You Incurred One or More $35 Extended Overdrawn Balance Charges in Connection with Your Bank of America Personal Checking Account, You May Be Entitled to Benefits from a Proposed Class Action Settlement

A settlement has been reached in a class action lawsuit alleging that extended overdrawn balance charges ("EOBCs") assessed by Bank of America, N.A. ("BANA") violated  the National Bank Act's usury limit. BANA denies the allegations in the case and denies liability.  The Court has not decided which side is right.

**Who's Included?**   BANA's records show you are a member of the Settlement Class.  The Settlement Class includes all holders of BANA consumer checking accounts who, between February 25, 2014 and December 30, 2017, were assessed at least one EOBC that was not refunded.

**What Are the Settlement Terms?**  BANA has agreed to cease the assessment of EOBCs for 5 years, subject to certain limitations set forth in the settlement agreement, and to pay a Settlement Amount of $66.6 million, which includes: $37.5 million in cash and debt reduction payments of $29.1 million. Once the Court approves the Settlement, you will automatically receive a cash payment, account credit and/or debt reduction based upon EOBCs paid by or assessed to you.

**Your Other Options.**  If you do not want to be bound by the Settlement, you must exclude yourself by **April 20, 2018**.  If you do not exclude yourself, you will release your claims against BANA.  You may object to the Settlement by **April 20, 2018**.  The Long Form Notice available at the Settlement website, listed below, explains how to exclude yourself or object.  You may also request a paper copy of the Long Form Notice be mailed to you by contacting the Settlement Administrator at the website or phone number below.  The Court will hold a hearing on **June 18, 2018**, to consider whether to approve the Settlement and a request for attorneys' fees of up to 25% of the Settlement Value and service awards of up to $5,000 for each Class Representative.  Details regarding the hearing are in the Long Form Notice, available at the website below. You may appear and speak at the hearing, but you are not required to do so.  You may hire your own attorney, at your own expense, to appear or speak for you at the hearing.                T7361 v.03

**www.EOBCsettlement.com                    1-888-396-9598**

Attachment 3

| From: | mail@msgbsvc.com on behalf of noreply_eobcsettlement |
|---|---|
| Sent: | Wednesday, January 31, 2018 12:56 PM |
| To: | ████████████ |
| Subject: | HTML Sample -- Legal Notice of Class Action Settlement |

IF YOU INCURRED ONE OR MORE $35 EXTENDED OVERDRAWN BALANCE CHARGES IN CONNECTION WITH YOUR BANK OF AMERICA PERSONAL CHECKING ACCOUNT, YOU MAY BE ENTITLED TO BENEFITS FROM A PROPOSED CLASS ACTION SETTLEMENT.

This is a Court-authorized notice of a proposed class action Settlement. This is not a solicitation from an attorney, and you are not being sued.

PLEASE READ THIS NOTICE CAREFULLY, AS IT EXPLAINS YOUR RIGHTS AND OPTIONS AND THE DEADLINES TO EXERCISE THEM.

For more information, including a more detailed description of your rights and options, please visit www.EOBCSettlement.com.

A Settlement has been reached in a class action lawsuit alleging that extended overdrawn balance charges ("EOBCs") assessed by Bank of America, N.A. ("BANA") violated the National Bank Act's usury limit. BANA denies the allegations in the case and denies liability. The Court has not decided which side is right.

Who Is Included? BANA's records show you are a member of the Settlement Class. The Settlement Class includes all holders of BANA consumer checking accounts who, between February 25, 2014, and December 30, 2017, were assessed at least one EOBC that was not refunded.

What Are The Settlement Terms? BANA has agreed to cease the assessment of EOBCs for 5 years, subject to certain limitations set forth in the Settlement agreement, and to pay a Settlement Amount of $66.6 million, which includes: $37.5 million in cash and debt reduction payments of $29.1 million. Once the Court approves the Settlement, you will automatically receive a cash payment, account credit, and/or debt reduction based upon EOBCs paid by or assessed to you.

What Are My Options? If you do not want to be bound by the Settlement, you must exclude yourself by April 20, 2018. If you do not exclude yourself, you will release your claims against BANA. You may object to the Settlement by April 20, 2018. The Long Form Notice, available at the Settlement website listed below, explains how to exclude yourself or object. You may also request a paper copy of the Long Form Notice be mailed to you by contacting the Settlement Administrator at the website or phone number below. The Court will hold a hearing on June 18, 2018, to consider whether to approve the Settlement and a request for attorneys' fees of up to 25% of the Settlement Value and service awards of up to $5,000 for each Class Representative. Details regarding the hearing are in the Long Form Notice, available at the website below. You may appear and speak at the hearing, but you are not required to do so. You may hire your own attorney, at your own expense, to appear or speak for you at the hearing.

For more information, visit www.EOBCSettlement.com or call 1-888-396-9598.

Please note: This e-mail message was sent from a notification-only address that cannot accept incoming e-mail. Please do not reply to this message.

If you would prefer not to receive further messages from this sender, please Click Here <http://weblaunch.blifax.com/listener3/unsubscribe?id=00000000-0000-0000-0000-000000000000&e=ashrestha@epiqsystems.com> and confirm your request. <http://weblaunch.blifax.com/listener3/00000000-0000-0000-0000-000000000000.open>

# Attachment 4

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

# If you Incurred One or More $35 Extended Overdrawn Balance Charges in Connection with your BANK OF AMERICA personal checking account, you may be entitled to benefits from a proposed class action settlement

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

A settlement has been reached in a class action lawsuit pending in the United States District Court for the Southern District of California (the "Court") entitled *Farrell v. Bank of America, N.A.*, Case No. 3:16-CV-00492-L-WVG (the "Action"). The Action challenges extended overdrawn balance charges ("EOBCs") as allegedly violating the National Bank Act's usury limit.  Bank of America, N.A. ("BANA") denies liability.  The Court has not decided which side is right.  The Court has tentatively approved the proposed settlement agreement to which the parties have agreed ("Settlement").

- Current and former holders of BANA personal checking accounts who incurred EOBCs may be eligible for a cash payment, account credit, or a reduction of outstanding debt owed to BANA. You are receiving this notice because the parties to the Action believe you are a Settlement Class member, as that term is defined below, who is entitled to relief.  Read this notice carefully.  This notice advises you of the benefits that may be available to you under the proposed Settlement and your rights and options as a Settlement Class member.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Do Nothing - Receive A Cash Payment, Account Credit and/or Debt Reduction** | If you are entitled under the Settlement to a cash payment, account credit or debt reduction, you do not have to do anything to receive it. If the Court approves the Settlement and it becomes final and effective, and you remain in the Settlement Class, you will automatically receive a cash payment, account credit and/or a debt reduction, as determined under the terms of the Settlement, and will give up your right to bring your own lawsuit against BANA about the claims in this case. |
| **Exclude Yourself From The Settlement** | Receive no benefit from the Settlement. This is the only option that allows you to retain your right to bring any other lawsuit against BANA about the claims in this case. |
| **Object** | Write to the Court if you do not like the Settlement. |
| **Go to a Hearing** | Ask to speak in Court about the fairness of the Settlement. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments, account credits, and debt reductions will be provided if the Court approves the Settlement and after any appeals are resolved. Please be patient.

**Questions?  Call 1-888-396-9598 or visit www.EOBCsettlement.com**

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ............................................................................................... **PAGE 3**
  1. Why is there a Notice?
  2. What is this lawsuit about?
  3. Why is this a class action?
  4. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** ..................................................................................... **PAGE 3**
  5. Who is included in the Settlement?

**THE SETTLEMENT'S BENEFITS** ................................................................................... **PAGE 4**
  6. What does the Settlement provide?
  7. How do I receive a cash payment, account credit, or debt reduction?
  8. What am I giving up to stay in the Settlement Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .......................................................... **PAGE 5**
  9. How do I get out of the Settlement?
  10. If I don't exclude myself, can I sue BANA for the same thing later?
  11. If I exclude myself from the Settlement, can I still receive a payment, account credit, or debt reduction?

**THE LAWYERS REPRESENTING YOU** ............................................................................. **PAGE 5**
  12. Do I have a lawyer in this case?
  13. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ............................................................................... **PAGE 6**
  14. How do I tell the Court that I don't like the Settlement?
  15. What's the difference between objecting and excluding?

**THE COURT'S FINAL APPROVAL HEARING** ................................................................... **PAGE 7**
  16. When and where will the Court decide whether to approve the Settlement?
  17. Do I have to come to the hearing?
  18. May I speak at the hearing?

**IF YOU DO NOTHING** ................................................................................................. **PAGE 7**
  19. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ................................................................................... **PAGE 7**
  20. How do I get more information?

T7482 v.02

# BASIC INFORMATION

## 1. Why is there a Notice?

A court authorized this notice because you have a right to know about the proposed Settlement of this class action lawsuit and about all of your options, before the Court decides whether to give final approval to the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights.

Judge M. James Lorenz, of the U.S. District Court for the Southern District of California, is overseeing this case. The case is known as *Joanne Farrell v. Bank of America, N.A.,* Case No. 3:16-cv-00492-L-WVG. The person who sued is called the "Plaintiff." The Defendant is BANA.

## 2. What is this lawsuit about?

The lawsuit claims that EOBCs assessed in connection with consumer checking accounts violate the National Bank Act's usury limit.

The complaint in this Action is posted on the settlement website, www.EOBCSettlement.com. BANA denies liability.  The Court has not decided which side is right.

## 3. Why is this a class action?

In a class action, one or more people, called Class Representatives (in this case, four BANA customers who were assessed EOBCs), sue on behalf of people who have similar claims.

All of the people who have claims similar to the Class Representatives are members of the Settlement Class, except for those who exclude themselves from the Settlement Class.

## 4. Why is there a Settlement?

The Court has not decided in favor of either the Plaintiffs or BANA. Instead, both sides agreed to the Settlement. By agreeing to the Settlement, the Parties avoid the costs and uncertainty of a trial, and Settlement Class members receive the benefits described in this notice. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected.

# WHO IS IN THE SETTLEMENT?

If you received notice of the Settlement from a postcard or email addressed to you, then the parties believe you are in the Settlement Class.  But even if you did not receive a postcard or email with notice of the Settlement, you may still be in the Settlement Class, as described below.  If you did not receive a postcard or email addressed to you but you believe you are in the Settlement Class, as defined below, you may contact the Settlement Administrator.

## 5. Who is included in the Settlement?

The settlement class ("Settlement Class") is estimated to be approximately 5.9 million people in size and includes:

All holders of BANA consumer checking accounts who, between February 25, 2014 and December 30, 2017, were assessed at least one EOBC that was not refunded.

**Questions?  Call 1-888-396-9598 or visit www.EOBCSettlement.com**

T7483 v.02

If this did not happen to you, you are not a member of the Settlement Class. You may contact the Settlement Administrator if you have any questions as to whether you are in the Settlement Class.

# THE SETTLEMENT'S BENEFITS

## 6.   What does the Settlement provide?

The Settlement provides that BANA will provide sixty-six million six hundred thousand dollars ($66,600,000) to settle the class action (the "Settlement Amount").  Of the Settlement Amount, BANA will pay thirty-seven million five hundred thousand dollars ($37,500,000) in cash, and BANA will provide twenty-nine million one hundred thousand dollars ($29,100,000) in the form of debt reduction payments.  After paying certain other costs and court-approved amounts, the cash relief will be distributed among Settlement Class members who paid one or more EOBCs that they incurred in connection with their BANA personal checking accounts between February 25, 2014 and December 30, 2017.  Settlement Class members who currently hold BANA checking accounts will have their cash awards deposited directly into their accounts.  Settlement Class members who no longer hold BANA checking accounts will receive their cash awards via check.  Each Settlement Class member's cash award will depend upon the number of EOBCs the Settlement Class member paid and on the total number of Settlement Class members.  The debt relief will be provided to Settlement Class members whose personal checking accounts BANA closed in overdrawn status with an EOBC still pending and whose overdrawn balances remain due and owing to BANA.  Debt relief will be provided in the form of debt reduction payments, in an amount up to $35, but in no event exceeding the amount of a Settlement Class member's overdrawn balance remaining due and owing to BANA.  Debt relief will not result in any cash payments to Settlement Class members.

## 7.   How do I receive a cash payment, account credit, or debt reduction payment?

If you are in the Settlement Class and entitled to receive a cash payment, account credit, or debt reduction payment, you do not need to do anything to receive the relief to which you are entitled under the Settlement. If the Court approves the Settlement and it becomes final and effective, you will automatically receive a payment, account credit and/or debt reduction.

## 8.   What am I giving up to stay in the Settlement Class?

If the Settlement is finally approved, each Settlement Class member who has not excluded himself or herself from the Settlement Class pursuant to the procedures set forth in the settlement agreement releases, waives, and forever discharges BANA and each of its present, former, and future parents, predecessors, successors, assigns, assignees, affiliates, conservators, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, shareholders, joint ventures, co-venturers, officers, and directors (whether acting in such capacity or individually), attorneys, vendors, accountants, nominees, agents (alleged, apparent, or actual), representatives, employees, managers, administrators, and each person or entity acting or purporting to act for them or on their behalf, including, but not limited to, Bank of America Corporation and all of its subsidiaries and affiliates (collectively, "BANA Releasees") from any and all claims they have or may have against the BANA Releasees with respect to the assessment of EOBCs as well as (i) any claim or issue which was or could have been brought relating to EOBCs against any of the BANA Releasees in the Action  and (ii) any claim that any other overdraft charge imposed by BANA during the Class Period, including but not limited to EOBCs and initial overdraft fees, constitutes

Questions?  Call 1-888-396-9598 or visit www.EOBCSettlement.com

4

usurious interest, in all cases including any and all claims for damages, injunctive relief, interest, attorney fees, and litigation expenses ("Released BANA Claims"). Each Settlement Class member who does not exclude himself or herself from the Settlement Class will also be bound by all of the decisions by the Court. Section 2.3 of the Settlement describes the precise legal claims that you give up if you remain in the Settlement. The Settlement is available at www.EOBCsettlement.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want benefits from the Settlement, and you want to keep the right to sue or continue to sue BANA on your own about the Released BANA Claims, then you must take steps to get out of the Settlement. This is called excluding yourself – or it is sometimes referred to as "opting-out" of the Settlement Class.

| **9.  How do I get out of the Settlement?** |
|---|

To exclude yourself from the Settlement, you must send a dated letter that includes the following:

- Your name, address, telephone number, and your BANA checking account number(s);
- A statement that you want to be excluded from the BANA EOBC Settlement in *Joanne Farrell v. Bank of America, N.A.,* Case No. 3:16-cv-00492-L-WVG and that you understand you will not receive any money or debt reduction from the Settlement; and
- Your signature.

You must mail your exclusion request, postmarked no later than **April 20, 2018**, to:

EOBC Litigation Exclusions
P.O. Box 3170
Portland, OR 97208-3170

| **10.  If I don't exclude myself, can I sue BANA for the same thing later?** |
|---|

No. Unless you exclude yourself, you give up the right to sue BANA for the claims that the Settlement resolves. You must exclude yourself from this Settlement Class in order to try to pursue your own lawsuit.

| **11.  If I exclude myself from the Settlement, can I still receive a payment, account credit, or debt reduction?** |
|---|

No. You will not receive a cash payment, account credit and/or debt reduction if you exclude yourself from the Settlement.

## THE LAWYERS REPRESENTING YOU

| **12.  Do I have a lawyer in this case?** |
|---|

The Court has appointed lawyers to represent you and others in the Settlement Class as "Class Counsel," including:

| Hassan Zavareei | Jeff Ostrow |
|---|---|
| **Tycko & Zavareei LLP** | **Kopelowitz Ostrow P.A**. |
| 1828 L St. NW Suite 1000 | 1 West Las Olas Blvd. Ste. 500 |
| Washington, DC 20036 | Fort Lauderdale, FL 33301 |

**Questions?  Call 1-888-396-9598 or visit www.EOBCSettlement.com**

T7485 v.02

Class Counsel will represent you and others in the Settlement Class. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 13.  How will the lawyers be paid?

Class Counsel may request up to twenty-five percent (25%) of the Settlement Value for attorneys' fees, plus reimbursement of their expenses incurred in connection with prosecuting this case.  The fees and expenses awarded by the Court will be paid out of the Cash Settlement Amount, as that term is defined in the settlement agreement.  The Court will determine the amount of fees and expenses to award. Class Counsel may also request awards of up to $5,000.00 for each Class Representative to be paid from the Cash Settlement Amount for their service to the entire Settlement Class.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

### 14.  How do I tell the Court that I don't like the Settlement?

If you are a member of the Settlement Class, you can object to any part of the Settlement, the Settlement as a whole, Class Counsel's requests for attorneys' fees and expenses and/or Class Counsel's request for awards for the Class Representatives. To object, you must submit a letter that includes the following:

- The case name and number, which is *Joanne Farrell v. Bank of America, N.A.,* Case No. 3:16-cv-00492-L-WVG;
- Your name, address, telephone number, and signature;
- An explanation of the nature of your objection and citation to any relevant legal authority;
- The number of times you have objected to a class action settlement in the past five years and the caption for any such case(s);
- The identity of any counsel representing you; and
- Whether you (on your own or through an attorney hired by you) intend to testify at the final approval hearing.

You must submit your objection by first class mail **postmarked no later than April 20, 2018** to the following addresses:

| Clerk of the Court<br>U.S. District Court for the S. Dist. of California<br>Judge M. James Lorenz<br>Courtroom 5B, Suite 5145<br>221 West Broadway<br>San Diego, CA 92101 | Jeff Ostrow<br>**Kopelowitz Ostrow P.A.**<br>1 W. Las Olas Blvd., Ste. 500<br>Ft. Lauderdale, FL 33301 | Matthew C. Close<br>**O'Melveny & Myers LLP**<br>400 S. Hope Street<br>Los Angeles, CA 90071 |
|---|---|---|

### 15.  What's the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

**Questions?  Call 1-888-396-9598 or visit www.EOBCSettlement.com**

# THE COURT'S FINAL APPROVAL HEARING

The Court will hold the Final Approval Hearing to decide whether to approve the Settlement and the request for attorneys' fees and Service Awards for Class Representatives. You may attend and you may ask to speak, but you don't have to do so.

**16.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing on June 18, 2018 at 11:00 a.m., at the United States District Court for Southern District of California, located at Courtroom 5B, Suite 5145, 221 West Broadway, San Diego, California 92101. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.EOBCSettlement.com for updates. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. The Court will also consider any request by Class Counsel for attorneys' fees and expenses and for service awards for Class Representatives. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**17.  Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Court may have. But you may come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you submitted your written objection on time, to the proper address, and it complies with the requirements set forth above, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**18.  May I speak at the hearing?**

You may speak at the Final Approval Hearing if you have filed and served a timely objection to the Settlement according to the procedures set out in Section 14 above.

# IF YOU DO NOTHING

**19.  What happens if I do nothing at all?**

If you do nothing, you will still receive the benefits to which you are entitled. Unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit or be part of any other lawsuit against BANA relating to the legal issues in this case or the conduct alleged in the complaint.

# GETTING MORE INFORMATION

**20.  How do I get more information?**

This Long Form Notice summarizes the proposed Settlement. More details can be found in the Settlement. You can obtain a copy of the Settlement at www.EOBCSettlement.com. You may also write with questions to EOBC Litigation, P.O. Box 3170, Portland, OR 97208-3170, or call the toll-free number, 1-888-396-9598.  Do not contact BANA or the Court for information.

**Questions?  Call 1-888-396-9598 or visit www.EOBCSettlement.com**

T7487 v.02

# Attachment 5

**Farrell v. Bank of America, N.A.**
Case No. 3:16-CV-00492-L-WVG (S.D. Cal.)
**Requests for Exclusions**

| # | Name |
|---|---|
| 1 | BIRK ELLIS |
| 2 | DENNIS DOUGLAS |
| 3 | BENJAMIN BAILEY |
| 4 | WILLIAM SHEEHAN |
| 5 | ADA BROWN |
| 6 | ROSA EVANS |
| 7 | FRANCES STOKROCKI |
| 9 | JOAN TOPALIAN |
| 10 | MARGARET MILLIGAN |
| 11 | JIM SCHERMERHORN |
| 12 | OCTAVIO YON |
| 13 | FELIX NILLAS |
| 14 | JORDAN STATE |
| 15 | JESSIE CALVERT |
| 16 | NATASHA TAYLOR |
| 17 | THE ESTATE OF EDWARD G LISEFSKI |
| 18 | SYLVIA MILLER |
| 19 | DEREK WILLIAMS |
| 20 | KYOKO TAMAKI |
| 21 | CHARLES PINKSTON |
| 22 | MICHAEL SMITH |
| 23 | EDNA MORTON |
| 24 | POSHANA GRANT |
| 25 | ROSA MONTESINOS |
| 26 | CHARLES RUSH |
| 27 | RHIZA TINGAL |
| 28 | HERBERT LIGHTSEY |
| 29 | DUCE SOLAGES |
| 30 | KARLA OLVERSON |
| 31 | JOHN MARKS |
| 32 | LINDA CHEN |
| 33 | SADIE EVANS |
| 34 | KENNETH BORHAUG |
| 35 | PATSY DUFFEY |
| 36 | BETTY LOOMIS |
| 37 | KIMBERLY MCCANN |

| 38 | JOSE AQUINO |
|----|------------|
| 39 | ANDREY TOVAR SERRATO |
| 40 | JOHN SIMONIK |
| 41 | MICHAEL QUARTERMAN |
| 42 | BRANDY RAMSEY |
| 43 | ANA RODRIGUEZ |
| 44 | SEYDOU DIATTA |
| 45 | MARGIT HEIM |
| 46 | ANNE GARBARINI |
| 47 | PATRICIA DEAN |
| 48 | JEFFREY JACOBY |
| 49 | MARTHA MENA |
| 50 | GAROLD CUMMINS |
| 51 | DENNIS REED |
| 52 | JAE MYRICK |
| 53 | LUANN ANDREWS |
| 54 | MICHAEL SINISCALCHI |
| 55 | DONNA OSTERKAMP |
| 56 | COURTENAY WILLIAMS |
| 57 | IBRAHIM ALSAAB |
| 58 | NAOMI THOMPSON |
| 59 | PAUL HALES |
| 60 | ADRIANA SEGURA CASADOS |
| 61 | PAULINE WAMBUA |
| 62 | EZZE MONAH |
| 63 | MICHAEL WILSON |
| 64 | WAYNE PERRY |
| 65 | EUNA HEO |
| 66 | CAROLANN CYRAN |
| 67 | DAVID PHOMSOUVANH |
| 68 | LAQUAYSIA BOLDEN |
| 69 | WENDY NAVARRO-SOTO |
| 70 | MARIA SANTELLANO BALDOVINO |
| 71 | UTSAV THAPA |
| 72 | ROSALIND CHASE |
| 73 | HURI LEE |
| 74 | ELISABETTA MAZZI |
| 75 | HELENA HARRYSSON |
| 76 | ALBERTHA HARRIS |
| 77 | SYLVESTER WILSON |
| 78 | LAURA GRAY |

| 79 | ASHWIN KHOBRAGADE |
|-----|-----|
| 80 | AURELIA SERA |
| 81 | CHASITY STEWART |
| 82 | CLAUDIA MORGA |
| 83 | MARIANA MORALES |
| 84 | EDITH LARSON |
| 85 | NATALIE MOORE |
| 86 | ROSEMARIE SCHEREMETA |
| 87 | BELINDA CARSON |
| 88 | BRIAN MURPHY |
| 89 | HISHAM SENAN |
| 90 | ESTHER MC GIMSEY |
| 91 | ALEXA BASSETT |
| 92 | ATSUPI AKATO |
| 93 | MIGUEL OCAMPO |
| 94 | JENNIFER HALL |
| 95 | KATHERINE BRUNO |
| 96 | LORI LEONELLI |
| 97 | JESSE DELGADILLO |
| 98 | CESAR HERNANDEZ |
| 99 | GREATHEL LEWIS |
| 100 | RAHIEM HARDY |

Created on May 25, 2018

# Attachment 6

# Farrell v Bank of America Settlement

Case No. 3:16-CV-00492-L-WVG (S.D. Cal.)

**Requests for Objections**

|    | DocID     | Name                     |
|----|-----------|--------------------------|
| 1  | 600000001 | STEVEN HELFAND           |
| 2  | 600000002 | BRUCE EBNETER            |
| 3  | 600000003 | ASHWIN KHOBRAGADE        |
| 4  | 600000006 | SHENITA THOMPSON         |
| 5  | 600000007 | OHIOCHIOYA EIDON         |
| 6  | 600000008 | AMY COLLINS              |
| 7  | 600000009 | RACHEL THREATT           |
| 8  | 600000010 | ESTAFANIA OSORIO SANCHEZ |
| 9  | 600000011 | STEPHEN KRON             |
| 10 | 600000012 | GEORGE O'DELL            |
| 11 | 600000014 | ALGERINE ROMERO          |
| 12 | 600000015 | MARK GULLICKSON          |
| 13 | 600000016 | MICHAEL E COLLEY         |

**STEVEN F. HELFAND**

415.596.5611
s.helfand@icloud.com

900 West Avenue
Apt. 701
Miami Beach, FL 33139

March 30, 2018

United States District Court

Judge M. James Lorenz

Courtroom 5B, Suite 5145

221 West Broadway

San Diego, CA 92101

Jeff Ostrow

Kopelowitz Ostrow P.A.

1 W. Las Olas Blvd., Ste. 500

Ft. Lauderdale, FL 33301

Matthew C. Close

O'Melveny & Myers LLP

400 S. Hope Street

Los Angeles, CA 90071

RE:     Joanne Farrell v. Bank of America, N.A., Case No. 3:16-cv-00492-L-WVG

The Honorable Court:

        I am a class member in the above case.  I have been charged the $35 fees at issue.  I fit within the contours of the class definition.

        The fee request is utterly unconscionable.  It is an abomination.  A multiplier of the amount requested is simply untenable and should not be allowed.  Over eleven is sought; this is even more when you take into account utterly inflated hourly rates.  Atrocious.  Class counsel should be embarrassed; far from it.   A multiplier of negative .5 should be awarded,

chop the lodestar in half.  The fees sought are excessive, hourly rates, inflated, everything that is wrong with class action practice; this is the case hallmark.  Irreconcilable conflicts between counsel and the class; largely metastasized by the overly inflated rates.  The settlement offers class members illusory benefits of debt relief; which will never materialize, the cash is all gobbled up by the untoward fee request made by class counsel. The settlement is pure farce; should not be approved.  No meaningful information is shared with the class; everyone is left to simply take there best guess.  Class counsel should be disqualified; with new notice.  The present notice was defective.  Was not received.  Most class members did not get timely notice and objections have been stymied.

I will not provide docket numbers; simply because they are not available. This requires that I look up on Pacer, at my expense, information that is equally available.   I would estimate approximately five cases more than listed in the abundance of caution. I have never been sanctioned in any class action. In no case have I ever been found to have propounded a frivolous objection although court's have said they may have lacked merit. In some cases in which a district court said my objection lacked merit I prevailed on appeal; obtaining reversal.

a. Cipro Cases, California, JCCP 4154
b. Cipro Cases, California, JCCO 4220
c. Jane Doe v. Twitter, Inc. SF Case No. 10-503630
d. Acer American Corp., et al v. Gateway, 3:10-md-02143-RS
e. White v. Experian, 8:05-cv-01070-DOC-MLG
f. Alexander v. Fedex, 3:05-cv-00038-EMC
g. In re Midland, 11md2286-mma
h. Haine Celestial, 3:11-cv-03082
i. Tom's of Maine, 14cv60604 KMM
j. Barba v. Shire, Inc, 13cv21158
k. Cynthia Spann v. JC Penney, 9th  Cir 16-56474
l. Perkins v. Linkedin, 16-15398
m. Ackerman v. CocaCola, 11md00395
n. Legg v. Laboratory Corporation of America, 14:cv:61543

o. Kaufman v. Amex, 07cv01707

 p. Steve Chambers v. Whirlpool, 11cv01733

q. In re Autoparts Class Action 12md02311

r. Schlesinger v. Ticketmaster, B263529

s. In re: jp Morgan chase & co securities, 12cv03852

t. Hooker v. Sirius XM Radio, 4:13cv00003 AWA (E.D. Va.)

u. Ebarle v. Lifelock, 9th  Circuit, 16-16685

v. Morales v. Conopco 2:13cv02213 (E.D. Cal.)

w. Baharestan v. Venus Laboratories, 3:15cv03578

x. Justice Class Action [Rougvie, et al. v. Ascena Retail Group] 15cv724-MAK

y.  Rodman v. Safeway 3:11-cv-JST (CAND)

I have been called a professional objector. I am professional. I do pay attention to class action cases. My objections tend to be professionally made and would like the opportunity to speak with the Court for ten to fifteen minutes as to my objection. My signature is below.  I reserve the right to appear in person but; as a contingency, I request permission to appear telephonically.

This letter is sent under penalty of perjury under the laws of the United States of America.  It is executed on March 30, 2018 in Miami Beach, Florida.

*Steven F. Helfand*

Steven F. Helfand, Esq.

4/4/2018

From:

# BRUCE EBNETER

# 1095 MISSION ST #307

# SAN FRANCISCO, CA, 94103-2892

# Ph. #650-344-4376

TO: Mathew C. Close ; *JEFF OSTROW*

Regarding: The Action ie: Joanne Farrell V. Bank of America, N.A., Case # 3:16-ev-00492-L-WVG

- # 0 Times objecting to class action settlement
- Legal counsel 1] Tycko @ Zavareei LLP
- 2] Kopelowitz  OSTROW P.A.
  Declaration; yes, I intend to testify at final approval hearing

  Explanation of NATURE OF OBJECTION TO SETTLEMENT AS A WHOLE

  FOLLOWING STATEMENT IS MADE AS A CLAIM FOR DAMAGES

   BANA not only charged me multiple 'EOBC" it did accept payments made on over-draft check and re-direct that payment ,un-known to me,to different checks larger than payment amount, triggering additional over-drafts and fees.
   Due to this action a request to Class Counsel from Class Representative Is being made for the sum of $5,000.00 [Five Thousand] dollars to be paid from Cash Settlement.

  Sincerely;

  *Bruce Ebneter*

B.C.
1095 Mission #307
S. F., CA. 94103

SAN FRANCISCO CA 940

04 APR 2018 PM 7   FOREVER
USA

Barn Swallow

JEFF OSTROW

KOPELOWITZ OSTROW P.A.

1 W. LAS OLAS BLVD. STE. 500

FT. LAUDERDALE FL.

33301

Mr Ashwin K Khobragade BE MS ME
Direct Telephone: 415 967 9541
Email: BeLoyal2AshwinK@gmail.com
BeLoyal2AshwinKKhobragade@gmail.com
(In care off)
Law office of William Dalebout Bowen
3420 Barham Boulevard #1
Los Angeles, CA 90068

Dear Litigation Settlement Team,
EOBC Litigation
P.O. Box 3170
Portland, OR 97208-3170
Phone: 1-888-396-9598

Date: April 6 2018

Subject: Objection to the Overdraft fee lawsuit Farrell v. Bank of America, N.A. Settlement.

Respected Team,

        I was a customer of Bank of America, who is part of the Overdraft fee lawsuit settlement. As I am not longer having an account with Bank of America (account closed in 2015), I would like to make an objection to the settlement amount, because I am not aware if the damages and suffering (is related to this lawsuit/was on purpose/or as a result of this lawsuit) that I have gone through would compensate for the amount that I would receive (knowing that the lead plaintiff would receive less than $5000 - $10,000)(and I having suffered more suffering and damage as a matter of fact, would not be happy even with the amount of $5000-$10,000, as the damages and suffering are huge and monetary damages are as I have spent more than $110,000.00 in cash).

        I have received no benefit what so ever because of the lawsuit and may have incurred only suffering/damages because of this lawsuit before uptill today. And I was made aware about this lawsuit in December of 2017. And I was allowed in this lawsuit in March of 2018 and yet I don't believe I am a part of the class action benefits (i.e. if there is such a thing of getting help with education benefits). I was told that there was a lawsuit people are fighting with Bank of America in March/April 2016 (but there are many lawsuit with Bank of America) and was not aware how and if that it was relevant to me.

        My name is Mr. Ashwin K Khobragade who was charged huge amount of overdraft fee between early 2014 and mid-2014. I was once an Interviewed selected candidate 2015

Page **1** of **2**

to Said Business School, University of Oxford, Oxford, UK; Ranked #1 University in the World. I have not got into that University yet.

Your help in this matter is very valuable and highly valued. As I have become a man of no means, who does not have money to rent his apartment, and until yesterday March 6 2018, I didn't have money to feed myself a onetime meal, could you please be able to be generous in granting me the settlement amount for all the damages caused as a result of this lawsuit.

I look forward to a reply from the EOBC Litigation Team. Please correct me if I am wrong. I would request that you please contact me by emails and by phone for settlement and communication. I could be able to be reached at the address below by lettered mail attention direction to me and the phone number below.

Best Regards

/Electronic Signature/

Mr Ashwin K Khobragade BE MS ME
Direct Telephone: 415 967 9541
Email: BeLoyal2AshwinK@gmail.com
BeLoyal2AshwinKKhobragade@gmail.com
(In care off)
Law office of William Dalebout Bowen
3420 Barham Boulevard #1
Los Angeles, CA 90068

SANTA CLARITA CA 913

06 APR 2018 PM 4 1 FOREVER USA

Barn Swallow

EOBC LITIGATION
P O Box 3170
Portland, OR 97208-3170
1-888-396-9598

97208-317070

ASHWIN K KHOBRAGADE
415 -967 - 9541





FSC
MIX
Envelope
FSC® C137131

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

© USPS 2016

# Objection Letter



**Shenita Lenice Ann Thompson**

**Current Address:**

2510 Suncrest Dr Apt 10

Flint, MI 48504

**Cell Number:**

(810) 766-3621

**Mail Address:**

P.O. Box 321404

Flint, MI 48532-0024

**Counsel Representing**

Jeff Ostrow

Kopelowitz Ostrow P.A.

1 W. Las Olas Blvd., Ste. 500

Ft. Lauderdale, FL 33301

## Nature Of My Objection

I Shenita L, A Thompson Object to some part of the settlement for Class Counsel's request for awards for the Class Representatives regarding Joanne Farrell v. Bank of America, Case No. 3:16-cv-00492-L-WVG. This is my first time objecting in any lawsuit because of economic hardship I am unable to hire an attorney to represent me to testify at the final approval hearing.

I believe it should also be ~~add~~ added to the settlement that Settlement Class member should also be awarded cash relief for damages and financial hardships incurred in connection with their BANA personal checking accounts between February 25, 2014 and December 30, 2017. I am aware that I am a Settlement Class member who no longer has a BANA checking account because of the NSF/OD fees Bank of America took my money of $109.00 in my accounts. My health insurance payments were linked to my accounts but the payments wasn't successful so now my credit is damaged because I also still owe money to the health insurance company.

## Brief Summary of What Happened

I'm aware of the Anti- bribery and Anti- corruption U.S Foreign Corrupt Act and U.K. Bribery Act, whenever you conduct business on behalf of Bank of America. You may not give, promise or offer money or anything of value of authorize any third party working on behalf of Bank of America to give, promise, or offer anything of value including but not limited to currency, offers of employment, lavish gifts and entertainment to any customer, government employee, or any other persons for the purpose of improperly influence a decision. I'm aware of your code of conduct if employees of Bank of America engage in such behavior the employee exposes himself and the corporation to a civil and/or criminal liability by undermining the trust of a customer.

I would like to report a fraudulent action on Monday June 08, 2015 I arrived at Bank of America at 1:15pm located on 5116 Greenville Ave Dallas, TX 75206. I walk into the building up to the teller and requested to make withdraw from my saving account of $9.00 and deposit $100.00 of cash into my checking account. The teller#0005 Juan Cruz requested that I swipe my debit card and provide identification on my account to verify the accountholder. The teller#0005 Juan Cruz than gave me back my identification. The teller#0005 Juan Cruz handed me a deposit slip to fill out my deposit amount and while I was doing that the teller handed me a TLR cash withdrawal slip to sign. I reviewed the amount to be withdrawn which was a written amount of $9.00 dollar. I furnished filling out the deposit slip and handed to the teller the cash to be deposit with the deposit slip, while being process I request the teller to deposit the $9.00 dollars as well the teller than handed me back the deposit slip and requested that I cross out the $100.00 in cash and write under the line stating coins $109.00. The teller#0005 Juan Cruz stated that it is still consider as cash. I did what the teller#0005 Juan Cruz requested and initial my first and last name. I than verify the transaction being processed in front of me while the teller#0005 Juan Cruz stood behind the teller line. While the teller#0005 Juan Cruz furnished the process my headaches started to occur the teller then handed me a receipt of the transaction and I left the building. I became light head because the heat from the sun beaming down on me so I decide to walk next door where there is a restaurant named Raising Cane's Chicken Finger. I decide to eat a meal there to regain my strength I paid $6.59 in cash for my meal I took a sip of my drink and sit my personal belonging down because it was too heavy . I realize than I forgot to withdraw funds for my trip to go to Michigan so while waiting on my food to process I decide to walk over to Bank of America to make withdrawal from my checking account of $400.00 to take along with me to Michigan. I arrived at the ATM at 2:00pm on 06/08/2015 and made two transactions of $200.00 my balanced was $109.82. According to email alerts and customer

receipt the first transaction of the amount of $200.00 showed an available balance of $309.82. The second transaction of the amount of $ 200.00 showed an available balance of $109.82.

 The damages to my accounts also start here I have my health insurance payments setup to come from my accounts on the 3rd United Healthcare in the amount of $96.40 dollar which should have been posted and Humana Dental plan in the amount of $20.99 this should have posted because I was aware I had $109.82 in my account. I was also aware that my secondary checking account was linked to my savings account. I did have direct deposit setup to Social Security every month. I am aware that the overdraft protection services of Bank of America provides to my account Overdraft protection transfers which are made for the amount required to cover the overdraft and the applicable transfer fee, if my savings or secondary checking account does not have enough available funds to cover the necessary amount, Bank of America may decline to make the transfer. When Bank of America receive one or more items which would overdraw my account, and saving or secondary checking has enough available funds to cover at least one of those items, Bank of America generally make one transfer at the end of the day. I am also aware of Bank of America Interest Checking and Advantage accounts plus Platinum Privileges and Preferred Rewards customers qualify for a waiver of this fee. The description of the overdraft protection transfer fee – transfer from a linked Bank of America line of credit the fee amount is $10.00 each transfer.

 I arrived in Dallas, TX back from my trip from Michigan on Saturday, June 13, 2015. On Monday, June 15, 2015 I was aware that my insurance payments would apply to my savings account so I went to Bank of America located at 5636 Lemmon Ave, Dallas, TX 75209 and spoke to Alex I requested a statement on my checking account. Alex alerted me that I was negative in my checking account and that my Humana insurance will apply to my saving account which will cause an overdraft fee. While reviewing my statement on my checking account I requested from Alex a copy of the deposit slip processed on June 08, 2015 and a copy of my overdraft protection policy on my accounts. As Alex processed my requests I realize that on my statement for my checking account there was a TX TLR cash withdrawal from CHK 6218 confirmation# 1678955176 so I requested a copy of that withdrawal slip. Alex hand me the first request and stated that for the TRL I would have to put in the request at the location where the transaction was performed. So I took the information that I requested and thanked Alex and left the building. I continue to observer my statement for checking account I was negative $290.18. Than on my savings account an NSF: Returned Item fee from activity of 06-15 electronic transaction on posting date 06-15-15 posting seq 00001 applied to my saving account. So the $109.00 I deposited into my checking account that's linked to my savings account for my insurance payment to be paid on the 06-15-2015 was not available for payment. As I became aware I started to look for any documentation that would be useful. I reviewed the customer receipt given to me by the teller#0005 Juan Cruz on June 08, 2015 at 1:55pm stated that the

total deposit to CHK is $509.00 and the available balance is $509.82. The teller#0005 Juan Cruz ethics are deceitful and deceptive due to the teller intent dishonest of the deposit slip that he request that I fill out and the teller review the cash transaction and processed it the same day.

On June 22, 2015 at 4:30 pm I met with Personal banker Janet Flores and Manager Rebecca Whittington to address the issue that involved my checking and saving account. Rebecca Whittington explained to me that the error occurred due to a typo error on the teller behalf. She explained to me that Bank of America informed me on the same day the error occurs by telephone. I confirmed with Rebecca Whittington that I didn't receive a call from Bank of America I told her that I could provide telephone records to prove this. Rebecca Whittington and Janet Flores questioning of, why I the customer would withdraw funds from my account due to the teller mistake? Rebecca Whittington and Janet Flores understatement affected their judgement the speakers intentionally made the teller errors seem less important than it really is. On June 26, 2015 I met with Jose Reygadas and Andrew Henk financial advisor of a relating to finance to clarify if any administrator from Bank of America contact me by phone they both ask me for my Identification and confirmed in there system that there was no record of a call made out to me on June 08, 2015. I decide to call the Bank of America hotline to dispute the error. I talk to Jonna who transfer me to electronic transaction they transferred me to claim department Denise. Denise transfers me to Keeyona Ward who transferred me to back to claims Hilary. How Bank of America handle the situation due to the errors of Teller#0005 Juan Cruz. I realize that the teller#0005 Juan Cruz implied consent by utilizes criteria and methods of administration this intentional behavior and ethics attempted to influence the recipient Shenita Thompson decision. According to the deposit slip, TX TLR cash withdrawal from CHK 6218 confirmation# 1678955176, customer receipts, statements, and email alerts teller#0005 Juan Cruz credit checking account 488053746218 of an amount of $ 509.00 dollars when he should have processed $109.00 dollars. This is not expressly granted by a person, but rather inferred from a person's actions the facts and circumstances of this particular situation Bank of America is a corporation employed with professional abusers who committed a fraudulent scheme on my account which cheated and victimize me adding to my suffering. My saving account is now negative -512.46 of a NSF: Returned Item fee and my checking account is now -$302.18



**Bank of America**

Bank of America, TX2-981-05-07, Enterprise Customer Care Resolution
100 North Tryon Street, Charlotte, NC 28255-0001

PRESORTED
FIRST CLASS



U.S. POSTAGE ≫ PITNEY BOWES

ZIP 75024   $ 000.41
02 1W
0001394226 SEP 11 2015

Ms. Shenita Thompson
2209 Empire Central Apartment 234
Dallas, TX  75235

CDA1A- 2510 SUNCREST DR 48504

015   H1A-A3B 48504

Enterprise Customer Care Resolution

Ms. Shenita Thompson
2209 Empire Central Apartment 234
Dallas, TX 75235

**September 9, 2015**

**Contact Us:**
1.855.834.5400, extension
423251

Correspondence received on: August 12, 2015

Dear Ms. Thompson:

**Account Ending:**
6218
6221

Our Enterprise Customer Care Resolution team received correspondence sent on your behalf from the Office of the Comptroller of the Currency (OCC). We understand the importance of listening to you, our customer. We appreciate the time you took to share the concerns. Below is a summary of our research and the resolution.

Page 1 of 2

## Summary of our research

Our research indicates that a deposit was made to your checking account ending in 6218 at the Greenville/Lovers Financial Center on June 8, 2015, in the amount of $109.00. Initially the deposit was incorrectly credited for the amount of $509.00, and was corrected to reflect the amount of $109.00 later that same day. Our research further indicates that on June 8, 2015, you made two withdrawals at an ATM in the amount of $200.00, each. This brought the balance in your checking account to negative $290.18.

Additionally, we can confirm that your checking account is linked to your savings account ending in 6221 for Overdraft Protection. Our Overdraft Protection Service provides payment for transactions when there are insufficient funds in an account. Available funds from the linked account are automatically transferred to the receiving account to prevent insufficient funds activity. This service can protect customers from overdrawing their accounts or from having items returned unpaid due to insufficient funds. Customers can also avoid overdraft or returned item fees, when the accounts remains funded, as well as avoid declined point of sale debit card transactions. Overdraft Protection does not transfer funds from your checking account to your savings account in the event of an overdraft.

The ending balance on your savings account ending in 6221 on June 8, 2015, was $0.34. There have been multiple Returned Items on the account since that date, which resulted in Return Item fees being assessed. These fees have caused your account to become overdrawn. As of the date of this letter, the balance in your savings account is negative $389.66.

## Our response

Ms. Thompson, at Bank of America we strive to provide exceptional customer service during every customer interaction. It appears, in this case, we may have fallen short of that goal. This matter has been elevated to the appropriate level of management to ensure we are upholding the level of service our customers expect and deserve.

Bank of America, NC1-007-3316
100 N TRYON ST, CHARLOTTE, NC 28255-0001

Bank of America

**Documents enclosed**

- Hold and Transaction History dated June 1, through August 12, 2015, for the checking account ending in 6218
- Hold and Transaction History dated June 1, through August 12, 2015, for the savings account ending in 6221

## If you have any questions

Thank you for the opportunity to address your concerns. If you have any questions or would like to discuss this further, my phone number is 1.855.834.5400, extension 423251, and I am available Monday through Friday from 7:30 a.m. to 4:30 p.m. Central.

Sincerely,

Patrick Bulger
Customer Advocate
Enterprise Customer Care Resolution
C-3512557

cc: Office of the Comptroller of the Currency Case Number: 03047869

September 9, 2015

**Contact Us:**
1.855.834.5400, extension 423251

**Account Ending:**
6218
6221

Page 2 of 2

Bank of America

BankofAmerica | Hold and Transaction History | Hold and Transaction History Results

 Bank of America

# Hold and Transaction History

## Hold and Transaction History Search Results

Account# XXXXXXXXXXXXXXXXXX6221 Search Period: 06/01/15 - 08/12/15

Transaction Type: Authorizations, Holds, Debits and Credits

| Original Auth/Hold Date | Posting Date | Merchant Category | Transaction Description | Trans Type | Amount | Available Balance History | Statement Balance | NSF/OD Fee |
|---|---|---|---|---|---|---|---|---|
| | | | **Ending Balance August 11** | | | (389.66) | | |
| | 08/11/15 | | NSF: RETURNED ITEM FEE FOR ACTI | | (35.00) | (389.66) | (389.66) | |
| | 08/11/15 | | NSF: RETURNED ITEM FEE FOR ACTI | | (35.00) | (354.66) | (354.66) | |
| | 08/11/15 | | UNITEDHEALTHONE DES:RDP INS. P | | (96.40) | (319.66) | (319.66) | 35.00 |
| | 08/11/15 | | UNITEDHEALTHONE DES:RDP INS. P | | (96.40) | (319.66) | (319.66) | 35.00 |
| | | | **Ending Balance August 06** | | | (319.66) | | |
| | 08/06/15 | | Monthly Maintenance Fee | | (5.00) | (319.66) | (319.66) | |
| | | | **Ending Balance August 05** | | | (314.66) | | |
| | 08/05/15 | | NSF: RETURNED ITEM FEE FOR ACTI | | (35.00) | (314.66) | (314.66) | |
| | 08/05/15 | | NSF: RETURNED ITEM FEE FOR ACTI | | (35.00) | (279.66) | (279.66) | |
| | 08/05/15 | | UNITEDHEALTHONE DES:INS. PREM. | | (96.40) | (244.66) | (244.66) | 35.00 |
| | 08/05/15 | | UNITEDHEALTHONE DES:INS. PREM. | | (96.40) | (244.66) | (244.66) | 35.00 |
| | | | **Ending Balance July 10** | | | (244.66) | | |
| | 07/10/15 | | NSF: RETURNED ITEM FEE FOR ACTI | | (35.00) | (244.66) | (244.66) | |
| | 07/10/15 | | NSF: RETURNED ITEM FEE FOR ACTI | | (35.00) | (209.66) | (209.66) | |
| | 07/10/15 | | TIME INSURANCE DES:RDP INS. P | | (7.26) | (174.66) | (174.66) | 35.00 |
| | 07/10/15 | | TIME INSURANCE DES:RDP INS. P | | (40.00) | (174.66) | (174.66) | 35.00 |
| | | | **Ending Balance July 09** | | | (174.66) | | |
| | 07/09/15 | | NSF: RETURNED ITEM FEE FOR ACTI | | (35.00) | (174.66) | (174.66) | |
| | 07/09/15 | | Extended Overdrawn Balance Char | | (35.00) | (139.66) | (139.66) | |
| | 07/09/15 | | UNITEDHEALTHONE DES:RDP INS. P | | (96.40) | (104.66) | (104.66) | 35.00 |
| | | | **Ending Balance July 03** | | | (104.66) | | |
| | 07/03/15 | | NSF: RETURNED ITEM FEE FOR ACTI | | (35.00) | (104.66) | (104.66) | |
| | 07/03/15 | | UNITEDHEALTHONE DES:INS. PREM. | | (96.40) | (69.66) | (69.66) | 35.00 |
| | | | **Ending Balance July 02** | | | (69.66) | | |
| | 07/02/15 | | NSF: RETURNED ITEM FEE FOR ACTI | | (35.00) | (69.66) | (69.66) | |
| | 07/02/15 | | NSF: RETURNED ITEM FEE FOR ACTI | | (35.00) | (34.66) | (34.66) | |
| | 07/02/15 | | TIME INSURANCE DES:INS. PYMNT | | (7.26) | 0.34 | 0.34 | 35.00 |
| | 07/02/15 | | TIME INSURANCE DES:INS. PYMNT | | (40.00) | 0.34 | 0.34 | 35.00 |
| | | | **Ending Balance June 29** | | | 0.34 | | |
| | 06/29/15 | | Fee Refund | | 70.00 | 0.34 | 0.34 | |
| | | | **Ending Balance June 22** | | | (69.66) | | |
| | 06/22/15 | | Extended Overdrawn Balance Char | | (35.00) | (69.66) | (69.66) | |
| | | | **Ending Balance June 15** | | | (34.66) | | |
| | 06/15/15 | | NSF: RETURNED ITEM FEE FOR ACTI | | (35.00) | (34.66) | (34.66) | |
| | 06/15/15 | | HUMANA COMPBENEF DES:7709988936 | | (20.99) | 0.34 | 0.34 | 35.00 |
| | | | **Ending Balance June 08** | | | 0.34 | | |

| | | | | | |
|---|---|---|---|---|---|
| | 06/08/15 | Online Banking transfer from CH | 6.00 | 0.34 | 0.34 |
| | | **Ending Balance June 05** | | | (5.66) |
| | 06/05/15 | Fee For Checks And/Or Withdrawa | (12.00) | (5.66) | (5.66) |
| 06/06/2015 01:23:45:000 | 06/05/15 | Online Banking transfer to CHK | (50.00) | 6.34 | 6.34 |
| | | **Ending Balance June 03** | | | 56.34 |
| | 06/03/15 | TIME INSURANCE DES:INS. PYMNT | (7.26) | 56.34 | 56.34 |
| | 06/03/15 | TIME INSURANCE DES:INS. PYMNT | (40.00) | 63.60 | 63.60 |
| | 06/03/15 | UNITEDHEALTHONE DES:INS. PREM. | (96.40) | 103.60 | 103.60 |
| | 06/03/15 | Online Banking transfer from CH | 200.00 | 200.00 | 200.00 |

Print    New Transaction Search    Back    Close

2015 Bank of America Corporation. All rights reserved.

BankofAmerica | Hold and Transaction History | Hold and Transaction History Results

 Bank of America

# Hold and Transaction History

## Hold and Transaction History Search Results

**Account#** XXXXXXXXXXXXXXXXX6218  **Search Period:** 06/01/15 - 08/12/15  **Transaction Type:** Authorizations, Holds, Debits and Credits

| Original Auth/Hold Date | Posting Date | Merchant Category | Transaction Description | Trans Type | Amount | Available Balance History | Statement Balance | NSF/OD Fee |
|---|---|---|---|---|---|---|---|---|
| | | | **Ending Balance August 06** | | | | (302.18) | |
| | 08/06/15 | | Monthly Maintenance Fee | | (12.00) | (302.18) | (302.18) | |
| | | | **Ending Balance June 08** | | | | (290.18) | |
| 06/08/2015 07:01:56:000 | 06/08/15 | | BKOFAMERICA ATM 06/08 #00000987 | | (200.00) | (290.18) | (290.18) | |
| 06/08/2015 07:01:10:000 | 06/08/15 | | BKOFAMERICA ATM 06/08 #00000987 | | (200.00) | (90.18) | (90.18) | |
| 06/08/2015 06:52:31:000 | 06/08/15 | | TX TLR cash withdrawal from CHK | | (9.00) | 109.82 | 109.82 | |
| 06/06/2015 09:30:57:000 | 06/08/15 | | BKOFAMERICA ATM 06/06 #00000877 | | (100.00) | 118.82 | 118.82 | |
| 06/06/2015 09:29:35:000 | 06/08/15 | | BKOFAMERICA ATM 06/06 #00000877 | | (200.00) | 218.82 | 218.82 | |
| 06/06/2015 07:33:06:000 | 06/08/15 | | Online Banking transfer to Sav | | (6.00) | 418.82 | 418.82 | |
| 06/06/2015 07:11:40:000 | 06/08/15 | Restaurant | ▷ CHECKCARD 0606 BIG ALS SMOKE H | | (11.52) | 424.82 | 424.82 | |
| 06/05/2015 05:20:07:000 | 06/08/15 | Fast Food/ | ▷ CHECKCARD 0605 CHIPOTLE 0314 | | (15.80) | 436.34 | 436.34 | |
| | 06/08/15 | | Counter Credit | | 109.00 | 452.14 | 452.14 | |
| | | | **Ending Balance June 05** | | | | 343.14 | |
| 06/03/2015 11:13:46:000 | 06/05/15 | Railways P | ▷ CHECKCARD 0603 AMTRAK .COM | | (358.00) | 327.34 | 343.14 | |
| 06/05/2015 05:20:07:000 | 06/05/15 | Fast Food/ | ▷ CHIPOTLE MEXICAN DALLAS | Processing | (15.80) | 685.34 | 701.14 | |
| | 06/05/15 | | Online Banking transfer from SA | | 50.00 | 701.14 | 701.14 | |
| | | | **Ending Balance June 04** | | | | 651.14 | |
| 06/03/2015 11:13:46:000 | 06/04/15 | Railways P | ▷ AMTRAK.COM WASHINGTON | Processing | (358.00) | 293.14 | 651.14 | |
| | | | **Ending Balance June 03** | | | | 651.14 | |
| 06/03/2015 03:30:48:000 | 06/03/15 | | Online Banking transfer to Sav | | (200.00) | 293.14 | 651.14 | |
| 06/03/2015 11:13:46:000 | 06/03/15 | Railways P | ▷ AMTRAK.COM WASHINGTON | Processing | (358.00) | 493.14 | 851.14 | |
| | 06/03/15 | | SSA TREAS 310 DES:XXSOC SEC | | 905.00 | 851.14 | 851.14 | |
| | | | **Ending Balance June 02** | | | | (53.86) | |
| | 06/02/15 | | OVERDRAFT ITEM FEE FOR ACTIVITY | | (35.00) | (53.86) | (53.86) | |
| 06/02/2015 10:55:56:000 | 06/02/15 | | BKOFAMERICA ATM 06/02 #00000775 | | (20.00) | (18.86) | (18.86) | 35.00 |
| | | | **Ending Balance June 01** | | | | 1.14 | |

BankofAmerica | Hold and Transaction History | Hold and Transaction History Results

| 05/29/2015 09:22:28:000 | 06/01/15 | Direct Mar | ▶ CHECKCARD 0529 NETFLIX.COM | (9.73) | 1.14 | 1.14 |
| 05/30/15 | 06/01/15 | | BKOFAMERICA ATM 05/30 #00000771 | 10.00 | 10.87 | 10.87 |

Print    New Transaction Search    Back    Close

# Golden Rule®
A UnitedHealthcare Company

# Premium Notice
Visit www.MyUHOne.com

SHENITA THOMPSON
PO BOX 601801
DALLAS        TX 75360-1801

| | |
|---|---|
| **ID Number:** | 093-650-966 |
| **To Pay Period Of:** | 06/28/15 to 09/28/15 |
| **Payment Due:** | AUG 28 2015 |
| **Total Amount Due:** | $319.20 |
| **Payment Breakdown:** | |

| | |
|---|---|
| Insurance Payment: | $92.40 |
| Assoc. Fee: | $4.00 |
| Administrative Fee: | $10.00 |
| Balance Forward: | $212.80 |
| Total Amount Due: | $319.20 |

> **Make future policy payments automatically from your bank account! Call (800) 657-8205 for details or to set up Electronic Funds Transfer.**

**Please return this lower part of the form with your payment in the form of a check.**
We do not accept credit card payments.

Make check payable to:  GOLDEN RULE

| | | | |
|---|---|---|---|
| **Primary Insured:** | THOMPSON,SHENITA | **Total Amount Due:** | $319.20 |
| **ID Number:** | 093-650-966 | **Due Date:** | AUG 28 2015 |

GOLDEN RULE INSURANCE COMPANY
**Mail to:** PO BOX 740209
CINCINNATI, OH 45274-0209

00093650966/15240100010640000000000*2

# Humana

PO Box 769649
Roswell, GA  30076-8225

CMPIVI042A20150810024492
Shenita Thompson
2209 empire central Apt 234
Dallas, TX 75235-4368

**Invoice**

For plan period from Sep 1, 2015 to Oct 1, 2015

**ID Number**
0000023508786

**Invoice date**
August 10, 2015

**Payment due**
September 1, 2015

## Your Dental Invoice Detail

| | |
|---|---|
| Outstanding Balance | $41.98 |
| Adjustments | $0.00 |
| Current Period Charges | $20.99 |
| **Please pay total amount due** | **$62.97** |

Your invoice has an exciting new look! Nothing about your plan has changed. You'll still receive the same, helpful information in an easier-to-read format. As always, we're here to assist you with any questions you may have.

**How You Can Pay**
To make a onetime payment online or over the phone, please refer to the website and phone number listed on your ID card.  If you prefer to pay by check or credit card, fill out and detach the portion below, and mail it in the envelope provided.

**How You Can Reach Us**
Please call Customer Service at the number listed on your ID card, Monday-Friday, 8 am - 6 pm Eastern Time

Continued>

---

RETURN THIS PORTION WITH YOUR PAYMENT

# Humana

ID Number:    0000023508786

Shenita Thompson
2209 empire central Apt 234
Dallas, TX 75235-4368

## Payment Coupon

| | |
|---|---|
| **Payment due date:** | 09/01/15 |
| Plan Period: | Sep 1 2015 to Oct 1 2015 |
| Amount due: | $62.97 |
| Amount enclosed: | $ _____ |

☐ To pay by credit card, complete the back of this form and check this box

Please remit to:
Humana Insurance Company
P.O. Box 219051
Kansas City, MO 64121-0000

For change of address, please call Customer Service

06        00000023508786 2        029557240 0000006297 4

# Bank of America

**Checking / Savings Deposit - TX**
**Depósito de cuenta de cheques / Ahorros - TX**

**CREDIT**

Name / Nombre: Shenitha Thompson

Date / Fecha: Dec 4th 2015

Address / Dirección: 2209 Empire Central

Dallas TX 75235

Telephone No. / Nº de teléfono (

Sign here if cash received
Firma aquí si recibes efectivo

Store # (For Business customers only)
Tienda # (Solo para clientes comerciales)

For TX Use Only    43-14-307/SNT  07-2014

Bank Use Only
(Out of State Code)

Account Number / Número de cuenta
(Numbers only. No spaces / dashes)

4 8 8 0 5 3 7 4 6 2 1 8

:540740134:

All items received subject to terms and conditions of applicable laws, regulations and deposit agreement. Proper identification required.

Todo efectivo y cheques recibidos están sujetos a los términos y condiciones de las leyes, regulaciones y convenios de depósito correspondientes. Se requiere identificación apropiada.

| | Cash / Efectivo | | |
|---|---|---|---|
| Currency / Billetes | | | 100.00 |
| Coin / Monedas | | | 0.90 |
| Checks / Cheques | | | |
| | | | |
| | | | |
| **Sub Total** | | | 100.00 |
| Less Cash Received / Menos efectivo recibido | | | 100.00 |
| **Total Deposit / Total de depósito** | | | |

$

100.00

X 5T  100.00

**Bank of America** 

Customer Receipt

All items are credited subject to verification, collection, and conditions of the Rules and Regulations of this Bank and as otherwise provided by law. Payments are accepted when credit is applied to outstanding balances and not upon issuance of this receipt. Transactions received after the Bank's posted cut-off time or Saturday, Sunday, and Bank Holidays, are dated and considered received as of the next business day.

Please retain this receipt until you receive your account statement.

Thank you for banking with Bank of America.
Save time with fast, reliable deposits, withdrawals, transfers and more at thousands of convenient ATM locations.

06/08/2015 13:55 NTX T00111   R540740130
Acct# ***********6218 CC 0002960 TTr 00005

Total Deposit To CHK                    $509.00

Available Now                           $509.00
Available Balance                        509.82
IntRef#           205B2940HADDE16D2CD

Member FDIC
95-14-2005B   10-2012



5030 Greenville Ave
Dallas, TX 75206
(214) 360-6080

3 April E

---

Chk 6159          SHANITA              Gst  1
                Jun08'15 01:58PM

---

**Dine In**
1 3 FINGER COMBO                      6.59
    REGULAR
    FOUNTAIN DRINK
Cash
                                    10.00

Subtotal
TAX                                   6.59
Payment                               0.54
Change Due                            7.13
                                      2.87


* *  Customer's Copy  * *

**Bank of America**

For Customer Service Call
1-800-432-1

BankAmericard Cash Rewards(TM)
Visit bankofamerica.com/getcashback

06/08/15 14:01 ITXN3516

XXXXXXXX7202
*GREENVILLE/LOVERS
DALLAS          TX

Ser. No. 9876                    $200.00
Withdrawal                       Checking
From  PRIMARY                    $309.82
Available Balance

Member FDIC



# OBJECTION TO SOME PART OF THE SETTLEMENT

CASE NAME :- Joanne Farrel v. Bank of America N.A., Case No. 3:16-cv-00492-L-WVG.

CASE NUMBER :- 3:16-cv-00492-L-WVG.

MY NAME :- Ohiochioya Eidon
MY ADDRESS :- 2260 California Street, Denver Colorado, 80205.
MY TELEPHONE NUMBER :- 615-810-6942
MY SIGNATURE :- Ohiochioya Eidon

NATURE OF OBJECTION:- I Ohiochioya Eidon was charged for more than 40 overdraft fees and the amounting interest for lack of early payment. During my account period with Bank of America, the total of overdraft fees were more than $2,500 and it caused me serious financial distressed. My account is closed with negative balance, but i need all my overdraft fees I paid while I was in business with Bank of America. I also need compensation for all the damages caused at that period. Am asking for the full $5,000 in compensation for damages caused. I object to any payment or settlement that excludes me from the full $5,000 compensation.

TIMES OBJECTED TO CLASS ACTION SETTLEMENT IN PAST FIVE YEARS :- This is my first time being part of a class action and have never objected to a class action settlement in the last five years.

OBJECTION TO SOME PART OF THE SETTLEMENT

At the final approval hearing, I choose to testify by myself.

MY CLASS COUNSEL REPRESENTING ME : — JEFF
OSTROW KOPELOWITZ
1 West Las Olas Blvd.
Suite 500
Fort Lauderdale,
FL 33301

"Section 5 of the Federal Trade Commission Act (FTC Act), 15 USC 45 (a)(1) (UDAP), prohibits "unfair or deceptive acts or practices in or affecting Commerce".
Reference
ABA Staff Analysis : Reg Z Final Rule on Mortgage Practices under HOEPA Unfairness Authority (2008)



DENVER CO 800

15 APR 2018 PM 9 1 FOREVER

Bern Swallow

TO:

JEFF OSTROW KOPELOWITZ
OSTROW P. A
1 West Las Olas Blvd
Suite 500
Fort Lauderdale, FL 33301

33301-152825

Timothy R. Hanigan (SBN 125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
Tel: (818) 883-5644
Fax: (818) 704-9372
Attorneys for Objector/Class Member,
Amy Collins

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, RONALD ANTHONY DINKINS, and LARICE ADDAMO on Behalf of themselves and all others similarly situated,<br><br>                     Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A,<br>                     Defendant. | Case No. 3:16-cv-00492-L-WVG<br><br><br><br><br>**OBJECTION OF AMY COLLINS** |

**INTRODUCTION**

Class counsels' $16.6 million fee request cannot be reconciled with the less than two years of labor required to achieve the settlement. That is not to say class counsel did not work hard in mastering the relevant facts, drafting complaints and memoranda, formulating strategy, preparing motions, and preparing for and attending mediation. Doc. 80-2, at 8. But, they litigated this matter for less than two years, and asked to be paid as if it were many times that.

They admit that "[a]pplying [their] requested rates to the total hours expended results in $1,428,047.50 lodestar. **An award of $16.65 million would require a multiplier of 11.66**." Doc. 80-1, at 22 (emphasis added). If we pause a moment to consider those statements, the fee request is absurd. At least three partners who ordinarily charge a reasonable hourly rate of $800 will be compensated at $9,280 per hour. Doc. 8-8, at 4. Associates whose rates are normally between $250 and $500 will be compensated at rates between $2,900 and $5,800 per hour. *Id.* Those are not just on the high end for attorneys' fees, they are unconscionable. *See Gutierrez v. Wells Fargo Bank, N.A.*, C 07-05923 WHA, 2015 WL 2438274, at *8 (N.D. Cal. May 21, 2015) (noting that lodestar multiplier "would translate to [fees at] more than $4,900 per hour" and that "[s]uch compensation is 'ridiculous'"0.

The 11.6 multiplier is nearly three times the outer range (4) for typical multipliers in the Ninth Circuit. And though class counsel hired an expert to support it, his own study suggests it is out of bounds.

The Ninth Circuit recently reminded that when reviewing fee requests in class actions, "the district court has "an independent obligation to ensure that the award, like the settlement itself, is reasonable, even [as here] if the parties have already agreed to an amount." *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 705–06 (9th Cir. 2018) (quotation omitted). When the court fails to take into account, on cross-check, the "'comparison between the lodestar amount and a reasonable percentage award,' [the Ninth Circuit] may remand the case to the district court for further consideration." *Id.* at 706 (quotation omitted).

With this binding precedent in mind, the Court should exercise its fiduciary duty on behalf of the absent class members and deny class counsels' overreaching fee request. Nothing in excess of a 4 multiplier on cross-check should be permitted. Resultingly, class counsel should be awarded no more than $5.7 million in fees for their less than two years of work, which amounts to 8.5% of the settlement fund. The excess $10.9 million should be returned to the class.

## STANDING AND PRELIMINARY STATEMENTS

Objector's full name, address, telephone number, are as follows: Amy Collins, 111 Illinois Street, Rochester, NY 14609-7432; 585-626-0853.

Ms. Collins is a member of the class because she is a holder of a Bank of America, N.A. (BANA) consumer checking account who between February 25, 2014 and December 30, 2017, was assessed at least one extended overdrawn balance charge that was not refunded. *See* Exhibit 1 attached hereto, Declaration of Amy

Collins, incorporated by reference herein as if set forth in full. Specifically, on September 27, 2016, Ms. Collins was assessed a $35 Extended Overdrawn Balance Charge to her Bank of America personal checking account number ending in 4924. *Id*. Additionally, on January 31, 2017, she was assessed a $35 Extended Overdrawn Balance Charge to her Bank of America personal checking account number ending in 4924. *Id.* Upon information and belief, her account was not refunded for these charges. *Id*. There may be additional extended overdrawn balance charges to her Bank of America personal checking account ending in 4924 of which she is unaware. *Id*. She is therefore a class member as defined by the class notice, and has standing to make this objection.

Ms. Collins has not filed an objection to a class action settlement in the preceding five years. Ms. Collins is represented by local counsel, Timothy R. Hanigan, LANG, HANIGAN & CARVALHO, LLP. Ms. Collins is also represented by Bandas Law Firm, PC, as his general counsel in objecting to the settlement. Chris Bandas of Bandas Law Firm does not presently intend on making an appearance for himself or his firm, though he reserves the right to do so.

Ms. Collins objects to the settlement and proposed fees in the *Joanne Farrell v. Bank of America, N.A.,* Case No. 3:16-cv-00492-L-WVG for the reasons stated herein. While reserving the right to do so, Ms. Collins does not intend on appearing at the fairness hearing either in person or through counsel, but asks that her objection be submitted on the papers for ruling at that time. Ms. Collins relies upon the documents

contained in the Court's file in support of these objections. Objection is made to any procedures or requirements to object in this case that require information or documents other than those that are contained herein on grounds that such requirements seek irrelevant information to the objections, are unnecessary, unduly burdensome, are calculated to drive down the number and quality of objections to the settlement and violate Ms. Collins's and counsel's due process rights and/or Rule 23.

Objector incorporates by reference the arguments and authorities contained in other filed objections, if any, made in opposition to the fairness, reasonableness and adequacy of the proposed settlement, the adequacy of class counsel and to the proposed award of attorneys' fees and expenses that are not inconsistent with this objection.

<strong>OBJECTIONS</strong>

**I.** **Because Defendant Agreed Not to Contest Class Counsels' Fee Request, this Court Should Exercise its Fiduciary Duty Carefully in Assessing Reasonable Attorneys' Fees.**

It is axiomatic that district courts have a fiduciary duty to protect the interests of the absentee class members. *See In re: Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir. 2010) (because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs"). This is because in a common fund settlement, every dollar awarded to class counsel is a dollar taken from the class.

Bank of America, as a settling defendant, only cares about its total settlement payments and keeping them as low as possible. *In re Southwest Voucher Litigation*, 799 F.3d 701, 712 (7th Cir. 2015); *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*"). At the same time, class counsel have a natural incentive to enrich themselves at the expense of the unnamed members of the class. *See Southwest Voucher*, 799 F.3d at 712 ("[j]udicial scrutiny of class action fee awards and class settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost").

When, as here, the parties have agreed to a certain amount of fees,[1] and there is no one with an interest in the outcome (save objecting class members) to protest the amount sought,[2] there is a real danger that fees awarded may be excessive. *In re HP*

---

[1] Doc. 69-2, at 11 ("BANA agrees not to oppose or appeal any such application that does not exceed 25% of the Settlement Value plus reimbursement for costs and expenses incurred in the Action").

[2] Objector anticipates class counsels' response to his objection will be to shoot the messenger rather than focus on the merits of her complaint. Yet, it should be remembered that objectors "add value to the class-action settlement process by . . . preventing collusion between lead plaintiff and defendants." *UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 236 (10th Cir. 2009) (citation omitted); *see also* 2003 Committee Note, Rule 23(h) ("In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as . . . attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of Class Counsel"). Further, "[o]bjectors can encourage scrutiny of a proposed settlement and identify areas that need improvement. They can provide important information regarding the fairness, adequacy, and reasonableness of the settlement terms." *Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562, 568 (Mont. 2012). Because objectors may pose a risk to class counsels' fees "class action

---

*Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) ("because the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may 'urge a class settlement at a low figure or less-than-optimal basis in exchange for red-carpet treatment on fees'") (quotation omitted). Thus, "[a]s a fiduciary for the class, the district court must 'act with a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is." *Mercury*, 618 F.3d at 994; *In re Daou Sys., Inc., Sec. Litig.*, 98-CV-1537-L(AJB), 2008 WL 2899726, at *1 (S.D. Cal. July 24, 2008) (this Court describing its fiduciary obligation on behalf of the class).

In this respect, "[a]ttorneys' fees provisions included in proposed class action agreements must be 'fundamentally fair, adequate and reasonable.' The court is not bound by the parties' settlement agreement as to the amount of attorneys' fees." *Foos v. Ann, Inc.*, 11CV2794 L MDD, 2013 WL 5352969, at *4 (S.D. Cal. Sept. 24, 2013).

## II. Class Counsels' $16.6 Million Fee Request, With Just $1.4 Million Lodestar Invested and a Resulting 11.6 Multiplier, is Outrageous.

Class counsel attempt to justify their fee as a benchmark 25% recovery. But, the benchmark should be adjusted when "special circumstances indicate the recovery would be either too small or too large in light of the hours devoted to the case or other

---

lawyers may try to fend off interlopers who oppose a proposed settlement as insufficiently generous to the class[.]" *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (Posner, J.). These tactics are improper: objectors "prevent[] cozy deals that favor class lawyers and defendants at the expense of class members. . . ." *Id.*

relevant factors." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (quoting *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990)); *In re Daou Sys., Inc., Sec. Litig.*, 98-CV-1537-L(AJB), 2008 WL 2899726, at *1 (S.D. Cal. July 24, 2008) (this Court noting that the 25% benchmark "serves as a starting point for the analysis" and that "[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award") (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)).

Special circumstances are clearly present. Class counsels' 11.6 lodestar multiplier reveals the requested $16.6 million fee would be far too generous considering the 2,158 hours dedicated to the case. An 11.6 multiplier is not just on the fringes of reasonable recovery. It is off the chart. "Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases. *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, *4 (N.D. Cal. 2013); *see also In re Cathode Ray Tube Antitrust Litig..*, 3:07-CV-5944 JST, 2016 WL 721680, at *43 (N.D. Cal. Jan. 28, 2016) (observing the multiplier range of 1-4 for 83% of the 24 class action settlements discussed in *Vizcaino*); *Asghari v. Volkswagen Group of Am., Inc.*, CV1302529MMMVBKX, 2015 WL 12732462, at *51 (C.D. Cal. May 29, 2015) (declining a request for 1.4 multiplier, and holding class counsel to their lodestar despite a "positive result" and the risk undertaken by class counsel); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 277 (E.D. Cal. 2014) (refusing to award a 4.39

multiplier, "which exceeds the range typically awarded in the Ninth Circuit"); *Dennis v. Kellogg Co.*, 09-CV-1786-L WMC, 2013 WL 6055326, at *7 (S.D. Cal. Nov. 14, 2013) (upholding $1 million fee on lodestar cross-check with essentially no multiplier). Not to mention, in the Ninth Circuit, there is a "strong presumption that the lodestar amount represents a reasonable fee, [and that] adjustments to the lodestar, 'are the exception rather than the rule.'" *Stranger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) (quotation omitted); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010) (noting the "'strong presumption" that the lodestar figure is reasonable").

While Class counsel string cite a number of overdraft fee cases where similar or greater percentage-based fees, they fail to identify a similar case with anything approaching an 11.6 multiplier. Doc. 80-1, at 18-19. In this Circuit, the highest lodestar multiplier counsel for Ms. Collins was able to locate in an overdraft case was a collective 4.53. *Gutierrez v. Wells Fargo Bank, N.A.*, C 07-05923 WHA, 2015 WL 2438274, at *8 (N.D. Cal. May 21, 2015). Though class counsel in *Gutierrez* petitioned for the 25% benchmark, Judge Alsup found the resulting 10.38 multiplier untenable. *Id.* at *4 (noting fees sought would require a 10.38 multiplier and that "[s]uch an extraordinary multiplier is not justified"). Accordingly, the court reduced recovery to 9% with a 4.53 multiplier.[3] As Judge Alsup commented, "This is an

---

[3] Judge Alsup allowed a 5.5 multiplier to the law firm of Lieff Cabraser, and a lower multiplier to another firm which produced a collective 4.53 multiplier. *Gutierrez*, 2015 WL 2438274, at *7.

exceptional fee award compared to multipliers used in other comparable actions. In *Vizcaino,* for example, which involved a bitterly-contested and 'extremely risky' litigation spanning eleven years, our court of appeals affirmed an award amounting to a multiplier of 3.65." *Gutierrez*, 2015 WL 2438274, at *8. Critically, the exceptional 4.53 multiplier was only allowed based on *complete* recovery of $203 million after full blown trial on the merits (and two appeals), which included a trial performance that was one of the best Judge Alsup had seen in sixteen years on the bench. *Id.* at *7.

Other bank overdraft cases fall well within the typical multiplier range of one to four. For example, the Northern District of California awarded 25%, supported with a .98 multiplier, in a case where the settlement provided the class with "about a third of the amount they could have recovered if they had prevailed at trial." *Hawthorne v. Umpqua Bank*, 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015). And, in *Johnson v. Cmty. Bank, N.A.*, in the Middle District of Pennsylvania awarded 33% with a 2.96 lodestar multiplier on cross-check in a case where the settlement provided 50% of potential class damages. 3:12-CV-01405, 2013 WL 6185607, at *9 (M.D. Pa. Nov. 25, 2013); *see also Bodnar v. Bank of Am., N.A.*, CV 14-3224, 2016 WL 4582084, at *4 (E.D. Pa. Aug. 4, 2016) (allowing a 4.69 multiplier for a 33% recovery where the settlement provided between 13 and 48% of class damages). Class counsel here, in contrast to those cases, seek an outrageous 11.6 multiplier even though the $66 million settlement fund is less than 9% of the $756 million class damages. Doc. 69-1, at 17.

### III.   Fitzpatrick's Opinions are Contradicted by his Own Study.

Though he tries, class counsels' expert Brian Fitzpatrick, routinely paid to justify fees for class counsel across the nation, cannot rationalize the 11.6 multiplier. Doc. 80-3. Indeed, Fitzpatrick's opinions here are internally consistent with his own study.

*Not one* of the 218 cases in Fitzpatrick's empirical study that considered lodestar in assessing the reasonableness of a fee percentage involved a multiplier as high as 11.6. Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 JOURNAL OF EMPIRICAL LEGAL STUDIES 811, 833-34 (Dec. 2010). In fact, only one court of the 218 permitted a multiplier above 6. *Id*. at 834. As Fitzpatrick's declaration here notes, his results are consistent with other experts' studies. Doc. 80-3, at 17 (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical L. Stud. 248, 273 (2010) (finding mean multiplier of 1.81 for cases between 1993 and 2008); Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. Law Review 937, 965 (2017) (finding mean multiplier of 1.48 for cases between 2009 and 2013)).

In his study, Fitzpatrick remarked these statistically prevalent low multipliers, "with the bulk of the range not much above 1.0 . . . cast doubt on the notion that the percentage-of-the settlement method results in windfalls to class counsel." *Id*. If those multipliers denote the absence of an excessive recovery, a multiplier ten times greater

confirms a windfall. Nevertheless, Fitzpatrick contends application of the lodestar cross-check here would create a disincentive for attorneys to reach settlement quickly, and might instead encourage unnecessary and protracted litigation. The notion that paying class counsel $5.7 million, or 4 times their hourly rates, is any kind of deterrent for similar efficient work is dubious at best. Indeed, class counsel were aware that they were litigating in a Circuit which recognizes the importance of lodestar relative to a percentage-based fee, and nevertheless reached the proposed settlement in under two years.

Since his study is unsupportive, Fitzpatrick clings to outliers. He references a list of cases in *Vizcaino* which he notes show "multipliers of up to 19.6". *Vizcaino*, 290 F.3d at 1051 n.6 (noting multipliers of up to 19.6). What he leaves out is that the one case allowing a 19.6 multiplier did not even involve a class action settlement at all, but rather was a bankruptcy opinion in which the court approved a contingency fee agreement beforehand. *In re Merry-Go-Round Enterprises, Inc*., 244 B.R. 327, 340 (Bankr. D. Md. 2000). Otherwise, most of the multipliers (83%) fell between 1 and 4, and none came close to 11.6. *Vizcaino*, 290 F.3d at 1052 n.1, n.6 (9th Cir. 2002).

Finally, Fitzpatrick's declaration focuses on the non-monetary aspect of the settlement which benefit class members and non-class members alike. Doc 80-3, at 18. Yet inexplicably, he never takes into account that the $66 million of actual monetary compensation to the class is less than 9% of the $756 million class

damages. Doc. 69-1, at 17. Fitzpatrick's result-oriented opinions provide little reason to indulge class counsels' 11.6 multiplier.

### IV.  Class Counsels' Lodestar is Inflated, Meaning the Multiplier is Actually Greater than 11.6.

Even then, the actual multiplier is almost certainly greater than 11.6. Fitzpatrick's study anticipates that "there is always the possibility that class counsel are optimistic with their timesheets when they submit them for lodestar consideration." Fitzpatrick, Empirical Study, at 834. That appears to be the case here.

Class counsels' 2,158 hours include considerable time spent preparing their motion for attorneys' fees (Docs. 80-4, at 3; 80-5, at 6, 80-6, at 4, 80-7, at 3) and a substantial amount of time spent on other cases. Docs. 80-4, at 3, 80-5, at 5, 80-6, at 3, 80-7, at 3. Fitzpatrick believes that "*much* of the work class counsel did in these cases was of benefit to the class in this case." Doc. 80-3, at 17 n.6 (emphasis added). Presumably *some* of it was not. It is not clear to what extent the hours from the other unsuccessful cases were limited to those useful in this litigation. Further, a significant amount of time, if not the majority of it, appears dedicated to mediation and settlement rather than litigation. Docs. 80-4, at 3-4, 80-5, at 5-6, 80-6, at 3-4, 80-7, at 3-4. *See Manner v. Gucci Am., Inc.*, 15-CV-00045-BAS(WVG), 2016 WL 6025850, at *4 (S.D. Cal. Oct. 13, 2016) (the fact "that a substantial portion of the requested

fees were incurred *after* the settlement was reached at the mediation" "casts doubt on the value to the class of the billed hours") (emphasis original).[4]

Class counsels' actual lodestar is likely less, and probably much less, than the $1.4 million represented, which means the real multiplier necessary to reach $16.6 million is likely to be even greater than the already ridiculous 11.6 multiplier.

## V.    The Relevant Factors Do Not Support 25%.

At least three of the factors relevant to awarding fees under the percentage indicate $16.6 million is not a reasonable fee in this case. *See Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, 16-CV-00182-H-BLM, 2018 WL 1470198, at *6 (S.D. Cal. Mar. 26, 2018) (listing factors)[5] (citing *Vizcaino,* 290 F.3d at 1048-50).

The results are considerably overstated. Class members who were wrongfully charged the EOBC will not receive full refunds, but rather a *pro rata* division of $37.5 million among class members with current Bank of America checking accounts who paid the EOBCs. Doc. 80-3, at 5. The remaining $29.1 million is earmarked for those who have yet to pay the EOBCs. *Id.* As it turns out, the total $66.6 million compensation is less than 9% of the $756 million in class damages. While it is true

---

[4] Because class counsels' lodestar declarations include essentially the same generic categorization of work tasks, it is impossible to assess the extent to which their work was duplicative. Considering four firms were involved, there was almost certainly some duplicative labor.

[5] The factors include "(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases." *Gutierrez-Rodriguez,* 2018 WL 1470198, at *6 (citing *Vizcaino,* 290 F.3d at 1048-50.).

that "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair[,]" that does not amount to a result that warrants more than 11 times class counsels' hourly rates. Meanwhile, the future practice changes flouted by class counsel apply equally to class members and non-class members alike.

As described *supra*, similar cases have allowed similar percentages, but all with lodestar multipliers only a fraction of what class counsel submit here. And finally, the contingent nature of the fees, and the time and labor spent here do not justify anything approaching a 11.6 multiplier. Just a year after filing suit, class counsel began to explore settlement. Doc. 80-1, at 4-5 (suit filed on February 25, 2016 and in "February 2017 . ..began to explore the possibility of settlement"). And, they settled in less than two. Doc. 69-2 (settlement executed on October 30, 2017). That is far less than the average three years it takes to reach a class action settlement. Fitzpatrick, *Empirical Study*, at 820. "Where [the lodestar] investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050; *In re ECOtality, Inc. Sec. Litig.*, 13-CV-03791-SC, 2015 WL 5117618, at *4 (N.D. Cal. Aug. 28, 2015) ("[e]ven when applying the percentage method, the Court should use the lodestar method as a cross-check to determine the fairness of the fee award") (citing *Vizcaino,* 290 F.3d at 1050).

## CONCLUSION & PRAYER

Objector/Class Member Amy Collins urges that this Court reject class counsels' request to be paid more than eleven times their lodestar in a case where the monetary compensation afforded the class is under 9% of the class damages. Any award of attorneys' fees should be substantially less than class counsels' requested $16.6 million, and in no case above a 4 lodestar multiplier, with the difference applied to the benefit of the class.

DATED: April 20, 2018                Respectfully submitted,

                                     _/s/ Timothy R. Hanigan_____
                                     Timothy R. Hanigan (125791)
                                     LANG, HANIGAN &
                                     CARVALHO, LLP,
                                     21550 Oxnard Street, Suite 760
                                     Woodland Hills, California 91367
                                     (818) 883-5644
                                     trhanigan@gmail.com
                                     Attorney for Objector/Class Member

DATED: April 20, 2018

Amy Collins
Objecting Class Member

16

Timothy R. Hanigan (SBN 125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
Tel: (818) 883-5644
Fax: (818) 704-9372
Attorneys for Objector/Class Member,
Amy Collins

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, RONALD ANTHONY DINKINS, and LARICE ADDAMO on Behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A,<br><br>Defendant. | Case No. 3:16-cv-00492-L-WVG<br><br><br><br>**DECLARATION OF AMY COLLINS IN SUPPORT OF OBJECTION** |

Comes now Amy Collins and states the following under oath and under penalty of perjury in support of her objection:

My name is Amy Collins. I am over the age of eighteen (18) years. I am qualified and competent to make this affidavit. The facts stated herein are within my personal knowledge.

My address is 111 Illinois Street, Rochester, NY 14609-7432. My phone number is 585-626-0853. I am a holder of a Bank of America, N.A. (BANA) consumer checking account who between February 25, 2014 and December 30, 2017, was assessed at least one extended overdrawn balance charge that was not refunded. Specifically, on September 27, 2016, I was assessed a $35 Extended Overdrawn Balance Charge to my Bank of America personal checking account number ending in 4924. Additionally, on January 31, 2017, I was assessed a $35 Extended Overdrawn Balance Charge to my Bank of America personal checking account number ending in 4924. Upon information and belief, my account was not refunded for these charges. There may be additional extended overdrawn balance charges to my Bank of America personal checking account ending in 4924 of which I am unaware. Additionally, I received a class notice in the mail. For the above stated reasons, I am a class member as defined by the class notice.

I have not filed an objection to a class action settlement in the preceding five years.

---

1

1    Dated this the 20th of April, 2018.

2    I declare under penalty of perjury under the laws of the United States

3

4  of America that the foregoing is true and correct.

5

6    Amy Collins

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1   Timothy R. Hanigan (SBN 125791)
2   LANG, HANIGAN & CARVALHO, LLP
    21550 Oxnard Street, Suite 760
3   Woodland Hills, CA 91367
    Tel: (818) 883-5644
4   Fax: (818) 704-9372
5   Attorneys for Objector/Class Member,
    Amy Collins
6

7                   UNITED STATES DISTRICT COURT
8                  SOUTHERN DISTRICT OF CALIFORNIA
9

10  JOANNE FARRELL, RONALD              Case No. 3:16-cv-00492-L-WVG
    ANTHONY DINKINS, and LARICE
11  ADDAMO on Behalf of themselves and
    all others similarly situated,
12                        Plaintiffs,
13
14  v.
15  BANK OF AMERICA, N.A,               CERTIFICATE OF SERVICE
16                        Defendant.
17
18
19
20
21
22
23
24
25
26
27
28

**Certificate of Service**

The undersigned certifies that today he filed the foregoing Objection of Amy Collins and supporting Declaration of Amy Collins with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record. The foregoing objection was also mailed today to:

Clerk of the Court
U.S. District Court for the S. Dist. of California
Judge M. James Lorenz
Courtroom 5B, Suite 5145
221 West Broadway San Diego, CA 92101

Jeff Ostrow
Kopelowitz Ostrow P.A.
1 W. Las Olas Blvd., Ste. 500
Ft. Lauderdale, FL 33301

Matthew C. Close
O'Melveny & Myers LLP
400 S. Hope Street
Los Angeles, CA 90071

DATED: April 20, 2018

                                          /s/ Timothy R. Hanigan

THEODORE H. FRANK (SBN 196332)
Competitive Enterprise Institute
   Center for Class Action Fairness
1310 L Street NW, 7th Floor
Washington, DC 20005
Voice: (202) 331-2263
Email: ted.frank@cei.org
*Attorney for Rachel Threatt*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>              Defendant,<br><br>RACHEL THREATT,<br><br>              Objector. | Case No. 3:16-cv-00492-L-WVG<br><br>**OBJECTION OF RACHEL THREATT**<br><br>Judge:  Hon. M. James Lorenz<br><br>Place:  Courtroom 5B<br><br>Hearing Date:  June 18, 2018, at 11:00 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION .............................................................................................. 1

**I.** Rachel Threatt is a member of the class and intends to appear through counsel at the fairness hearing. .................................................................. 2

**II.** The Court owes a fiduciary duty to unnamed class members. ............................ 3

**III.** Before the settlement can be approved, the parties must amend the settlement's residual clause to comport with limitations on *cy pres*. ............................ 5

**IV.** The lodestar cross-check illuminates the excess of class counsel's fee request. ............ 7

    **A.** Class counsel's proclaimed lodestar includes non-compensable hours; the actual multiplier approaches 18. .................................................... 11

    **B.** A multiplier of 18 or of 11 is unreasonable. .......................................... 14

**V.** The percentage of recovery requested by class counsel is excessive and should be reduced to augment class recovery. ...................................................... 18

**VI.** The Court should strike or disregard the Fitzpatrick Declaration. ....................... 23

CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*7-Eleven, Inc. v. Etwa Enter.*,
    2013 WL 2947112 (D. Md. Jun. 12, 2013) ............................................ 13

*ACLU v. Barnes*,
    168 F.3d 423 (11th Cir. 1999) ........................................................... 12

*Alexander v. FedEx Ground Package Sys.*,
    No. 05-cv-00038, 2016 WL 3351017 (N.D. Cal. June 15, 2016) ................... 8, 20

*Allen v. Dairy Farmers of Am.*,
    No. 5:09-cv-230, 2016 WL 3361544 (D. Vt. June 14, 2016) ............................ 21

*Anderson Living v. Wpx Energy Prod.*,
    306 F.R.D. 312 (D.N.M. 2015) ........................................................... 9

*In re BankAmerica Corp. Secs. Litig.*,
    775 F.3d 1060 (8th Cir. 2015) ......................................................... 6, 7

*Bayat v. Bank of the West*,
    2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ...................................... 10

*Beckman v. Keybank, N.A.*
    293 F.R.D. 467 (S.D.N.Y. 2013) ....................................................... 16

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ....................................................8, 15, 17, 20

*Blum v. Stenson*,
    465 U.S. 886 (1984) ..................................................................... 17

*Brown v. 22nd Dist. Agricultural Ass'n*,
    2017 WL 3131557 (S.D. Cal. Jul. 21, 2017) ........................................ 17

*Bruno v. Quten Research Inst.*, No. SACV 11-00173 DOC(Ex),
    2013 WL 990495 (C.D. Cal. Mar. 13, 2013) ........................................ 13

*Brytus v. Spang & Co.*,
    203 F.3d 238 (3d Cir. 2000) .............................................................. 9

*In re Cendant Corp. PRIDES Litig.*,
    243 F.3d 722 (3d Cir. 2001) ............................................................ 16

*In re Chiron Corp. Sec. Litig.*,
    2007 WL 4249902 (N.D. Cal. Nov. 30, 2007) ..................................... 10

*In re Citigroup Inc. Secs. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ............................................... 11

*In re Continental Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ............................................................. 5

*Cosgrove v. Citizens Auto. Finance,*
   No. 09-1095, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011 .................................. 19

*Couser v. Comenity Bank,*
   No. 12-cv-2484-MMA, 2017 WL 2312080 (S.D. Cal. May 26, 2017) ................. 6

*Cruz v. Sky Chefs, Inc.,*
   2014 WL 7247065, at *7 (N.D. Cal. Dec. 19, 2014) ............................................ 10

*Dennis v. Kellogg Co.,*
   697 F.3d 858 (9th Cir. 2012) ..........................................................4, 5, 6, 7

*Drazin v. Horizon Blue Cross Blue Shield of N.J.,*
   832 F. Supp. 2d 432 (D.N.J. 2011) .................................................................... 12

*Dugan v. Lloyds Tsb Bank,*
   No. C 12-02549 WHA, 2014 WL 1647652 (N.D. Cal. Apr. 24, 2014) ............. 14

*In re Dry Max Pampers Litig.,*
   724 F.3d 713 (6th Cir. 2013) .............................................................................. 4

*Fangman v. Genuine Title,*
   2016 U.S. Dist. LEXIS 160434 (D. Md. Nov. 18, 2016) .................................. 11

*Florin v. Nationsbank, N.A.,*
   34 F.3d 560 (7th Cir. 1994) ............................................................................... 16

*Fujiwara v. Yasuda LTD.,*
   58 F. Supp. 3d 424 (S.D.N.Y. 2014) ................................................................. 16

*Gabriel Techs. Corp. v. Qualcomm,*
   No. 08-cv-1992 AJB (MDD), 2013 WL 410103 (S.D. Cal. Feb. 1, 2013) ........ 13

*Gehrich v. Chase Bank U.S.,*
   316 F.R.D. 215 (N.D. Ill. 2016) ........................................................................ 22

*GPF Waikiki Galleria v. DFS Group,*
   No. 07-cv-00293, 2007 WL 3195089 (D. Haw. Oct. 30, 2007) ........................ 24

*Greenberg v. Colvin,*
   2015 WL 4078042 (D.D.C. July 1, 2015) ......................................................... 10

*Grunin v. International House of Pancakes,*
   513 F.2d 114 (8th Cir. 1975) ............................................................................. 10

*Gutierrez v. Wells Fargo Bank, N.A.,*
   No. 07-cv-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ............. 5

*Halley v. Honeywell Int'l, Inc.,*
   861 F.3d 481 (3d Cir. 2017) .............................................................................. 12

*Heighley v. J.C. Penney Life Ins. Co.,*
   257 F. Supp. 2d 1241 (C.D. Cal. 2003) ............................................................. 25

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)......................................................................... 11, 13

*Hillson v. Kelly Servs.,*
    2017 WL 3446596 (E.D. Mich. Aug 11, 2017)...................................... 11

*Hofmann v. Dutch LLC,*
    317 F.R.D. 566 (S.D. Cal. 2016).............................................................. 6

*Hofmann v. Dutch LLC,*
    No. 14-cv-02418-GPC, 2017 WL 840646 (S.D. Cal. Mar. 2, 2017) ................... 6

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
    No. 09-md-2087-BTM, 2013 WL 6086933 (S.D. Cal. Nov. 19, 2013) ............... 5

*In re Hyundai and Kia Fuel Economy Litig.,*
    881 F.3d 679 (9th Cir. 2018)........................................8, 15, 16, 17

*In re Infospace, Inc. Secs. Litig.,*
    330 F. Supp. 2d 1203 (W.D. Wash. 2004) ........................................ 12

*Johnston v. Comerica Mortg. Corp.,*
    83 F.3d 241 (8th Cir. 1996)................................................................ 23

*Klier v. Elf Atochem N. Am.,*
    658 F.3d 468 (5th Cir. 2011)................................................................ 7

*Kmiec v. Powerwave Tech.,*
    2016 WL 5938709 (C.D. Cal. Jul. 11, 2016) ..................................... 17

*Koby v. ARS Nat'l Servs.,*
    846 F.3d 1071 (9th Cir. 2017)........................................................ 6, 23

*Lota v. Home Depot U.S.A, Inc.,*
    2013 WL 6870006 (N.D. Cal. Dec. 31, 2013) ................................... 12

*Lukov v. Schindler Elevator Corp.,*
    No. 5:11-CV-00201-EJD, 2012 WL 2428251 (N.D. Cal. June 26, 2012) ......... 25

*In re Magsafe Apple Power Adapter Litig.,*
    571 Fed. Appx. 560 (9th Cir. 2014) ................................................. 17

*Makaeff v. Trump Univ.,*
    2015 WL 1579000 (S.D. Cal. Apr. 9, 2015) ..................................... 14

*Manner v. Gucci Am.. Inc..*
    2016 WL 6025850 (S.D. Cal. Oct. 13, 2016) ................................... 14

*McGee v. Bank of Am., N.A.,*
    2015 WL 4594582 (S.D. Fla. July. 30, 2015)................................ 12, 13

*In re Mercury Interactive Corp.,*
    618 F.3d 988 (9th Cir. 2010)........................................................ 4, 5

*Nachshin v. AOL, LLC,*
    663 F.3d 1034 (9th Cir. 2011)................................................................ 4, 6

*Nat'l Alliance for Accessability v. Hull Storey Retail Group*, No. 10-cv-778-J-34JBT,
    2012 WL 3853520 (M.D. Fla. Jun 28, 2012)................................................. 13

*Nationwide Transport Finance v. Cass Info. Sys.,*
    523 F.3d 1051 (9th Cir. 2008)............................................................... 23

*Nitsch v. DreamWorks Animation SKG,*
    2017 WL 2423161 (N.D. Cal. June 5, 2017)................................................. 11

*Nguyen v. BMW of N. Am.,*
    No. C 10-02257 SI, 2012 WL 1380276 (N.D. Cal. Apr. 20, 2012).................... 13

*In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010,*
    2016 WL 6215974 (E.D. La. Oct. 25, 2016)................................................ 12

*Parsons v. Volkswagen,*
    341 P.3d 662 (Okla. 2014) ................................................................... 12

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014)................................................................... 7

*Perdue v. Kenny A.,*
    559 U.S. 542 (2010)................................................................. 15, 16, 17

*In re Pet Food Prods. Liab. Litig.,*
    629 F.3d 333 (3d Cir. 2010) ................................................................. 15

*Pinal Creek Group v. Newmont Mining Corp.,*
    352 F. Supp. 2d 1037 (D. Ariz. 2005)...................................................... 24

*Reyes v. Bakery & Confectionary Union,*
    2017 WL 6623031 (N.D. Cal. Dec. 28, 2017) ............................................ 14

*Rodriguez v. Barrita, Inc.,*
    53 F. Supp. 3d 1268 (N.D. Cal. 2014) ..................................................... 17

*Rose v. Bank of Am. Corp.,*
    2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ............................................ 10

*In re Sears Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.,*
    867 F.3d 791 (7th Cir. 2017)................................................................. 15

*Shaw v. BOKF, N.A.,*
    2015 WL 6142903 (N.D. Okla. Oct. 19, 2015) ...................................... 12, 13

*Sinanyan v. Luxury Suite Int'l,*
    No. 2:15-cv-00225-GMN-VCF, 2016 WL 4394484 (D. Nev. Aug. 17, 2016).. 22

*Smith v. CRST Van Expedited, Inc.,*
    10-CV-1116-IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013)............... 18

*Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM,
  2011 WL 2559565 (D. Nev. Jun. 27, 2011) ........................................................ 17

*St. Hilaire v. Indus. Roofing Co.*,
  346 F. Supp. 2d 212 (D. Me. 2004) ..................................................................... 14

*Stathakos v. Columbia Sportswear Co.*,
  No. 15-cv-04543-YGR, 2018 WL 1710075 (N.D. Cal. Apr. 9, 2018) ................ 24

*Stobie Creek Invs. v. United States*,
  81 Fed. Cl. 358 (Ct. Fed. Cl. 2008) .................................................................... 24

*Thomas v. Magnachip Semiconductor Inc.*,
  No. 14-cv-01160-JST, 2016 WL 1394278 (N.D. Cal. Apr. 7, 2016) .................... 7

*Viceral v. Mistras Group*,
  2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ................................................ 10, 17

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .................................................................. 8, 16, 18

*Xuechen Yang v. Focus Media Holding*,
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ...................................................... 10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  MDL No. 2672 CRB, 2017 WL 1352859 (N.D. Cal. Apr. 12, 2017) ................ 25

*Wal-Mart Stores v. Visa USA*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................. 20

*Walsh v. Popular, Inc.*,
  839 F. Supp. 2d 476 (D.P.R. 2012) .................................................................... 21

*In re Washington Pub. Power Supply Sys. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ........................................................... 4, 8, 10, 14, 17

*Weeks v. Kellogg Co.*,
  No. 09-cv-8102, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ........................ 16

*Wininger v. SI Mgmt. L.P.*,
  301 F.3d 1115 (9th Cir. 2002) .............................................................................. 8

*Yamada v. Nobel Biocare Holding AG*,
  825 F.3d 536 (9th Cir. 2016) .......................................................................... 9, 10

**Rules and Regulations**

Rule 23(h) ............................................................................................................. 15

42 U.S.C. § 1988 .................................................................................................. 15

Advisory Committee Notes on 2003 Amendments to Rule 23 ............................... 5

**Other Authorities**

American Law Institute, *Principles of the Law of Aggregate Litig.* § 3.07 (2010) ..... 6, 7

Eisenberg, Theodore & Miller, Geoffrey P.,
*Attorney Fees and Expenses in Class Action Settlements: 1993-2008,*
7 J. EMPIRICAL LEGAL STUD. 248 (2010) .............................................. 20

Estes, Andrea,
*Critics hit law firms' bills after class-action lawsuits,*
BOSTON GLOBE (Dec. 17, 2017) ............................................................... 3

Fitzpatrick, Brian T.,
*An Empirical Study of Class Action Settlements and Their Fee Awards,*
7 J. EMPIRICAL LEGAL STUD. 811 (2010) ......................................... 21, 25

Brian T. Fitzpatrick,
*Do Class Action Lawyers Make Too Little?,*
158 U. PA. L. REV. 2043 (2010) ............................................................. 25

Fitzpatrick, Brian T.,
*The End of Objector Blackmail?,*
62 VAND. L. REV. 1623 (2009) ................................................................. 3

Gorsuch, Neil M. & Matey, Paul B.
*Settlements in Securities Fraud Class Actions: Improving Investor Protection,*
WASH. L. FOUND., 23 (2005) .................................................................... 8

Walker, Vaughn R. & Horwich, Ben,
*The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases,*
18 GEO. J. LEGAL ETHICS 1453 (2005) ..................................................... 8

Wasserman, Rhonda,
*Cy Pres In Class Action Settlements,*
88 S. CAL. L. REV. 97 (2014) ................................................................... 7

Wolfman, Brian,
*Judges! Stop Deferring to Class-Action Lawyers,*
2 U. MICH J. L. REFORM 80 (2013) .......................................................... 8

Wolfman, Brian & Morrison, Alan B.
*Representing the Unrepresented in Class Actions Seeking Monetary Relief,*
71 N.Y.U. L. REV. 439 (1996) .................................................................. 8

Zywicki, Todd J., *et al.*,
*Price Controls on Payment Card Interchange Fees: The U.S. Experience,*
George Mason Law & Economics Research Paper No. 14-18 (2014) ............. 23

## INTRODUCTION

Class counsel seek an astonishing $7,715 per hour in fees for their work over the course of a mere 20 month-litigation that settled on docket entry number 69. The work did not require a massive team of lawyers working around the clock. Rather, it was a fly-by-night operation requiring less than 2200 hours, with counsel lobbing similar actions in various other courts to see where they might succeed. *See* Fee Motion 12, 20. The fee request is audacious on its face, representing more than 11 times the claimed value of their hourly work, but it gets worse once one looks past the superficial lodestar presentation. In particular, counsel improperly seek credit in their lodestar for work on *other* litigations, future anticipated hours, and time spent on their fee request, as well as an excessive number of hours for settlement work. Once one removes those excessive hours, the fee multiplier increases to nearly 18, equal to an hourly rate of $11,894. This unreasonableness is compounded by the strong presumption set by the Supreme Court that lodestar is sufficient without a multiplier.

The class should not be billed such an excessive amount. Their claims were significantly compromised; by class counsel's own estimation, they are recovering less than 10% of the value of their claims. In other words, the class is being asked to settle, while counsel is handsomely rewarded many times over with funds that should be used to augment class members' recovery. The Court should reduce the fee award to no more than 10% of the net fund, or $6.66 million, which still amounts to a 4.75 multiplier and will return about $10 million to the class.

That counsel seeks to apply the Circuit's benchmark shows precisely why a lodestar crosscheck is important to prevent windfalls. But even when assessed on its own, 25% of $66.6 million is too high. First, the fund amount includes $29.1 million of "debt reduction," for class members whose accounts were closed with a negative balance—a structure that is less beneficial

to them than cash and costs Bank of America, N.A. ("BANA") significantly less due to the unlikelihood it would ever recover anywhere close to 100% of the delinquent amounts. Second, the size of the fund is due not to the efforts of class counsel but to the size of the class. In such cases, the fee percentage should be reduced from the benchmark to account for economies of scale. Finally, the change in BANA's practice regarding extended overdrawn balance charges ("EOBCs") should be disregarded for purposes of the fee award, as it will simply shift the types of fees that BANA charges the class rather than eliminate them entirely.

In addition, the Court should strike or disregard the Declaration of Brian T. Fitzpatrick because the gist of his report constitutes inadmissible legal conclusions. The Court is solely responsible for, and fully capable of, concluding what the law is and how it applies to the applicable facts. Fitzpatrick's aggregation of the case law and opinions about the value of this particular case are unhelpful and improper.

Finally, the Settlement includes an impermissible provision giving the parties authority to decide whether to redistribute residual funds to an unnamed third party or to the class. The Court should require amendment of this *cy pres* provision before approving the settlement.

## I. Rachel Threatt is a member of the class and intends to appear through counsel at the fairness hearing.

Objector Rachel Threatt is a member of the class. Her address is 304 Sunset Trail, New Lenox, IL 60451. Her telephone number is (314) 750-0921. *See* Declaration of Rachel Threatt ("Threatt Decl.") ¶ 2. Threatt holds a BANA consumer checking account. Between February 25, 2014, and December 30, 2017, she was assessed at least one EOBC that was not refunded. She received notice by postcard of the proposed settlement in this action. *Id.* ¶¶ 3-4. She has not previously filed an objection to any class action settlement. *Id.* ¶ 6.

Threatt intends to appear at the June 18, 2018, fairness hearing through her *pro bono* attorney Theodore H. Frank of the Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF"). Frank is a member of the bar of the Southern District of California. At this time, Threatt does not intend to call any witnesses at the fairness hearing, but reserves the right to make use of all documents entered on the docket by any settling party or objector and the right to cross-examine any witnesses who testify at the hearing in support of final approval.

CCAF represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. Since it was founded in 2009, CCAF has "recouped more than $100 million for class members" by driving the settling parties to reach an improved bargain or by reducing outsized fee awards. Andrea Estes, *Critics hit law firms' bills after class-action lawsuits*, BOSTON GLOBE (Dec. 17, 2017). CCAF's track record—and preemptive response to the most common false *ad hominem* attacks made against it by attorneys defending unfair settlements and fee requests—can be found in the Declaration of Theodore H. Frank. To avoid doubt about her motives, Threatt is willing to stipulate to an injunction prohibiting her from accepting compensation in exchange for the settlement of her objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem). Threatt brings this objection through CCAF in good faith to protect the interests of the class. Threat Decl. ¶8.

## II. The Court owes a fiduciary duty to unnamed class members.

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). Unlike

ordinary settlements, "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations…. [T]hus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id.* To guard against this danger, a district court must act as a "fiduciary for the class … with 'a jealous regard'" for the rights and interests of absent class members. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting *In re Washington Pub. Power Supply Sys. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1302 (9th Cir. 1994)). Threatt raises two primary objections, both of which invoke the Court's special fiduciary role: (1) the settlement's residual clause authorizes class counsel to prioritize yet-to-be-designated *cy pres* recipients ahead of class members' interests; and (2) class counsel seeks an excessive and unreasonable fee.

First, *cy pres*, "unbridled by a driving nexus between the plaintiff class and the *cy pres* beneficiaries—poses many nascent dangers to the fairness of the distribution process." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). As such, any *cy pres* provision "must be examined with great care to eliminate the possibility that it serves only the 'self-interests' of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious." *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012).

With respect to Threatt's objection to class counsel's fee request, the need for court oversight is even more apparent. At the fee-setting stage, the relationship between class counsel and the class turns directly and unmistakably adversarial because counsel's "interest in getting paid the most for its work representing the class [is] at odds with the class' interest in securing the largest possible recovery for its members." *Mercury Interactive*, 618 F.3d at 994. Given this inherent adversity, there can be no deference to class counsel's recommendation. Meanwhile,

"in most common-fund cases, defendants have little interest in challenging class counsel's timesheets." *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-05923 WHA, 2015 WL 2438274, at *6 (N.D. Cal. May 21, 2015). That is the case here. The settlement permits without opposition from the defendant, any fee request up to 25% of the gross settlement fund. Settlement § 3.2. No individual class member has the financial incentive to object to an exorbitant fee request either; "[h]is gain from a reduction, even a large reduction, in the fees awarded the lawyers would be miniscule." *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992). The district court (and good-faith public-minded objectors) serve as the last line of defense. "Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process." Advisory Committee Notes on 2003 Amendments to Rule 23.

**III. Before the settlement can be approved, the parties must amend the settlement's residual clause to comport with limitations on *cy pres*.**

In relevant part, the settlement provision governing the dispositive of residual settlement funds reads as follows: "At the election of Class Counsel and counsel for BANA, and subject to the approval of the Court, the funds may be distributed to Settlement Class Members via a secondary distribution if economically feasible or through a residual cy pres program." Settlement § 3.5. This provision suffers from two fatal defects. <u>First</u>, neither the settlement nor accompanying class notice identify a proposed *cy pres* beneficiary, thus rendering the settlement "unacceptably vague." *Dennis*, 697 F.3d at 867. <u>Second</u>, Section 3.5 permits the parties to choose between a secondary class distribution or a *cy pres* distribution at their discretion. But there should be no discretion granted; if secondary class distributions are economically feasible, the law requires them. *E.g.* AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.07(b) (2010) ("*ALI Principles*"); *In re BankAmerica Corp. Secs. Litig.*, 775

F.3d 1060, 1066 (8th Cir. 2015) (finding "void ab initio" a provision that purported to override *ALI Principles* § 3.07(b)); *see also In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087-BTM, 2013 WL 6086933, at *4 (S.D. Cal. Nov. 19, 2013) (following *ALI Principles* § 3.07(b) and denying settlement approval). Simply put, *cy pres* "is not appropriate" where "the settlement is distributable to class members." *Hofmann v. Dutch LLC*, 317 F.R.D. 566, 578 (S.D. Cal. 2016).

As a threshold matter, the residual clause founders by failing to propose a "concrete, identifiable beneficiary." *Hofmann v. Dutch LLC*, No. 14-cv-02418-GPC, 2017 WL 840646, at *5 (S.D. Cal. Mar. 2, 2017). "To ensure that the settlement retains some connection to the plaintiff class and the underlying claims … a cy pres award must qualify as the next best distribution to giving the funds directly to class members." *Dennis*, 697 F.3d at 865. Where the parties do not establish the potential recipient has such an appropriate nexus, the settlement will not be approved. *E.g.*, *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1080 (9th Cir. 2017); *Couser v. Comenity Bank*, 2017 WL 2312080, at *4 (S.D. Cal. May 26, 2017).

Moreover, in an opt-out settlement, providing the identity of potential *cy pres* recipients preserves the right of absent class members to distance themselves from causes or institutions that they would rather not support. The information can underpin a valid objection if there is an abuse of the *cy pres* mechanism if, for example, the intended recipient is related to class counsel or a defendant, or when there is a geographic incongruence between the class and the recipient. *See Nachshin*, 663 F.3d 1034. Even where *cy pres* only arises from residual funds, it is still "impermissible" to decline to specify a particular recipient. *Thomas v. Magnachip Semiconductor Inc.*, No. 14-cv-01160-JST, 2016 WL 1394278, at *8 (N.D. Cal. Apr. 7, 2016). The settlement's failure to designate a recipient deprives the class of its due notice and this Court of any ability to conduct the searching review necessary. "'Just trust us. Uphold the settlement now, and we'll

tell you what it is later'" is not a permissible limiting principle. *Dennis*, 697 F.3d at 869.

Nor is "just trust us" an acceptable proposition for deciding whether remaining funds should go to the class or non-class third parties. "The settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair." *ALI Principles* § 3.07(b). This "last resort" rule follows from the precept that "[t]he settlement-fund proceeds, … generated by the value of the class members' claims, belong solely to the class members." *Klier v. Elf Atochem N. Am.*, 658 F.3d 468, 474 (5th Cir. 2011). To serve the class's interests, *cy pres* can only be employed as a last resort upon a showing that further distributions are impossible. *BankAmerica*, 775 F.3d at 1064; *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).[1] The residual clause unlawfully gives the parties discretion to ignore the last resort rule. The Court should deny settlement approval until the parties amend Section 3.5 to conform with applicable law.

## IV. The lodestar cross-check illuminates the excess of class counsel's fee request.

The Ninth Circuit encourages cross-checking any percentage-based fee request using the lodestar method to "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir.

---

[1] If additional distributions would provide "a windfall to class members with liquated-damages claims that were 100 percent satisfied by the initial distribution," then a *cy pres* remedy may also be proper. *BankAmerica Corp.*, 775 F.3d at 1064. But "a vague anxiety over windfalls" cannot justify preferring *cy pres* to class redistributions. Rhonda Wasserman, *Cy Pres In Class Action Settlements*, 88 S. Cal. L. Rev. 97, 160 (2014). In any event, there should be no dispute here that class members are not fully compensated. Debt reduction claims are capped at $35, and the cash component of the settlement ($37 million) is less than 5% of the amount plaintiffs claim is at stake in the case ($756 million). Mot. for Prelim. App. (Dkt. 69-1) at 17.

2011). A second method provides a "useful perspective" and enables the Court to "guard against an unreasonable result." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *In re Hyundai and Kia Fuel Economy Litig.*, 881 F.3d 679, 705 (9th Cir. 2018). Cross-checking becomes even more important as the size of the settlement increases. *Alexander v. FedEx Ground Package Sys.*, No. 05-cv-00038, 2016 WL 3351017, at *2 (N.D. Cal. June 15, 2016); *see also WPPSS*, 19 F.3d at 1298 (describing how percentage-based awards become particularly arbitrary for large funds). Keeping in mind the Court's duty to class members, the goal is to uncover a "disparity between the percentage-based award and the fees the lodestar method would support." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1124 n.8 (9th Cir. 2002).

Because of the potential to discourage hasty, undervalued settlements with generous attorney payments, legal scholars, practitioners, and judges have even gone so far as to call the lodestar cross-check "essential." Brian Wolfman & Alan B. Morrison, *Representing the Unrepresented in Class Actions Seeking Monetary Relief*, 71 N.Y.U. L. Rev. 439, 503 (1996); *see also* Brian Wolfman, *Judges! Stop Deferring to Class-Action Lawyers*, 2 U. Mich J. L. Reform 80, 84-85 (2013) (describing risk of cheap, quick and undervalued settlement); Neil M. Gorsuch & Paul B. Matey, *Settlements in Securities Fraud Class Actions: Improving Investor Protection*, Wash. L. Found., 23 (2005), *available at* http://www.wlf.org/upload/0405WPGorsuch.pdf (lodestar cross-check is an "important safeguard"); Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18 Geo. J. Legal Ethics 1453, 1454 (2005) ("[W]e argue that courts making common fund fee awards are ethically bound to perform a lodestar cross-check.").

Here, plaintiffs concede that they resolved the case at an early stage, yet they resist the application of the lodestar cross-check that is meant to safeguard the class in such situations.

*Compare* Fee Motion 14-15 *with* Fee Motion 20-21. Plaintiffs' expert Professor Fitzpatrick not only disagrees with Justice Gorsuch that the cross-check is an "important safeguard," he opines that a lodestar cross-check is affirmatively bad policy. Fitzpatrick Decl. ¶ 24. He is incorrect, mostly because he ignores the difference between employing the lodestar as baseline methodology and employing the lodestar as a backup cross-check. When used as a base methodology, lodestar occasions a misalignment between the interests of class members and their counsel, because a counsel's fees do not depend on the success its client obtains. However, when lodestar is only employed as a cross-check, the ultimate fee still depends upon the benefit conferred on class members. The cross-check resolves certain problems created by a pure percentage approach: It prevents a trial penalty,[2] it forecloses hourly windfalls that a functioning marketplace would not allow, and it discourages risk-averse[3] counsel from entering into quick agreements that amount to a small percentage of potential recovery. Fitzpatrick and plaintiffs quote out of context the Ninth Circuit's decision in *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016), to claim that the lodestar cross-check is entirely discretionary. Fee Motion 20; Fitzpatrick Decl. ¶23. The full sentence from *Yamada* reads: "But where, as here, classwide benefits are not easily monetized, a cross-check is entirely discretionary." 825 F.3d at 547. *Yamada* refers only to percentage cross-checks of a base lodestar award; it is irrelevant here. What is relevant is the Ninth Circuit's general principle that "courts cannot rationally apply any particular percentage…without reference to all the circumstances of the case." *WPPSS*, 19 F.3d at 1298. "All the circumstances of the case" certainly includes the time expended

---

[2] *See Brytus v. Spang & Co.*, 203 F.3d 238, 247 (3d Cir. 2000).

[3] Because they have more at stake, class counsel are naturally more risk averse than any given absent class member. *E.g., Anderson Living v. Wpx Energy Prod.*, 306 F.R.D. 312, 442 n.90 (D.N.M. 2015).

by class counsel. "Without such an inquiry there is a grave danger that the bar and bench will be brought into disrepute, and there will be prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are seeking compensation." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 128 (8th Cir. 1975) (cleaned up).

Unsurprisingly then, a large number of courts have heeded the Ninth Circuit's advice by employing a lodestar cross-check, reducing fees and augmenting class recovery, even where class counsel has requested no more than the 25% benchmark. *See, e.g.*, *In re Chiron Corp. Sec. Litig.*, 2007 WL 4249902, at *7 (N.D. Cal. Nov. 30, 2007) (refusing to grant 25% where it equated to excessive multiplier of 8-10); *Rose v. Bank of Am.*, 2014 WL 4273358, at *12-*13 (N.D. Cal. Aug. 29, 2014) (refusing to grant 25% where it equated to excessive multiplier of 8.65, instead granting multiplier of 2.59 or 7.4% of fund); *Xuechen Yang v. Focus Media Holding*, 2014 WL 4401280, at *16 (S.D.N.Y. Sept. 4, 2014) (refusing to award 25% where it amounted to a 3.99 multiplier, instead awarding 10%); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *7 (N.D. Cal. Dec. 19, 2014) (refusing to grant 25% where it would have amounted to a 1.63 multiplier; instead awarding 17% in fees for 1.12 multiplier); *Bayat v. Bank of the West*, 2015 WL 1744342, at *8-*9 (N.D. Cal. Apr. 15, 2015) (refusing to award 25% that equated to 2.76 multiplier when result was less than stellar); *Greenberg v. Colvin*, 2015 WL 4078042, at *8 (D.D.C. July 1, 2015) (reducing fee from 25% to 20% where class counsel would have otherwise been entitled to $3,000/hour); *Fangman v. Genuine Title*, 2016 U.S. Dist. LEXIS 160434, at *36 (D. Md. Nov. 18, 2016) (refusing to grant 20% of constructive common fund with 7.5 multiplier, instead granting fees of 15% for 5.6 multiplier); *Viceral v. Mistras Group*, 2017 WL 661352, at *4 (N.D. Cal. Feb. 17, 2017) (refusing to grant 25% where 1.13 multiplier would result); *Nitsch v. DreamWorks Animation SKG*, 2017 WL 2423161 (N.D. Cal. June 5, 2017) (finding 3.91 multiplier too high

(amounting to 21%), awarding 2.0 multiplier (amounting to 11%)); *Hillson v. Kelly Servs.*, 2017 WL 3446596, at *5-*6 (E.D. Mich. Aug 11, 2017) (declining to award 25% when it amounted to 4.5 multiplier; following Newberg's presumptive multiplier ceiling of 4 and awarding 21.5%).

The Court should cross-check plaintiffs' fee request using the lodestar method, and find, for reasons discussed below, that awarding class counsel the fee they seek would in fact result in the type of "exorbitant hourly rate" that the crosscheck seeks to protect against.

## A. Class counsel's proclaimed lodestar includes non-compensable hours; the actual multiplier approaches 18.

Although the lodestar cross-check does not require the bean-counting that the base lodestar method entails, it would "serve[] little purpose as a crosscheck if it is accepted at face value." *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369, 389 (S.D.N.Y. 2013). For purposes of the calculation, plaintiffs proffer that class counsel here has reasonably expended a total of 2,158 hours. Fee Motion 20. But district courts "should exclude" "hours that were not reasonably expended" where cases are "overstaffed" and hours are "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Here, the following categories of hours should be excluded entirely: (1) pre-*Farrell* time for work on other litigation (*i.e. McGee v. Bank of Am., N.A.*, 2015 WL 4594582 (S.D. Fla. July. 30, 2015); *Shaw v. BOKF, N.A.*, 2015 WL 6142903 (N.D. Okla. Oct. 19, 2015)); (2) anticipated future hours that have not yet been expended; and (3) time spent on class counsel's fee application. Additionally, time spent on settlement mediation, negotiation and drafting is excessive and should be reduced.

Contrary to Fitzpatrick's unsupported assertion,[4] attorney time is not compensable when

_____

[4] The only case Fitzpatrick cites for the proposition that "it is not uncommon to treat time intertwined across cases as one for purposes of the lodestar crosscheck" is *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 2016 WL 6215974 (E.D.

it is "fundamentally related to a separate legal proceeding." *Lota v. Home Depot U.S.A*, 2013 WL 6870006, at *8 (N.D. Cal. Dec. 31, 2013); *In re Infospace, Inc. Secs. Litig.*, 330 F. Supp. 2d 1203, 1214 (W.D. Wash. 2004); *Parsons v. Volkswagen*, 341 P.3d 662, 667-68 (Okla. 2014). "An attorney is not entitled to be paid in [an action] for the work he or another attorney did in some other case." *ACLU v. Barnes*, 168 F.3d 423, 430 (11th Cir. 1999); *cf. also Halley v. Honeywell Int'l*, 861 F.3d 481, 501 (3d Cir. 2017) (vacating decision allowing attorney expenses from one case to be charged in settlement of another). There is good reason to treat each litigation as its own unit. While classes may overlap across cases, they are not coextensive. For example, neither *McGee* nor *Shaw* was brought on behalf of *Farrell* class members who incurred their first extended overdrawn balance charge in 2017 (*McGee* and *Shaw* had terminated by then). Such class members should not be charged for class counsel's earlier work on behalf of other persons. More generally, it does not "confer a benefit on the class" to incur litigation costs from two duplicative parallel cases. *Drazin v. Horizon Blue Cross Blue Shield of N.J.*, 832 F. Supp. 2d 432, 443 (D.N.J. 2011), *aff'd* 528 Fed. Appx. 211 (3d Cir. 2013). Further, class counsel seek to be awarded Southern District of California rates (a blended rate of more than $660/hr)[5] for work done in less expensive forums: Ft. Lauderdale, FL (*McGee*) and Tulsa, OK (*Shaw*). Finally, paying class counsel for unsuccessful

---

La. Oct. 25, 2016). Fitzpatrick Decl. ¶26 n.6. But that decision has no analysis of the issue, nor the further problem of work expended in cases spanning multiple jurisdictions.

[5] Although Threatt does not contest class counsel's hourly rates *per se*, a blended rate of $661/hour is likely well above the typical blended rate in this Circuit. *Bruno v. Quten Research Inst.*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013) (blended rate of $366.87/hr); *Nguyen v. BMW of N. Am.*, 2012 WL 1380276, at *3 (N.D. Cal. Apr. 20, 2012) (blended rate of $470/hr); *see also Gabriel Techs. Corp. v. Qualcomm*, 2013 WL 410103, at *9 (S.D. Cal. Feb. 1, 2013) (blended rate of $447/hr is "in line with that of the community" when compared to California peers).

outside work undermines their fundamental argument for a lodestar multiplier: that the risk of this litigation necessitates a multiplier to make them whole. Thus the 343.75 hours[6] spent litigating pre-*Farrell* cases should be eliminated from the lodestar.

Second, courts do not permit attorneys to include anticipated future time in their lodestar. "The law is settled that in calculating the lodestar, the Court must use 'the number of hours reasonably **expended** on the litigation,' and the movant 'should submit evidence supporting the hours worked." *See Nat'l Alliance for Accessability v. Hull Storey Retail Group*, No. 2012 WL 3853520, at *4 (M.D. Fla. Jun 28, 2012) (quoting *Hensley*, 461 U.S. at 433 (1983) and adding emphasis); *see also 7-Eleven, Inc. v. Etwa Enter.*, 2013 WL 2947112, at *5 (D. Md. Jun. 12, 2013) ("Plaintiff has not identified any authority that would entitle it to an award of 'anticipated legal fees and costs,' nor is the court aware of any."); *St. Hilaire v. Indus. Roofing*, 346 F. Supp. 2d 212, 215 (D. Me. 2004) (rejecting "Plaintiff's bald projection of reasonable future fees without corroborating support in the record"). The 88 anticipated future hours[7] should be excluded.

Third, "[t]ime spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the plaintiff class." *WPPSS*, 19 F.3d at 1999; *accord Manner v. Gucci Am., Inc.*, 2016 WL 6025850, at *4 (S.D. Cal. Oct. 13, 2016). The 64.75[8] hours spent on the fee application should be excluded.

---

[6] *See* Decl. of Jeff Ostrow (Dkt. 80-4) ¶10.2; Decl. of Hassan Zavareei (Dkt. 80-5) ¶16.2; Decl. of Cristina M. Pierson (Dkt. 80-6) ¶6.2; Decl. of Bryan S. Gowdy (Dkt. 80-7) ¶7.2. The fact that counsel channeled more than five times greater effort into this case in comparison to the unsuccessful *McGee* and *Shaw* also demonstrates why a multiplier is not warranted.

[7] *See* Ostrow Decl. ¶¶10.15-10.16; Zavareei Decl. ¶¶16.15-16.16; Pierson Decl. ¶¶6.15-6.16; Gowdy Decl. ¶¶7.13, 7.16.

[8] Ostrow Decl. ¶10.14; Zavareei Decl. ¶16.14; Pierson Decl. ¶6.14; Gowdy Decl. ¶7.14.

Fourth, class counsel includes an excessive 561.75 hours[9] spent on settlement mediation, negotiation and drafting. *See Dugan v. Lloyds Tsb Bank*, No. C 12-02549, 2014 WL 1647652, at *4 (N.D. Cal. Apr. 24, 2014) (327 hours for class settlement negotiation "is excessive"). The root of the overbilling is that plaintiffs involved at least 8 high-priced attorneys in the settlement process. *See Makaeff v. Trump Univ.*, 2015 WL 1579000, at *14 (S.D. Cal. Apr. 9, 2015) (it was "excessive to have three partners participating in the settlement conference"); *Reyes v. Bakery & Confectionary Union*, 2017 WL 6623031, at *11 (N.D. Cal. Dec. 28, 2017) ("no ... justification for having five partners attend the mediation"; reducing time by 60%). Threatt recommends that the Court reduce time spent on settlement to 300 hours to account for the duplication and inefficiency of so many attorneys.

All said, the proclaimed 2,158 hours are due to be reduced by approximately 758 hours, bringing the compensable hour count to 1399.75 hours. Keeping constant class counsel's blended rate of $661.74/hour—itself remarkably high—class counsel's actual lodestar amounts to $926,278.72, and actual requested multiplier is almost 18. In other words, class counsel seeks a total fee award equal to a fee of $11,894/hour of compensable work.

## B. A multiplier of 18 or of 11 is unreasonable.

"[T]here is a strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Perdue v. Kenny A*, 559 U.S. 542, 546 (2010). *Kenny A.* allocates "the burden of proving that an enhancement is necessary [to] the fee applicant." *Id.* at 553. A lodestar enhancement is only justified in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id.* at 554; *accord Hyundai*, 881 F.3d at 706-07. Here, there was no trouble attracting counsel as there are four

---

[9] Ostrow Decl. ¶10.10; Zavareei Decl. ¶16.10; Pierson Decl. ¶6.10; Gowdy Decl. ¶7.10.

firms serving as class counsel who achieved a quick settlement for a small fraction of potential recovery. A multiplier of 18 or 11 is outside the permissible range of outcomes.

*Kenny A*'s limitation on enhancements was made in the context of interpreting 42 U.S.C. § 1988's language of "reasonable" fee awards, but there's little justification for claiming that "reasonable" in § 1988 means something different than "reasonable" in class action fee awards made under Fed. R. Civ. P. 23(h). *E.g., Hyundai*, 881 F.3d at 706-07 (applying *Kenny A.* to Rule 23(h) fee award pursuant to settlement); *Bluetooth*, 654 F.3d at 942 n.7 ("the Kerr factors only warrant a departure from the lodestar figure in rare and exceptional cases") (internal quotation omitted); *In re Sears Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 867 F.3d 791 (7th Cir. 2017) (applying *Kenny A.* to reduce 1.75 multiplier to 1); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 361 (3d Cir. 2010) (Weis, J. concurring/dissenting) (referring to *Kenny A.* as an "analogous statutory fee-shifting case."); *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *34 n.157 (C.D. Cal. Nov. 23, 2013) (citing *Kenny A.* and finding "little basis for an application of a multiplier" when calculating lodestar cross-check). All but one case cited by Fitzpatrick (Fitzpatrick Decl. ¶26) that awarded a significant multiplier predates *Kenny A.*, and that one outlier was an out-of-circuit decision that did not mention *Kenny A. Beckman v. Keybank, N.A.* 293 F.R.D. 467 (S.D.N.Y. 2013) (endorsing multiplier of 6.3). Indeed the very sentence plaintiffs rely on from *Beckman*—"courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers"—has been criticized as having "made its way into many court 'decisions' in [the Second] Circuit via proposed orders drafted by plaintiffs' attorneys." *Fujiwara v. Yasuda LTD.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014). But in reality, "the cases cited … in support of this

proposition provide weak support for such loft multipliers." *Id.* at 438.[10]

In fact, the Third Circuit has "strongly suggest[ed]" that a multiplier of 3 is an "appropriate ceiling for a fee award." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (vacating award that amounted to a multiplier of 7 or 10). Likewise, the Seventh Circuit has suggested that a multiplier of 2 might be a "sensible ceiling" to avoid unwarranted attorney windfalls." *E.g. Florin v. Nationsbank*, 34 F.3d 560, 565 (7th Cir. 1994). And while, *Vizcaino* ratified a 3.65 multiplier in 2002, the Ninth Circuit has more recently been skeptical of multipliers even less than 2. *See Hyundai*, 881 F.3d at 706-07 (doubting propriety of 1.22 multiplier); *In re Magsafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 564 (9th Cir. 2014) (doubting propriety of 1.51 multiplier).

Class counsel fail to provide a proper legal basis for the requested multiplier here. A multiplier "may not be awarded based on a factor that is subsumed in the lodestar calculation"— either in the number of hours or hourly rate. *Kenny A.*, 559 U.S. at 553. Thus, "the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are fully reflected in the number of billable hours recorded by counsel." *Id.* (cleaned up); *accord Bluetooth*, 654 F.3d at 942 n.7; *Brown v. 22nd Dist. Agricultural Ass'n*, 2017 WL 3131557, at * 7 (S.D. Cal. Jul. 21, 2017) (quoting *Blum v. Stenson*, 465 U.S. 886, 899 (1984)). Similarly, a multiplier based on outstanding results requires "exceptional success" beyond the "expectancy of excellent or extraordinary results" already baked into high hourly rates. *WPPSS*, 19 F.3d at 1304; *accord Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1287 (N.D. Cal. 2014); *Brown*,

---

[10] It is true that *Vizcaino* "noted" a multiplier as high as 19.6, but it never endorsed such a multiplier. The case involved only a 3.65 multiplier, and observed also that 83% of the multipliers it surveyed were less than 4.0. *See* 290 F.3d at 1051 n.6.

2017 WL 3131557, at * 7.

The settlement provides the class with less than 10% of its potential damages, with cash payouts of less than 5% of potential damages. Meanwhile, class counsel requests an 11 multiplier that is in reality an 18 multiplier, equating to fees of more than $11,000/hour. "[T]he class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright." *Sobel v. Hertz*, No. 3:06-CV-00545, 2011 WL 2559565, at *14 (D. Nev. Jun. 27, 2011).

Besides outstanding results, the other basis plaintiffs offer for an enhancement multiplier is the riskiness of the litigation. Fee Motion 13-14. But "the weak strength of Plaintiffs' case should not constitute a 'special circumstance' justifying enhancement of the fee award." *Viceral*, 2017 WL 661352, at *3. "This rationale would have the perverse effect of rewarding counsel for taking on weak or otherwise dubious cases" amounting to a "no lose proposition." *Id.* Rewarding weak cases more than strong cases is, to put it nicely, an "uncomfortable rule." *Kmiec v. Powerwave Tech.*, 2016 WL 5938709, *5 (C.D. Cal. Jul. 11, 2016); *see also Hyundai*, 881 F.3d at 706-07 (rejecting multiplier based on risk and complexity of case).

Even if risk multipliers are sometimes appropriate, granting the excessive one requested here is inappropriate for several reasons. Class counsel (1) included time spent on unsuccessful outside litigation in its lodestar accounting, effectively insuring away risk by seeking compensation whether they win or lose; (2) demonstrated the ability to funnel most of its hours to successful litigation and away from unsuccessful litigation; (3) took little opportunity risk in pursuing an overdraft action, an area with which it has great familiarity, and; (4) reached an early settlement. A 10% fee award of the undiscounted overinflated settlement value ($6.66 million) still amounts to a multiplier of 4.75. That stands at the outer limits of what this Court should permit.

## V.    The percentage of recovery requested by class counsel is excessive and should be reduced to augment class recovery.

The fee request is excessive even if the Court relies exclusively on the percentage-of-recovery approach. Again, "courts cannot rationally apply any particular percentage—whether 13.6[%], 25[%] or any other number—in the abstract, without reference to all the circumstances of the case." *Vizcaino*, 290 F.3d at 1048 (cleaned up). Here, there are several circumstances that make a $16.6 million fee based on the 25% benchmark independently excessive.

*First*, the $66 million that plaintiffs use as the denominator in the calculation is not all cash and should not be valued as equivalent to such in the fee analysis. Under the settlement, BANA will pay $37.5 million in cash and reduce debt currently owed by class members whose accounts were closed while an EOBC was still due by $29.1 million. Settlement §2.2(b). This structure costs BANA and benefits class members far less than the $66.6 million aggregate figure suggests because the "debt reduction" is worth less than cash to class members and costs BANA significantly less than a cash payment. Either the percentage should be reduced or the $29.1 million of debt reduction should be heavily discounted to account for its lower value.

The parties do not disclose whether BANA has already sold any debt from the closed, overdrawn accounts or how it otherwise has accounted for the debt. BANA may have sold the debt for mere pennies on the dollar or may not expect to recover anything from the accounts and have already written them off. (At least some of the class members with overdrawn accounts would have declared bankruptcy and had debts extinguished.) While these questions remain open, there is no question that BANA would not have recovered 100% of the $29.1 million debt eligible for reduction under the settlement. If a consumer has not paid her balance within 60 days—typically the length of time before a bank will close an overdrawn account—and has her account closed, the likelihood of later repayment is low.

At the same time, class members are worse off with debt reduction than cash. The parties do not disclose how many of these former accountholder-class members owe more than $35. (Since the $35 represents a credit of one EOBC, it is likely that many of them owe more than that amount because a negative balance is what would have triggered the EOBCs.).

As a result, it is not surprising that class attorneys commonly seek less than the 25% benchmark where the settlement relief includes debt reduction, even when courts recognize that such relief is of some benefit to class members. *E.g.*, *Smith v. CRST Van Expedited*, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) (approving request for 33.3% of cash payment, equaling 7.5% of settlement that included $2.6 million in cash and $9 million in debt relief, without including outreach to credit agency outreach and changes to training); *Cosgrove v. Citizens Auto. Finance*, 2011 WL 3740809, at *9-*10 (E.D. Pa. Aug. 25, 2011) (approving request for 11.7% of cash and debt relief without including value of credit repair).

**Second**, the percentage should be reduced to account for the economies of scale represented by the large settlement fund. "Absent unusual circumstances, the percentage will decrease as the size of the fund increases." *Alexander*, 2016 WL 3351017, at *1 (quoting a previous order of the court) (cleaned up). The Ninth Circuit has thus instructed that where, for example, awarding 25% of a "megafund" settlement yields "windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *Bluetooth*, 654 F.3d at 942-43. This holding reflects that "[t]he existence of a scaling effect—the fee percent decreases as class recovery increases—is central to justifying aggregate litigation such as class actions. Plaintiffs' ability to aggregate into classes that reduce the percentage of recovery devoted to fees should be a hallmark of a well-functioning class action system." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class*

*Action Settlements: 1993-2008*, 7 J. EMPIRICAL LEGAL STUD. 248, 263 (2010). Failing to apply a sliding scale will result in overcompensating law firms "who obtain huge settlements, whether by happenstance or skill, … to the detriment of the class members they represent." *Wal-Mart Stores v. Visa USA*, 396 F.3d 96, 122 (2d Cir. 2005).

At $66.6 million, this settlement at least approaches "megafund" status and, in any event, is large enough to implicate windfall concerns. Due to economics of scale, "[i]t is not [66] times more difficult to prepare, try, and settle a [$66] million case than it is to try a $1 million case. In many instances, the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." *Alexander*, 2016 WL 3351017, at *1 (cleaned up). Such is the case here. The settlement class includes approximately 5.9 million people. Notice § 5. Plaintiffs do not claim any added difficulty from the size of the class. Rather, the primary challenges were due to uncertainty over how certain legal issues involving the EOBCs would be resolved. Fee Motion 12-13. The work would have been the same whether there were 59 accountholders or 5.9 million. The 8-figure recovery is simply a result of plaintiffs targeting a large company.

No other factor justifies the windfall 25% sought by plaintiffs' counsel either. As discussed above, the result here was far from extraordinary, with class counsel compromising over 90% of the value of the class's claims. Counsel billed under 2200 hours on the case (and less than half of that on actual litigation of *this* case), settling about 20 months after filing the initial complaint. In other words, class counsel seek over $16.6 million for what amounts to barely more than one attorney-year of work. Few private attorneys, associate or partner, make an annual salary of $16.6 million. Plaintiffs try to explain away the significance of this factor, Fee Mem. 15, but, in reality, they had put little time or resources on the line by the time of

settlement. *See Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 483-84 (D.P.R. 2012) (reducing fees from 33% to 23% of $8.2 million fund where full discovery was not conducted in case involving "complicated web of jurisprudence" and motion to dismiss but no motion for summary judgment had been filed).

Further, while it is true, as reflected in class counsel's citations to cherry-picked case law, that courts have awarded fees of 25% or higher even in larger cases, empirical studies demonstrate that courts apply a sliding scale to prevent a windfall for plaintiffs' attorneys at the expense of the class. This is reflected even in the empirical work of plaintiffs' expert. Fitzpatrick has found that "fee percentages are strongly and inversely associated with the size of the settlement" and "the age of the case is positively associated with fee percentages." Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 814 (2010). For settlements in the $30 million to $72.5 million range for the study's two-year period, the scaling effect is apparent, with mean and median percentages of 22.3% and 24.9%, respectively. *Id.* at 839. *See also, e.g., Allen v. Dairy Farmers of Am.*, No. 5:09-cv-230, 2016 WL 3361544, at *8-*9 (D. Vt. June 14, 2016) (reducing fee from 33% to 14% of $80 million fund to augment recovery). In a short litigation such as this, where the fund is relatively large, and the class recovery relatively small compared to the amount sought by the complaint, then, a percentage further below the benchmark is appropriate.

That plaintiffs' counsel have retention agreements with the named plaintiffs setting their fees at 33.33% should not alter the Court's analysis. Such agreements "are owed little weight, given that named plaintiffs are usually paws of the class lawyers, and do not have a sufficient stake to drive a hard—or any—bargain with the lawyer[s]." *Gehrich v. Chase Bank U.S.*, 316 F.R.D. 215, 235 (N.D. Ill. 2016) (cleaned up); *Sinanyan v. Luxury Suite Int'l*, No. 2:15-cv-00225-

GMN-VCF, 2016 WL 4394484, at *3 n.3 (D. Nev. Aug. 17, 2016) (court must fully assess reasonableness of fee regardless of percentage agreed to by class representative).

*Finally*, the change in BANA's business practices will not benefit class members and thus does not provide any support for a higher percentage of recovery. Class counsel do not directly ask for fees to be based on the espoused benefit of the change but mention "non-monetary benefits" as a relevant consideration, and their expert opines that an upward departure where such benefits are achieved will incentivize class counsel to secure non-monetary relief. *See* Fee Mem. 16-17; Fitzpatrick Decl. ¶21. The problem, however, is that accountholders will not actually benefit. They will not "save" the estimated hundreds of millions of dollars in EOBC fees resulting from the change in practice.

Instead, BANA will simply charge accountholders other fees to make up for the revenue loss, leaving them no better off than if EOBCs were undisturbed. The effect of the Durbin Amendment to the Dodd-Frank financial reform legislation is illustrative. That amendment capped debit card interchange fees for large banks. The cap cut the average interchange fee for covered banks by about 50% per transaction, reducing annual revenues from these fees by $6-$8 billion. The banks nevertheless found ways to recover these lost revenues. For example, they reduced the availability of free accounts, tripled the minimum holding for free accounts, and doubled the monthly fee on non-free accounts, contributing to many with lower incomes leaving the banking system. Todd J. Zywicki, *et al.*, *Price Controls on Payment Card Interchange Fees: The U.S. Experience*, George Mason Law & Economics Research Paper No. 14-18 (2014).

Proverbially, there is no such thing as a free lunch. Accountholders who may be at risk of extended overdrawn balances will not suddenly receive a free benefit from BANA. Many of them may get frozen out of the banking system, or they will incur higher monthly account fees.

Plaintiffs have not made any showing to overcome this economic reality, yet they carry the burden of showing that class members will benefit from the settlement relief and of establishing a factual basis to support the requested fees. *See Koby*, 846 F.3d at 1079; *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). Nor have they established that BANA would not have changed its EOBC practice for business reasons and to avoid further litigation in the absence of the settlement. *Koby*, 846 F.3d at 1080.

## VI. The Court should strike or disregard the Fitzpatrick Declaration.

Threatt asks the Court to strike or, in the alternative, to disregard the Fitzpatrick Declaration because it contains inadmissible legal conclusions and other legal arguments regarding the calculation of attorneys' fees. Testimony regarding matters of law is inadmissible under either Rule 701 or 702 because "[r]esolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Nationwide Transport Finance v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (internal quotation omitted). It is well established that "that expert testimony by lawyers, law professors, and others concerning legal issues is improper." *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005). Such legal opinions invade this Court's province as the "sole arbiter of the law." *GPF Waikiki Galleria v. DFS Group*, 2007 WL 3195089, at *5 (D. Haw. Oct. 30, 2007). "[T]he court is well equipped to instruct itself on the law." *Stobie Creek Invs. v. United States*, 81 Fed. Cl. 358, 361 (Ct. Fed. Cl. 2008), *aff'd* 608 F.3d 1366 (Fed. Cir. 2010). Having recently and successfully moved to strike expert testimony similar to Fitzpatrick's for offering legal opinions on the reasonableness of fees, class counsel should be familiar with these principles. *See Stathakos v. Columbia Sportswear*, No. 15-cv-04543, 2018 WL 1710075, at *5 n.6 (N.D. Cal. Apr. 9, 2018).

Here, the plaintiffs' expert seeks to usurp the Court's role by telling the Court which of

the available methodologies it should use and how to apply it to award fees and concluding that "this fee request is within the range of reason" under his review of the law. *E.g.*, Fitzpatrick Decl. ¶¶8, 11-12, 19. The Fitzpatrick Declaration predominantly analyzes *case law*, not facts. Class counsel may argue that the declaration presents factual "empirical data," but the declaration consists of little more than discussion of Fitzpatrick's interpretation of the case law and improper legal opinion dressed up as statistics, but derived exclusively from case law. (He also usurps the Court's role by opining on the value of BANA's change in practice regarding EOBCs and the risk in litigating over EOBCs without establishing *any* authority by which to do so. *E.g.*, *id.* ¶¶14, 19.) Citations to case law remain legal argument when the case law is averaged, and this is especially true when the averages are stretched into dubious legal conclusions. District courts often approve unopposed fee requests, and Fitzpatrick does not discuss how the characteristics of the averaged cases fare in comparison to this case. "Expert testimony" which simply surveys the law ought to be excluded under Rule 702. *See Lukov v. Schindler Elevator Corp.*, 2012 WL 2428251, at *2 (N.D. Cal. June 26, 2012) (excluding expert opinion based on "survey of state laws"); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260 & n.23 (C.D. Cal. 2003) (striking "interpretations of case law").

To the extent the Court considers the declaration, Fitzpatrick's opinion supports a deterrence-based class-members-don't-matter approach that would hold that it is appropriate to pay the attorneys 100% of the fund—and indeed, he has taken that position in his writings. Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?*, 158 U. PA. L. REV. 2043, 2047 (2010). It is little wonder that he is willing to endorse a contingency fee that pays the attorneys over $7700/hour—despite the fact that his own empirical work shows that a sub-25% fee is more typical in a settlement of this magnitude—and to excuse those characteristics that favor a

OBJECTION OF RACHEL THREATT

downward adjustment, such as length of litigation and double-digit lodestar multiplier. *See* Fitzpatrick, *supra*, 7 J. EMPIRICAL L. STUD. at 836, 839. This Court should join others in refusing to follow Fitzpatrick's opinion and apply its own discretion to award a more reasonable fee than the windfall requested by counsel. *E.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 1352859, at *3 (N.D. Cal. Apr. 12, 2017).

## CONCLUSION

For the foregoing reasons, the Court should deny settlement approval until the parties agree to amend the *cy pres* provision and reduce attorneys' fees to $6.66 million.

Dated: April 20, 2018          Respectfully submitted,


                               */s/ Theodore H. Frank*
                               Theodore H. Frank (SBN 196332)
                               COMPETIVE ENTERPRISE INSTITUTE
                                 CENTER FOR CLASS ACTION FAIRNESS
                               1310 L Street NW 7th Floor
                               Washington, DC 20005
                               Email: ted.frank@cei.org
                               Telephone: (202) 331-2263

                               *Attorney for Objector Rachel Threatt*

1    I, Rachel Threatt, am the objector. I sign my this written objection drafted by my

2    attorneys as required by the Court's Preliminary Approval Order (Dkt. 72) ¶ 4(a)(i) and Class

3    Notice § 14.

4

5

6    Rachel Threatt

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:16-cv-00492-L-WVG

OBJECTION OF RACHEL THREATT

Theodore H. Frank (SBN 196332)
**COMPETITIVE ENTERPRISE INSTITUTE**
  **CENTER FOR CLASS ACTION FAIRNESS**
1310 L Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 331-2263
Email: ted.frank@cei.org
*Attorney for Rachel Threatt*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant.<br>———————————————<br>RACHEL THREATT,<br><br>Objector. | Case No. 3:16-cv-00492-L-WVG<br><br>**DECLARATION OF RACHEL THREATT**<br><br>Judge: Hon. M. James Lorenz<br><br>Place: Courtroom 5B<br><br>Hearing Date: June 18, 2018, at 11:00 a.m. |

I, Rachel Threatt, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. My name is Rachel Melita Threatt. My address is 304 Sunset Trail, New Lenox,

Illinois 60451. My telephone number is (314) 750-0921. My email address is Rthreatt86@icloud.com.

3.    I hold a Bank of America, N.A. consumer checking account. Between February 25, 2014, and December 30, 2017, I was assessed at least one extended overdrawn balance charge that was not refunded.

4.    I received notice by postcard of the proposed settlement in this action. It is my understanding that any settlement benefits due to me will be automatically deposited in my checking account.

5.    On or about April 10, 2018, I contacted the Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF") through the contact form on CCAF's web page. CCAF agreed to represent me in objecting to the settlement.

6.    I have not previously filed an objection to any proposed class action settlement.

7.    I intend to appear through my counsel Theodore H. Frank at the fairness hearing currently scheduled for June 18, 2018.

8.    I bring this objection in good faith. I have no intention of settling this objection for any sort of side payment. Unlike many objectors who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of attorneys' fees, it is my understanding and belief that CCAF does not engage in *quid pro quo* settlements and will not withdraw an objection or appeal in exchange for payment.

9.    Thus, if, contrary to CCAF's practice and recommendation, I agree to withdraw my appeal for a payment by plaintiffs' attorneys or the defendant paid to me or any person or entity related to me in any way without court approval, I hereby irrevocably waive any and all defenses to a motion seeking disgorgement to the class of any and all funds paid in exchange for dismissing my appeal.

10.    If I were to opt out from the settlement, I would not find it financially feasible to vindicate any claims I might have against the defendant.

11.    The specific grounds of my objection are identified in the memorandum to be

1   filed by my attorney contemporaneously with this declaration.

2   I declare under penalty of perjury under the laws of the United States of America that the

3   foregoing is true and correct.

4      Executed on April 16, 2018, in New Lenox, Illinois.

5

6                     Rachel Threatt

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:16-cv-00492-L-WVG
3

DECLARATION OF RACHEL THREATT

Theodore H. Frank (SBN 196332)
**COMPETITIVE ENTERPRISE INSTITUTE**
  **CENTER FOR CLASS ACTION FAIRNESS**
1310 L Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 331-2263
Email: ted.frank@cei.org
*Attorney for Rachel Threatt*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>                                    Defendant.<br>―――――――――――――――――<br>RACHEL THREATT,<br><br>                                    Objector. | Case No. 3:16-cv-00492-L-WVG<br><br>**DECLARATION OF THEODORE H. FRANK**<br><br>Judge: Hon. M. James Lorenz<br><br>Place: Courtroom 5B<br><br>Hearing Date: June 18, 2018, at 11:00 a.m. |

I, Theodore H. Frank, declare as follows:

1.    I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.    My business address is Competitive Enterprise Institute, 1310 L Street NW, 7th

Floor, Washington, DC 20005. My telephone number is (202) 331-2263. My email address is ted.frank@cei.org.

3.        I represent Objector Rachel Threatt, a class member in this matter.

**Center for Class Action Fairness**

4.        I founded the non-profit Center for Class Action Fairness ("CCAF"), a 501(c)(3) non-profit public-interest law firm based out of Washington, DC, in 2009. In 2015, CCAF merged with the non-profit Competitive Enterprise Institute ("CEI") and became a division within their law and litigation unit.

5.        CCAF's mission is to litigate on behalf of class members against unfair class action procedures and settlements. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (praising CCAF's work); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objections in ascertaining the fairness of a settlement") (rejecting settlement approval and certification.) The Center has won millions of dollars for class members and received national acclaim for its work. *See, e.g.*, Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013 ("the leading critic of abusive class action settlements"); Roger Parloff, *Should Plaintiffs Lawyers Get 94% of a Class Action Settlement?*, FORTUNE, Dec. 15, 2015 ("the nation's most relentless warrior against class-action fee abuse"); The Editorial Board, *The Anthem Class-Action Con*, WALL ST. J., Feb. 11, 2018 (opining "[t]he U.S. could use more Ted Franks" while covering CCAF's role in exposing "legal looting" in the Anthem data breach MDL).

6.        The Center has been successful, winning reversal or remand in fifteen federal appeals decided to date. *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017); *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608 (8th Cir. 2017); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016); *In re EasySaver Rewards Litig.*, 599 Fed. Appx.

DECLARATION OF THEODORE H. FRANK

274 (9th Cir. 2015) (unpublished); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560 (9th Cir. 2014) (unpublished); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). Several of these appeals centered around excessive fee awards. *E.g., Redman*; *Pearson*; *Bluetooth*. While, like most experienced litigators, we have not won every appeal we have litigated, CCAF has won the majority of them, including the majority of appeals brought in the Ninth Circuit.

7.      CCAF has won more than a hundred million dollars for class members by driving the settling parties to reach an improved bargain or by reducing outsized fee awards. Andrea Estes, *Critics hit law firms' bills after class-action lawsuits,* BOSTON GLOBE (Dec. 17, 2016). *See also, e.g., McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members") (internal quotation omitted); *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (reducing fees, and thus increasing class recovery, by more than $26 million to account for a "significantly overstated lodestar"); *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) (parties nullify objection by eliminating *cy pres* and augmenting class fund by $2.5 million).

### Representation of Ms. Threatt

8.      On or about April 10, 2018, Ms. Threatt contacted CCAF regarding the proposed settlement in this action. After confirming that she is a class member and that she sought to object for good-faith reasons, CCAF agreed to represent Ms. Threatt in this case and file an objection on her behalf. In addition to myself, CCAF attorneys representing Ms. Threatt are Anna St. John, Adam Schulman, and Frank Bednarz.

DECLARATION OF THEODORE H. FRANK

Pre-empting <em>Ad Hominem</em> Attacks

9.     In my experience, class counsel, including some of the attorneys in this case, often respond to CCAF objections by making a variety of *ad hominem* attacks, often wildly false. The vast majority of district court judges do not fall for such transparent and abusive tactics. In an effort to anticipate such attacks and to avoid collateral litigation over a right to file a reply, I discuss and refute the most common ones below. If the Court is inclined to disregard the *ad hominem* attacks, it can avoid these collateral disputes entirely.

10.     Class counsel often try to tar CCAF as "professional objectors," and then cite court opinions criticizing for-profit attorneys who threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of attorneys' fees. But this is not the non-profit CCAF's *modus operandi*, so the court opinions class counsel rely upon to tar CCAF are inapposite. *See* Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal F. 403, 437 n. 150 (public interest groups are not professional objectors); Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: Class Action Litig. Report (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements, and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees. The difference between a for-profit "professional objector" and a public-interest objector is a material one. As the federal rules are currently set up, "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection. In contrast, a public-interest objector such as myself has to triage dozens of requests for *pro bono* representation and dozens of unfair class action settlements, loses money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success, and has no interest in wasting limited resources and time on a "baseless objection." CCAF objects to only a small fraction of the number of unfair class action settlements it sees.

11.     While one district court called me a "professional objector" in a broader sense, that court stated that it was not meant pejoratively, and awarded CCAF fees for a successful objection and appeal that improved the settlement for the class. *Dewey v. Volkswagen*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012). Similarly, the Seventh Circuit in *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017) referred to me non-pejoratively as a "professional objector" in an opinion agreeing with my objection and reversing a settlement approval and class certification.

12.     Indeed, CCAF feels strongly enough about the problem of bad-faith objectors profiting at the expense of the class through extortionate means that it has initiated litigation to require such objectors to disgorge their ill-gotten gains to the class. *See Pearson v. Target Corp.*, No. 17-2275 (7th Cir.); *see generally* Jacob Gershman, *Lawsuits Allege Objector Blackmail in Class Action Litigation*, WALL ST. J., Dec. 7, 2016.

13.     Before I joined CEI, I had a private practice unrelated to my non-profit work. One of my former clients, Christopher Bandas, is a professional objector who has settled objections and withdrawn appeals for cash payments. I withdrew from representation of Mr. Bandas in 2015 when he undertook steps that interfered with my non-profit work. Mr. Bandas was criticized by the Southern District of New York after I ceased to represent him, and class counsel in other cases often cites that language and attempts to attribute it to me. Class counsel in multiple cases, using boilerplate language, has tried to make it seem like my paid representation of Mr. Bandas was somehow scandalous, using language like "forced to disclose" and "secret." The sneering is false: my representation of Mr. Bandas was not secret, as I filed declarations in my name on his behalf in multiple cases, noting under oath that I was being paid to perform legal work for him; I filed notices of appearances in cases where he had previously appeared; and my declaration in the *Capital One* case ending the relationship was filed voluntarily at great personal expense to myself, as I had been offered and refused to take a substantial sum of money to accede to a Lieff Cabraser fee award of over $3400/hour. I only worked for Mr. Bandas in cases where I believed there was a meritorious objection to

DECLARATION OF THEODORE H. FRANK

be made, had no role in any negotiations he made to settle appeals, and my pay was flat-rate or by the hour and not tied to his ability to extract settlements. I argued two appeals for Mr. Bandas, and won both of them. There is nothing scandalous about that, unless one believes it is scandalous for an attorney to be paid to perform successful high-quality legal services for a client. CCAF had no attorney-client relationship with Mr. Bandas, and Mr. Bandas never paid CCAF, other than for his share of printing expenses when he was an independent co-appellant representing clients unrelated to CCAF.

14.     Firms whose fees we have objected to have previously (including one of the firms named as class counsel in this case) cited to *City of Livonia Employees' Ret. Sys. v. Wyeth*, No. 07 Civ 10329 (RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013), in efforts to tar CCAF. While the *Wyeth* court did criticize our client's objection (after mischaracterizing the nature of that objection), it ultimately agreed with our client that class counsel's fee request was too high, and reduced it by several million dollars to the benefit of shareholder class members.

15.     Class counsel (again including one of the firms in this case) frequently cite an eight-year-old case, *Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 804 (N.D. Ohio 2010), where the district court criticized a policy-based argument by CCAF as supposedly "short on law"; however, CCAF ultimately was successful in the Seventh and Ninth Circuits on that same argument. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) (agreeing that reversionary clauses are a problematic sign of self-dealing); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) (same). Moreover, the court in *Lonardo* stated its belief that "Mr. Frank's goals are policy-oriented as opposed to economic and self-serving" and even awarded CCAF about $40,000 in attorneys' fees for increasing the class benefit by $2 million. *Lonardo*, 706 F. Supp. 2d at 813-17.

16.     CCAF has no interest in pursuing "baseless objections," because every objection we bring on behalf of a class member has the opportunity cost of not having time to pursue a meritorious objection in another case. We are confronted with many more opportunities to object (or appeal erroneous settlement approvals) than we have resources to

use, and make painful decisions several times a year picking and choosing which cases to pursue, and even which issues to pursue within the case. CCAF turns down the opportunity to represent class members wishing to object to settlements or fees when CCAF believes the underlying settlement or fee request is relatively fair.

17.    While I am often accused of being an "ideological objector," the ideology of CCAF's objections is merely the correct application of Rule 23 to ensure the fair treatment of class members. Likewise, I have often seen class counsel assert that I oppose all class actions and am seeking to end them, not improve them. The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. I have been writing and speaking about class actions publicly for nearly a decade, including in testimony before state and federal legislative subcommittees, and I have never asked for an end to the class action device, just proposed reforms for ending the abuse of class actions and class-action settlements. That I oppose class action abuse no more means that I oppose class actions than someone who opposes food poisoning opposes food. As a child, I admired Ralph Nader and consumer reporter Marvin Zindler (whose autographed photo was one of my prized childhood possessions), and read every issue of *Consumer Reports* from cover to cover. I have focused my practice on conflicts of interest in class actions because, among other reasons, I saw a need to protect consumers that no one else was filling, and as a way to fulfill my childhood dream of being a consumer advocate. I have frequently confirmed my support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN and in my certiorari petition filed in 2015 in *Frank v. Poertner*. On multiple occasions, successful objections brought by CCAF have resulted in new class-action settlements where the defendants pay substantially more money to the plaintiff class without CCAF objecting to the revised settlement. And I am the class representative in a pending federal class action, represented by a prominent plaintiffs' firm. *Frank v. BMOCorp., Inc.*, No. 4:17-cv-870 (E.D. Mo.).

18.     On October 1, 2015, after consultation with its board of directors and its donors, CCAF merged with the much larger Competitive Enterprise Institute ("CEI"), to take advantage of the economies of scale realized by eliminating some of the enormous fixed costs required for bureaucratic administration of and regulatory compliance by non-profits. CCAF was on financially sound footing, and consistently growing its assets faster than its spending, but a disproportionate amount of attorney time was taken up with non-litigation tasks, and we were not large enough to justify hiring full-time communications, fundraising, or regulatory-compliance staff, which I felt was limiting our effect.

19.     Prior to its merger with CEI, CCAF never took or solicited money from corporate donors other than court-awarded attorneys' fees. CEI, which is much larger than CCAF, does take a percentage of its donations from corporate donors. As part of the merger agreement, I negotiated a commitment that CEI would not permit donors to interfere with CCAF's case selection or case management. In the event of a breach of this commitment, I am permitted to treat the breach as a constructive discharge entitling me to substantial severance pay. CEI has honored that commitment.

20.     To my knowledge, none of the corporate donors to CEI have earmarked contributions to CCAF. I am unaware of whether there exist any corporate donors to CEI who take a position on the underlying litigation in this case, though it is possible one exists. CEI pays me on a salary basis that does not vary with the result in any case. I do not receive a contingent bonus based on success in any case, a structure that would be contrary to I.R.S. restrictions.

21.     For example, I am personally the objector-appellant in pending Third Circuit and Supreme Court appeals against two *cy pres* settlements of a corporate donor to CEI. No one at CEI has complained that I am currently prosecuting that appeal against the donor, sought to interfere with the pending appeal, or even told me that I was adverse to the donor. I only discovered that information by happenstance when looking at the corporate donor's website.

Case No. 3:16-cv-00492-L-WVG                                                          8
DECLARATION OF THEODORE H. FRANK

22.     Similarly, CEI represented an objector to the massive Volkswagen Diesel MDL settlement, arguing that the settlement structure short-changed class members by hundreds of millions of dollars. I learned only after a plaintiffs' attorney opposed our motion for leave to file an *amicus* brief in that case that Volkswagen had previously donated to CEI. No one at CEI had told me Volkswagen was a donor, or asked me to refrain from litigating against a donor's interests.

23.     My understanding is that CEI's litigation history includes several lawsuits against the interests of some of its corporate donors. Based on this and based on my own experience working at CEI since 2015, I have every confidence that CCAF will continue to have the autonomy for which I negotiated.

24.     CEI was willing to merge with CCAF because it supported CCAF's pro-consumer mission and success in challenging abusive class-action settlements and fee requests. But it is a large organization affiliated with dozens of scholars who take a variety of controversial positions. Neither I nor CCAF's clients agree with all of those positions, and they should not be ascribed to me, my client, or this objection, any more than my support for a Pigouvian carbon tax should be ascribed to CEI scholars who have publicly opposed that position.

25.     Some class counsels have accused us of improper motivation because CEI/CCAF has on occasion sought attorneys' fees. While CCAF is funded entirely through charitable donations and court-awarded attorneys' fees, the possibly of a fee award never factors into the Center's decision to accept a representation or object to an unfair class-action settlement or fee request.

26.     CCAF's history in requesting attorneys' fees reflects this approach. Despite having made dozens of successful objections and having won over $100 million on behalf of class members, CCAF has not requested attorneys' fees in the majority of its cases or even in the majority of its appellate victories. CCAF regularly passes up the opportunity to seek fees to which it is legally entitled. In *Classmates*, for example, CCAF withdrew its fee request and

instead asked the district court to award money to the class; the court subsequently found that an award of $100,000 "if anything" "would have undercompensated CCAF." *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 WL 3854501, at *11 (W.D. Wash. June 15, 2012). In other cases, CCAF has asked the court for a fraction of the fees to which it would be legally entitled based on the benefit CCAF achieved for the class and asked for any fee award over that fractional amount be returned to the class settlement fund.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 20, 2018, in Washington, D.C.

_/s/ Theodore H. Frank_
Theodore H. Frank

1   THEODORE H. FRANK (SBN 196332)
2   Competitive Enterprise Institute
      Center for Class Action Fairness
3   1310 L Street NW, 7th Floor
4   Washington, DC 20005
    Voice: (202) 331-2263
5   Email: ted.frank@cei.org
6   *Attorney for Rachel Threatt*

7

8                    UNITED STATES DISTRICT COURT
9
                    SOUTHERN DISTRICT OF CALIFORNIA
10

11

12   JOANNE FARRELL, on behalf of            Case No. 3:16-cv-00492-L-WVG
     herself and all others similarly situated,
13                                            **CERTIFICATE OF SERVICE**
                                Plaintiff,
14                                            Judge:  Hon. M. James Lorenz
     v.
15                                            Place:  Courtroom 5B
16   BANK OF AMERICA, N.A.,
                                              Hearing Date:  June 18, 2018, at 11:00 a.m.
17                               Defendant,

18

19   ─────────────────────────────

20   RACHEL THREATT,

21                                Objector.

22

23

24

25

26

27

28

     *Farrell v. Bank of America N.A.*, Case No. 3:16-cv-00492-L-WVG          i
     OBJECTION OF RACHEL THREATT

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically served the (i) Objection of Rachel Threatt, (ii) Declaration of Rachel Threatt, and (iii) Declaration of Theodore H. Frank on all CM/ECF participating attorneys at their registered email addresses, thus effectuating electronic service under S.D. Cal. L. Civ. R. 5.4(d).

DATED this 20th day of April, 2018.

*/s/ Theodore H. Frank*
Theodore H. Frank

# CERTIFICATE OF SERVICE PURSUANT TO CLASS NOTICE
# AND PRELIMINARY APPROVAL ORDER

Pursuant the requirements of class notice and Preliminary Approval Order, Dkt. 72 ¶ 4.a.vi, I hereby certify that on this day I caused service of the foregoing on the following persons via first class mail:

| | |
|---|---|
| Jeff Ostrow<br>Kopelowitz Ostrow P.A.<br>1 West Las Olas Blvd.<br>Suite 500<br>Fort Lauderdale, FL 33301 | Clerk of the Court<br>U.S. District Court for the<br>Southern District of California<br>Judge M. James Lorenz<br>Courtroom 5B<br>Suite 5145<br>221 West Broadway<br>San Diego, CA 92101 |
| Matthew W. Close<br>O'Melveny & Myers LLP<br>400 S. Hope Street<br>Los Angeles, CA 90071 | |

DATED this 20th day of April, 2018.

*/s/ Theodore H. Frank*
Theodore H. Frank

**MICHAEL D. LUPPI (CA 55865)**
**LAW OFFICE OF MICHAEL D. LUPPI**
**11366 Christy Avenue**
**Sylmar, CA 91342**
**Telephone (818) 897-3344**
**Facsimile: (323) 726-3106**
**monica@luppilaw.com**

**Counsel for Objector Estafania Osorio Sanchez**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL,<br>On behalf of themselves and all others<br>similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,,<br><br>Defendant,<br><br>ESTAFANIA OSORIO SANCHEZ,<br><br>Objector. | Case No.: 3:16-cv-00492-l-WVG<br><br>**OBJECTION OF ESTAFANIA OSORIO SANCHEZ**<br><br>Judge: Hon. M. James Lorenz<br><br>Place: Courtroom 5B<br><br>Hearing Date: June 18, 2018, at 11:00am. |

*FARRELL V. BANK OF AMERICA N.A., CASE NO. 3:16-CV-00492-L-WVG*
OBJECTION OF ESTAFANIA OSORIO SANCHEZ                                      1

# OBJECTOR ESTAFANIA OSORIO SANCHEZ
## OBJECTIONS TO PROPOSED SETTLEMENT AND MOTION
### FOR ATTORNEY FEES

### PROOF OF MEMBERSHIP IN THE SETTLEMENT CLASS

Estefania Osorio Sanchez a/k/a Stephanie Osorio ("Osorio") through undersigned counsel, Objects to the proposed settlement and motion for attorney fees, and states:

Osorio an identifiable harmed member of the class had received, on February 7, 2018, a class action notice through e mail from "Farrell v. Bank of America, N.A." noreply@EOBCsettlement.com.  On more than one occasion, Bank of America charged her and she paid Extended Overdrawn Bank Charges(EOBC).  Osorio has never objected to a class action settlement, and she does not intend to testify at the final approval hearing scheduled for June 18, 2018. Her address is 2626 Fountain View Drive, Apt. 335, Houston Texas 77057.  Her telephone number, if needed, will be readily provided upon request.

### NOTICE OF INTENT TO APPEAR

Objector Osorio gives Notice that she may appear, by counsel, at the Fairness Hearing before the Hon. M. James Lorenz, U.S. District Judge, which is presently

scheduled in Courtroom 5B, Suite 5145 , of the United States District Court for the

Southern District of California, located at    221 West Broadway  , San Diego, CA,

92101, on June 18, 2018, at 11:00a.m.  Objector Osorio through counsel, if an

appearance is made, will not call any witness, present any papers, exhibits, or other

evidence in connection with the Fairness Hearing.

## **OBJECTIONS**

1.  The Settlement Notice(the Notice) denies class members due process in that

it fails to provide any information:  regarding either the number of class

members or the aggregate estimated damages suffered by the class for the

damages set forth in the prayer for relief in first amended class action

complaint, including but not limited to "Awarding Plaintiffs and Class

damages (including twice the amount of usurious interest paid), prejudgment

interest from the date of loss, and their costs and disbursements in

connection with this action, . . .[Dkt.78] The Notice does not provide any

information regarding the amount of monies that Bank of America siphoned

off from their scheme to slam customers with an extended overdrawn bank

charge.  In paragraph 13 of the First Amended Class Action Complaint,

Plaintiffs allege "In 2012 alone, banks took in approximately \$32 billion in

overdraft-related fees." [Dkt.78] If ever there were a case where the

*FARRELL V. BANK OF AMERICA N.A., CASE NO. 3:16-CV-00492-L-WVG*
OBJECTION OF ESTAFANIA OSORIO SANCHEZ                             3

information regarding the amount of ill-gotten gain should be available to absent class members through the Notice, this is that case. For absent class members such as Osorio, that information placed in the Notice is essential for her to evaluate the fairness, adequacy and reasonableness of the proposed settlement.

2. The Notice and other supporting documents, at best, are unclear as to an accurate value of the settlement benefits. At worst, the information regarding value of the proposed settlement is misleading. The Notice identifies two categories of settlement benefits. One benefit provides a fund of $37.5 million cash. For this benefit, Class Counsel negotiated away any claim process, which is commendable. The monies are paid to absent class members directly and without them having to file any claims, or engage in processing whatsoever. The significant drawback, however, concerns the lack of information of the number of absent class members that qualify for the benefit. Without knowing the aggregate number of class members entitled to the cash benefit, absent class members like Osorio have no idea what the distributed cash benefit will be.

Without that information, they, and the Court, are not provided adequate information to determine the fairness, adequacy and reasonableness of the proposed settlement.

The other benefit, the debt-reduction payment benefit, which the Notice values at $29, 100,000 is largely illusory. The Notice states "The debt relief will be provided to Settlement Class members whose personal checking accounts BANA closed in overdrawn status with an EOBC still pending and whose overdrawn balances remain due and owing to BANA." No money is paid to absent class members. Without additional substantial evidence provided, which should be the burden of the proponent of the proposed settlement, this purported benefit is an adjusting entry on the books of Bank of America. Perhaps, Bank of America garners a tax benefit, but absent class members garner nothing. Alternatively, if Bank of America sells its portfolio of these debts, the market value would approximate pennies on the dollar. There is no evidentiary basis to value this alleged benefit at anywhere near the cash benefit.

3. In that these two benefits, the cash benefit and the debt-reduction payment benefit, are entirely different and in conflict, separate subclasses should be created with separate subclass representatives. Each separate subclass

*FARRELL V. BANK OF AMERICA N.A., CASE NO. 3:16-CV-00492-L-WVG*
OBJECTION OF ESTAFANIA OSORIO SANCHEZ                                    5

representative should speak for the absent class members that are in that particular group. *See Amchem Products, Inc.* v. *Windsor,* <u>521 US 591 (1997)</u>.

4. No value to the proposed settlement for purposes of evaluating a proper fee award should be attributed to the described injunctive relief going forward. This action applies to individuals who are not even class members. In that the benefit does not confer on strictly absent class members, the Court should reject any request to assign a value for purposes of determining whether the proposed settlement is fair, adequate and reasonable. Similarly, this global benefit should not be factored in the fee award.

5. In accordance with Rule 23 of Federal Rules of Civil Procedure, the parties should mail the long form Notice to all class members. Such Notice is "the best *notice* that *is* practicable under the circumstances. . . ."

6. The phrase "Settlement Value" as placed in the Notice is misleading, should be stricken, and unambiguous words should be substituted. For example, stating that the "Settlement is X dollars" would be clear.

7. The *cy pres* provision needs to be redrawn to comply with *Dennis v. Kellogg Co.,* 697 F.3d 858 (9th Cir. 2012). If a secondary distribution is

*FARRELL V. BANK OF AMERICA N.A., CASE NO. 3:16-CV-00492-L-WVG*
OBJECTION OF ESTAFANIA OSORIO SANCHEZ                6

economically feasible, then the Proposed Settlement should require that be implemented.  There should not be discretion to use those funds for *cy pres*.

8.   The requested fee award is unreasonable and excessive.   The fee should only be paid on the $37.5 benefit.   25% of that amount equals a fee of $9.375 million as opposed to the requested fee of $16, 650,000.  $7,275million should be redirected to the settlement fund for the benefit of absent class members.

**WHEREFORE**, Objector Osorio respectfully requests that this Court sustain these Objections and enter such Orders as are necessary and just to adjudicate these Objections including but not limited to an order:

A. Disapproving the proposed settlement because it doesn't meet the requirements of Fairness, Adequacy or Reasonableness;

B. Disapproving the proposed settlement because of the improper and constitutionally defective Notice to the class;

C. Requiring class counsel and the settling defendants to submit a new Notice and then to re-Notice the class to address Notice objections as set forth above;

D. Denying the requested attorney's fees to Class Counsel and determining attorney's fees as set forth above;

E. Redirecting the excess fee to the cash fund for the benefit of class members;

F. Revising the *cy pres* provisions in accordance with objections set forth above;

G. Creating two subclasses—one for the cash fund and one for the debt-reduction payment fund and appointing two subclass representatives; and,

H. Granting such other relief that this Court deems necessary and proper for the absent class members.

Dated this 20th of April, 2018.

/s/ Michael D. Luppi

Michael D. Luppi

## CERTIFICATE OF SERVICE

I HEREBY certify that on April 20th, 2018, I electronically filed the foregoing **OBJECTOR ESTAFANIA OSORIO SANCHEZ NOTICE OF INTENT TO OBJECT TO PROPOSED SETTLEMENT AND MOTION FOR ATTORNEY FEES PROOF OF MEMBERSHIP IN THE SETTLEMENT CLASS** with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

*FARRELL V. BANK OF AMERICA N.A., CASE NO. 3:16-CV-00492-L-WVG*
OBJECTION OF ESTAFANIA OSORIO SANCHEZ                    8

Joanne Farrell v. Bank of America, N.A., Case No. 3:16-cv-00492-L-WVG

Dated: April 20, 2018

Estefanía Osorio Sanchez

Objector, Class Member

Scanned with CamScanner

Tucker | Pollard
Caroline Tucker, Esq.
556 N. Diamond Bar Blvd.
Suite 213
Diamond Bar, CA 91765
Office 909-398-1800
Fax 949-269-6401
ctucker@tuckerpollard.com

*Attorney for Objector*
STEPHEN KRON

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE FARRELL, on behalf of herself and all others similarly situated, | CASE NO. 3:16-cv-00492-L-WVG |
| Plaintiff, | |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

## OBJECTION TO CLASS ACTION SETTLEMENT

Class member and objector, Stephen Kron, ("hereinafter Objector") opposes the approval of this class action settlement. His contact information is: P.O. Box 7015, Laguna Niguel, CA 92607, 949-283-2214. My client does not recall any information about past objections, but has objected in the past. My past objections are not relevant, but I have objected in several cases. A district court may approve a class action settlement only if the settlement is "fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2).  The district court fulfills both its "duty to act as a fiduciary who must serve as a guardian of the rights of absent class members and ... the requirement of a searching assessment regarding attorneys' fees that should properly be performed in each case." *In*

*re Bank of Am. Corp. Securities, Derivative, and Employee Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014) citing *McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 419 (2d Cir. 2010).

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). Unlike ordinary settlements, "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. *Id*. "[T]hus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id*.

The Court must ensure that the class certification criteria have been met pursuant to the 9th Circuit's recent opinion in *In re Hyundai and Kia Fuel Econ. Litig.,* 15-56014, 2018 WL 505343, at *3–4 (9th Cir. Jan. 23, 2018):

> Rule 23 "does not set forth a mere pleading standard." *Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. The plaintiff seeking class certification bears the burden of demonstrating that all the requirements of Rule 23 have been met. *See Zinser*, 253 F.3d at 1188. This requirement means that the plaintiff must first demonstrate through evidentiary proof that the class meets the prerequisites of Rule 23(a), which provides that class certification is proper only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. The Rule 23(a) prerequisites "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 564 U.S. at 349, 131 S.Ct. 2541 (internal quotation marks omitted). To meet the commonality requirement of Rule 23(a)(2), the plaintiffs' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350, 131 S.Ct. 2541.

After carrying its burden of satisfying Rule 23(a)'s prerequisites, the plaintiff must establish that the class meets the prerequisites of at least one of the three types of class actions set forth in Rule 23(b). Fed. R. Civ. P. 23(b); *Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. Here, the district court certified the class under Rule 23(b)(3), which provides that a class action may be maintained only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," and which lists a number of matters "pertinent to these findings." Fed. R. Civ. P. 23(b)(3).[2]

The Rule 23(b)(3) predominance inquiry is "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The "presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Rather, a court has a "duty to take a close look at whether common questions predominate over individual ones," and ensure that individual questions do not "overwhelm questions common to the class." *Comcast*, 569 U.S. at 34, 133 S.Ct. 1426 (internal quotation marks omitted). In short, "[t]he main concern of the predominance inquiry under Rule 23(b)(3) is the balance between individual and common issues." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545–46 (9th Cir. 2013) (internal quotation marks omitted).

Where plaintiffs bring a nationwide class action under CAFA and invoke Rule 23(b)(3), a court must consider the impact of potentially varying state laws, because "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996). "Variations in state law do not necessarily preclude a 23(b)(3) action." *Hanlon*, 150 F.3d at 1022. For instance, even when some class members "possess slightly differing remedies based on state statute or common law," there may still be "sufficient common issues to warrant a class action." *Id.* at 1022–23; *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301–02 (3d Cir. 2011) (discussing the "pragmatic response to certifications of common claims arising under varying state laws," and citing a case that affirmed "the district court's decision to subsume the relatively minor differences in state law within a single class" as illustrative) (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998)); *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) (noting that even though "state laws may differ in ways that could prevent class treatment if they supplied the principal theories of recovery," class representatives in that case met the predominance requirement in part by limiting "their theories to federal law plus aspects of state law that are uniform"). On the other hand, where "the consumer-protection laws of the affected States vary in material ways, no common legal issues favor a class-action approach to resolving [a] dispute." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011).

In determining whether predominance is defeated by variations in state law, we proceed through several steps. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

590 (9th Cir. 2012). First, the class action proponent must establish that the forum state's substantive law may be constitutionally applied to the claims of a nationwide class. *Id.* at 589–90.[3] If the forum state's law meets this requirement, the district court must use the forum state's choice of law rules to determine whether the forum state's law or the law of multiple states apply to the claims. *Id.* at 590. "[I]f the forum state's choice-of-law rules require the application of only one state's laws to the entire class, then the representation of multiple states within the class does not pose a barrier to class certification." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015). But if class claims "will require adjudication under the laws of multiple states," *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 922, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001), then the court must determine whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently. *Id.* As with any other requirement of Rule 23, plaintiffs seeking class certification bear the burden of demonstrating through evidentiary proof that the laws of the affected states do not vary in material ways that preclude a finding that common legal issues predominate. *See Castano*, 84 F.3d at 741 (indicating that class action proponents must show that variations in state laws will not affect predominance; "[a] court cannot accept such an assertion on faith.") (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) (Ruth Bader Ginsburg, J.)).*In re Hyundai and Kia Fuel Econ. Litig.*, 881 F.3d 679, 690-691 (9th Cir. 2018).

In addition to ensuring that class certification criteria have been met, the Court must also evaluate the settlement for any potential collusion between class counsel and defendant. The Court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self interests … to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Rather than explicit collusion, there need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Id.* at 949 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) and *In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819-20 (3d Cir. 1995).

Here, class counsel has secured the class a benefit of $66.6 million of the possible recoverable damage of $756 million it could have recovered at trial. This compensation is not

adequate for the class, especially considering that class counsel had already overcome, by its own admission, some large hurdles in potentially prevailing at trial.

Furthermore, class counsel has secured its own payday of $16.65 million, which, when compared to its lodestar, it outrageously high. Class counsel expects to expend 2,158 hours, which includes anticipated hours after final approval, with rates ranging from $250 - $825 per hour. While $250 may be a reasonable rate, $825 is not reasonable. Even with these extraordinary rates, the lodestar is still $1,428,047.50. An award of $16.65 million equate to a multiplier of 11.66. A multiplier of 11.66 is both shocking and offensive.

Though this circuit has established 25% of the common fund as a benchmark award for attorney fees, this amount is excessive when compared to its lodestar of 11.66 multiplier. A district court must also provide adequate justification for the use of a multiplier, which is appropriate in only "rare" or "exceptional" cases. See *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). Even if the Court were to find that this case is "rare" or "exceptional," there is no way that a multiplier of 11.66 multiplier is remotely reasonable. The Court should order that class counsel receives its lodestar with no multiplier and disburse the remaining $15 million to the class. Additionally, the Court should evaluate the value of the total settlement compared to the amount received by individual members.

Costs related to administration of the settlement should not be included in calculating the fee award. If the Court were to include these costs, it would have "eliminated the incentive of class counsel to economize on that expense—and indeed may have created a perverse incentive; for higher administrative expenses make class counsel's proposed fee appear smaller in relation to the total settlement than if those costs were lower." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014).

For the foregoing reasons, the Court should deny final approval of the settlement. Neither Objector nor I intend to appear at the fairness hearing.

DATE: _____ 4-20-2018

Stephen Kron

Tucker | Pollard

By: /s/ Caroline Tucker

_____

Caroline Tucker

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on April 20, 2018, and served by the same means on all counsel of record.

/s/ Caroline Tucker

_____

Caroline Tucker



FILED

APR 19 2018

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WASH.

**SUPERIOR COURT OF WASHINGTON
FOR SNOHOMISH COUNTY**

_Farrell_
Petitioner/Plaintiff(s),

vs.

_Bank of America NA_
Respondent/Defendant(s).

1 of 2

NO. _316-CV-00492-WVG_

DECLARATION OF:

_George Bell_

    I OBJect to the settlement
Because I believe it is not fair, also
I have not been given enough info.
and no time to look it over, also
I am a citizen and resident of The state
of Washington and have an account with
BANA. at all times material here to
# 0000533065191000001 #138120100833
# 9190  AND not Loose any value of accounts.
I claim economic Distress Bcause

VERIFICATION

I certify under penalty of perjury under the laws of the State of Washington that I have read the above statements,
I know its Contents, and I believe them to be true and correct.

Signed in Everett, Washington on _____                          _____
                                              Date                                              Signature

FILED

APR 19 2018

SONYA KRASKI
COUNTY CLERK

Give all important dates, times, places, and case numbers.
Attach copies (not your originals) of any relevant documents.

not enough info not enough time
or Loose my rights with not
enough info. So until I can
get info I object to the
Settlement of Defendant Bank of
America in Washington at all Times
material there to. and my accounts
with Bank of America at all
times material there to 533865131-
000001 and 910001537615 48
and 13812010033 and
2016-5498. or Because of the
Cease the assessment of EORCIS
for 5 Years. also I would like
fair relief in which I am
entitled to under the Laws of
The United States. I Declare under
Penalty of perjury under the Laws
of the state of Washington all the
fore going to be true to the Best
of my ability.

_George Orrll_
April 19, 2018

2 of 2   **AFFIRMATION**

*I affirm that the information I am providing is true and accurate to the best of my knowledge.*

Signature: _____   Date: _____

George A. Ollell
130. W. Marion St,
Arlington, WA 98223

SEATTLE WA 980

20 APR 2018 PM 4 L

ADmm'trt Dator
P.O. Box 3170
Portland Oregon
97208

97208-317070

Bank of America checking account #

0022 3012 7777 or 80

Clerk of the Court U.S.
District court for the S.
Dist. of California
Judge M James Lorenz
Courtroom 5 B, Suite 5145
221 West Broadway
San Diego, Ca 92101

Jeff Ostrow
Kopelowitz Ostrow PA
1 W. Las Olas Blvd,
Ste 500
FT Lauderdale, Fl
33301

7. 1-888-396-9598
www.EOBCSettlement.com.

Matthew C Close
O'Melveny + Myers LLP
400 S Hope Street
Los Angeles, Ca. 90071

Don't Like Settlement.

Case Name + #
Joanne Farrell v Bank of America, N.A.
Case # 3:16-CV-00492-L-WVG
Algerine B. B Romero — acct # 0022 3012 7777
12 Sherwood Forest Rd apt 12A
Lugoff S.C. 29078-8800
1-803 438 6244.
I Disagree with the amount of settlement.
I Have been a cardHolder with BOA Since 10-24-13 –
4-14-18 up until this present time + almost every
month I have have at lease 4 or more $35.00 Fees
every month. + paid every one except 7 of them
which were Waived-out of My Direct Deposit acct.

April 14, 2018

Algerine BB Romero

12 Sherwood Forest Trl apt 12A

Lugoff, SC 29078-8800

1-803-438-6249

EOBC Litigation Exclusions
P.O. Box 3170
Portland, OR 97208-3170

Algerine BB Romero

# 0022 3012 7777.
unfortunately I cannot attend the hearing
do to my Finances. or Low very Low.

I DO not wish To
exclude myself

Algerine BB. Romero

EOBC Litigation
P.O. Box 3170
Portland, OR 97208-3170



*7229090569184*
000 0002281 00000000 0001 0005 00457 INS: 0 0
ALGERINE B ROMERO
12 SHERWOOD FOREST TRL APT 12A
LUGOFF SC 29078

# This Page Intentionally Left Blank



Algerine Romero
12 Sherwood Forest Apt 12A
Lugoff, SC 29078



Algerine Romero
12 Sherwood Forest Trl Apt 12A
Lugoff, SC 29078





Algerine Romero
12 Sherwood Forest Trl Apt 12A
Lugoff, SC 29078

COLUMBIA SC 290

17 APR 2018 PM 2 L

EOBC Litigation Exclusions
P.O. Box 3170
Portland, OR 97208-3170

97208-317070

**MARK GULLICKSON**
**28100 Cabot Road #534**
**LAGUNA NIGUEL, CA 92677**
**Phone: (949)-433-8662**
**Email:mgullickson52@gmail.com**

April 19, 2018

Clerk of Courts
U.S. District Court
Southern District of California
Judge M. James Lorenz
Courtroom 5B, Suite 5145
221 West Broadway
San Diego, CA 92101

Re: *Farrell v. Bank of America, N.A.*
Case No. 16-cv-0492 (S.D. Cal.)

Dear Judge:

    My name is Mark Gullickson. I appear pro se in this matter.

    I have banked with Bank of America ("BOA") for several years. I believe I am a member of the Class as defined in the Legal Notice in this case. I have received notice of the settlement confirming I am a class member. I am not now represented by an attorney but will, most likely, be obtaining counsel soon. I will let you know who it is, when and if, I do so. I am not planning on attending the fairness hearing.

    I object to the settlement as it presently stands. My reasons are:

1. The settlement amount is inadequate. If the class won a verdict at trial the damages would be in the hundreds of millions of dollars. Also if punitive damages were awarded the verdict could well exceed the billion dollar mark.

2. There is not enough information that adequately describes the settlement.

3. Plaintiffs and Defendants have not conducted any formal discovery in this matter by their own admission. "I can't know what I don't know". I should be allowed to look at BOA's information to determine if this settlement is fair and reasonable.

4. The attorney fees are not fully documented so that I can review the detail of the attorney's work.

5. The attorney fees are too high given (a) the willingness of BOA to make amends for their actions; (b). The self-policing done by BOA; (c). the threat of Government (CFPB and OCC) intervention; and (d). the constant oversight provided by Honorable M. James Lorenz.

6. The settlement needs to provide a more comprehensive notice procedure.

7. The Release is vague and overly broad.

If the Court requires me to make a motion to intervene I hereby assert this objection should serve as such a motion.

I thank you for your attention to this matter.

Very truly yours,

Mark Gullickson

B. ULICKSON
18100 CABOT BLVD
UNIT 534
LAGUNA NIGUEL, CA.
92677

JEFF OSTROW
KOPELOWITZ OSTROW P.A.
1 WEST LAS OLAS BLVD.
SUITE 500
FT. LAUDERDALE FL
33301

33301 153023

MILWAUKEE WI 530
26 APR 2018 PM 7 L



From The Office of:

*Michael E. Colley*

Post Office Box 1123
Hereford, Texas 79045-1123



**FILED**

APR 2 6 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

Joaanne Farrell v. Bank of America, N.A.
Case Number 3:16-cv-00492-L-WVG

April 5th, 2018

Clerk of the Court
U.S. District Court for the Southern District          **'16CV0492 L     WVG**
of California
Judge M. James Lorenz
Courtroom 5B, Suite 5145
221 West Broadway
San Diego, California - 92101

Dear Judge Lorenz:

Please except this letter as my objection to the settlement for the class action suit against Bank of America, N.A.

Bank of America, N.A. has been charging their customers , the 35.00 overdraft fee for years, sometimes even charging additional fees for the same overdraft, of the same check.

I have been with Bank of America for at least 20 years, and have known them to do this all of that time.

It is my opinion, the settlement should go back at least 10 to 15 years, instead of the original 3 years (February 25, 2014 and December 30, 2017) as stated in the court's paperwork. I would like to see the court go all the way back to at least 2005, and include those additional years in the final settlement.